**EXHIBIT 5**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Kyle J. Ortiz
Bryan M. Kotliar
Martha E. Martir
Amanda C. Glaubach

*Counsel for Pach Shemen LLC, VR Global Partners, L.P., Alpine Partners (BVI), L.P., Gene B. Goldstein, In His Capacity as Trustee of the Gene B. Goldstein and Francine T. Goldstein Family Trust, Mark Millet, In His Capacity as Trustee of the Mark E. Millet Living Trust, Mark Millet, In His Capacity as Trustee of the Millet 2016 Irrevocable Trust, Robert Latter, Tracy Lee Gustafson, Jason Chamness, and Ron Pike* (collectively, the "Petitioning Creditors")

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                :

In re:                          :      Chapter 11

                             :

ELETSON HOLDINGS INC., et al.,    :      Case No. 23-10322 (JPM)

                             :

                             :      (Jointly Administered)

                   Debtors.[1]   :

                             :

------------------------------------------------------------x

## NOTICE OF FILING OF PETITIONING CREDITORS' REVISED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF ELETSON HOLDINGS INC. AND ITS AFFILIATED DEBTORS

      **PLEASE TAKE NOTICE** that, on March 26, 2024, certain of the Petitioning Creditors, as the "Plan Proponents," filed the (a) *Joint Chapter 11 Plan of Reorganization of Eletson Holdings Inc. and its Affiliated Debtors* [Docket No. 531] (the "Plan") and (b) the related disclosure statement [Docket No. 532] (the "Disclosure Statement").

      **PLEASE TAKE FURTHER NOTICE** that, on July 8, 2024, the Plan Proponents filed solicitation versions of the Plan [Docket No. 846] (the "Solicitation Plan") and the Disclosure Statement [Docket No. 847] (the "Solicitation Disclosure Statement").

---

[1]    The Debtors in these cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.  The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece.  The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

**PLEASE TAKE FURTHER NOTICE** that the Plan Proponents filed a revised draft of the Solicitation Plan on September 5, 2024 [Docket No. 1070] and September 10, 2024 [Docket No. 1106] (the "<u>Revised Plan</u>").[2]

**PLEASE TAKE FURTHER NOTICE THAT** the Court held a hearing from September 9, 2024 through September 13, 2024, to consider confirmation of the Revised Plan (the "<u>Confirmation Hearing</u>").

**PLEASE TAKE FURTHER NOTICE** that the Plan Proponents hereby file:

- a further revised version of the Revised Plan, attached hereto as **<u>Exhibit 1</u>** (as may be further amended, modified, and/or supplemented from time to time, the "<u>Further Revised Plan</u>");

- a redline of the Further Revised Plan, showing the changes to the Revised Plan, attached hereto as **<u>Exhibit 2</u>**;

- a changed pages only redline of the Further Revised Plan, showing only the pages where changes were made to the Revised Plan, attached hereto as **<u>Exhibit 3</u>**.

**PLEASE TAKE FURTHER NOTICE** that, the Further Revised Plan incorporates comments from the Creditors' Committee and, as stated on the record on September 13, 2024 at the Confirmation Hearing, the Further Revised Plan removes the arbitration requirement in Section 5.10(b) with respect to decisions related to the Levona Claims and the Independent Director.

**PLEASE TAKE FURTHER NOTICE** that copies of the Further Revised Plan, the Revised Plan, the Solicitation Plan, the Solicitation Disclosure Statement, and other related pleadings filed in the Chapter 11 Cases can be viewed or obtained by: (i) accessing the Court's website for a fee; or (ii) contacting the Office of the Clerk of the Court.  Please note that a PACER password is required to access documents on the Court's website.  **PLEASE NOTE:  Neither the staff of the Clerk's office nor the Petitioning Creditors' counsel can give you legal advice.**

*[Rest of Page Intentionally Left Blank]*

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Revised Plan.

DATED:  September 19, 2024        TOGUT, SEGAL & SEGAL LLP
        New York, New York        By:

                                  _/s/ Kyle J. Ortiz_____
                                  KYLE J. ORTIZ
                                  BRYAN M. KOTLIAR
                                  MARTHA E. MARTIR
                                  AMANDA C. GLAUBACH
                                  One Penn Plaza, Suite 3335
                                  New York, New York 10119
                                  (212) 594-5000

                                  *Counsel for the Petitioning Creditors*

## Exhibit 1

**Further Revised Plan (Clean)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ELETSON HOLDINGS INC., *et al.* | Case No.:  23-10322 (JPM) |
| Debtors.[1] | (Jointly Administered) |

# PETITIONING CREDITORS' AMENDED
# JOINT CHAPTER 11 PLAN OF REORGANIZATION
# OF ELETSON HOLDINGS INC. AND ITS AFFILIATED DEBTORS

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
New York, New York 10119
(212) 594-5000
Kyle J. Ortiz
Bryan M. Kotliar
Martha E. Martir
Amanda C. Glaubach

*Counsel for the Petitioning Creditors*[2]

Dated:   September 19, 2024
          New York, New York

---

[1]   The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.  The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece.  The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

[2]   The "Petitioning Creditors" consist of Pach Shemen LLC, VR Global Partners, L.P., Alpine Partners (BVI), L.P., Gene B. Goldstein ("Goldstein"), Gene B. Goldstein, In His Capacity as Trustee of the Gene B. Goldstein and Francine T. Goldstein Family Trust ("Goldstein Trust", and together with Goldstein, "Mr. Goldstein"), Mark Millet, In His Capacity as Trustee of the Mark E. Millet Living Trust, Mark Millet, In His Capacity as Trustee of the Millet 2016 Irrevocable Trust, Robert Latter, Tracy Lee Gustafson, Jason Chamness, and Ron Pike.  While Togut, Segal & Segal LLP represents Mr. Goldstein as a "Petitioning Creditor," Mr. Goldstein is not a "Plan Proponent" for purposes of this Plan.

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ....................................1

ARTICLE II ADMINISTRATIVE EXPENSES AND OTHER UNCLASSIFIED
CLAIMS ...........................................................................................................17

    2.1    Administrative Claims ................................................................17
    2.2    DIP Claims. ...............................................................................18
    2.3    Priority Tax Claims ...................................................................18
    2.4    Professional Fee Claims ............................................................18
    2.5    Post-Effective Date Fees and Expenses.....................................19
    2.6    Plan Proponents and Backstop Fees and Expenses. ..................20

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS .......................................................................................................20

    3.1    Classification in General ...........................................................20
    3.2    Summary of Classification ........................................................20
    3.3    Treatment of Classes ................................................................21
    3.4    Alternative Treatment...............................................................25
    3.5    Special Provision Regarding Unimpaired Claims.....................25
    3.6    Subordination of Claims. ..........................................................25

ARTICLE IV ACCEPTANCE OR REJECTION OF THIS PLAN........................................26

    4.1    Acceptance by Class Entitled to Vote ......................................26
    4.2    Presumed Acceptance of this Plan.............................................26
    4.3    Presumed Rejection of this Plan ...............................................26
    4.4    Elimination of Classes ..............................................................26
    4.5    Cramdown .................................................................................26
    4.6    Controversy Concerning Impairment ........................................26

ARTICLE V MEANS FOR IMPLEMENTATION OF THIS PLAN .........................................26

    5.1    Substantive Consolidation ........................................................26
    5.2    Restructuring Transactions ........................................................27
    5.3    Sources of Cash for Distributions and Operations ...................28
    5.4    Cancellation of Existing Securities and Agreements ................28
    5.5    Cancellation of Certain Existing Security Interests...................29
    5.6    Rights Offering .........................................................................30
    5.7    Intercompany Interests and Intercompany Claims ...................30
    5.8    Issuance of Reorganized Equity ...............................................30
    5.9    Exemption from Registration. ...................................................31
    5.10   Officers and Boards of Directors...............................................32
    5.11   Corporate Action. .....................................................................32

i

5.12    Effectuating Documents; Further Transactions ..................................................33
5.13    Release of Liens..................................................................................................33
5.14    [Reserved.]..........................................................................................................33
5.15    Preservation of Causes of Action ......................................................................33
5.16    Exemption from Certain Transfer Taxes and Recording Fees ...........................34
5.17    Further Authorization. .........................................................................................34
5.18    GUC Cash Pool Account. ...................................................................................34
5.19    Employee Incentive Plan. ...................................................................................35
5.20    Shareholders Agreement......................................................................................35

ARTICLE VI DISTRIBUTIONS ............................................................................................35

6.1    Distributions Generally........................................................................................35
6.2    No Postpetition or Default Interest on Claims....................................................35
6.3    Date of Distributions ...........................................................................................35
6.4    Distribution Record Date .....................................................................................35
6.5    Disbursing Agent .................................................................................................35
6.6    Delivery of Distributions .....................................................................................36
6.7    Undeliverable Distributions and Unclaimed Property.........................................36
6.8    Manner of Payment Under Plan ...........................................................................36
6.9    Minimum Distributions .......................................................................................36
6.10    No Distribution in Excess of Amount of Allowed Claim ...................................37
6.11    Allocation of Distributions Between Principal and Interest.................................37
6.12    Setoffs and Recoupments ....................................................................................37
6.13    Powers of Disbursing Agent ................................................................................37
6.14    Withholding and Reporting Requirements ...........................................................37
6.15    Claims Paid or Payable by Third Parties .............................................................38

ARTICLE VII PROCEDURES FOR DISPUTED CLAIMS......................................................39

7.1    Allowance of Claims ...........................................................................................39
7.2    Objections to Claims ...........................................................................................39
7.3    Estimation of Claims ...........................................................................................40
7.4    No Distributions Pending Allowance ..................................................................40
7.5    Resolution of Claims ...........................................................................................40
7.6    Disallowed Claims ...............................................................................................40

ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES.......................................................................................................................................41

8.1    Assumption or Rejection of Executory Contracts and Unexpired Leases............41
8.2    Cure of Defaults Under Assumed Contracts .......................................................42
8.3    Claims Based on Rejection of Executory Contracts and Unexpired Leases. ........43
8.4    Contracts and Leases Entered into After the Petition Date. ................................43
8.5    Reservation of Rights. ..........................................................................................43

ARTICLE IX CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN............44

    9.1    Conditions Precedent to the Effective Date........................................................44
    9.2    Waiver of Conditions Precedent.......................................................................45
    9.3    Notice of Effective Date. ..................................................................................45

ARTICLE X EFFECT OF PLAN CONFIRMATION.....................................................45

    10.1    Binding Effect..................................................................................................45
    10.2    [Reserved.].......................................................................................................45
    10.3    Discharge of the Debtors .................................................................................45
    10.4    Injunction.........................................................................................................46
    10.5    Exculpation......................................................................................................46
    10.6    Post-Confirmation Date Retention of Professionals...............................................47

ARTICLE XI RETENTION OF JURISDICTION ...........................................................47

    11.1    Retention of Jurisdiction..................................................................................47
    11.2    Jurisdiction for Certain Other Agreements......................................................50
    11.3    Courts of Competent Jurisdiction ....................................................................50

ARTICLE XII MISCELLANEOUS PROVISIONS ........................................................50

    12.1    Payment of Statutory Fees...............................................................................50
    12.2    Dissolution of Creditors' Committee. ..............................................................50
    12.3    Amendment or Modification of this Plan .........................................................50
    12.4    Substantial Consummation ..............................................................................51
    12.5    Severability of Plan Provisions........................................................................51
    12.6    Successors and Assigns ....................................................................................51
    12.7    Revocation, Withdrawal, or Non-Consummation .............................................51
    12.8    Governing Law ................................................................................................52
    12.9    Immediate Binding Effect ................................................................................52
    12.10    Entire Agreement.............................................................................................52
    12.11    Dissolution of Eletson MI and Eletson Finance ...............................................52
    12.12    Closing of Chapter 11 Cases ...........................................................................52
    12.13    Notice..............................................................................................................52

## INTRODUCTION

Certain of the Petitioning Creditors,[3] as Plan Proponents, hereby propose the following joint plan of reorganization for the resolution of the outstanding Claims against and Interests in the Debtors. Reference is made to the Disclosure Statement for a discussion of (i) the Debtors' history, business, and operations, (ii) a summary and analysis of this Plan, and (iii) certain related matters, including risk factors relating to the consummation of this Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and this Plan, the Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

(a)    *Defined Terms*. As used herein, capitalized terms shall have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1    *2022 Notes* means those First Preferred Ship Mortgage Notes Due 2022, issued by the Debtors pursuant to the 2022 Notes Indenture. For the avoidance of doubt, "2022 Notes" includes those Old Notes which were exchanged pursuant to the Exchange Offer.

1.2    *2022 Noteholder* means a Holder of a 2022 Note.

1.3    *2022 Notes Claim* means a Claim arising under or in connection with the 2022 Notes Documents, including claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges arising or related thereto.

1.4    *2022 Notes Documents* means the 2022 Notes Indenture and all related agreements and documentation executed by any of the Debtors (as amended, amended and restated, modified, or supplemented from time to time).

1.5    *2022 Notes Indenture* means that certain Indenture, dated as of July 2, 2018, by and among the Debtors, as co-issuers, the guarantors party thereto, and the 2022 Notes Trustee, as trustee and collateral agent (as amended, amended and restated, modified, or supplemented from time to time).

1.6    *2022 Notes Trustee* means Wilmington Savings Fund Society, FSB, in its capacity as trustee and collateral trustee under the 2022 Notes Indenture and the 2022 Notes Documents, including any successor and permitted assigns thereto.

---

[3]    While Mr. Goldstein is a Petitioning Creditor and represented by Togut, Segal & Segal LLP, Mr. Goldstein is not a "Plan Proponent" for purposes of the Plan because of his role as a member of the Creditors' Committee.

1.7    ***Administrative Claim*** means a Claim entitled to priority under section 503(b) (including 503(b)(3), 503(b)(4), 503(b)(9)), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code (other than DIP Claims), including (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Professional Fee Claims; (c) U.S. Trustee Fees; (d) any requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code; and (e) any Claims that have been afforded administrative expense priority by Final Order of the Bankruptcy Court.

1.8    ***Administrative Claims Bar Date*** means the first Business Day that is thirty (30) days following the Effective Date, which date shall be the deadline for filing requests for payment of Administrative Claims other than (a) Professional Fee Claims (such claims are subject to the Professional Fee Claims Bar Date), (b) claims asserted under section 503(b)(9) of the Bankruptcy Code (such claims are subject to the General Bar Date), (c) U.S. Trustee Fees, (d) Administrative Claims that have been Allowed on or before the Effective Date, and (e) Administrative Claims that were already asserted in the Chapter 11 Cases pursuant to a timely Proof of Claim in accordance with the Bar Date Order.

1.9    ***Affiliate*** means, with respect to any Person, "affiliate" as defined in section 101(2) of the Bankruptcy Code, as if such Person were a Debtor.

1.10    ***Allowed*** means, with respect to any Claim against the Debtors, except as otherwise provided herein, (a) a Claim that is (i) listed in the Schedules as of the Effective Date as neither disputed, contingent, nor unliquidated, and for which no Proof of Claim has been timely filed and no objection has been filed by the Claims Objection Deadline, or (ii) evidenced by a valid Proof of Claim or request for payment of Administrative Claim, as applicable, filed by the applicable Bar Date, and as to which the Debtors or other parties in interest have not filed an objection to the allowance thereof by the Claims Objection Deadline, (b) a Claim that is Allowed under this Plan or any stipulation or settlement approved by, or Final Order of, the Bankruptcy Court, or (iii) a Claim that is estimated under section 502(c) of the Bankruptcy Code and Allowed in such estimated amount pursuant to an order of the Bankruptcy Court for purposes of distribution; *provided*, *however*, that any Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court will not be considered "Allowed Claims" under this Plan; *provided*, *further*, that unless expressly waived by the Plan or Confirmation Order, the Allowed amount of a Claim shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable.  Notwithstanding the foregoing, a Claim shall not be Allowed and shall not be entitled to a distribution under this Plan to the extent it has been satisfied prior to the Effective Date.  If a Claim is Allowed only in part, references to Allowed Claims include and are limited to the Allowed portion of such Claim.  Notwithstanding anything to the contrary herein, no Claim that is disallowed in accordance with Bankruptcy Rule 3003 or section 502(d) of the Bankruptcy Code is Allowed and each such Claim shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

1.11    ***Amended By-Laws*** means Reorganized Holdings' amended or amended and restated by-laws or operating agreement, a form of which will be contained in the Plan Supplement.

1.12    ***Amended Certificate of Incorporation*** means Reorganized Holdings' amended or amended and restated certificate of incorporation, or certificate of formation, a form of which will be contained in the Plan Supplement.

1.13    ***Assumed Contracts*** means those Executory Contracts and Unexpired Leases to be assumed by Reorganized Holdings pursuant to this Plan.

1.14    ***Avoidance and Other Actions*** means any and all actual or potential avoidance, recovery, subordination, Causes of Action, Claims, or other actions or remedies that may be brought by and on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies arising under sections 510 and 541-553 of the Bankruptcy Code, regardless of whether or not such action has been commenced prior to the Effective Date.

1.15    ***Backstop Agreement*** means a backstop commitment agreement entered into by the Initial Backstop Party and the Plan Proponents that will provide for, among other things, the Backstop Premium.

1.16    ***Backstop Fees and Expenses*** means the Backstop Parties' reasonable and documented professional fees and out-of-pocket expenses incurred in connection with backstop of the Rights Offering not previously paid by the Debtors or any third party.

1.17    ***Backstop Order*** means one or more orders of the Bankruptcy Court, in form and substance satisfactory to the Plan Proponents, approving, among other things, the Backstop Agreement, which order(s) may be the Rights Offering Procedures Order, the Disclosure Statement Order, and/or Confirmation Order.

1.18    ***Backstop Parties*** means, collectively, (i) the Initial Backstop Party and (ii) any Subsequent Backstop Parties, as backstop to the Rights Offering pursuant to the Backstop Agreement.

1.19    ***Backstop Premium*** means a backstop commitment premium equal to 8% of the Reorganized Equity (subject to dilution on account of the EIP) issued and outstanding on the Effective Date.

1.20    ***Ballot*** means each of the ballot forms distributed to each Holder of a Claim that is entitled to vote to accept or reject this Plan and on which the Holder is to indicate, among other things, acceptance or rejection of this Plan.

1.21    ***Bankruptcy Code*** means title 11 of the United States Code, as now in effect or hereafter amended, to the extent such amendments apply to the Chapter 11 Cases.

3

1.22    **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of New York and, to the extent of any withdrawal of reference under section 157 of title 28 of the United States Code, the United States District Court for the Southern District of New York.

1.23    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, and the general, local, and chamber rules of the Bankruptcy Court, as now in effect or hereafter amended.

1.24    **Bar Date** means, as applicable:  (a) the General Bar Date; (b) the later of (i) the General Bar Date and (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after entry of a Bankruptcy Court order pursuant to which Executory Contracts or Unexpired Leases are rejected for Claims arising from such rejected agreements; (c) the later of (i) the General Bar Date and (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the date that notice of any applicable amendment or supplement to the Schedules is served on a claimant for those Claims affected by any such amendment or supplement to the Schedules; (d) 4:00 p.m. (prevailing Eastern Time) on March 25, 2024 for Governmental Units; (e) the Administrative Claims Bar Date; and (f) the Professional Fee Claims Bar Date.

1.25    **Bar Date Order** means the *Order Establishing Deadlines for Filing Proofs of Claim and Claims Related to Gap Period and Approving Form and Manner of Notice Thereof* [Docket No. 264].

1.26    **Business Day** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.27    **Cash** means legal tender of the United States of America and equivalents thereof.

1.28    **Cause of Action** means, without limitation, any and all claims, causes of action, proceeding, agreement, Claim, cause of action, controversy, demand, debt, right, action, Avoidance and Other Actions, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, injury, remedy defense, offset, power, privilege, recoupment, cross-claim, counterclaim, third-party claim or action, indemnity claim, contribution claim, or any other claim, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, accrued or to accrue, foreseen or unforeseen, whether assertable directly or derivatively, whether pending in litigation or otherwise, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.

1.29    **Chapter 11 Case(s)** means (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court from the Conversion Date through the Effective Date and (b) when used with reference to all of the Debtors, the procedurally consolidated and jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court from the Conversion Date through the Effective Date.

1.30     *Claim* means a "claim" as defined in section 101(5) of the Bankruptcy Code.

1.31     *Claims Objection Deadline* means for all Claims, the latest of: (a) 180 days after the Effective Date, subject to extension by order of the Bankruptcy Court;  (b) 90 days after the filing of a Proof of Claim or request for payment of Administrative Claims for such Claim; and (c) such other objection deadline as may be specifically fixed by this Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order.

1.32     *Class* means a category of Claims or Interests, as described in Article III.

1.33     *Committee Professionals* means (a) Dechert LLP, (b) FTI Consulting, Inc., and (c) any other Person or Entity employed by the Committee pursuant to a Final Order in accordance with sections 327 and 1103 or 363 of the Bankruptcy Code and to be compensated for services rendered or incurred through the Effective Date pursuant to sections 327, 328, 329, 330 and 331 or 363 of the Bankruptcy Code.

1.34     *Committee Professional Fees* means all fees and expenses (including, but not limited to, success fees, if any) for services rendered by all Committee Professionals in the Chapter 11 Cases through the Effective Date that the Bankruptcy Court has not denied by Final Order, regardless of whether a fee application has been filed for such fees.

1.35     *Committee Professional Fee Claims* means all Committee Professional Fees which remain unpaid as of the Effective Date.

1.36     *Confirmation Date* means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.37     *Confirmation Hearing* means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

1.38     *Confirmation* means confirmation of this Plan by the Bankruptcy Court under section 1129 of the Bankruptcy Code.

1.39     *Confirmation Order* means the order of the Bankruptcy Court, in form and substance satisfactory to the Plan Proponents, confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.40     *Convenience Claim* means any Allowed General Unsecured Claim against the Debtors in an amount that is greater than $0 but less than or equal to the Convenience Claim Threshold Amount; *provided*, that Holders of Allowed General Unsecured Claims (including, for the avoidance of doubt, 2022 Notes Claims and Old Notes Claims) exceeding the Convenience Claim Threshold Amount may irrevocably

elect on their Ballot to have their General Unsecured Claim reduced to the Convenience Class Threshold Amount and treated as Convenience Claims.

     1.41     *Convenience Claim Cap* means US$2,500,000.00.

     1.42     *Convenience Claim Threshold Amount* means US$1,000,000.00.

     1.43     *Conversion Date* means September 25, 2023, the date the Involuntary Proceedings were converted into Chapter 11 Cases.

     1.44     *Creditors' Committee* means the official committee of unsecured creditors of the Debtors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as may be reconstituted from time to time.

     1.45     *Cure Amount* means all costs required of the Debtors to cure any and all monetary defaults, including pecuniary losses, under an Assumed Contract pursuant to section 365 of the Bankruptcy Code, which shall be set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases or such other notice pursuant to the Disclosure Statement Order.

     1.46     *Debtors* means, collectively, Eletson Holdings, Eletson Finance, and Eletson MI.

     1.47     *Definitive Documents* means, collectively, the (a) Plan (including the Plan Supplement and the documents contained therein); (b) the Disclosure Statement (including all exhibits and schedules thereto); (c) New Corporate Governance Documents; (d) the Rights Offering Procedures; (e) Backstop Agreement (including all schedules and exhibits thereto); (f) the Shareholders Agreement; (g) the Confirmation Order, and (h) all other documents (including related motions, orders, agreements, instruments, schedules or exhibits) that are otherwise necessary to implement the Plan, which, in each case, shall be reasonably acceptable to the Plan Proponents and the Creditors' Committee.

     1.48     *DIP Agent* means the administrative agent under the DIP Credit Agreement (if any) and any successor and permitted assign.

     1.49     *DIP Claim* means any Claim (if any) in respect of the obligations of the Debtors pursuant to the DIP Documents, including all interest, fees, and other expenses owing under the DIP Documents and in accordance therewith, held by, or otherwise owing to, any or all of the DIP Agent and the DIP Lenders.

     1.50     *DIP Credit Agreement* means the credit agreement (if any) governing the terms and conditions of the DIP Facility approved pursuant to the DIP Order by the Bankruptcy Court.

     1.51     *DIP Documents* means the DIP Credit Agreement and related documents (if any).

1.52     *DIP Facility* means postpetition debtor in possession financing facility of the Debtors (if any) approved pursuant to the DIP Order by the Bankruptcy Court.

1.53     *DIP Lenders* means the lenders under the DIP Credit Agreement (if any) and any successors and permitted assigns.

1.54     *DIP Order* means, as applicable, any interim or final order(s) (if any) entered by the Bankruptcy Court approving any DIP Facility and authorizing entry into the DIP Documents.

1.55     *Disallowed* means all or such part of a Claim (a) that is disallowed under this Plan, by a Final Order of the Bankruptcy Court or other court of competent jurisdiction, or pursuant to a settlement or stipulation pursuant to the authority of the Debtors, with the prior written consent of the Plan Proponents, or  Reorganized Holdings; (b) is listed on the Schedules as zero or as contingent, disputed or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or otherwise deemed timely filed under applicable law or the Plan; (c) is not listed on the Schedules and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or otherwise deemed timely filed under applicable law or the Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

1.56     *Disbursing Agent* means (a) Reorganized Holdings or (b) such other entity designated by the Plan Proponents prior to the Effective Date or Reorganized Holdings after the Effective Date, in its capacity as a disbursing agent under Section 6.5 of the Plan.

1.57     *Disclosure Statement* means the disclosure statement (including all exhibits and schedules thereto) relating to this Plan, as amended, modified, or supplemented from time to time, and distributed contemporaneously herewith.

1.58     *Disclosure Statement Order* means one or more orders of the Bankruptcy Court, in form and substance satisfactory to the Plan Proponents, approving the Disclosure Statement as providing "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code and establishing certain dates, deadlines, and procedures related to Confirmation of this Plan.

1.59     *Disputed Claim* means (a) any Claim as to which the Debtors, Reorganized Holdings, or other party in interest have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtors, Reorganized Holdings, or other party in interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order; (b) any Claim scheduled by the Debtors as contingent, unliquidated, or disputed; (c) any Claim which amends a claim scheduled by the

Debtors as contingent, unliquidated, or disputed; or (d) any Claim prior to it having become an Allowed Claim.

1.60    ***Distribution Date*** means a date or dates, as determined by the Disbursing Agent in accordance with the terms of this Plan, on which the Disbursing Agent makes a distribution to Holders of Allowed Claims.

1.61    ***Distribution Record Date*** means the date for determining which Holders of Claims are eligible to receive distributions under this Plan, which date shall be the Confirmation Date or such other date as designated in a Final Order of the Bankruptcy Court.

1.62    ***Effective Date*** means the date that is a Business Day, on which (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX of the Plan have become satisfied or waived in accordance with the Plan; and (c) the Plan is declared effective.  Without limiting the foregoing, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

1.63    ***EIP*** means the employee incentive plan established by the New Board after the Effective Date, which shall provide for equity-based compensation in an amount not to exceed 5% of the Reorganized Equity, to eligible employees of Reorganized Holding's direct and indirect subsidiaries that are not Eletson Insiders.

1.64    ***Eletson Finance*** means Eletson Finance (US) LLC.

1.65    ***Eletson Gas Transfer*** means any purported transfer of preferred shares in Eletson Gas LLC.

1.66    ***Eletson Holdings*** means Eletson Holdings Inc.

1.67    ***Eletson Insiders*** means, collectively, all Persons and Entities that are "insiders" (as defined in section 101(31) of the Bankruptcy Code) of the Debtors or their Affiliates.

1.68    ***Eletson Insider Claim*** means a Claim held by an Eletson Insider.

1.69    ***Eletson MI*** means Agathonissos Finance, LLC.

1.70    ***Entity*** means "entity" as defined in section 101(15) of the Bankruptcy Code.

1.71    ***Estate(s)*** means, individually, the estate of any of the Debtors and, collectively, the estates of all of the Debtors created under section 541 of the Bankruptcy Code.

1.72    ***Exchange Offer*** means the transaction that occurred on May 25, 2018 wherein Old Notes were exchanged for 2022 Notes.  For the avoidance of doubt, Old Notes that were not exchanged in the Exchange Offer are "Old Notes."

1.73     *Exculpated Parties* means, and in each case solely in its capacity as such, (a) the Plan Proponents, (b) the Creditors' Committee and all members thereto, and (c) with respect to each of the foregoing Entities and Persons in the foregoing clauses (a) through (b), each of their Related Parties, solely to the extent such Related Parties are fiduciaries of the Estates or otherwise to the fullest extent provided for pursuant to section 1125(e) of the Bankruptcy Code.

1.74     *Executory Contract* means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.75     *Exhibit* means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement, as amended, modified, or supplemented from time to time.

1.76     *Existing Equity Interests* means all existing equity Interests (other than Intercompany Interests), including without limitation, (a) any and all Parent Equity Interest, and (b) all common and preferred stock and all rights to purchase common and preferred stock in each Debtor.

1.77     *Final Order* means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request re-argument or further review or rehearing has expired and no appeal, petition for certiorari, or request for re-argument or further review or rehearing has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for re-argument, further review, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal, petition for certiorari, or request for re-argument, further review, or rehearing has been or can be taken or granted.

1.78     *General Bar Date* means December 18, 2023 at 4:00 p.m. (prevailing Eastern Time), the date by which each Holder of a Claim against any of the Debtors must file a Proof of Claim unless such Claim falls within one of the exceptions set forth in the Bar Date Order.

1.79     *General Unsecured Claim* means any Claim against any Debtor, but excluding any Administrative Claims, DIP Claims, Professional Fee Claims, U.S. Trustee Fees, Priority Tax Claims, Other Priority Claims, Convenience Claims, OCM Guaranty Claims, Subordinated Claims, or Intercompany Claims, as of the Petition Date that is neither secured by collateral nor entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court.  For the avoidance of doubt, any General Unsecured Claims (including, for the avoidance of doubt, 2022 Notes Claims and Old Notes Claims) that exceed the Convenience Claim Threshold Amount is a "General Unsecured Claim," unless, pursuant to Section 3.3(d)(i) of the Plan, such Holder irrevocably elects to have its General Unsecured Claim treated as a Convenience Claim on its Ballot.

9

1.80    ***General Unsecured Claimholder*** means a Holder of an Allowed General Unsecured Claim.

1.81    ***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.82    ***GUC Cash Pool*** means Cash in the amount of (a) US$13,500,000.00 *plus*, (b) to the extent the aggregate amount of Professional Fee Claims and DIP Claims filed in the Chapter 11 Cases with the Bankruptcy Court (i) do not exceed US$24,200,000.00, $3,000,000.00 or (b) exceed US$24,200,000.00, but are less than US$27,200,000.00, the difference between (A) US$27,2000,000.00 and (B) the aggregate amount of Professional Fee Claims and DIP Claims filed in the Chapter 11 Cases with the Bankruptcy Court.  For the avoidance of doubt, distributions to Holders of Convenience Claims shall not be made from the GUC Cash Pool or GUC Cash Pool Account.

1.83    ***GUC Cash Pool Account*** means an escrow account (having terms reasonably acceptable to the Creditors' Committee) identified by the Plan Proponents and established on the Effective Date that shall be funded with the GUC Cash Pool, which the Disbursing Agent will administer for the benefit of Allowed General Unsecured Claims electing Cash, in accordance with the terms of the Plan and the Confirmation Order.

1.84    ***Holder*** means a holder of a Claim or Interest, as applicable.

1.85    ***Impaired*** means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.86    ***Indenture Trustees*** means, collectively, the 2022 Notes Trustee and the Old Notes Trustee.

1.87    ***Intercompany Claim*** means any and all Claims of a Debtor against another Debtor or non-Debtor Affiliate.

1.88    ***Intercompany Interest*** means an Interest in a Debtor held by another Debtor; *provided*, for the avoidance of doubt, Parent Equity Interests are not Intercompany Interests.

1.89    ***Interest*** means any equity security, including a limited liability company membership interest, as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors, together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

1.90    ***Initial Backstop Party*** means Pach Shemen or such affiliate or designee identified by Pach Shemen, as backstop to the Rights Offering pursuant to the Backstop Agreement.

10

1.91    ***Involuntary Petitions*** means the chapter 7 petitions filed by certain of the Petitioning Creditors against each of the Debtors.

1.92    ***Involuntary Proceedings*** means (a) when used with reference to a particular Debtor, the case under chapter 7 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court from the Petition Date through the Conversion Date and (b) when used with reference to all of the Debtors, the procedurally consolidated and jointly administered cases under chapter 7 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court from the Petition Date through the Conversion Date.

1.93    ***IRS*** means the Internal Revenue Service.

1.94    ***Levona Claims*** has the meaning set forth in <u>Section 5.10(b)</u> of the Plan.

1.95    ***Levona Bankruptcy Claims*** means the Claims asserted by Levona Holdings Ltd. against Eletson Holdings in its proof of claim No. 21-1 filed in the Chapter 11 Cases (as amended, amended and restated, modified, or supplemented).

1.96    ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.97    ***Mr. Goldstein*** means, together, Gene B. Goldstein and Gene B. Goldstein, In His Capacity as Trustee of the Gene B. Goldstein and Francine T. Goldstein Family Trust.

1.98    ***New Board*** means the initial board of directors of Reorganized Holdings.

1.99    ***New Corporate Governance Documents*** means, (a) Amended By-Laws, (b) Amended Certificate of Incorporation, (c) Shareholders Agreement, and (d) any other applicable material governance and/or organizational documents of Reorganized Holdings.

1.100    ***OCM Guaranty Claim*** means any Claim arising from or related to the guarantees executed by Eletson Holdings in favor of the obligations of each of: Fourni Special Maritime Enterprises; Kastos Special Maritime Enterprises; Kimolos II Special Maritime Enterprise; Kinaros Special Maritime Enterprise; OCM Maritime Rhine LLC; OCM Maritime Yukon LLC; OCM Maritime Autumn LLC; and OCM Maritime Thames LLC.

1.101    ***Old Notes*** means those 9.625% First Preferred Ship Mortgage Notes Due 2022, issued by Eletson Holdings and Eletson Finance pursuant to the Old Notes Indenture, which were not exchanged into 2022 Notes pursuant to the Exchange Offer.

1.102    ***Old Noteholder*** means a Holder of an Old Note.

11

1.103    ***Old Notes Claim*** means a Claim arising under or in connection with the Old Notes Documents, including claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges arising or related thereto.

1.104    ***Old Notes Documents*** means the Old Notes Indenture and all related agreements and documentation executed by any of the Debtors (as amended, amended and restated, modified, or supplemented from time to time).

1.105    ***Old Notes Indenture*** means that certain Indenture, dated as of December 19, 2013, among Eletson Holdings and Eletson Finance, as co-issuers, the guarantor parties thereto, and the Old Notes Trustee, as trustee and collateral trustee (as amended, amended and restated, modified, or supplemented from time to time).

1.106    ***Old Notes Trustee*** means Deutsche Bank Trust Company Americas, in its capacity as trustee and collateral trustee under the Old Notes Indenture and Old Notes Documents, including any successor and permitted assigns thereto.

1.107    ***Other Priority Claim*** means any Claim against any Debtor accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim, DIP Claim, or Priority Tax Claim.

1.108    ***Pach Shemen*** means Pach Shemen LLC.

1.109    ***Parent Equity Interest*** means any Interest in Eletson Holdings.

1.110    ***Person*** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, committee, or other entity.

1.111    ***Petition Date*** means March 7, 2023, the date on which the Involuntary Petitions were filed against each of the Debtors.

1.112    ***Petitioning Creditors*** means, collectively, Pach Shemen, VR Global Partners, L.P., Alpine Partners (BVI), L.P., Gene B. Goldstein, Gene B. Goldstein, In His Capacity as Trustee of the Gene B. Goldstein and Francine T. Goldstein Family Trust, Mark Millet, In His Capacity as Trustee of the Mark E. Millet Living Trust, Mark Millet, In His Capacity as Trustee of the Millet 2016 Irrevocable Trust, Robert Latter, Tracy Lee Gustafson, Jason Chamness, and Ron Pike.

1.113    ***Plan*** means this chapter 11 plan of reorganization, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be altered, amended, supplemented, or modified from time to time.

1.114    ***Plan Proponents*** means the Petitioning Creditors other than Mr. Goldstein.

1.115    ***Plan Proponents Fees and Expenses*** means all of the Plan Proponents' reasonable and documented professional fees and out-of-pocket expenses

incurred in connection with the Chapter 11 Cases, to the extent not previously paid by the Debtors or any third party.

1.116    *Plan Supplement* means any supplement to this Plan, and the compilation of documents, forms of documents, and Exhibits to this Plan, as amended, modified, or supplemented from time to time, initial drafts of which shall be filed by the Plan Proponents, which shall include, (a) the Amended By-Laws, (b) the Amended Certificate of Incorporation, (c) the Schedule of Assumed Executory Contracts and Unexpired Leases, (d) the Schedule of Retained Causes of Action, and (e) the Shareholders Agreement, and, (f) to the extent known at the time of filing, identification of the New Board.

1.117    *Priority Tax Claim* means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.118    *Pro Rata Share* means the proportion that an Allowed Claim or Interest, as applicable, in a particular Class or Classes bears to the aggregate amount of Allowed Claims within such Class or Classes.

1.119    *Professional* means any Entity employed in these Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, 363 of the Bankruptcy Code or otherwise.

1.120    *Professional Fee Claim* means a Claim by a Professional seeking an award by the Bankruptcy Court for compensation for services rendered (including transaction fees and success fees) or reimbursement of expenses incurred after the Petition Date and prior to and including the Effective Date, under sections 328, 330, 331 or 503(b)(2) of the Bankruptcy Code, as applicable.

1.121    *Professional Fee Claims Bar Date* means the deadline for filing all applications for Professional Fee Claims on a final basis, which shall be thirty (30) days after the Effective Date.

1.122    *Proof of Claim* means a written proof of Claim filed against any Debtor in the Chapter 11 Cases.

1.123    *Reinstated* means, with respect to any Claim or Interest, that such Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

1.124    *Related Parties* means, subject to any exclusions expressly set forth in the Plan, (a) any Entity or Person; (b) such Entity's or Person's predecessors, predecessors in interest, successors and assigns, parents, owners, subsidiaries, affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, sub-advisors, or managers; (c) with respect to each of the foregoing in clauses (a) and (b), such Entity's or Person's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly, and any fund managers,

fiduciaries, or other agents with any involvement related to the Debtors), members, partners, employees, agents, sub-agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, managers, investment managers, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's or Person's respective heirs, executors, estates, servants, and nominees.

1.125    *Reorganized Equity* means common shares in Reorganized Holdings issued and outstanding on the Effective Date.

1.126    *Reorganized Holdings* means reorganized Eletson Holdings from and after the Effective Date.

1.127    *Requisite Backstop Parties* means, collectively, (a) the Initial Backstop Party and (b) as of any date of determination, Backstop Parties holding more than 50% of the aggregate commitments to backstop, on a fully committed basis, the Rights Offering.

1.128    *Retained Causes of Action* means certain Causes of Action of the Debtors or the Estates that are not released or waived pursuant to this Plan or a Final Order of the Bankruptcy Court. For the avoidance of doubt, the Retained Causes of Action shall include Avoidance and Other Actions and all claims and Causes of Action related to or arising under the Eletson Gas Transfer.

1.129    *Rights Offering* means that certain up to US$53,500,000.00 equity rights offering pursuant to which each General Unsecured Claimholder is entitled to receive its share of Rights Offering Subscription Rights to acquire up to 75% of the Reorganized Equity (subject to dilution of account of the Backstop Premium and the EIP), at a price that represents an implied 14.0% discount to the mid-point of the plan equity value of up to US$62,058,088.00, in accordance with the Rights Offering Procedures, which shall be backstopped by the Backstop Parties.

1.130    *Rights Offering Procedures* means the procedures, in form and substance satisfactory to the Plan Proponents, for the implementation of the Rights Offering, which shall be approved by the Bankruptcy Court.

1.131    *Rights Offering Procedures Order* means one or more orders of the Bankruptcy Court, in form and substance satisfactory to the Plan Proponents, approving, among other things, the Rights Offering Procedures, which order(s) may be the Backstop Order, the Disclosure Statement Order, and/or the Confirmation Order.

1.132    *Rights Offering Subscription Rights* means the subscription rights to purchase the Reorganized Equity offered to General Unsecured Claimholders pursuant to the Rights Offering in accordance with the Rights Offering Procedures.

1.133    *Schedule of Assumed Executory Contracts and Unexpired Leases* means any schedule (including any amendments or modifications thereto) of certain Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Debtors, with the prior written consent of the Plan Proponents, pursuant to this

Plan, as set forth in the Plan Supplement, as may be amended by the Plan Proponents, from time to time prior to the Confirmation Date.

1.134    ***Schedule of Retained Causes of Action*** means the schedule identifying the Retained Causes of Action, which shall be included in the Plan Supplement.

1.135    ***Schedules*** means, collectively, the schedules of assets and liabilities and statements of financial affairs filed by the Debtors [Docket Nos. 216-221, 340] pursuant to section 521 of the Bankruptcy Code and the Bankruptcy Rules, as the same may be amended, supplemented, or modified from time to time.

1.136    ***SEC*** means the United States Securities and Exchange Commission.

1.137    ***Section 510(b) Claim*** means any Claim against any Debtor arising from rescission of a purchase or sale of a security of any Debtor or an Affiliate of any Debtor, for damages arising from the purchase or sale of such security, or for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such a Claim.

1.138    ***Secured Claim*** means a Claim against a Debtor (other than Administrative Claims, DIP Claims, Priority Tax Claims, Other Priority Claims, OCM Guaranty Claims, Subordinated Claims, or Intercompany Claims), that is secured by a Lien on property in which a Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) or 1129(b) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

1.139    ***Securities Act*** means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended.

1.140    ***Shareholders Agreement*** means, any shareholder agreement, equity holders agreement, operating agreement, or other similar agreement for Reorganized Holdings to which holders of the Reorganized Equity shall become party on the Effective Date governing, among other things, the relative rights of Holders of the Reorganized Equity, in form and substance satisfactory to the Plan Proponents, the form of which shall be included in the Plan Supplement.

1.141    ***Subordinated Claim*** means, collectively, Section 510(b) Claims and Eletson Insider Claims.

1.142    ***Subsequent Backstop Parties*** means any General Unsecured Claimholder that joins the Backstop Agreement in accordance with the Backstop Order.

1.143    ***Unexpired Lease*** means a lease to which one of more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.144    *Unimpaired* means a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.145    *U.S. Trustee* means the Office of the United States Trustee for the Southern District of New York.

1.146    *U.S. Trustee Fees* means all fees, interest, and charges assessed against the Estates by the U.S. Trustee pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717.

(b)    *Rules of Interpretation*.  For purposes of this Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that Person's or Entity's successors and assigns; (e) all references in this Plan to Sections and Articles are references to Sections and Articles of or to this Plan; (f) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply;  (j) "including" and "include" means "including without limitation" and "include without limitation", respectively; and (k) with reference to any distribution under this Plan, "on" a date means on or as soon as reasonably practicable after that date.

(c)    *Computation of Time*.  In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006(a) shall apply.

(d)    *Exhibits*.  All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court.  Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to the Plan Proponents.  Upon their filing, the Exhibits may be inspected (a) in the office of the clerk of the Bankruptcy Court or its designee during normal business hours; or (b) on the Bankruptcy Court's website at http://nysb.uscourts.gov (registration required).  The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

(e)     *Controlling Document*.  In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects.  In the event of an inconsistency between this Plan and any document included in the Plan Supplement, the terms of the document in the Plan Supplement shall control (unless stated otherwise in such document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and this Plan, the Confirmation Order shall control.

## ARTICLE II

### ADMINISTRATIVE EXPENSES AND OTHER UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including, Professional Fee Claims and U.S. Trustee Fees), DIP Claims, and Priority Tax Claims are not classified and are not entitled to vote on this Plan.

2.1     *Administrative Claims*.

(a)     Except with respect to Professional Fee Claims, unless the Holder of an Allowed Administrative Claim agrees to less favorable treatment of such Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which an Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date on which an Allowed Administrative Claim becomes payable under any agreement relating thereto, each Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim.

(b)     To the extent not already asserted in the Chapter 11 Cases pursuant to a timely filed Proof of Claim in accordance with the Bar Date Order, all requests for allowance and payment of Administrative Claims (other than (i) Professional Fee Claims (such claims are subject to the Professional Fee Claims Bar Date), (ii) Claims asserted under section 503(b)(9) of the Bankruptcy Code (such claims are subject to the General Bar Date), (iii) U.S. Trustee Fees, (vi) Administrative Claims that have been Allowed on or before the Effective Date, and (v) Administrative Claims that were already asserted in the Chapter 11 Cases pursuant to a timely Proof of Claim in accordance with the Bar Date Order), must be filed and served on the Debtors and the Plan Proponents, or, after the Effective Date, Reorganized Holdings, and their counsel, so as to actually be received on or before the Administrative Claims Bar Date.  The notice of the occurrence of the Effective Date shall set forth the Administrative Claims Bar Date and shall constitute notice thereof.  For the avoidance of doubt, Holders of Administrative Claims based on liabilities incurred by the Debtors in the ordinary course of business after the Petition Date must file and serve a request for payment of such Administrative Claim by the applicable Administrative Claims Bar Date.

(c)     After notice and a hearing, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, a Final Order.

17

(d)     Holders of Administrative Claims (other than (i) Professional Fee Claims, (ii) Claims asserted under section 503(b)(9) of the Bankruptcy Code), (iii) U.S. Trustee Fees, (iv) Administrative Claims that have been Allowed on or before the Effective Date, and (v) Administrative Claims that were already asserted in the Chapter 11 Cases pursuant to a timely filed Proof of Claim in accordance with the Bar Date Order), that do not file and serve a request for allowance and payment of an Administrative Claim by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtors, Reorganized Holdings, the Estates, or their assets and properties, and any Administrative Claims shall be deemed Disallowed as of the Effective Date without the need for any notices, objection, or other action from the Debtors or Reorganized Holdings, as applicable, or any action or approval of the Bankruptcy Court.

2.2     *DIP Claims.*

(a)     All DIP Claims (if any) shall be deemed Allowed as of the Effective Date in an amount equal to the aggregate amount of the DIP Facility obligations approved by the Bankruptcy Court, including, (i) the principal amount outstanding under the DIP Facility on such date, (ii) all interest accrued and unpaid thereon through and including the date of payment, and (iii) all accrued fees, expenses, and indemnification obligations (if any) payable under the DIP Documents.

(b)     On the Effective Date or as soon as reasonably practicable thereafter, except to the extent a Holder of an Allowed DIP Claim agrees to a less favorable treatment of such Claim, each Holder of an Allowed DIP Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed DIP Claim, Cash equal to the unpaid portion of such Allowed DIP Claim.

(c)     Contemporaneously with the foregoing treatment, the DIP Facility and DIP Documents shall be deemed terminated without further action by the DIP Agent or the DIP Lenders. The DIP Agent and DIP Lenders shall take all actions to effectuate and confirm such termination as reasonably requested by the Plan Proponents or Reorganized Holdings, as applicable.

2.3     *Priority Tax Claims*. Unless the Holder of an Allowed Priority Tax Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Priority Tax Claims, either (a) payment in full in Cash, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, and (iii) the date such Allowed Priority Tax Claim becomes payable under applicable non-bankruptcy law, (b) upon such other terms as agreed between the Plan Proponents and each Holder of such Allowed Priority Tax Claim, or (c) over a period ending not later than five (5) years after the Petition Date consistent with section 1129(a)(9)(C) of the Bankruptcy Code.

2.4     *Professional Fee Claims*.

(a)    All applications for allowance and payment of Professional Fee Claims by Professionals for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed on or before the Professional Fee Claims Bar Date.  If an application for a Professional Fee Claim is not filed by the Professional Fee Claims Bar Date, such Professional Fee Claim shall be deemed waived, and the Holder of such Claim shall be forever barred from receiving payment on account thereof.  The notice of the occurrence of the Effective Date shall set forth the Professional Fee Claims Bar Date and shall constitute notice thereof. Objections to any Professional Fee Claims must be filed and served on Reorganized Holdings, the Plan Proponents, and the requesting Professional, no later than twenty-one (21) days after service of the applicable final application for allowance and payment of Professional Fee Claims.

(b)    The Professionals shall estimate their Professional Fee Claims prior to and as of the Confirmation Date, along with an estimate of fees and expenses to be incurred through the Effective Date, and shall deliver such estimate to the Plan Proponents and its counsel no later than seven (7) calendar days prior to the anticipated Effective Date; *provided*, that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional and should not serve as a cap.

(c)    Unless otherwise agreed to (i) by the Plan Proponents and the Professional prior to the Effective Date or (ii) by Reorganized Holdings and the Professional after the Effective Date, the amount of Professional Fee Claims owing to such Professional that are Allowed by Final Order shall be paid in full in Cash by Reorganized Holdings as soon as reasonably practicable after its Professional Fee Claims are Allowed by order of the Bankruptcy Court, (x) *first*, by application of any retainer monies held by such Professional, and (y) *second*, once such retainer balance is exhausted, Reorganized Holdings shall pay such Professional the remaining balance of its Allowed Professional Fee Claim in Cash.

2.5    ***Post-Effective Date Fees and Expenses.***

(a)    On the Effective Date, the retention, including all rights and duties arising from, or related to, the Chapter 11 Cases of each of the Debtors' retained professionals shall terminate; *provided, however*, that the Debtors' retained professionals may file fee applications in accordance with the Plan and Confirmation Order by the Professional Fee Claims Bar Date.

(b)    Except as otherwise specifically provided in this Plan, from and after the Effective Date, Reorganized Holdings shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to these Chapter 11 Cases that are incurred after the Effective Date. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention of compensation for services rendered after such date shall terminate, and Reorganized Holdings may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court; *provided, that*, a Professional must

19

enter into a new engagement agreement with Reorganized Holdings in order to be compensated for services rendered after the Effective Date.

2.6    ***Plan Proponents and Backstop Fees and Expenses.***  The Plan Proponents Fees and Expenses and the Backstop Fees and Expenses shall each be paid in full, in Cash, on the Effective Date, to the extent not previously paid by the Debtors or any third party.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1    ***Classification in General***.  Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

3.2    ***Summary of Classification***.  The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by this Plan, (b) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to accept or reject this Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Section 3.2.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Other Priority Claims | Unimpaired | No (Deemed to Accept) |
| Class 2 | Secured Claims | Unimpaired | No (Deemed to Accept) |
| Class 3 | General Unsecured Claims | Impaired | Yes |
| Class 4 | Convenience Claims | Impaired | Yes |
| Class 5 | OCM Guaranty Claims | Unimpaired | No (Deemed to Accept) |
| Class 6 | Subordinated Claims | Impaired | No (Deemed to Reject) |
| Class 7 | Intercompany Claims | Impaired/Unimpaired | No (Deemed to Accept/Reject) |

20

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 8 | Intercompany Interests | Impaired/Unimpaired | No (Deemed to Accept/Reject) |
| Class 9 | Existing Equity Interests | Impaired | No (Deemed to Reject) |

3.3    ***Treatment of Classes***.

(a)    *Class 1 – Other Priority Claims*

(i)    *Claims in Class*:  Class 1 consists of all Other Priority Claims against the Debtors.

(ii)    *Treatment*:  Unless the Holder of an Allowed Other Priority Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Other Priority Claim, at the option of the Plan Proponents or Reorganized Holdings, as applicable, Cash in an amount equal to the Allowed amount of such Allowed Other Priority Claim as soon as reasonably practicable after the latest of (A) the Effective Date, (B) the date that such Claim becomes an Allowed Other Priority Claim, and (C) a date agreed to by the Plan Proponents or Reorganized Holdings, as applicable, and the Holder of such Allowed Other Priority Claim.

(iii)    *Voting*:  Claims in Class 1 are Unimpaired, and Holders of Allowed Other Priority Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Other Priority Claims are not entitled to vote to accept or reject this Plan.

(b)    *Class 2 – Secured Claims*

(i)    *Claims in Class*:  Class 2 consists of Secured Claims.

(ii)    *Treatment*:  Unless the Holder of an Allowed Secured Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Secured Claim, at the option of the Plan Proponents or Reorganized Holdings, as applicable, (A) Cash in an amount equal to the Allowed amount of such Allowed Secured Claim as soon as reasonably practicable after the latest of (1) the Effective Date, (2) the date that such Claim becomes an Allowed Secured Claim, and (3) a date agreed to by the Plan Proponents or Reorganized Holdings, as applicable, and the Holder of such Secured Claim; (B) reinstatement of such Allowed Secured Claim; (C) the collateral securing such Holder's Allowed Secured Claim, with any deficiency to result in an Allowed General Unsecured Claim; or (D) such other treatment rendering such Allowed Secured Claim Unimpaired.

21

(iii)    *Voting*:  Claims in Class 2 are Unimpaired, and Holders of Allowed Secured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Secured Claims are not entitled to vote to accept or reject this Plan.

(c)    *Class 3 – General Unsecured Claims*

(i)    *Claims in Class:*  Class 3 consists of all General Unsecured Claims (including, for the avoidance of doubt, 2022 Notes Claims and Old Notes Claims that exceed the Convenience Claim Threshold Amount), unless, pursuant to Section 3.3(d)(i) of the Plan, such Holder irrevocably elects to have its General Unsecured Claim treated as a Convenience Claim on its Ballot.

(ii)    *Allowance*:  As of the Effective Date, (A) the 2022 Notes Claims shall be Allowed in the aggregate amount of not less than US$366,077,815.96 (plus all other amounts due or to become due to the 2022 Noteholders pursuant to the 2022 Notes Documents), and (B) the Old Notes shall be Allowed in the aggregate amount of not less than US$5,953,704.07 (plus all other amounts due or to become due to the Old Noteholders pursuant to the Old Notes Documents).  Notwithstanding any claim objections pending as of the Effective Date, neither the 2022 Notes Claims nor the Old Notes Claims shall be subject to avoidance, subordination, setoff, offset, deduction, recoupment, objection, challenge, recharacterization, surcharge under section 506(c) of the Bankruptcy Code, or any other claim or defense. Allowance of all other General Unsecured Claims shall be subject to the claims allowance procedures set forth in this Plan.

(iii)    *Treatment*: Unless the Holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed General Unsecured Claim shall receive on the Effective Date or as soon as reasonably practicable thereafter, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed General Unsecured Claim, the following (1) and (2):

(1) at such Holder's election, either

(A)    Equity Option: if such General Unsecured Claimholder makes a written election on a timely and properly delivered and completed Ballot or other writing satisfactory to the Plan Proponents, its Pro Rata Share of 25% of the Reorganized Equity (subject to dilution on account of the Backstop Premium and the EIP); or

(B)    Cash Option: its Pro Rata Share, among General Unsecured Claims, of the GUC Cash Pool; *provided*, for the avoidance of doubt, the Pro Rata Share calculation in this subclause (B) shall be calculated based on the aggregate amount of all Allowed General Unsecured Claims whether or not Holders of such Claims receive the treatment in this subclause (B);

22

*provided*, if a General Unsecured Claimholder does not submit a Ballot or submits a Ballot but fails to affirmatively elect the treatment set forth in Section 3.3(c)(iii)(1)(A) of the Plan, such General Unsecured Claimholder shall be deemed to have elected the treatment specified in Section 3.3(c)(iii)(1)(B) of the Plan with respect to its Allowed General Unsecured Claim; and

(2) <u>Rights Offering</u>: its Pro Rata Share of the Rights Offering Subscription Rights (subject to dilution of account of the Backstop Premium and the EIP), to purchase the Reorganized Equity to be issued pursuant to the Rights Offering to the extent such General Unsecured Claimholder elects to exercise its Rights Offering Subscription Rights.

(iv)    *Voting:* Claims in Class 3 are Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject this Plan.

(d)    *Class 4 – Convenience Claims*

(i)    *Claims in Class:*  Class 4 consists of all Convenience Claims; *provided*, Holders of Allowed General Unsecured Claims exceeding the Convenience Claim Threshold Amount may irrevocably elect to have their General Unsecured Claim reduced to the Convenience Claim Threshold Amount and treated as a Convenience Claim.

(ii)    *Treatment:*  On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Convenience Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed Convenience Claim shall receive, in full and final satisfaction, compromise, settlement, release and discharge of and in exchange for such Allowed Convenience Claim, Cash in an amount equal to 15% of the face amount of such Holder's Allowed Convenience Claim; *provided*, the aggregate distributions to Holders of Convenience Claims shall not exceed the Convenience Claim Cap; *provided, further*, that in the event the aggregate distributions to Holders of Convenience Claims exceeds the Convenience Claim Cap, Holders of such Claims shall receive their Pro Rata Share of the Convenience Claim Cap.

(iii)    *Voting:* Claims in Class 4 are Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of the Allowed Convenience Claim is entitled to vote to accept or reject this Plan.

(e)    *Class 5 – OCM Guaranty Claims*

(i)    *Claims in Class*:  Class 5 consists of OCM Guaranty Claims.

(ii)    *Treatment*:  On the Effective Date, all OCM Guaranty Claims shall be Reinstated and such Holder's claims shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(iii)    *Voting*:  Claims in Class 5 are Unimpaired.  Each Holder of an OCM Guaranty Claim is conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Allowed OCM Guaranty Claims are not entitled to vote to accept or reject this Plan.

(f)    *Class 6 – Subordinated Claims*

(i)    *Claims in Class*:  Class 6 consists of Subordinated Claims.

(ii)    *Treatment*: On the Effective Date, each Allowed Subordinated Claim shall be cancelled, discharged, and released, without any distribution to Holders.

(iii)    *Voting*:  Claims in Class 6 are Impaired, and Holders of Allowed Subordinated Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Allowed Subordinated Claims are not entitled to vote to accept or reject this Plan.

(g)    *Class 7 – Intercompany Claims*

(i)    *Claims in Class*:  Class 7 consists of Intercompany Claims.

(ii)    *Treatment*:  On the Effective Date, each Allowed Intercompany Claim shall either be Reinstated or discharged, cancelled, released, and extinguished, without any distributions to Holders, as determined by the Plan Proponents or Reorganized Holdings, as applicable.

(iii)    *Voting*:  Claims in Class 7 are Unimpaired or Impaired.  Each Holder of an Intercompany Claim is conclusively deemed to have accepted or rejected this Plan pursuant to section 1126(f) or 1126(g) of the Bankruptcy Code, as applicable.  Therefore, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject this Plan.

(h)    *Class 8 – Intercompany Interests*

(i)    *Interests in Class*:  Class 8 consists of Intercompany Interests.

(ii)    *Treatment*:  On the Effective Date, each Allowed Intercompany Interest shall be either be Reinstated or discharged, cancelled, released, and extinguished, without any distributions to Holders, as determined by the Plan Proponents or Reorganized Holdings, as applicable.

(iii)    *Voting*: Interests in Class 8 are Impaired.  Each Holder of an Existing Equity Interest is conclusively deemed to have accepted or rejected this Plan pursuant to section 1126(f) or 1126(g) of the Bankruptcy Code, as applicable.  Therefore, Holders of Allowed Intercompany Interests are not entitled to vote to accept or reject this Plan.

(i)    *Class 9 – Existing Equity Interests*

(i)    *Interests in Class*:  Class 9 consists of Existing Equity Interests.

(ii)    *Treatment*:  On the Effective Date, each Allowed Existing Equity Interest shall be discharged, cancelled, released, and extinguished, without any distributions to Holders.

(iii)    *Voting*: Interests in Class 9 are Impaired.  Each Holder of an Existing Equity Interest is conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Allowed Existing Equity Interests are not entitled to vote to accept or reject this Plan.

3.4    ***Alternative Treatment***.  Notwithstanding any provision herein to the contrary, any Holder of an Allowed Claim may receive, instead of the distribution or treatment to which it is entitled hereunder, any other distribution or treatment to which it and the Plan Proponents or Reorganized Holdings, as applicable, may agree in writing; *provided, however*, that under no circumstances may the Plan Proponents or Reorganized Holdings, as applicable, agree to provide any other distribution or treatment to any Holder of an Allowed Claim that would adversely impact the distribution or treatment provided to any other Holder of an Allowed Claim.

3.5    ***Special Provision Regarding Unimpaired Claims***.  Except as otherwise provided in this Plan, nothing shall affect the Debtors' or Reorganized Holdings' rights and defenses, legal and equitable, with respect to any Unimpaired Claims, including but not limited to all rights with respect to legal and equitable defenses to setoffs against or recoupments of Unimpaired Claims.

3.6    ***Subordination of Claims.***  Except as expressly provided herein, the Allowance, classification, and treatment of all Allowed Claims and Interests take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Plan Proponents and Reorganized Holdings reserve the right to classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THIS PLAN

4.1     *Acceptance by Class Entitled to Vote*.  Classes 3 and 4 are the Classes of Claims of the Debtors that are entitled to vote to accept or reject this Plan. Classes 3 and 4 shall have accepted this Plan if (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in each Class have voted to accept this Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in each Class have voted to accept this Plan, not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code.  If there are no votes cast in a particular Class that is entitled to vote on this Plan, then this Plan shall be deemed accepted by such Class.

4.2     *Presumed Acceptance of this Plan*.  Classes 1, 2, 5, and depending on their respective treatment, Classes 7 and 8 are Unimpaired.  Therefore, such Classes are deemed to have accepted this Plan by operation of law and are not entitled to vote to accept or reject this Plan.

4.3     *Presumed Rejection of this Plan*.  Classes 6 and 9, and depending on their respective treatment, Classes 7 and 8 are fully Impaired and will receive no recovery under this Plan.  Therefore, such Classes are deemed to have rejected this Plan by operation of law and are not entitled to vote to accept or reject this Plan.

4.4     *Elimination of Classes*.  To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

4.5     *Cramdown*.  The Plan Proponents request Confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Plan Proponents reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

4.6     *Controversy Concerning Impairment*.  If a controversy arises as to whether any Claims or Interests or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THIS PLAN

5.1     *Substantive Consolidation*.  The Plan is being proposed by the Plan Proponents as a joint chapter 11 plan of the Debtors.  Solely for purposes of voting on, and receiving distributions under the Plan, the Estates of the Debtors are deemed to be

substantively consolidated, meaning that (a) all assets and liabilities of the Debtors are deemed to be assets and liabilities, respectively, of a single Estate; (b) all guarantees by one Debtor of the obligations of another Debtor are deemed eliminated; (c) any joint and several liability of either of the Debtors is deemed to be one Claim against a single Estate; and (d) Proofs of Claim filed against one or more Debtors are deemed to be one Claim against a single Estate.  This deemed consolidation will not affect:  (i) the legal and corporate structures of the Debtors or Reorganized Holdings; (ii) the rights of the Holders of Allowed Claims to receive distributions from any insurance policies or proceeds of such policies; (iii) any Liens granted or arising any time prior to the Effective Date or the priority of those Liens; or (iv) the rights of Reorganized Holdings to contest alleged setoff or recoupment rights on the grounds of lack of mutuality under section 553 of the Bankruptcy Code and other applicable law.  As a result, Claims filed against the Debtors seeking recovery of the same debt shall only be entitled to receive a single distribution from the consolidated Estates in accordance with the Plan to the extent such Claim is an Allowed Claim.  This deemed substantive consolidation shall have no effect on any claims or defenses of any Person or Entity or on any right of setoff, offset or recoupment rights or any Retained Causes of Action.  Voting will be tabulated on a substantively consolidated basis. The entry of the Confirmation Order shall constitute approval by the Bankruptcy Court of the substantive consolidation of the Debtors and their respective Estates solely for purposes of voting on, and receiving distributions under the Plan.  Notwithstanding such substantive consolidation, however, U.S. Trustee Fees shall be due and payable by each individual Debtor through the Effective Date.

      5.2       *Restructuring Transactions*.

         (a)      The transactions contemplated in this Plan and the consideration received in connection therewith, shall be structured in a manner that (i) minimizes any current taxes payable as a result of the consummation of such transactions and (ii) optimizes the tax efficiency (including, but not limited to, by way of the preservation or enhancement of favorable tax attributes) of such transactions to the Debtors, Reorganized Holdings, and the holders of equity or debt in Reorganized Holdings going forward, in each case as determined by the Plan Proponents.

         (b)      The Debtors, with the prior written consent of the Plan Proponents, or Reorganized Holdings, as applicable, and the Plan Proponents, may, in their discretion, take such action as permitted by applicable law, including those Reorganized Holdings determine are reasonable, necessary or appropriate to effectuate the Plan, including: (i) the execution and delivery of any appropriate agreements or other documents of formation, merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion,

amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; (iv) such other transactions that are required to effectuate this Plan; (v) all transactions necessary to provide for the purchase of some or all of the assets of, or Interests in, any of the Debtors which purchase may be structured as a taxable transaction for United States federal income tax purposes; (vi) all actions that the applicable Entities determine to be necessary to obtain the requisite regulatory approvals to effectuate this Plan; (vii) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases; (viii) the consummation of the transactions contemplated by the Rights Offering and Backstop Agreement and the execution thereof; (ix) the issuance of the Reorganized Equity; and (x) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with this Plan, and such action and documents are deemed to require no further action or approval (other than any requisite filings required under the applicable state, provincial and federal or foreign law or such consent or consultation rights as set forth in the Plan).

(c)     Except as otherwise provided in this Plan, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all property in each Estate, including all Retained Causes of Action, and any property acquired by any of the Debtors, including interests held by the Debtors in their respective non-Debtor direct and indirect subsidiaries and Affiliates shall vest in Reorganized Holdings, free and clear of all Liens, Claims, charges, or other encumbrances, except for the Liens and Claims established under this Plan. On and after the Effective Date, except as otherwise provided in this Plan, Reorganized Holdings may operate its business and may use, acquire, or dispose of property and maintain, prosecute, abandon, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject only to those restrictions expressly imposed by this Plan or the Confirmation Order, as well as the documents and instruments executed and delivered in connection therewith, including the documents, exhibits, instruments, and other materials comprising the Plan Supplement.

5.3     ***Sources of Cash for Distributions and Operations***.  All Cash necessary for Reorganized Holdings to make payments required by this Plan and for post-Confirmation operations shall be obtained from (a) existing Cash held by Reorganized Holdings on the Effective Date, (b) proceeds from the Rights Offering, and (c) the operations of Reorganized Holdings.

5.4     ***Cancellation of Existing Securities and Agreements***.  Except as provided in this Plan or in the Confirmation Order, on the Effective Date, all notes, stock (where permitted by applicable law), instruments, certificates, agreements, side letters, fee letters, and other documents evidencing or giving rise to Claims against and Interests in the Debtors shall be cancelled, and the obligations of the Debtors thereunder or in any way related thereto shall be fully released, terminated, extinguished, and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or any requirement of further action, vote, or other approval or authorization by any Person.  The Holders of or parties to such notes, stock, instruments, certificates, agreements, side letters, fee letters,

and other documents shall retain their rights vis-à-vis each other but shall have no rights against any Debtor or Reorganized Holdings, as applicable, arising from or relating to such notes, stock, instruments, certificates, agreements, side letters, fee letters, and other documents or the cancellation thereof, except the rights provided pursuant to this Plan and the Confirmation Order. In addition, the obligations of the 2022 Notes Trustee under or in connection with the 2022 Notes Documents and the obligations of the Old Notes Trustee under the Old Notes Documents shall be discharged and deemed satisfied on the Effective Date except to the extent necessary to comply with their obligations under this Plan, including to facilitate the distributions provided for in this Plan to the applicable Holders of Claims and cancelling existing security interests pursuant to this Section 5.4. For the avoidance of doubt, nothing contained in this Plan or the Confirmation Order shall in any way limit or affect the standing of the Indenture Trustees to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court on and after the Effective Date.

For the further avoidance of doubt, notwithstanding the immediately foregoing paragraph, the 2022 Notes Documents and the Old Notes Documents shall continue in effect solely for the purposes of (a) allowing the applicable Holders of Claims to receive their respective distributions under this Plan as provided herein, (b) allowing the Indenture Trustees to facilitate the distributions under this Plan to the applicable Holders of Claims as provided herein and otherwise comply with any obligations they may have under this Plan, including the cancellation of existing security interests pursuant to this Section 5.4, (c) allowing the Indenture Trustees to preserve their respective rights to payment of fees, expenses, and indemnification obligations as against any money or property distributable to the relevant Holder of 2022 Notes Claims and Old Notes Claims, as applicable, under this Plan, and to deduct such fees and expenses from such distributions, including in respect of payment and the right to exercise their charging liens, if any, against such distributions, (d) permitting the Indenture Trustees to perform any functions that are necessary to effectuate the foregoing, and (e) allowing the Indenture Trustees to assert any other right, privilege, benefit, or protection granted to either of them under the relevant documentation other than against Reorganized Holdings and the Exculpated Parties; *provided*, that the foregoing shall not affect the discharge of the Debtors with respect to the 2022 Notes Claims and the Old Notes Claims as provided for herein, or result in any expenses or liability to Reorganized Holdings, except to the extent set forth in or provided for under this Plan. Notwithstanding anything to the contrary herein, the terms and provisions of this Plan shall not alter, modify, or amend any existing contract or agreement between any of the Indenture Trustees and any current or former 2022 Noteholder or Old Noteholder, as applicable, and any such contract or agreement shall remain in full force and effect according to its terms following the Effective Date.

5.5     *Cancellation of Certain Existing Security Interests.* Subject to Section 3.3(e)(ii) of the Plan or as otherwise provided herein, upon the full payment or other satisfaction of an Allowed Secured Claim or reasonably promptly thereafter, the Holder of such Allowed Secured Claim shall deliver to the Debtors and the Plan Proponents or, after the Effective Date, Reorganized Holdings, any collateral or other property of a Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its

Allowed Secured Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory liens, or lis pendens, or similar interests or documents.

5.6     *Rights Offering*.

(a)     *Terms*.  On or as soon as reasonably practicable after the Effective Date, the Debtors and Reorganized Holdings, as applicable, will consummate the Rights Offering in accordance with the Rights Offering Procedures.  The Rights Offering will be fully committed and backstopped by the Backstop Parties in accordance with and subject to the terms and conditions of the Backstop Agreement.

(b)     *Purpose*.  The proceeds of the Rights Offering shall be used: (i) to provide Reorganized Holdings with additional liquidity for working capital and general corporate purposes; (ii) to fund the GUC Cash Pool; and (iii) to make other payments on account of Allowed Claims and other amounts under and in accordance with the Plan.

(c)     *Backstop Agreement*.  In accordance with the Backstop Agreement and subject to the terms and conditions thereof, the Backstop Parties have agreed to purchase, on the Effective Date, all of the Reorganized Equity offered and not duly subscribed for and/or purchased in the Rights Offering in accordance with the Rights Offering Procedures and the Backstop Agreement.

(d)     *Backstop Premium*.  Subject to the terms and conditions set forth in the Backstop Agreement, the Backstop Parties will receive the Backstop Premium (subject to dilution on account of the EIP).  Subject to the terms and conditions set forth in the Backstop Agreement, the Backstop Premium will be immediately and automatically deemed fully earned upon entry into the Backstop Agreement and payable upon the Effective Date.

5.7     ***Intercompany Interests and Intercompany Claims***.  Holders of Intercompany Interests or Intercompany Claims may retain their respective Interests or Claims solely in the discretion of Reorganized Holdings, not on account of such Interests or Claims, as applicable, but rather for the purposes of administrative convenience or for tax purposes, for the ultimate benefit of the Holders of Reorganized Equity, and in exchange for the Debtors' and Reorganized Holdings' agreement under the Plan to make certain distributions to the Holders of Allowed Claims.

5.8     ***Issuance of Reorganized Equity.***  On the Effective Date, Reorganized Holdings is authorized to issue or cause to be issued the Reorganized Equity in accordance with the terms of this Plan.  On the Effective Date, (a) applicable General Unsecured Claimholders that elect to receive Reorganized Equity pursuant to Section 3.3(c)(iii)(1)(A) of the Plan shall receive Reorganized Equity in exchange for their respective General Unsecured Claims (subject to dilution on account of the Rights Offering, the Backstop Premium, and the EIP), as set forth in Article III of the Plan; (b) applicable General Unsecured Claimholders that elect to exercise Rights Offering Subscription Rights pursuant to the Rights Offering Procedures, shall receive

Reorganized Equity (subject to dilution on account of the Backstop Premium and the EIP), as set forth in Article III of the Plan and the Rights Offering Procedures; and (c) the Backstop Parties shall receive Reorganized Equity on account of the Backstop Premium (subject to dilution on account of the EIP), as set forth in Article V of the Plan and the Backstop Agreement.  All Reorganized Equity issuable under this Plan, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable.

Upon issuance, the Reorganized Equity shall not be registered under the Securities Act, and shall not be listed for public trading on any securities exchange.  The distribution of the Reorganized Equity pursuant to this Plan may be made by delivery of one or more certificates representing such Reorganized Equity as described herein, by means of book-entry registration on the books of the transfer agent for the Reorganized Equity, or by means of book-entry exchange through the facilities of a transfer agent satisfactory to the Plan Proponents or Reorganized Holdings, as applicable, the 2022 Notes Trustee, and the Old Notes Trustee, in accordance with the customary practices of such agents, as and to the extent practicable.

5.9     ***Exemption from Registration.***

(a)     The offering, issuance, and distribution of the Reorganized Equity on account of General Unsecured Claims and the Rights Offering shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable U.S. state or other law requiring registration prior to the offering, issuance, distribution, or sale of securities in accordance with, and pursuant to, section 1145 of the Bankruptcy Code to the extent permitted or under the Securities Act by virtue of section 4(a)(2) thereof, Regulation D, and/or Regulation S. Such Reorganized Equity issued pursuant to section 1145 of the Bankruptcy Code will not be "restricted securities" as defined in Rule 144(a)(3) of the Securities Act and will be freely tradable and transferable by the initial recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code, and compliance with applicable securities laws, including Rule 144 of the Securities Act, and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such securities or instruments.  To the extent the issuance and distribution of any Reorganized Equity is being made in reliance on the exemption from registration set forth in section 4(a)(2) of the Securities Act, Regulation D, and/or Regulation S promulgated under the Securities Act, and similar registration exemptions applicable outside of the United States, such securities will be considered "restricted securities" subject to resale restrictions and may be resold, exchanged, assigned, or otherwise transferred only pursuant to a registration statement or available exemption from the registration requirements of the Securities Act and other applicable law.

(b)     The issuance of the Reorganized Equity to the Backstop Parties and the payment of the Backstop Premium is being made in reliance on the exemption from registration set forth in section 4(a)(2) of the Securities Act, Regulation D, and/or Regulation S promulgated under the Securities Act, and similar registration exemptions applicable outside of the United States, such securities will be considered "restricted securities" subject to resale restrictions and may be resold, exchanged, assigned, or otherwise transferred only pursuant to a registration statement or available

exemption from the registration requirements of the Securities Act and other applicable law.

(c)    Any securities issued under the EIP will be issued pursuant to a registration statement or available exemption from registration under the Securities Act and other applicable law.

(d)    To the extent securities were offered prior to the filing of this Plan, such securities were offered in reliance on the exemption provided by section 4(a)(2) of the Securities Act or the safe harbor provided by Regulation S under the Securities Act.

5.10    ***Officers and Boards of Directors.***

(a)    The New Board shall consist of three directors: (i) one director selected by the Plan Proponents, (ii) one director selected by the Plan Proponents, subject to consent of the Creditors' Committee (not to be unreasonably withheld, conditioned, or delayed), and (iii) one director designated as "independent" selected by the Creditors' Committee (the "***Independent Director***").  The identities of directors on the New Board shall be set forth in the Plan Supplement, to the extent known at the time of filing, in accordance with 11 U.S.C. § 1129(a)(5).

(b)    The New Corporate Governance Documents will (i) prohibit the issuance of non-voting equity securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code, and (ii) provide that any decisions related to claims and causes of action with Levona Holdings, Ltd. and its affiliates, including Pach Shemen (the "***Levona Claims***"), are required to be made by the Independent Director; *provided*, the majority of Reorganized Holdings' shareholders other than Pach Shemen (or any Reorganized Holdings' shareholders affiliated with Pach Shemen) may settle the Levona Claims or direct the actions of the Independent Director with respect to the Levona Claims.

(c)    The members of the governing body of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to Reorganized Holdings on or after the Effective Date and each such member will be deemed to have resigned or shall otherwise cease to be a director or manager of the applicable Debtor on the Effective Date.  Commencing on the Effective Date, each of the directors of Reorganized Holdings shall serve pursuant to the terms of the New Corporate Governance Documents and may be replaced or removed in accordance with such organizational documents.

5.11    ***Corporate Action.***  Each of the matters provided for under this Plan involving the corporate structure of any Debtor or Reorganized Holdings or any corporate action to be taken by or required of any Debtor or Reorganized Holdings shall be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by shareholders, members, creditors, directors, or managers of the Debtors or Reorganized Holdings, as applicable.  On or (as

32

applicable) before the Effective Date, the appropriate officers of the Debtors or Reorganized Holdings, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by this Plan (or necessary or desirable to effectuate any transaction hereunder) in the name of and on behalf of the Debtors or Reorganized Holdings, as applicable, including, the Rights Offering Procedures, the Shareholders Agreement, the Backstop Agreement, and any and all other agreements, documents, securities and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court.   The authorizations and approvals contemplated by this Section 5.11 shall be effective notwithstanding any requirements under nonbankruptcy law.

5.12    ***Effectuating Documents; Further Transactions***.  The directors, officers, managers or any other appropriate officer of the Debtors, with the prior written consent of the Plan Proponents, or, after the Effective Date, Reorganized Holdings, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

5.13    ***Release of Liens.*** Except as otherwise specifically provided in this Plan or any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions to be made pursuant to this Plan, and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to Reorganized Holdings and its successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors, Reorganized Holdings, or any Holder of a Secured Claim.

5.14    **[*Reserved.*]**

5.15    ***Preservation of Causes of Action***.

(a)    Except as otherwise provided in the Plan, the Confirmation Order, or in any document, instrument, release or other agreement entered into in connection with the Plan (including the Plan Supplement) or approved by order of the Bankruptcy Court, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors and their Estates shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Claims and Causes of Action (including, without limitation, all Retained Causes of Action), including, among others, (i) the Avoidance and Other Actions and (ii) claims and Causes of Action against, related to or arising from (A) the Eletson Gas Transfer, (B) any Debtor or its Related Parties, (C) any non-Debtor Affiliate or its Related Parties, (D) any non-Debtor direct or indirect subsidiary or its Related Parties, and (E) any Eletson Insider and its Related Parties, whether arising before or after the Petition Date, and Reorganized Holdings' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  **No Person or Entity may rely on**

**the absence of a specific reference in the Plan, the Plan Supplement, the Schedule of Retained Causes of Action, the Disclosure Statement, or the Confirmation Order to any Cause of Action against them as any indication that the Debtors, the Estates, or Reorganized Holdings, as applicable, will not pursue any and all available Causes of Action against them.** The Debtors and Reorganized Holdings expressly reserve all rights to prosecute any and all Causes of Action against any entity, except as otherwise expressly provided in the Plan.

(b)       Except as otherwise provided in the Plan (including the Plan Supplement) and the Confirmation Order, Reorganized Holdings expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), laches, or other preclusion doctrine, shall apply to such Causes of Action upon, after, or as a consequence of the confirmation or consummation of the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor may hold against any Person or Entity shall vest in Reorganized Holdings.  Reorganized Holdings may pursue such Causes of Action, or decline to do any of the foregoing, as appropriate, in accordance with the best interests of Reorganized Holdings and without further notice to or action, order or approval of the Bankruptcy Court or these Chapter 11 Cases.

5.16       *Exemption from Certain Transfer Taxes and Recording Fees*.  To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by any Debtor or any transfer from any Entity pursuant to, in contemplation of, or in connection with this Plan or pursuant to:  (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (b) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with this Plan arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

5.17       *Further Authorization.*  The Plan Proponents or the Debtors (with the prior written consent of the Plan Proponents), or, after the Effective Date, Reorganized Holdings shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

5.18       *GUC Cash Pool Account.*  On the Effective Date or as soon as reasonably practicable thereafter, Reorganized Holdings shall fund the GUC Cash Pool Account from the proceeds of the Rights Offering.

5.19    *Employee Incentive Plan.*  After the Effective Date, the New Board shall establish the EIP.  The EIP shall provide equity-based compensation to the employees (other than Eletson Insiders (if any)) of Reorganized Holdings and/or its direct and indirect subsidiaries in an amount not to exceed 5% of the Reorganized Equity.

5.20    *Shareholders Agreement.*  On the Effective Date, Reorganized Holdings shall enter into the Shareholders Agreement and all current and future Holders of Reorganized Equity shall be deemed to become party to the Shareholders Agreement.

## ARTICLE VI

## DISTRIBUTIONS

6.1    *Distributions Generally*.  The Disbursing Agent shall make all Plan distributions on behalf of the Debtors in accordance with this Article VI and other governing terms of this Plan.

6.2    *No Postpetition or Default Interest on Claims*.  Unless required by the Bankruptcy Code or otherwise specifically provided for in this Plan, the Confirmation Order, or another order of the Bankruptcy Court, and notwithstanding any documents that govern the Debtors' prepetition funded indebtedness to the contrary, postpetition and/or default interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to (a) interest accruing on such Claim on or after the Petition Date on any such Claim or (b) interest at the contract default rate, as applicable.

6.3    *Date of Distributions*.  Unless otherwise provided in this Plan, any distributions and deliveries to be made under this Plan shall be made on the Effective Date or as soon thereafter as is practicable; *provided*, that Reorganized Holdings may implement periodic distribution dates to the extent it determines them to be appropriate.

6.4    *Distribution Record Date*.  As of the close of business on the Distribution Record Date, the various lists of Holders of Claims in each Class, as maintained by the Debtors or their agents, shall be deemed closed, and there shall be no further changes in the record Holders of any Claims after the Distribution Record Date. Neither the Debtors, Reorganized Holdings, nor the Disbursing Agent shall have any obligation to recognize any transfer of a Claim occurring after the close of business on the Distribution Record Date.  For the avoidance of doubt, this Section 6.4 is not applicable to distributions to the 2022 Noteholders and the Old Noteholders, which shall receive and/or assist with distributions in accordance with the 2022 Notes Documents and the Old Notes Documents, as applicable, based on the record of participants in each respective issuance as maintained by the Depository Trust Company.

6.5    *Disbursing Agent*.  Except otherwise provided herein, all distributions under this Plan shall be made by the Disbursing Agent on or after the

Effective Date.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  The Debtors and Reorganized Holdings, as applicable, shall use all commercially reasonably efforts to provide the Disbursing Agent  with the amounts of Claims and the identities and addresses of Holders of Claims, in each case, as set forth in the Debtors' or Reorganized Holdings' books and records.  Reorganized Holdings shall cooperate in good faith with the Disbursing Agent (if other than Reorganized Holdings) to comply with the reporting and withholding requirements outlined in Section 6.14 of the Plan.

6.6     ***Delivery of Distributions***.  The Disbursing Agent will issue or cause to be issued the applicable consideration under this Plan and, subject to Bankruptcy Rule 9010, will make all distributions as and when required by this Plan: (a) in the case of Allowed 2022 Notes Claims to the 2022 Notes Trustee, (b) in the case of Allowed Old Notes Claims to the Old Notes Trustee, and (c) in the case of all other Allowed Claims, to the address of the Holder of such Claim on the books and records of the Debtors or their agents or the address in any written notice of address change delivered to the Debtors or the Disbursing Agent, including any addresses included on any transfers of Claim filed pursuant to Bankruptcy Rule 3001.

6.7     ***Undeliverable Distributions and Unclaimed Property***.  In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current addresses of such Holder, at which time such distribution shall be made to such Holder without interest;  *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the date on which such distribution was attempted to be made; *provided, further*, that the Debtors or Reorganized Holdings, as applicable, shall use reasonable efforts to locate a Holder if any distribution is returned as undeliverable.  After such date, all unclaimed property or interests in property shall revert to Reorganized Holdings automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandonment, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

6.8     ***Manner of Payment Under Plan***.  Except as specifically provided herein, at the option of the Debtors or Reorganized Holdings, as applicable, any Cash payment to be made under this Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors or Reorganized Holdings, as applicable.

6.9     ***Minimum Distributions***.

(a)     No fractional shares of Reorganized Equity shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to the Plan on account of an Allowed General Unsecured Claim would otherwise result in the issuance of a number of shares of Reorganized Equity that is not a whole number, the actual distribution of shares of Reorganized Equity shall be rounded as follows: (i) fractions of one-half or greater shall be rounded to the next higher whole number, and (ii) fractions of less than one-half shall be

rounded to the next lower whole number with no further payment thereof. The total number of authorized shares of Reorganized Equity to be distributed pursuant to the Plan shall be adjusted as necessary to account for the foregoing rounding.

(b)    If any final distribution under the Plan to the Holder of an Allowed Claim would be less than US$50.00, the Disbursing Agent may cancel such distribution which shall irrevocably revert to Reorganized Holdings automatically and without need for a further order by the Bankruptcy Court notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary, and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

6.10    *No Distribution in Excess of Amount of Allowed Claim*. Notwithstanding anything to the contrary in this Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan distributions in excess of the Allowed amount of such Claim (plus any postpetition interest on such Claim solely to the extent permitted by Section 6.2 of the Plan).

6.11    *Allocation of Distributions Between Principal and Interest*. Except as otherwise provided herein and subject to Section 3.3 of this Plan, to the extent that any Allowed Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount (as determined for federal income tax purposes) of the Claim and then to accrued but unpaid interest.

6.12    *Setoffs and Recoupments*. Reorganized Holdings or its designee as instructed by Reorganized Holdings may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, offset or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim any and all claims, rights, and Causes of Action that Reorganized Holdings or its successors may hold against the Holder of such Allowed Claim after the Effective Date to the extent that such setoff or recoupment is either (a) agreed in amount among Reorganized Holdings and the Holder of the Allowed Claim or (b) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by Reorganized Holdings or its successor of any claims, rights, or Causes of Action that Reorganized Holdings or its successor or assign may possess against such Holder.

6.13    *Powers of Disbursing Agent*. The Disbursing Agent may (a) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Plan, (b) make all distributions contemplated hereby, and (c) perform such other duties as may be required of the Disbursing Agent pursuant to this Plan.

6.14    *Withholding and Reporting Requirements*. In connection with this Plan and all instruments issued in connection therewith and distributed thereon, Reorganized Holdings shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under this

Plan shall be subject to any such withholding and reporting requirements. In the case of a non-Cash distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and sell such withheld property to generate the Cash necessary to pay over the withholding tax. Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan.

Notwithstanding the above, each Holder of an Allowed Claim or Interest that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution. Reorganized Holdings has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to any issuing or disbursing party for payment of any such tax obligations.

As a condition of making any distribution under the Plan, each Person and Entity holding an Allowed Claim is required to provide any information necessary in writing, including returning W-8 or W-9 statements, as applicable, to effect the necessary information reporting and withholding of applicable taxes with respect to distributions to be made under the Plan as the Disbursing Agent may request. The Disbursing Agent shall withhold any distributions to a Holder of an Allowed Claim who fails to provide tax identification or social security information within the timeframe requested in writing by the Disbursing Agent to such Holder of an Allowed Claim, which timeframe shall not be less than 30 days. Any Distribution that would otherwise be made to any Holder of an Allowed Claim that fails to timely respond to the Disbursing Agent with the information required by this Section 6.14 shall be treated as an undeliverable or unclaimed distribution pursuant to Section 6.7 hereunder.

6.15    *Claims Paid or Payable by Third Parties*.

(a)    *Claims Paid by Third Parties.* The Debtors, with prior written consent of the Plan Proponents, or Reorganized Holdings, as applicable, shall reduce a Claim, and such Claim shall be Disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor or Reorganized Holdings, including, for the avoidance of doubt, non-Debtor Affiliates and non-Debtor indirect and direct subsidiaries. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized Holdings on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to Reorganized Holdings, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan.

(b)    *Claims Payable by Third Parties*. Except as otherwise provided in this Plan, (i) no distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance

policy, and (ii) to the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)      *Applicability of Insurance Proceeds*.  Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers.

## ARTICLE VII

## PROCEDURES FOR DISPUTED CLAIMS

7.1      ***Allowance of Claims***.  On and after the Effective Date, only Reorganized Holdings may object to the allowance of any Claim, including, but not limited to, any Administrative Claim.  On and after the Effective Date, Reorganized Holdings shall have and retain any and all rights and defenses the Debtors had with respect to any Claim, including, but not limited to, any Administrative Claim, immediately before the Effective Date.  Except as expressly provided in this Plan or in any order entered in these Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in these Chapter 11 Cases allowing such Claim.

7.2      ***Objections to Claims***.

(a)      *Authority*.  On and after the Effective Date, Reorganized Holdings shall have sole authority to settle, compromise, litigate to judgment, or file objections to any Claim, including, but not limited to any Administrative Claim, and to withdraw any objections to any Claim, including, but not limited to any Administrative Claim that are pending as of the Effective Date and/or that Reorganized Holdings may file.  Except as set forth above, on and after the Effective Date, Reorganized Holdings also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

(b)      *Objection Deadline*.  As soon as practicable, but no later than the Claims Objection Deadline, Reorganized Holdings may file objections with the Bankruptcy Court and serve such objections on the Holders of the Claims to which such objections are made.  Nothing contained herein, however, shall limit the right of Reorganized Holdings to object to Claims, if any, filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by Reorganized Holdings.

7.3     ***Estimation of Claims***.  Reorganized Holdings may, at any time, request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or Reorganized Holdings previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Plan Proponents or Reorganized Holdings, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

7.4     ***No Distributions Pending Allowance***.  If an objection to a Claim is filed as set forth in Section 7.2 of the Plan, no payment or distribution provided under this Plan shall be made on account of any disputed portion of such Claim; *provided*, *however*, that notwithstanding the foregoing, payments and distributions under this Plan to Holders of Allowed 2022 Notes Claims and Old Notes Claims shall be made in full on the Effective Date, regardless of whether such Holders hold any Disputed Claims.

7.5     ***Resolution of Claims***.  Except as otherwise provided herein, or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, Reorganized Holdings shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, or other agreement entered into in connection herewith. Reorganized Holdings or its successors may pursue such retained Claims, rights, Causes of Action, suits, or proceedings, as appropriate, in accordance with the best interests of Reorganized Holdings.

7.6     ***Disallowed Claims***.  All (a) Claims held by Persons or Entities against whom or which any of the Debtors or Reorganized Holdings has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, 550 and/or 724 of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject this Plan; *provided*, Claims that are deemed Disallowed pursuant to this Section 7.6(a) shall continue to be Disallowed for all purposes until such Claim has been settled or resolved by Final Order and any sums due to the Debtors or Reorganized Holdings from such Person or Entity have been turned over or paid to Reorganized Holdings; and (b) Levona Bankruptcy Claims shall be deemed Disallowed

40

and shall continue to be Disallowed for all purposes until such Claim has been settled or resolved by Final Order.

## ARTICLE VIII

## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

8.1     *Assumption or Rejection of Executory Contracts and Unexpired Leases*.

(a)     Except as otherwise provided in this Plan, on the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (i) has previously been assumed or assumed and assigned by order of the Bankruptcy Court in effect prior to the Effective Date (which order may be the Confirmation Order); (ii) is the subject of a motion to assume filed on or before the Effective Date; (iii) is identified on the Schedule of Assumed Executory Contracts or Unexpired Leases; or (iv) has expired or terminated pursuant to its own terms. Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of such Executory Contracts and Unexpired Leases as set forth in this Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, all assumptions, assumptions and assignments, and rejections of Executory Contracts and Unexpired Leases in this Plan will be effective as of the Effective Date. Each Executory Contract and Unexpired Lease assumed or assumed and assigned pursuant to this Plan, or by Bankruptcy Court order, will vest in and be fully enforceable by Reorganized Holdings or its assignee in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court. Notwithstanding the foregoing paragraph or anything to the contrary herein, the Plan Proponents reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases prior to the Effective Date.

(b)     With respect to the Assumed Contracts, any provision in any such agreement that:

(i)     prohibits, restricts, or conditions the assumption and/or assignment, or purports to prohibit, restrict, or condition the assumption and/or assignment (including any "change of control" provision) of such agreement or allows any party to such agreement to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assumption and/or assignment of such agreement constitutes an unenforceable anti-assignment and/or discrimination provision and is void and of no force and effect.

(ii)     provides for modification, breach, or termination, or deemed modification, breach, or termination on account of or related to any of the following: (A) the commencement or continuation of the Chapter 11 Cases, (B) the insolvency or financial condition of any of the Debtors at any time, (C) the Debtors' assumption and/or assignment of such agreement, (D) a change of control or similar

41

occurrence, (E) the consummation of this Plan, or (F) the filing of the Involuntary Petitions, such provision is modified so as not to entitle the non-Debtor party thereto to prohibit, restrict, or condition assumption and/or assignment, to modify, terminate, or declare a breach or default under such agreement, or to exercise any other breach- or default-related rights or remedies with respect thereto, including any provision that purports to allow the non-Debtor party thereto to terminate or recapture such agreement, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith.

(c)    Upon the Debtors' assumption of an Executory Contract or Unexpired Lease, as of the Effective Date pursuant to this Plan, no default or other unperformed obligations of a Debtor arising on or prior to the Effective Date shall exist, and each non-Debtor party is forever barred, estopped, and permanently enjoined from (i) declaring a breach or default under such agreement for any act or omission occurring on or prior to the Effective Date, (ii) raising or asserting against the Debtors, the Estates or Reorganized Holdings, or the assets or property of any of them, any fee, default, termination, breach, Cause of Action, or condition arising under or related to the agreement based upon a fact or circumstance that occurred on or prior to the Effective Date, or (iii) taking any other action as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the agreement.  Each non-Debtor party to such an agreement is also forever barred, estopped, and permanently enjoined from (x) asserting against the Debtors, the Estates or Reorganized Holdings, or the assets or property of any of them, any breach, default, or Cause of Action arising out of any indemnity or other obligation or warranties for acts, omissions, or occurrences arising or existing on or prior to the Effective Date, or, against Reorganized Holdings, any counterclaim, setoff, or any other Cause of Action that was or could have been asserted or assertable against the Debtors or the Estates and (y) imposing or charging against Reorganized Holdings or their Affiliates any rent accelerations, assignment fees, increases, or any other fees or charges as a result of assumption of the agreement.

(d)    Any Person or Entity that may have had the right to consent to the assumption and/or assignment of an Executory Contract or Unexpired Lease has consented to such assumption and/or assignment for purposes of section 365 of the Bankruptcy Code if such Person or Entity failed to object timely to the assumption of such agreement, and Reorganized Holdings has demonstrated adequate assurance of future performance with respect to such agreement pursuant to section 365 of the Bankruptcy Code.

8.2    *Cure of Defaults Under Assumed Contracts*.  Any monetary defaults under each Assumed Contract shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Assumed Contracts may otherwise agree.  In the event of a dispute regarding (a) the amount of any payments to cure such a default, (b) the ability of Reorganized Holdings or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments

42

required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. Any objection by a contract or lease counterparty to a proposed assumption or related Cure Amount must be filed and served in accordance with the Disclosure Statement Order. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Amount shall be deemed to have assented to such assumption or Cure Amount.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction or any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition of other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged without further notice to or action, order or approval of the Bankruptcy Court.

8.3     ***Claims Based on Rejection of Executory Contracts and Unexpired Leases.*** Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases pursuant to this Plan or otherwise must be filed no later than 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the Effective Date. Any Proofs of Claim arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases that are not timely filed shall be Disallowed automatically, forever barred from assertion, and shall not be enforceable against Reorganized Holdings without the need for any objection by Reorganized Holdings or further notice to or action, order, or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with the particular provisions of this Plan for such Claims.

8.4     ***Contracts and Leases Entered into After the Petition Date.*** Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, shall be performed by the Debtor or Reorganized Holdings liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) shall survive and remain unaffected by entry of the Confirmation Order.

8.5     ***Reservation of Rights.*** Nothing contained in this Plan shall constitute an admission by the Debtors or Reorganized Holdings that any particular contract is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability thereunder.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN

9.1    ***Conditions Precedent to the Effective Date***.  The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with the terms of this Plan:

(a)    the Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Plan Proponents, and such Confirmation Order shall have become a Final Order;

(b)    the Definitive Documents related to this Plan, including the Plan Supplement, shall be in form and substance satisfactory to the Plan Proponents;

(c)    the Bankruptcy Court shall have entered the Backstop Order and the Rights Offering Procedures Order, in each case, in form and substance satisfactory to the Plan Proponents and the Requisite Backstop Parties, and such order(s) shall have become Final Order(s);

(d)    all of the conditions precedent for the Rights Offering shall have been satisfied or waived in accordance with the terms of the Rights Offering Procedures and the Rights Offering Procedures Order;

(e)    all of the conditions precedent set forth in the Backstop Agreement shall have been satisfied or waived in accordance with the terms thereof and the Backstop Order;

(f)    the Debtors or Plan Proponents, as applicable, shall have obtained all governmental and third-party approvals that are necessary to implement and effectuate this Plan (and all applicable waiting and appeal periods have expired) shall have been completed or received, as applicable, including without limitation, antitrust filings (to the extent required) and registration of Plan securities with CMF;

(g)    the GUC Cash Pool Account shall have been funded or shall be funded concurrently with the effectiveness of the Plan, with the GUC Cash Pool;

(h)    the Plan Proponents Fees and Expenses and the Backstop Fees and Expenses, in each case, shall have been paid in full, in Cash, to the extent not previously paid by the Debtors or any third party;

(i)    the New Corporate Governance Documents have become effective or shall be become effective concurrently with the effectiveness of this Plan;

(j)    the Debtors' assets, including, without limitation, the Debtors' books and records, shall have been transferred to Reorganized Holdings;

(k)    since the Conversion Date, no material adverse changes in the operations, assets, revenues, financial condition, profits, or prospects of the Debtors or

their non-Debtor subsidiaries and/or Affiliates (other than virtue of the Chapter 11 Cases); and

(l)    all actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable government units in accordance with applicable law, and all other actions required to be taken in connection with the Effective Date shall have occurred;

*provided, that,* notwithstanding when a condition precedent to the Effective Date occurs, for purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously with the other conditions precedent to the Effective Date; *provided, further,* that to the extent a condition precedent (a "***Prerequisite Condition***") may be required to occur prior to another condition precedent (a "***Subsequent Condition***") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to the Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

9.2    ***Waiver of Conditions Precedent***.  Each of the conditions precedent in Section 9.1 of the Plan may be waived only if waived in writing by the Plan Proponents without notice, leave or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate this Plan; *provided, that,* any modification to the Plan (or the Definitive Documents' implementation of the Plan) that materially and adversely affects the treatment of Holders of General Unsecured Claims shall require the reasonable consent of the Creditors' Committee (not to be unreasonably withheld, conditioned, or delayed).

9.3    ***Notice of Effective Date.***  The Plan Proponents or the Debtors, as applicable, shall use reasonable efforts to provide prior notice of the projected Effective Date to the Creditors' Committee or its counsel, no later than fourteen (14) calendar days prior to the projected Effective Date.  Following the satisfaction or waiver of all conditions precedent to the Effective Date, Reorganized Holdings shall file a notice of (a) the occurrence of the Effective Date, (b) the Administrative Claims Bar Date, (c) the Professional Fee Claims Bar Date, and (d) such other matters as appropriate or as may be ordered by the Bankruptcy Court.

## ARTICLE X

## EFFECT OF PLAN CONFIRMATION

10.1    ***Binding Effect***.  Following the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtors, their Estates, all present and former Holders of Claims and Interests, whether or not such Holders voted in favor of this Plan, and their respective successors and assigns.

10.2    ***[Reserved.]***

10.3    ***Discharge of the Debtors***.  **Pursuant to and to the fullest extent permitted by the Bankruptcy Code, except as otherwise specifically provided in this**

Plan or the Confirmation Order, the treatment of Claims and Interests under this
Plan shall be in full and final satisfaction, compromise, settlement, release, discharge
and termination, as of the Effective Date, of all Claims of any nature whatsoever,
whether known or unknown, against, and Interests in, the Debtors, any property of
the Estates, or any property of Reorganized Holdings, including all Claims of the
kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case
whether or not: (a) a Proof of Claim or Interest based upon such Claim, debt, right, or
Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (b) a
Claim or Interest based upon such Claim, liability, obligation or Interest is Allowed
pursuant to section 502 of the Bankruptcy Code, or (c) the Holder of such a Claim,
liability, obligation or Interest has voted to accept this Plan.  Except as otherwise
provided herein, any default or "event of default" by the Debtors with respect to any
Claim or Interest that existed immediately prior to or on account of the filing of these
Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the
Effective Date.

10.4    *Injunction*.  Except as otherwise specifically provided in this Plan
or the Confirmation Order, and subject to section 524(a) of the Bankruptcy Code, all
Persons or Entities who have held, hold or may hold (a) Claims or Interests that arose
prior to the Effective Date, (b) Causes of Action that are subject to exculpation
pursuant to Section 10.5 of this Plan (but only to the extent of the exculpation
provided in Section 10.5 of this Plan), or (c) Claims, Interests or Causes of Action that
are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of this
Plan and all other parties-in-interest seeking to enforce such Claims, Interests or
Causes of Action are permanently enjoined, from and after the Effective Date, from
(i) commencing or continuing in any manner any action or other proceeding of any
kind with respect to any such Claim (including a Subordinated Claim) against or
Interest in the Debtors or Reorganized Holdings, or property of any Debtors or
Reorganized Holdings, other than to enforce any right to a distribution pursuant to
this Plan, (ii) the enforcement, attachment, collection or recovery by any manner or
means of any judgment, award, decree or order against the Debtors or Reorganized
Holdings or property of any Debtors or Reorganized Holdings with respect to any
such Claim or Interest, other than to enforce any right to a distribution pursuant to
this Plan, (iii) creating, perfecting or enforcing any Lien or encumbrance of any kind
against the Debtors or Reorganized Holdings, or against the property or interests in
property of the Debtors or Reorganized Holdings with respect to any such Claim or
Interest, other than to enforce any right to a distribution pursuant to this Plan, or (iv)
asserting any right of setoff (except for setoffs validly exercised prepetition) or
subrogation of any kind against any obligation due from the Debtors or Reorganized
Holdings, or against the property or interests in property of the Debtors or
Reorganized Holdings, with respect to any such Claim or Interest.  Such injunction
shall extend to any successors or assignees of the Debtors or Reorganized Holdings
and its respective properties and interests in properties.

10.5    *Exculpation*.  Effective as of the Effective Date, to the extent
permitted under section 1125(e) of the Bankruptcy Code, no Exculpated Party shall
have or incur liability for, and each Exculpated Party is exculpated from any Cause of
Action related to any act or omission taking place between the Petition Date and the
Effective Date, in connection with, relating to, or arising out of, the Chapter 11 Cases,

46

the Involuntary Proceedings, the filing of the Involuntary Petitions, the formulation, preparation, dissemination, negotiation, or filing of this Plan, the Disclosure Statement, the Plan Supplement, the Rights Offering Procedures, the Backstop Agreement, or any transaction under the Plan, contract, instrument, or document or transaction approved by the Bankruptcy Court in these Chapter 11 Cases, except for (a) any Cause of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted fraud, willful misconduct, or gross negligence of such Person, and (b) any Cause of Action related to any liability of professionals to their clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1); *provided, however, that,* for the avoidance of doubt, any such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit.

10.6    *Post-Confirmation Date Retention of Professionals*.  Reorganized Holdings will employ and pay professionals in the ordinary course of business.  Any Professionals retained by the Debtors will not be considered employed by Reorganized Holdings absent execution of a new engagement letter for services rendered after the Effective Date.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1    *Retention of Jurisdiction.*  Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction (unless otherwise indicated) over all matters arising in, arising out of, and/or related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    resolve any matters related to (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom, including Cure Amounts pursuant to section 365 of the Bankruptcy Code, (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed or assumed and assigned, and (iii) any dispute regarding whether a contract or lease is or was executory or unexpired;

(b)    decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

(c)    Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount,

or Allowance of Claims or Interests; *provided*, for the avoidance of doubt, the Bankruptcy Court's retention of jurisdiction with respect to such matters shall not preclude Reorganized Holdings from seeking relief from any other court, tribunal, or other legal forum of competent jurisdiction with respect to such matters;

(d)    enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, the Plan Supplement, or the Confirmation Order (including the Rights Offering, Backstop Agreement, and Shareholders Agreement);

(e)    resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

(f)    modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

(g)    hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under sections 330, 331, 503(b), and 1129(a)(4) of the Bankruptcy Code; *provided, however*, that from and after the Effective Date the payment of fees and expenses by Reorganized Holdings, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(h)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

(i)    adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

(j)    resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including the Bar Date, related notice, claim objections, Allowance, Disallowance, estimation, and distribution;

(k)    adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(l)     adjudicate, decide, or resolve any and all matters related to Causes of Action, that are pending as of the Effective Date or that may be commenced in the future, by, against, or on behalf of any Debtor, non-Debtor subsidiary, or Reorganized Holdings, including among others, claims arising under or related to the Eletson Gas Transfer;

(m)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or distributions pursuant to this Plan are enjoined or stayed;

(n)     determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

(o)     enforce all orders, judgments, compromises, settlements, discharges, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases;

(p)     adjudicate controversies with respect to distributions to Holders of Allowed Claims;

(q)     determine requests for the payment of Claims and Interests entitled to priority under section 507 of the Bankruptcy Code;

(r)     hear and determine matters or disputes arising from, or in connection with, the New Corporate Governance Documents, the Backstop Agreement, the Rights Offering Procedures, the Shareholders Agreement, and the GUC Cash Pool;

(s)     hear and determine all matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(t)     hear and determine all matters concerning exemptions from state and federal registration requirements in accordance with section 1145 of the Bankruptcy Code;

(u)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code;

(v)     hear and determine any issues related to any matter adjudicated in the Chapter 11 Cases;

(w)     enter an order concluding or closing the Chapter 11 Cases; and

(x)     hear and determine any other matter not inconsistent with the Bankruptcy Code.

49

11.2     ***Jurisdiction for Certain Other Agreements***.  This Plan shall not
modify the jurisdictional provisions of the documents contained in the Plan
Supplement.  Notwithstanding anything herein to the contrary, on and after the
Effective Date, the Bankruptcy Court's retention of jurisdiction pursuant to this Plan
shall not govern the enforcement or adjudication of any rights or remedies with respect
to or as provided in the documents in the Plan Supplement and the jurisdictional
provisions of such documents shall control.

11.3     ***Courts of Competent Jurisdiction.***  If the Bankruptcy Court abstains
from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction
over any matters arising out of the Plan, such abstention, refusal, or failure of
jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise
of jurisdiction by any other court having competent jurisdiction with respect to such
matter.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1     ***Payment of Statutory Fees***.  All U.S. Trustee Fees payable after the
Effective Date, if any, shall be paid by Reorganized Holdings on behalf of each Debtor,
as applicable, until the closing of the Chapter 11 Cases pursuant to section 350(a) of the
Bankruptcy Code.  Reorganized Holdings shall file and serve on the U.S. Trustee
quarterly reports of the disbursements made, within 15 days after the conclusion of
each such period, until the Chapter 11 Cases are converted, dismissed, or closed by
entry of a final decree.  Any such reports shall be prepared consistent with (both in
terms and format) of the applicable Bankruptcy Court and U.S. Trustee Guidelines for
such matters.

12.2     ***Dissolution of Creditors' Committee.***  Upon the Effective Date, the
Creditors' Committee shall dissolve automatically whereupon its members, Committee
Professionals, and agents shall be released from any further duties and responsibilities
in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to:
(i) obligations arising under confidentiality agreements, joint interest agreements and
protective orders entered during the Chapter 11 Cases which shall remain in full force
and effect according to their terms; (ii) applications filed pursuant to sections 330 and
331 of the Bankruptcy Code for Committee Professional Fee Claims; (iii) any pending
motions or proceedings to which the Creditors' Committee is a party (including any
related appeals in connection therewith); and (iv) any pending motions, or any motions
or other actions seeking enforcement or implementation of the provisions of this Plan or
the Confirmation Order, including related appeals.  The Creditors' Committee members
and the Committee Professionals shall not be entitled to compensation and
reimbursement of expenses for services rendered after the Effective Date, except for
services rendered in connection with the items listed in the preceding sentence after the
Effective Date.

12.3     ***Amendment or Modification of this Plan***.  Subject to section 1127 of
the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the
Bankruptcy Code, the Plan Proponents reserve the right to alter, amend, or modify this

Plan at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan; *provided, that*, any modification to the Plan (or the Definitive Documents' implementation of the Plan) that materially and adversely affects the treatment of Holders of General Unsecured Claims pursuant to the Plan shall require the reasonable consent (not to be unreasonably withheld, conditioned, or delayed) of the Creditors' Committee.  A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

       12.4     *Substantial Consummation*.  On the Effective Date, this Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

       12.5     *Severability of Plan Provisions*.  If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

       12.6     *Successors and Assigns*.  This Plan shall be binding upon and inure to the benefit of the Debtors, and their respective successors and assigns, including Reorganized Holdings.  The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

       12.7     *Revocation, Withdrawal, or Non-Consummation*.  The Plan Proponents reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization.  If the Plan is revoked or withdrawn as to any or all of the Debtors, or if Confirmation or consummation of this Plan does not occur as to any or all of the Debtors, then (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan (including, without limitation, the Backstop Agreement) shall be deemed null and void; and (c) nothing contained in this Plan, nor any action taken or not taken by the Plan Proponents with respect to this Plan, the Disclosure Statement, the Rights Offering, the Backstop Agreement, or the Confirmation Order, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person; (ii) prejudice in any manner the rights of the Plan

Proponents, the Debtors, or any Person in any further proceedings involving the Debtors or Plan Proponents, or (iii) constitute or be deemed to constitute an admission, acknowledgement, offer, or undertaking of any sort by the Plan Proponents, the Debtors, or any other Person.  The revocation or withdrawal of this Plan with respect to one or more Debtor(s) shall not require re-solicitation of this Plan with respect to the remaining Debtors.

12.8     *Governing Law*.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of law thereof.

12.9     *Immediate Binding Effect*.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and Plan Supplement shall be immediately effective and enforceable.

12.10    *Entire Agreement*.  On the Effective Date, this Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

12.11    *Dissolution of Eletson MI and Eletson Finance*.  On the Effective Date, Eletson MI and Eletson Finance shall be deemed dissolved without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, board of managers, or similar governing body of the Debtors; provided, Reorganized Holdings shall be authorized to file on behalf of Eletson MI and Eletson Finance certificates of dissolution and any and all corporate and company documents necessary to effectuate dissolution.

12.12    *Closing of Chapter 11 Cases*.  Upon the occurrence of the Effective Date, the Chapter 11 Cases of Eletson MI and Eletson Finance shall be deemed closed (notwithstanding the fact that the reconciliation of Claims is ongoing, the Cash in the GUC Cash Pool has not yet been distributed, and the Reorganized Equity has not yet been issued and distributed) and all contested matters relating to each Debtor, including objections or Claims, shall be administered and heard in the Chapter 11 Case of Eletson Holdings; provided, that, on and after the Effective Date, Reorganized Holdings is authorized to submit an order to the Bankruptcy Court under certification of counsel that is form and substance satisfactory to the U.S. Trustee and Plan Proponents that closes and issues a final decree for the Chapter 11 Cases of Eletson MI and Eletson Finance as of the Effective Date.

12.13    *Notice*.  All notices, requests, and demands to or upon the Plan Proponents or Reorganized Holdings, as applicable, to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by electronic transmission, when received and telephonically confirmed, addressed as follows:

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, NY 10119
Attention:  Kyle J. Ortiz, Esq. and Bryan M. Kotliar, Esq.
E-mail: kortiz@teamtogut.com, bkotliar@teamtogut.com

*Counsel for the Plan Proponents and Reorganized Holdings*

[*Signature Page Follows*]

Dated: September 19, 2024
     New York, New York

Respectfully submitted,

TOGUT, SEGAL & SEGAL LLP

/s/ Kyle J. Ortiz
Kyle J. Ortiz
Bryan M. Kotliar
Martha E. Martir
Amanda C. Glaubach
One Penn Plaza
New York, New York 10119
(212) 594-5000
Email:  kortiz@teamtogut.com
       bkotliar@teamtogut.com
       mmartir@teamtogut.com
       aglaubach@teamtogut.com

*Counsel for the Petitioning Creditors*

## Exhibit 2

**Further Revised Plan (Redline)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ELETSON HOLDINGS INC., *et al.* | Case No.:  23-10322 (JPM) |
| Debtors.[1] | (Jointly Administered) |

### PETITIONING CREDITORS' AMENDED
### JOINT CHAPTER 11 PLAN OF REORGANIZATION
### OF ELETSON HOLDINGS INC. AND ITS AFFILIATED DEBTORS

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
New York, New York 10119
(212) 594-5000
Kyle J. Ortiz
Bryan M. Kotliar
Martha E. Martir
Amanda C. Glaubach

*Counsel for the Petitioning Creditors*[2]


Dated:   September 1019, 2024
         New York, New York

---

[1]   The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.  The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece.  The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

[2]   The "Petitioning Creditors" consist of Pach Shemen LLC, VR Global Partners, L.P., Alpine Partners (BVI), L.P., Gene B. Goldstein ("Goldstein"), Gene B. Goldstein, In His Capacity as Trustee of the Gene B. Goldstein and Francine T. Goldstein Family Trust ("Goldstein Trust", and together with Goldstein, "Mr. Goldstein"), Mark Millet, In His Capacity as Trustee of the Mark E. Millet Living Trust, Mark Millet, In His Capacity as Trustee of the Millet 2016 Irrevocable Trust, Robert Latter, Tracy Lee Gustafson, Jason Chamness, and Ron Pike.  While Togut, Segal & Segal LLP represents Mr. Goldstein as a "Petitioning Creditor," Mr. Goldstein is not a "Plan Proponent" for purposes of this Plan.

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ..................................... 1

ARTICLE II ADMINISTRATIVE EXPENSES AND OTHER UNCLASSIFIED
CLAIMS ........................................................................................................................................ 16

    2.1    Administrative Claims ............................................................................... 16
    2.2    DIP Claims. .............................................................................................. 17
    2.3    Priority Tax Claims ................................................................................... 18
    2.4    Professional Fee Claims ........................................................................... 18
    2.5    Post-Effective Date Fees and Expenses ................................................... 19
    2.6    Plan Proponents and Backstop Fees and Expenses. ................................ 19

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS ................................................................................................................................... 19

    3.1    Classification in General ........................................................................... 19
    3.2    Summary of Classification ........................................................................ 20
    3.3    Treatment of Classes ................................................................................ 20
    3.4    Alternative Treatment ............................................................................... 24
    3.5    Special Provision Regarding Unimpaired Claims .................................... 25
    3.6    Subordination of Claims. .......................................................................... 25

ARTICLE IV ACCEPTANCE OR REJECTION OF THIS PLAN ............................................ 25

    4.1    Acceptance by Class Entitled to Vote ..................................................... 25
    4.2    Presumed Acceptance of this Plan ........................................................... 25
    4.3    Presumed Rejection of this Plan ............................................................... 25
    4.4    Elimination of Classes .............................................................................. 25
    4.5    Cramdown ................................................................................................. 25
    4.6    Controversy Concerning Impairment ....................................................... 26

ARTICLE V MEANS FOR IMPLEMENTATION OF THIS PLAN ......................................... 26

    5.1    Substantive Consolidation ........................................................................ 26
    5.2    Restructuring Transactions ....................................................................... 27
    5.3    Sources of Cash for Distributions and Operations ................................... 28
    5.4    Cancellation of Existing Securities and Agreements ............................... 28
    5.5    Cancellation of Certain Existing Security Interests ................................. 29
    5.6    Rights Offering ......................................................................................... 29
    5.7    Intercompany Interests and Intercompany Claims ................................... 30
    5.8    Issuance of Reorganized Equity ............................................................... 30
    5.9    Exemption from Registration. .................................................................. 30
    5.10    Officers and Boards of Directors. ............................................................ 31
    5.11    Corporate Action. ..................................................................................... 32

5.12    Effectuating Documents; Further Transactions ............................................... 32
5.13    Release of Liens ............................................................................................... 33
5.14    [Reserved.] ....................................................................................................... 33
5.15    Preservation of Causes of Action .................................................................... 33
5.16    Exemption from Certain Transfer Taxes and Recording Fees ........................ 34
5.17    Further Authorization. ...................................................................................... 34
5.18    GUC Cash Pool Account. ................................................................................. 34
5.19    Employee Incentive Plan. ................................................................................. 34
5.20    Shareholders Agreement. .................................................................................. 34

ARTICLE VI DISTRIBUTIONS ........................................................................................... 34

6.1    Distributions Generally .................................................................................... 34
6.2    No Postpetition or Default Interest on Claims ................................................ 35
6.3    Date of Distributions ........................................................................................ 35
6.4    Distribution Record Date .................................................................................. 35
6.5    Disbursing Agent .............................................................................................. 35
6.6    Delivery of Distributions .................................................................................. 35
6.7    Undeliverable Distributions and Unclaimed Property ..................................... 36
6.8    Manner of Payment Under Plan ....................................................................... 36
6.9    Minimum Distributions ..................................................................................... 36
6.10    No Distribution in Excess of Amount of Allowed Claim ................................ 36
6.11    Allocation of Distributions Between Principal and Interest ............................ 37
6.12    Setoffs and Recoupments ................................................................................. 37
6.13    Powers of Disbursing Agent ............................................................................ 37
6.14    Withholding and Reporting Requirements ....................................................... 37
6.15    Claims Paid or Payable by Third Parties ......................................................... 38

ARTICLE VII PROCEDURES FOR DISPUTED CLAIMS ................................................. 39

7.1    Allowance of Claims ......................................................................................... 39
7.2    Objections to Claims ........................................................................................ 39
7.3    Estimation of Claims ........................................................................................ 39
7.4    No Distributions Pending Allowance ............................................................... 40
7.5    Resolution of Claims ........................................................................................ 40
7.6    Disallowed Claims ............................................................................................ 40

ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ................................................................................................................................... 40

8.1    Assumption or Rejection of Executory Contracts and Unexpired Leases ....... 40
8.2    Cure of Defaults Under Assumed Contracts .................................................... 42
8.3    Claims Based on Rejection of Executory Contracts and Unexpired Leases .... 43
8.4    Contracts and Leases Entered into After the Petition Date. ............................. 43
8.5    Reservation of Rights. ....................................................................................... 43

ARTICLE IX CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN............43

    9.1    Conditions Precedent to the Effective Date.................................................43
    9.2    Waiver of Conditions Precedent..................................................................44
    9.3    Notice of Effective Date. ............................................................................45

ARTICLE X EFFECT OF PLAN CONFIRMATION.............................................................45

    10.1    Binding Effect..............................................................................................45
    10.2    [Reserved.]...................................................................................................45
    10.3    Discharge of the Debtors .............................................................................45
    10.4    Injunction.....................................................................................................45
    10.5    Exculpation..................................................................................................46
    10.6    Post-Confirmation Date Retention of Professionals....................................46

ARTICLE XI RETENTION OF JURISDICTION.....................................................................47

    11.1    Retention of Jurisdiction..............................................................................47
    11.2    Jurisdiction for Certain Other Agreements..................................................49
    11.3    Courts of Competent Jurisdiction................................................................49

ARTICLE XII MISCELLANEOUS PROVISIONS...................................................................49

    12.1    Payment of Statutory Fees...........................................................................49
    12.2    Dissolution of Creditors' Committee. ..........................................................50
    12.3    Amendment or Modification of this Plan ....................................................50
    12.4    Substantial Consummation ..........................................................................50
    12.5    Severability of Plan Provisions....................................................................50
    12.6    Successors and Assigns ...............................................................................50
    12.7    Revocation, Withdrawal, or Non-Consummation .......................................51
    12.8    Governing Law ............................................................................................51
    12.9    Immediate Binding Effect............................................................................51
    12.10    Entire Agreement.........................................................................................51
    12.11    Dissolution of Eletson MI and Eletson Finance ..........................................51
    12.12    Closing of Chapter 11 Cases........................................................................52
    12.13    Notice...........................................................................................................52
INTRODUCTION..........................................................................................................................1

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ...................................1

ARTICLE II ADMINISTRATIVE EXPENSES AND OTHER UNCLASSIFIED
CLAIMS .......................................................................................................................................17

    2.1    Administrative Claims.................................................................................17
    2.2    DIP Claims. .................................................................................................18
    2.3    Priority Tax Claims .....................................................................................18
    2.4    Professional Fee Claims ..............................................................................19
    2.5    Post-Effective Date Fees and Expenses......................................................19

2.6    Plan Proponents and Backstop Fees and Expenses. .................................................20

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS ....................................................................................................................................20

3.1    Classification in General ...................................................................................20
3.2    Summary of Classification .................................................................................20
3.3    Treatment of Classes ..........................................................................................21
3.4    Alternative Treatment ........................................................................................25
3.5    Special Provision Regarding Unimpaired Claims .............................................25
3.6    Subordination of Claims.....................................................................................25

ARTICLE IV ACCEPTANCE OR REJECTION OF THIS PLAN........................................26

4.1    Acceptance by Class Entitled to Vote ...............................................................26
4.2    Presumed Acceptance of this Plan.....................................................................26
4.3    Presumed Rejection of this Plan ........................................................................26
4.4    Elimination of Classes .......................................................................................26
4.5    Cramdown ..........................................................................................................26
4.6    Controversy Concerning Impairment ................................................................26

ARTICLE V MEANS FOR IMPLEMENTATION OF THIS PLAN ...................................26

5.1    Substantive Consolidation .................................................................................26
5.2    Restructuring Transactions ................................................................................27
5.3    Sources of Cash for Distributions and Operations ...........................................28
5.4    Cancellation of Existing Securities and Agreements ........................................28
5.5    Cancellation of Certain Existing Security Interests...........................................29
5.6    Rights Offering ..................................................................................................30
5.7    Intercompany Interests and Intercompany Claims ............................................30
5.8    Issuance of Reorganized Equity ........................................................................30
5.9    Exemption from Registration. ...........................................................................31
5.10   Officers and Boards of Directors.......................................................................32
5.11   Corporate Action. ..............................................................................................33
5.12   Effectuating Documents; Further Transactions .................................................33
5.13   Release of Liens..................................................................................................33
5.14   [Reserved.].........................................................................................................33
5.15   Preservation of Causes of Action ......................................................................33
5.16   Exemption from Certain Transfer Taxes and Recording Fees ..........................34
5.17   Further Authorization. ........................................................................................34
5.18   GUC Cash Pool Account....................................................................................35
5.19   Employee Incentive Plan....................................................................................35
5.20   Shareholders Agreement.....................................................................................35

ARTICLE VI DISTRIBUTIONS .............................................................................................35

6.1    Distributions Generally.......................................................................................35
6.2    No Postpetition or Default Interest on Claims....................................................35

6.3      Date of Distributions ....................................................................35
6.4      Distribution Record Date ..............................................................35
6.5      Disbursing Agent ..........................................................................36
6.6      Delivery of Distributions ..............................................................36
6.7      Undeliverable Distributions and Unclaimed Property...................36
6.8      Manner of Payment Under Plan ....................................................36
6.9      Minimum Distributions .................................................................36
6.10     No Distribution in Excess of Amount of Allowed Claim .............37
6.11     Allocation of Distributions Between Principal and Interest...........37
6.12     Setoffs and Recoupments .............................................................37
6.13     Powers of Disbursing Agent..........................................................37
6.14     Withholding and Reporting Requirements.....................................38
6.15     Claims Paid or Payable by Third Parties .......................................38

ARTICLE VII PROCEDURES FOR DISPUTED CLAIMS..................................39

7.1      Allowance of Claims .....................................................................39
7.2      Objections to Claims .....................................................................39
7.3      Estimation of Claims .....................................................................40
7.4      No Distributions Pending Allowance ............................................40
7.5      Resolution of Claims .....................................................................40
7.6      Disallowed Claims ........................................................................40

ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES.................................................................................................................41

8.1      Assumption or Rejection of Executory Contracts and Unexpired Leases...........41
8.2      Cure of Defaults Under Assumed Contracts .................................42
8.3      Claims Based on Rejection of Executory Contracts and Unexpired Leases. ........43
8.4      Contracts and Leases Entered into After the Petition Date. ...........43
8.5      Reservation of Rights. ...................................................................43
ARTICLE IX CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN...........44

9.1      Conditions Precedent to the Effective Date..................................44
9.2      Waiver of Conditions Precedent ...................................................45
9.3      Notice of Effective Date. ..............................................................45

ARTICLE X EFFECT OF PLAN CONFIRMATION ..................................................45

10.1     Binding Effect................................................................................45
10.2     [Reserved.]....................................................................................45
10.3     Discharge of the Debtors ..............................................................46
10.4     Injunction .....................................................................................46
10.5     Exculpation ...................................................................................46
10.6     Post-Confirmation Date Retention of Professionals......................47

ARTICLE XI RETENTION OF JURISDICTION ........................................................47

    11.1    Retention of Jurisdiction...............................................................47
    11.2    Jurisdiction for Certain Other Agreements...................................50
    11.3    Courts of Competent Jurisdiction .................................................50

ARTICLE XII MISCELLANEOUS PROVISIONS ......................................................50

    12.1    Payment of Statutory Fees ............................................................50
    12.2    Dissolution of Creditors' Committee. ..........................................50
    12.3    Amendment or Modification of this Plan ......................................51
    12.4    Substantial Consummation ............................................................51
    12.5    Severability of Plan Provisions.....................................................51
    12.6    Successors and Assigns .................................................................51
    12.7    Revocation, Withdrawal, or Non-Consummation .........................51
    12.8    Governing Law ..............................................................................52
    12.9    Immediate Binding Effect .............................................................52
    12.10  Entire Agreement...........................................................................52
    12.11  Dissolution of Eletson MI and Eletson Finance ...........................52
    12.12  Closing of Chapter 11 Cases .........................................................52
    12.13  Notice............................................................................................53

## INTRODUCTION

Certain of the Petitioning Creditors,[3] as Plan Proponents, hereby propose the following joint plan of reorganization for the resolution of the outstanding Claims against and Interests in the Debtors.  Reference is made to the Disclosure Statement for a discussion of (i) the Debtors' history, business, and operations, (ii) a summary and analysis of this Plan, and (iii) certain related matters, including risk factors relating to the consummation of this Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and this Plan, the Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

(a)    *Defined Terms*.  As used herein, capitalized terms shall have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1    *2022 Notes* means those First Preferred Ship Mortgage Notes Due 2022, issued by the Debtors pursuant to the 2022 Notes Indenture.  For the avoidance of doubt, "2022 Notes" includes those Old Notes which were exchanged pursuant to the Exchange Offer.

1.2    *2022 Noteholder* means a Holder of a 2022 Note.

1.3    *2022 Notes Claim* means a Claim arising under or in connection with the 2022 Notes Documents, including claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges arising or related thereto.

1.4    *2022 Notes Documents* means the 2022 Notes Indenture and all related agreements and documentation executed by any of the Debtors (as amended, amended and restated, modified, or supplemented from time to time).

1.5    *2022 Notes Indenture* means that certain Indenture, dated as of July 2, 2018, by and among the Debtors, as co-issuers, the guarantors party thereto, and the 2022 Notes Trustee, as trustee and collateral agent (as amended, amended and restated, modified, or supplemented from time to time).

1.6    *2022 Notes Trustee* means Wilmington Savings Fund Society, FSB, in its capacity as trustee and collateral trustee under the 2022 Notes Indenture and the 2022 Notes Documents, including any successor and permitted assigns thereto.

---

[3]    While Mr. Goldstein is a Petitioning Creditor and represented by Togut, Segal & Segal LLP, Mr. Goldstein is not a "Plan Proponent" for purposes of the Plan because of his role as a member of the Creditors' Committee.

1.7     ***Administrative Claim*** means a Claim entitled to priority under section 503(b) (including 503(b)(3), 503(b)(4), 503(b)(9)), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code (other than DIP Claims), including (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Professional Fee Claims; (c) U.S. Trustee Fees; (d) any requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code; and (e) any Claims that have been afforded administrative expense priority by Final Order of the Bankruptcy Court.

1.8     ***Administrative Claims Bar Date*** means the first Business Day that is thirty (30) days following the Effective Date, which date shall be the deadline for filing requests for payment of Administrative Claims other than (a) Professional Fee Claims (such claims are subject to the Professional Fee Claims Bar Date), (b) claims asserted under section 503(b)(9) of the Bankruptcy Code (such claims are subject to the General Bar Date), (c) U.S. Trustee Fees, (d) Administrative Claims that have been Allowed on or before the Effective Date, and (e) Administrative Claims that were already asserted in the Chapter 11 Cases pursuant to a timely Proof of Claim in accordance with the Bar Date Order.

1.9     ***Affiliate*** means, with respect to any Person, "affiliate" as defined in section 101(2) of the Bankruptcy Code, as if such Person were a Debtor.

1.10     ***Allowed*** means, with respect to any Claim against the Debtors, except as otherwise provided herein, (a) a Claim that is (i) listed in the Schedules as of the Effective Date as neither disputed, contingent, nor unliquidated, and for which no Proof of Claim has been timely filed and no objection has been filed by the Claims Objection Deadline, or (ii) evidenced by a valid Proof of Claim or request for payment of Administrative Claim, as applicable, filed by the applicable Bar Date, and as to which the Debtors or other parties in interest have not filed an objection to the allowance thereof by the Claims Objection Deadline, (b) a Claim that is Allowed under this Plan or any stipulation or settlement approved by, or Final Order of, the Bankruptcy Court, or (iii) a Claim that is estimated under section 502(c) of the Bankruptcy Code and Allowed in such estimated amount pursuant to an order of the Bankruptcy Court for purposes of distribution; *provided, however*, that any Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court will not be considered "Allowed Claims" under this Plan; *provided, further*, that unless expressly waived by the Plan or Confirmation Order, the Allowed amount of a Claim shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable.  Notwithstanding the foregoing, a Claim shall not be Allowed and shall not be entitled to a distribution under this Plan to the extent it has been satisfied prior to the Effective Date.  If a Claim is Allowed only in part, references to Allowed Claims include and are limited to the Allowed portion of such Claim.  Notwithstanding anything to the contrary herein, no Claim that is disallowed in accordance with Bankruptcy Rule 3003 or section 502(d) of the Bankruptcy Code is Allowed and each such Claim shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

2

1.11    ***Amended By-Laws*** means Reorganized Holdings' amended or amended and restated by-laws or operating agreement, a form of which will be contained in the Plan Supplement.

1.12    ***Amended Certificate of Incorporation*** means Reorganized Holdings' amended or amended and restated certificate of incorporation, or certificate of formation, a form of which will be contained in the Plan Supplement.

1.13    ***Assumed Contracts*** means those Executory Contracts and Unexpired Leases to be assumed by Reorganized Holdings pursuant to this Plan.

1.14    ***Avoidance and Other Actions*** means any and all actual or potential avoidance, recovery, subordination, Causes of Action, Claims, or other actions or remedies that may be brought by and on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies arising under sections 510 and 541-553 of the Bankruptcy Code, regardless of whether or not such action has been commenced prior to the Effective Date.

1.15    ***Backstop Agreement*** means a backstop commitment agreement entered into by the Initial Backstop Party and the Plan Proponents that will provide for, among other things, the Backstop Premium.

1.16    ***Backstop Fees and Expenses*** means the Backstop Parties' reasonable and documented professional fees and out-of-pocket expenses incurred in connection with backstop of the Rights Offering not previously paid by the Debtors or any third party.

1.17    ***Backstop Order*** means one or more orders of the Bankruptcy Court, in form and substance satisfactory to the Plan Proponents, approving, among other things, the Backstop Agreement, which order(s) may be the Rights Offering Procedures Order, the Disclosure Statement Order, and/or Confirmation Order.

1.18    ***Backstop Parties*** means, collectively, (i) the Initial Backstop Party and (ii) any Subsequent Backstop Parties, as backstop to the Rights Offering pursuant to the Backstop Agreement.

1.19    ***Backstop Premium***  means a backstop commitment premium equal to 8% of the Reorganized Equity (subject to dilution on account of the EIP) issued and outstanding on the Effective Date.

1.20    ***Ballot*** means each of the ballot forms distributed to each Holder of a Claim that is entitled to vote to accept or reject this Plan and on which the Holder is to indicate, among other things, acceptance or rejection of this Plan.

1.21    ***Bankruptcy Code*** means title 11 of the United States Code, as now in effect or hereafter amended, to the extent such amendments apply to the Chapter 11 Cases.

3

1.22    ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York and, to the extent of any withdrawal of reference under section 157 of title 28 of the United States Code, the United States District Court for the Southern District of New York.

1.23    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, and the general, local, and chamber rules of the Bankruptcy Court, as now in effect or hereafter amended.

1.24    ***Bar Date*** means, as applicable:  (a) the General Bar Date; (b) the later of (i) the General Bar Date and (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after entry of a Bankruptcy Court order pursuant to which Executory Contracts or Unexpired Leases are rejected for Claims arising from such rejected agreements; (c) the later of (i) the General Bar Date and (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the date that notice of any applicable amendment or supplement to the Schedules is served on a claimant for those Claims affected by any such amendment or supplement to the Schedules; (d) 4:00 p.m. (prevailing Eastern Time) on March 25, 2024 for Governmental Units; (e) the Administrative Claims Bar Date; and (f) the Professional Fee Claims Bar Date.

1.25    ***Bar Date Order*** means the *Order Establishing Deadlines for Filing Proofs of Claim and Claims Related to Gap Period and Approving Form and Manner of Notice Thereof* [Docket No. 264].

1.26    ***Business Day*** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.27    ***Cash*** means legal tender of the United States of America and equivalents thereof.

1.28    ***Cause of Action*** means, without limitation, any and all claims, causes of action, proceeding, agreement, Claim, cause of action, controversy, demand, debt, right, action, Avoidance and Other Actions, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, injury, remedy defense, offset, power, privilege, recoupment, cross-claim, counterclaim, third-party claim or action, indemnity claim, contribution claim, or any other claim, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, accrued or to accrue, foreseen or unforeseen, whether assertable directly or derivatively, whether pending in litigation or otherwise, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.

1.29    ***Chapter 11 Case(s)*** means (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court from the Conversion Date through the Effective Date and (b) when used with reference to all of the Debtors, the procedurally consolidated and jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court from the Conversion Date through the Effective Date.

4

1.30      *Claim* means a "claim" as defined in section 101(5) of the Bankruptcy Code.

1.31      *Claims Objection Deadline* means for all Claims, the latest of: (a) 180 days after the Effective Date, subject to extension by order of the Bankruptcy Court;  (b) 90 days after the filing of a Proof of Claim or request for payment of Administrative Claims for such Claim; and (c) such other objection deadline as may be specifically fixed by this Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order.

1.32      *Class* means a category of Claims or Interests, as described in Article III.

1.33      *Committee Professionals* means (a) Dechert LLP, (b) FTI Consulting, Inc., and (c) any other Person or Entity employed by the Committee pursuant to a Final Order in accordance with sections 327 and 1103 or 363 of the Bankruptcy Code and to be compensated for services rendered or incurred through the Effective Date pursuant to sections 327, 328, 329, 330 and 331 or 363 of the Bankruptcy Code.

1.34      *Committee Professional Fees* means all fees and expenses (including, but not limited to, success fees, if any) for services rendered by all Committee Professionals in the Chapter 11 Cases through the Effective Date that the Bankruptcy Court has not denied by Final Order, regardless of whether a fee application has been filed for such fees.

1.35      *Committee Professional Fee Claims* means all Committee Professional Fees which remain unpaid as of the Effective Date.

~~1.33~~1.36 *Confirmation Date* means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

~~1.34~~1.37 *Confirmation Hearing* means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

~~1.35~~1.38 *Confirmation* means confirmation of this Plan by the Bankruptcy Court under section 1129 of the Bankruptcy Code.

~~1.36~~1.39 *Confirmation Order* means the order of the Bankruptcy Court, in form and substance satisfactory to the Plan Proponents, confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

~~1.37~~1.40 *Convenience Claim* means any Allowed General Unsecured Claim against the Debtors in an amount that is greater than $0 but less than or equal to the Convenience Claim Threshold Amount; *provided*, that Holders of Allowed General Unsecured Claims (including, for the avoidance of doubt, 2022 Notes Claims and Old Notes Claims) exceeding the Convenience Claim Threshold Amount may irrevocably

elect on their Ballot to have their General Unsecured Claim reduced to the Convenience Class Threshold Amount and treated as Convenience Claims.

1.38<u>1.41</u> *Convenience Claim Cap* means US$2,500,000.00.

1.39<u>1.42</u> *Convenience Claim Threshold Amount* means US$1,000,000.00.

1.40<u>1.43</u> *Conversion Date* means September 25, 2023, the date the Involuntary Proceedings were converted into Chapter 11 Cases.

1.41<u>1.44</u> *Creditors' Committee* means the official committee of unsecured creditors of the Debtors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as may be reconstituted from time to time.

1.42<u>1.45</u> *Cure Amount* means all costs required of the Debtors to cure any and all monetary defaults, including pecuniary losses, under an Assumed Contract pursuant to section 365 of the Bankruptcy Code, which shall be set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases or such other notice pursuant to the Disclosure Statement Order.

1.43<u>1.46</u> *Debtors* means, collectively, Eletson Holdings, Eletson Finance, and Eletson MI.

1.44<u>1.47</u> *Definitive Documents* means, collectively, the (a) Plan (including the Plan Supplement and the documents contained therein); (b) the Disclosure Statement (including all exhibits and schedules thereto); (c) New Corporate Governance Documents; (d) the Rights Offering Procedures; (e) Backstop Agreement (including all schedules and exhibits thereto); (f) the Shareholders Agreement; (g) the Confirmation Order, and (h) all other documents (including related motions, orders, agreements, instruments, schedules or exhibits) that are otherwise necessary to implement the Plan, which, in each case, shall be reasonably acceptable to the Plan Proponents and the Creditors' Committee.

1.45<u>1.48</u> *DIP Agent* means the administrative agent under the DIP Credit Agreement (if any) and any successor and permitted assign.

1.46<u>1.49</u> *DIP Claim* means any Claim (if any) in respect of the obligations of the Debtors pursuant to the DIP Documents, including all interest, fees, and other expenses owing under the DIP Documents and in accordance therewith, held by, or otherwise owing to, any or all of the DIP Agent and the DIP Lenders.

1.47<u>1.50</u> *DIP Credit Agreement* means the credit agreement (if any) governing the terms and conditions of the DIP Facility approved pursuant to the DIP Order by the Bankruptcy Court.

1.48<u>1.51</u> *DIP Documents* means the DIP Credit Agreement and related documents (if any).

6

1.491.52 *DIP Facility* means postpetition debtor in possession financing facility of the Debtors (if any) approved pursuant to the DIP Order by the Bankruptcy Court.

1.501.53 *DIP Lenders* means the lenders under the DIP Credit Agreement (if any) and any successors and permitted assigns.

1.511.54 *DIP Order* means, as applicable, any interim or final order(s) (if any) entered by the Bankruptcy Court approving any DIP Facility and authorizing entry into the DIP Documents.

1.521.55 *Disallowed* means all or such part of a Claim (a) that is disallowed under this Plan, by a Final Order of the Bankruptcy Court or other court of competent jurisdiction, or pursuant to a settlement or stipulation pursuant to the authority of the Debtors, with the prior written consent of the Plan Proponents, or Reorganized Holdings; (b) is listed on the Schedules as zero or as contingent, disputed or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or otherwise deemed timely filed under applicable law or the Plan; (c) is not listed on the Schedules and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or otherwise deemed timely filed under applicable law or the Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

1.531.56 *Disbursing Agent* means (a) Reorganized Holdings or (b) such other entity designated by the Plan Proponents prior to the Effective Date or Reorganized Holdings after the Effective Date, in its capacity as a disbursing agent under Section 6.5 of the Plan.

1.541.57 *Disclosure Statement* means the disclosure statement (including all exhibits and schedules thereto) relating to this Plan, as amended, modified, or supplemented from time to time, and distributed contemporaneously herewith.

1.551.58 *Disclosure Statement Order* means one or more orders of the Bankruptcy Court, in form and substance satisfactory to the Plan Proponents, approving the Disclosure Statement as providing "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code and establishing certain dates, deadlines, and procedures related to Confirmation of this Plan.

1.561.59 *Disputed Claim* means (a) any Claim as to which the Debtors, Reorganized Holdings, or other party in interest have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtors, Reorganized Holdings, or other party in interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order; (b) any Claim scheduled by the Debtors as contingent, unliquidated, or disputed; (c) any Claim which amends a claim scheduled by the

7

Debtors as contingent, unliquidated, or disputed; or (d) any Claim prior to it having become an Allowed Claim.

1.57 1.60 ***Distribution Date*** means a date or dates, as determined by the Disbursing Agent in accordance with the terms of this Plan, on which the Disbursing Agent makes a distribution to Holders of Allowed Claims.

1.58 1.61 ***Distribution Record Date*** means the date for determining which Holders of Claims are eligible to receive distributions under this Plan, which date shall be the Confirmation Date or such other date as designated in a Final Order of the Bankruptcy Court.

1.59 1.62 ***Effective Date*** means the date that is a Business Day, on which (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX of the Plan have become satisfied or waived in accordance with the Plan; and (c) the Plan is declared effective. Without limiting the foregoing, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

1.60 1.63 ***EIP*** means the employee incentive plan established by the New Board after the Effective Date, which shall provide for equity-based compensation in an amount not to exceed 5% of the Reorganized Equity, to eligible employees of Reorganized Holding's direct and indirect subsidiaries that are not Eletson Insiders.

1.61 1.64 ***Eletson Finance*** means Eletson Finance (US) LLC.

1.62 1.65 ***Eletson Gas Transfer*** means any purported transfer of preferred shares in Eletson Gas LLC.

1.63 1.66 ***Eletson Holdings*** means Eletson Holdings Inc.

1.64 1.67 ***Eletson Insiders*** means, collectively, all Persons and Entities that are "insiders" (as defined in section 101(31) of the Bankruptcy Code) of the Debtors or their Affiliates.

1.65 1.68 ***Eletson Insider Claim*** means a Claim held by an Eletson Insider.

1.66 1.69 ***Eletson MI*** means Agathonissos Finance, LLC.

1.67 1.70 ***Entity*** means "entity" as defined in section 101(15) of the Bankruptcy Code.

1.68 1.71 ***Estate(s)*** means, individually, the estate of any of the Debtors and, collectively, the estates of all of the Debtors created under section 541 of the Bankruptcy Code.

1.69 1.72 ***Exchange Offer*** means the transaction that occurred on May 25, 2018 wherein Old Notes were exchanged for 2022 Notes. For the avoidance of doubt, Old Notes that were not exchanged in the Exchange Offer are "Old Notes."

1.70 1.73 *Exculpated Parties* means, and in each case solely in its capacity as such, (a) the Plan Proponents, (b) the Creditors' Committee and all members thereto, and (c) with respect to each of the foregoing Entities and Persons in the foregoing clauses (a) through (b), each of their Related Parties, solely to the extent such Related Parties are fiduciaries of the Estates or otherwise to the fullest extent provided for pursuant to section 1125(e) of the Bankruptcy Code.

1.71 1.74 *Executory Contract* means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.72 1.75 *Exhibit* means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement, as amended, modified, or supplemented from time to time.

1.73 1.76 *Existing Equity Interests* means all existing equity Interests (other than Intercompany Interests), including without limitation, (a) any and all Parent Equity Interest, and (b) all common and preferred stock and all rights to purchase common and preferred stock in each Debtor.

1.74 1.77 *Final Order* means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request re-argument or further review or rehearing has expired and no appeal, petition for certiorari, or request for re-argument or further review or rehearing has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for re-argument, further review, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal, petition for certiorari, or request for re-argument, further review, or rehearing has been or can be taken or granted.

1.75 1.78 *General Bar Date* means December 18, 2023 at 4:00 p.m. (prevailing Eastern Time), the date by which each Holder of a Claim against any of the Debtors must file a Proof of Claim unless such Claim falls within one of the exceptions set forth in the Bar Date Order.

1.76 1.79 *General Unsecured Claim* means any Claim against any Debtor, but excluding any Administrative Claims, DIP Claims, Professional Fee Claims, U.S. Trustee Fees, Priority Tax Claims, Other Priority Claims, Convenience Claims, OCM Guaranty Claims, Subordinated Claims, or Intercompany Claims, as of the Petition Date that is neither secured by collateral nor entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court. For the avoidance of doubt, any General Unsecured Claims (including, for the avoidance of doubt, 2022 Notes Claims and Old Notes Claims) that exceed the Convenience Claim Threshold Amount is a "General Unsecured Claim," unless, pursuant to Section 3.3(d)(i) of the Plan, such Holder irrevocably elects to have its General Unsecured Claim treated as a Convenience Claim on its Ballot.

9

1.771.80 *General Unsecured Claimholder* means a Holder of an Allowed General Unsecured Claim.

1.781.81 *Governmental Unit* has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.791.82 *GUC Cash Pool* means Cash in the amount of (a) US$13,500,000.00 *plus*, (b) to the extent the aggregate amount of Professional Fee Claims and DIP Claims filed in the Chapter 11 Cases with the Bankruptcy Court (i) do not exceed US$24,200,000.00, $3,000,000.00 or (b) exceed US$24,200,000.00, but are less than US$27,200,000.00, the difference between (A) US$27,2000,000.00 and (B) the aggregate amount of Professional Fee Claims and DIP Claims filed in the Chapter 11 Cases with the Bankruptcy Court.  For the avoidance of doubt, distributions to Holders of Convenience Claims shall not be made from the GUC Cash Pool or GUC Cash Pool Account.

1.801.83 *GUC Cash Pool Account* means an escrow account (having terms reasonably acceptable to the Creditors' Committee) identified by the Plan Proponents and established on the Effective Date that shall be funded with the GUC Cash Pool, which the Disbursing Agent will administer for the benefit of Allowed General Unsecured Claims electing Cash, in accordance with the terms of the Plan and the Confirmation Order.

1.811.84 *Holder* means a holder of a Claim or Interest, as applicable.

1.821.85 *Impaired* means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.831.86 *Indenture Trustees* means, collectively, the 2022 Notes Trustee and the Old Notes Trustee.

1.841.87 *Intercompany Claim* means any and all Claims of a Debtor against another Debtor or non-Debtor Affiliate.

1.851.88 *Intercompany Interest* means an Interest in a Debtor held by another Debtor; *provided*, for the avoidance of doubt, Parent Equity Interests are not Intercompany Interests.

1.861.89 *Interest* means any equity security, including a limited liability company membership interest, as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors, together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

1.871.90 *Initial Backstop Party* means Pach Shemen or such affiliate or designee identified by Pach Shemen, as backstop to the Rights Offering pursuant to the Backstop Agreement.

10

1.88 1.91 *Involuntary Petitions* means the chapter 7 petitions filed by certain of the Petitioning Creditors against each of the Debtors.

1.89 1.92 *Involuntary Proceedings* means (a) when used with reference to a particular Debtor, the case under chapter 7 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court from the Petition Date through the Conversion Date and (b) when used with reference to all of the Debtors, the procedurally consolidated and jointly administered cases under chapter 7 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court from the Petition Date through the Conversion Date.

1.90 1.93 *IRS* means the Internal Revenue Service.

1.91 1.94 *Levona Claims* has the meaning set forth in Section 5.10(b) of the Plan.

1.92 1.95 *Levona Bankruptcy Claims* means the Claims asserted by Levona Holdings Ltd. against Eletson Holdings in its proof of claim No. 21-1 filed in the Chapter 11 Cases (as amended, amended and restated, modified, or supplemented).

1.93 1.96 *Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.94 1.97 *Mr. Goldstein* means, together, Gene B. Goldstein and Gene B. Goldstein, In His Capacity as Trustee of the Gene B. Goldstein and Francine T. Goldstein Family Trust.

1.95 1.98 *New Board* means the initial board of directors of Reorganized Holdings.

1.96 1.99 *New Corporate Governance Documents* means, (a) Amended By-Laws, (b) Amended Certificate of Incorporation, (c) Shareholders Agreement, and (d) any other applicable material governance and/or organizational documents of Reorganized Holdings.

1.97 1.100 *OCM Guaranty Claim* means any Claim arising from or related to the guarantees executed by Eletson Holdings in favor of the obligations of each of:  Fourni Special Maritime Enterprises; Kastos Special Maritime Enterprises; Kimolos II Special Maritime Enterprise; Kinaros Special Maritime Enterprise; OCM Maritime Rhine LLC; OCM Maritime Yukon LLC; OCM Maritime Autumn LLC; and OCM Maritime Thames LLC.

1.98 1.101 *Old Notes* means those 9.625% First Preferred Ship Mortgage Notes Due 2022, issued by Eletson Holdings and Eletson Finance pursuant to the Old Notes Indenture, which were not exchanged into 2022 Notes pursuant to the Exchange Offer.

1.99 1.102 *Old Noteholder* means a Holder of an Old Note.

11

1.100~~1.103~~    *Old Notes Claim* means a Claim arising under or in connection with the Old Notes Documents, including claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges arising or related thereto.

1.101~~1.104~~    *Old Notes Documents* means the Old Notes Indenture and all related agreements and documentation executed by any of the Debtors (as amended, amended and restated, modified, or supplemented from time to time).

1.102~~1.105~~    *Old Notes Indenture* means that certain Indenture, dated as of December 19, 2013, among Eletson Holdings and Eletson Finance, as co-issuers, the guarantor parties thereto, and the Old Notes Trustee, as trustee and collateral trustee (as amended, amended and restated, modified, or supplemented from time to time).

1.103~~1.106~~    *Old Notes Trustee* means Deutsche Bank Trust Company Americas, in its capacity as trustee and collateral trustee under the Old Notes Indenture and Old Notes Documents, including any successor and permitted assigns thereto.

1.104~~1.107~~    *Other Priority Claim* means any Claim against any Debtor accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim, DIP Claim, or Priority Tax Claim.

1.105~~1.108~~    *Pach Shemen* means Pach Shemen LLC.

1.106~~1.109~~    *Parent Equity Interest* means any Interest in Eletson Holdings.

1.107~~1.110~~    *Person* means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, committee, or other entity.

1.108~~1.111~~    *Petition Date* means March 7, 2023, the date on which the Involuntary Petitions were filed against each of the Debtors.

1.109~~1.112~~    *Petitioning Creditors* means, collectively, Pach Shemen, VR Global Partners, L.P., Alpine Partners (BVI), L.P., Gene B. Goldstein, Gene B. Goldstein, In His Capacity as Trustee of the Gene B. Goldstein and Francine T. Goldstein Family Trust, Mark Millet, In His Capacity as Trustee of the Mark E. Millet Living Trust, Mark Millet, In His Capacity as Trustee of the Millet 2016 Irrevocable Trust, Robert Latter, Tracy Lee Gustafson, Jason Chamness, and Ron Pike.

1.110~~1.113~~    *Plan* means this chapter 11 plan of reorganization, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be altered, amended, supplemented, or modified from time to time.

1.111~~1.114~~    *Plan Proponents* means the Petitioning Creditors other than Mr. Goldstein.

1.112~~1.115~~    *Plan Proponents Fees and Expenses* means all of the Plan Proponents' reasonable and documented professional fees and out-of-pocket expenses

incurred in connection with the Chapter 11 Cases, to the extent not previously paid by the Debtors or any third party.

1.1131.116    ***Plan Supplement*** means any supplement to this Plan, and the compilation of documents, forms of documents, and Exhibits to this Plan, as amended, modified, or supplemented from time to time, initial drafts of which shall be filed by the Plan Proponents, which shall include, (a) the Amended By-Laws, (b) the Amended Certificate of Incorporation, (c) the Schedule of Assumed Executory Contracts and Unexpired Leases, (d) the Schedule of Retained Causes of Action, and (e) the Shareholders Agreement, and, (f) to the extent known at the time of filing, identification of the New Board.

1.1141.117    ***Priority Tax Claim*** means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.1151.118    ***Pro Rata Share*** means the proportion that an Allowed Claim or Interest, as applicable, in a particular Class or Classes bears to the aggregate amount of Allowed Claims within such Class or Classes.

1.1161.119    ***Professional*** means any Entity employed in these Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, 363 of the Bankruptcy Code or otherwise.

1.1171.120    ***Professional Fee Claim*** means a Claim by a Professional seeking an award by the Bankruptcy Court for compensation for services rendered (including transaction fees and success fees) or reimbursement of expenses incurred after the Petition Date and prior to and including the Effective Date, under sections 328, 330, 331 or 503(b)(2) of the Bankruptcy Code, as applicable.

1.1181.121    ***Professional Fee Claims Bar Date*** means the deadline for filing all applications for Professional Fee Claims on a final basis, which shall be thirty (30) days after the Effective Date.

1.1191.122    ***Proof of Claim*** means a written proof of Claim filed against any Debtor in the Chapter 11 Cases.

1.1201.123    ***Reinstated*** means, with respect to any Claim or Interest, that such Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

1.1211.124    ***Related Parties*** means, subject to any exclusions expressly set forth in the Plan, (a) any Entity or Person; (b) such Entity's or Person's predecessors, predecessors in interest, successors and assigns, parents, owners, subsidiaries, affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, sub-advisors, or managers; (c) with respect to each of the foregoing in clauses (a) and (b), such Entity's or Person's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly, and any fund managers,

fiduciaries, or other agents with any involvement related to the Debtors), members, partners, employees, agents, sub-agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, managers, investment managers, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's or Person's respective heirs, executors, estates, servants, and nominees.

1.1221.125    ***Reorganized Equity*** means common shares in Reorganized Holdings issued and outstanding on the Effective Date.

1.1231.126    ***Reorganized Holdings*** means reorganized Eletson Holdings from and after the Effective Date.

1.1241.127    ***Requisite Backstop Parties*** means, collectively, (a) the Initial Backstop Party and (b) as of any date of determination, Backstop Parties holding more than 50% of the aggregate commitments to backstop, on a fully committed basis, the Rights Offering.

1.1251.128    ***Retained Causes of Action*** means certain Causes of Action of the Debtors or the Estates that are not released or waived pursuant to this Plan or a Final Order of the Bankruptcy Court.  For the avoidance of doubt, the Retained Causes of Action shall include Avoidance and Other Actions and all claims and Causes of Action related to or arising under the Eletson Gas Transfer.

1.1261.129    ***Rights Offering*** means that certain up to US$53,500,000.00 equity rights offering pursuant to which each General Unsecured Claimholder is entitled to receive its share of Rights Offering Subscription Rights to acquire up to 75% of the Reorganized Equity (subject to dilution of account of the Backstop Premium and the EIP), at a price that represents an implied 14.0% discount to the mid-point of the plan equity value of up to US$62,058,088.00, in accordance with the Rights Offering Procedures, which shall be backstopped by the Backstop Parties.

1.1271.130    ***Rights Offering Procedures*** means the procedures, in form and substance satisfactory to the Plan Proponents, for the implementation of the Rights Offering, which shall be approved by the Bankruptcy Court.

1.1281.131    ***Rights Offering Procedures Order*** means one or more orders of the Bankruptcy Court, in form and substance satisfactory to the Plan Proponents, approving, among other things, the Rights Offering Procedures, which order(s) may be the Backstop Order, the Disclosure Statement Order, and/or the Confirmation Order.

1.1291.132    ***Rights Offering Subscription Rights*** means the subscription rights to purchase the Reorganized Equity offered to General Unsecured Claimholders pursuant to the Rights Offering in accordance with the Rights Offering Procedures.

1.1301.133    ***Schedule of Assumed Executory Contracts and Unexpired Leases*** means any schedule (including any amendments or modifications thereto) of certain Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Debtors, with the prior written consent of the Plan Proponents,

14

pursuant to this Plan, as set forth in the Plan Supplement, as may be amended by the Plan Proponents, from time to time prior to the Confirmation Date.

1.131<u>1.134</u>      ***Schedule of Retained Causes of Action*** means the schedule identifying the Retained Causes of Action, which shall be included in the Plan Supplement.

1.132<u>1.135</u>      ***Schedules*** means, collectively, the schedules of assets and liabilities and statements of financial affairs filed by the Debtors [Docket Nos. 216-221, 340] pursuant to section 521 of the Bankruptcy Code and the Bankruptcy Rules, as the same may be amended, supplemented, or modified from time to time.

1.133<u>1.136</u>      ***SEC*** means the United States Securities and Exchange Commission.

1.134<u>1.137</u>      ***Section 510(b) Claim*** means any Claim against any Debtor arising from rescission of a purchase or sale of a security of any Debtor or an Affiliate of any Debtor, for damages arising from the purchase or sale of such security, or for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such a Claim.

1.135<u>1.138</u>      ***Secured Claim*** means a Claim against a Debtor (other than Administrative Claims, DIP Claims, Priority Tax Claims, Other Priority Claims, OCM Guaranty Claims, Subordinated Claims, or Intercompany Claims), that is secured by a Lien on property in which a Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) or 1129(b) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

1.136<u>1.139</u>      ***Securities Act*** means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended.

1.137<u>1.140</u>      ***Shareholders Agreement*** means, any shareholder agreement, equity holders agreement, operating agreement, or other similar agreement for Reorganized Holdings to which holders of the Reorganized Equity shall become party on the Effective Date governing, among other things, the relative rights of Holders of the Reorganized Equity, in form and substance satisfactory to the Plan Proponents, the form of which shall be included in the Plan Supplement.

1.138<u>1.141</u>      ***Subordinated Claim*** means, collectively, Section 510(b) Claims and Eletson Insider Claims.

1.139<u>1.142</u>      ***Subsequent Backstop Parties*** means any General Unsecured Claimholder that joins the Backstop Agreement in accordance with the Backstop Order.

1.140~~1.143~~        ***Unexpired Lease*** means a lease to which one of more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.141~~1.144~~        ***Unimpaired*** means a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.142~~1.145~~        ***U.S. Trustee*** means the Office of the United States Trustee for the Southern District of New York.

1.143~~1.146~~        ***U.S. Trustee Fees*** means all fees, interest, and charges assessed against the Estates by the U.S. Trustee pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717.

(b)        *Rules of Interpretation*.  For purposes of this Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that Person's or Entity's successors and assigns; (e) all references in this Plan to Sections and Articles are references to Sections and Articles of or to this Plan; (f) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) "including" and "include" means "including without limitation" and "include without limitation", respectively; and (k) with reference to any distribution under this Plan, "on" a date means on or as soon as reasonably practicable after that date.

(c)        *Computation of Time*.  In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006(a) shall apply.

(d)        *Exhibits*.  All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court.  Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to the Plan Proponents.  Upon their filing, the Exhibits may be inspected (a) in the office of the clerk of the Bankruptcy Court or its designee during normal business hours; or (b) on the Bankruptcy Court's website at

http://nysb.uscourts.gov (registration required).  The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

(e)    *Controlling Document*.  In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects.  In the event of an inconsistency between this Plan and any document included in the Plan Supplement, the terms of the document in the Plan Supplement shall control (unless stated otherwise in such document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and this Plan, the Confirmation Order shall control.

## ARTICLE II

## ADMINISTRATIVE EXPENSES AND OTHER UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including, Professional Fee Claims and U.S. Trustee Fees), DIP Claims, and Priority Tax Claims are not classified and are not entitled to vote on this Plan.

2.1    *Administrative Claims*.

(a)    Except with respect to Professional Fee Claims, unless the Holder of an Allowed Administrative Claim agrees to less favorable treatment of such Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which an Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date on which an Allowed Administrative Claim becomes payable under any agreement relating thereto, each Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim.

(b)    To the extent not already asserted in the Chapter 11 Cases pursuant to a timely filed Proof of Claim in accordance with the Bar Date Order, all requests for allowance and payment of Administrative Claims (other than (i) Professional Fee Claims (such claims are subject to the Professional Fee Claims Bar Date), (ii) Claims asserted under section 503(b)(9) of the Bankruptcy Code (such Claims are subject to the General Bar Date), (iii) U.S. Trustee Fees, (vi) Administrative Claims that have been Allowed on or before the Effective Date, and (v) Administrative Claims that were already asserted in the Chapter 11 Cases pursuant to a timely Proof of Claim in accordance with the Bar Date Order), must be filed and served on the Debtors and the Plan Proponents, or, after the Effective Date, Reorganized Holdings, and their counsel, so as to actually be received on or before the Administrative Claims Bar Date.  The notice of the occurrence of the Effective Date shall set forth the Administrative Claims Bar Date and shall constitute notice thereof.  For the avoidance of doubt, Holders of Administrative Claims based on liabilities incurred by the Debtors in the ordinary course of business after the Petition Date must file and serve a request for payment of such Administrative Claim by the applicable Administrative Claims Bar Date.

17

(c)     After notice and a hearing, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, a Final Order.

(d)     Holders of Administrative Claims (other than (i) Professional Fee Claims, (ii) Claims asserted under section 503(b)(9) of the Bankruptcy Code), (iii) U.S. Trustee Fees, (iv) Administrative Claims that have been Allowed on or before the Effective Date, and (v) Administrative Claims that were already asserted in the Chapter 11 Cases pursuant to a timely filed Proof of Claim in accordance with the Bar Date Order), that do not file and serve a request for allowance and payment of an Administrative Claim by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtors, Reorganized Holdings, the Estates, or their assets and properties, and any Administrative Claims shall be deemed Disallowed as of the Effective Date without the need for any notices, objection, or other action from the Debtors or Reorganized Holdings, as applicable, or any action or approval of the Bankruptcy Court.

2.2    *DIP Claims.*

(a)     All DIP Claims (if any) shall be deemed Allowed as of the Effective Date in an amount equal to the aggregate amount of the DIP Facility obligations approved by the Bankruptcy Court, including, (i) the principal amount outstanding under the DIP Facility on such date, (ii) all interest accrued and unpaid thereon through and including the date of payment, and (iii) all accrued fees, expenses, and indemnification obligations (if any) payable under the DIP Documents.

(b)     On the Effective Date or as soon as reasonably practicable thereafter, except to the extent a Holder of an Allowed DIP Claim agrees to a less favorable treatment of such Claim, each Holder of an Allowed DIP Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed DIP Claim, Cash equal to the unpaid portion of such Allowed DIP Claim.

(c)     Contemporaneously with the foregoing treatment, the DIP Facility and DIP Documents shall be deemed terminated without further action by the DIP Agent or the DIP Lenders.  The DIP Agent and DIP Lenders shall take all actions to effectuate and confirm such termination as reasonably requested by the Plan Proponents or Reorganized Holdings, as applicable.

2.3    *Priority Tax Claims*.  Unless the Holder of an Allowed Priority Tax Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Priority Tax Claims, either (a) payment in full in Cash, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, and (iii) the date such Allowed Priority Tax Claim becomes payable under applicable non-bankruptcy law, (b) upon such other terms as agreed between the Plan Proponents and each Holder of such Allowed Priority Tax Claim, or (c) over a

18

period ending not later than five (5) years after the Petition Date consistent with section 1129(a)(9)(C) of the Bankruptcy Code.

2.4    *Professional Fee Claims*.

(a)    All applications for allowance and payment of Professional Fee Claims by Professionals for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed on or before the Professional Fee Claims Bar Date.  If an application for a Professional Fee Claim is not filed by the Professional Fee Claims Bar Date, such Professional Fee Claim shall be deemed waived, and the Holder of such Claim shall be forever barred from receiving payment on account thereof.  The notice of the occurrence of the Effective Date shall set forth the Professional Fee Claims Bar Date and shall constitute notice thereof. Objections to any Professional Fee Claims must be filed and served on Reorganized Holdings, the Plan Proponents, and the requesting Professional, no later than twenty-one (21) days after service of the applicable final application for allowance and payment of Professional Fee Claims.

(b)    The Professionals shall estimate their Professional Fee Claims prior to and as of the Confirmation Date, along with an estimate of fees and expenses to be incurred through the Effective Date, and shall deliver such estimate to the Plan Proponents and its counsel no later than seven (7) calendar days prior to the anticipated Effective Date; *provided*, that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional and should not serve as a cap.

(c)    Unless otherwise agreed to (i) by the Plan Proponents and the Professional prior to the Effective Date or (ii) by Reorganized Holdings and the Professional after the Effective Date, the amount of Professional Fee Claims owing to such Professional that are Allowed by Final Order shall be paid in full in Cash by Reorganized Holdings as soon as reasonably practicable after its Professional Fee Claims are Allowed by order of the Bankruptcy Court, (x) *first*, by application of any retainer monies held by such Professional, and (y) *second*, once such retainer balance is exhausted, Reorganized Holdings shall pay such Professional the remaining balance of its Allowed Professional Fee Claim in Cash.

2.5    *Post-Effective Date Fees and Expenses.*

(a)    On the Effective Date, the retention, including all rights and duties arising from, or related to, the Chapter 11 Cases of each of the Debtors' retained professionals shall terminate; *provided*, *however*, that the Debtors' retained professionals may file fee applications in accordance with the Plan and Confirmation Order by the Professional Fee Claims Bar Date.

(b)    Except as otherwise specifically provided in this Plan, from and after the Effective Date, Reorganized Holdings shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to these Chapter 11 Cases that are incurred after the Effective Date.

19

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention of compensation for services rendered after such date shall terminate, and Reorganized Holdings may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court; *provided*, *that*, a Professional must enter into a new engagement agreement with Reorganized Holdings in order to be compensated for services rendered after the Effective Date.

2.6     ***Plan Proponents and Backstop Fees and Expenses.***  The Plan Proponents Fees and Expenses and the Backstop Fees and Expenses shall each be paid in full, in Cash, on the Effective Date, to the extent not previously paid by the Debtors or any third party.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1     ***Classification in General***.  Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

3.2     ***Summary of Classification***.  The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by this Plan, (b) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to accept or reject this Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Section 3.2.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Other Priority Claims | Unimpaired | No (Deemed to Accept) |
| Class 2 | Secured Claims | Unimpaired | No (Deemed to Accept) |
| Class 3 | General Unsecured Claims | Impaired | Yes |
| Class 4 | Convenience Claims | Impaired | Yes |
| Class 5 | OCM Guaranty Claims | Unimpaired | No (Deemed to Accept) |

20

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 6 | Subordinated Claims | Impaired | No (Deemed to Reject) |
| Class 7 | Intercompany Claims | Impaired/Unimpaired | No (Deemed to Accept/Reject) |
| Class 8 | Intercompany Interests | Impaired/Unimpaired | No (Deemed to Accept/Reject) |
| Class 9 | Existing Equity Interests | Impaired | No (Deemed to Reject) |

3.3     *Treatment of Classes*.

(a)     *Class 1 – Other Priority Claims*

(i)     *Claims in Class*:  Class 1 consists of all Other Priority Claims against the Debtors.

(ii)     *Treatment*:  Unless the Holder of an Allowed Other Priority Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Other Priority Claim, at the option of the Plan Proponents or Reorganized Holdings, as applicable, Cash in an amount equal to the Allowed amount of such Allowed Other Priority Claim as soon as reasonably practicable after the latest of (A) the Effective Date, (B) the date that such Claim becomes an Allowed Other Priority Claim, and (C) a date agreed to by the Plan Proponents or Reorganized Holdings, as applicable, and the Holder of such Allowed Other Priority Claim.

(iii)     *Voting*:  Claims in Class 1 are Unimpaired, and Holders of Allowed Other Priority Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Other Priority Claims are not entitled to vote to accept or reject this Plan.

(b)     *Class 2 – Secured Claims*

(i)     *Claims in Class*:  Class 2 consists of Secured Claims.

(ii)     *Treatment*:  Unless the Holder of an Allowed Secured Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed Secured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Secured Claim, at the option of the Plan Proponents or Reorganized Holdings, as applicable, (A) Cash in an amount equal to the Allowed amount of such Allowed Secured Claim as soon as reasonably practicable after the latest of (1) the Effective Date, (2) the date that such Claim becomes an Allowed Secured Claim, and (3) a date agreed to by the Plan Proponents or Reorganized Holdings, as applicable, and the Holder of such Secured Claim; (B) reinstatement of such Allowed Secured Claim; (C) the collateral securing

21

such Holder's Allowed Secured Claim, with any deficiency to result in an Allowed General Unsecured Claim; or (D) such other treatment rendering such Allowed Secured Claim Unimpaired.

(iii)    *Voting*:  Claims in Class 2 are Unimpaired, and Holders of Allowed Secured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Secured Claims are not entitled to vote to accept or reject this Plan.

(c)    *Class 3 – General Unsecured Claims*

(i)    *Claims in Class:*  Class 3 consists of all General Unsecured Claims (including, for the avoidance of doubt, 2022 Notes Claims and Old Notes Claims that exceed the Convenience Claim Threshold Amount), unless, pursuant to Section 3.3(d)(i) of the Plan, such Holder irrevocably elects to have its General Unsecured Claim treated as a Convenience Claim on its Ballot.

(ii)    *Allowance*:  As of the Effective Date, (A) the 2022 Notes Claims shall be Allowed in the aggregate amount of not less than US$366,077,815.96 (plus all other amounts due or to become due to the 2022 Noteholders pursuant to the 2022 Notes Documents), and (B) the Old Notes shall be Allowed in the aggregate amount of not less than US$5,953,704.07 (plus all other amounts due or to become due to the Old Noteholders pursuant to the Old Notes Documents).  Notwithstanding any claim objections pending as of the Effective Date, neither the 2022 Notes Claims nor the Old Notes Claims shall be subject to avoidance, subordination, setoff, offset, deduction, recoupment, objection, challenge, recharacterization, surcharge under section 506(c) of the Bankruptcy Code, or any other claim or defense. Allowance of all other General Unsecured Claims shall be subject to the claims allowance procedures set forth in this Plan.

(iii)    *Treatment*: Unless the Holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed General Unsecured Claim shall receive on the Effective Date or as soon as reasonably practicable thereafter, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed General Unsecured Claim, the following (1) and (2):

(1) at such Holder's election, either

(A)    Equity Option: if such General Unsecured Claimholder makes a written election on a timely and properly delivered and completed Ballot or other writing satisfactory to the Plan Proponents, its Pro Rata Share of 25% of the Reorganized Equity (subject to dilution on account of the Backstop Premium and the EIP); or

(B)    Cash Option: its Pro Rata Share, among General Unsecured Claims, of the GUC Cash Pool; *provided*, for the avoidance of doubt, the Pro Rata Share

calculation in this subclause (B) shall be calculated based on the aggregate amount of all Allowed General Unsecured Claims whether or not Holders of such Claims receive the treatment in this subclause (B);

*provided*, if a General Unsecured Claimholder does not submit a Ballot or submits a Ballot but fails to affirmatively elect the treatment set forth in Section 3.3(c)(iii)(1)(A) of the Plan, such General Unsecured Claimholder shall be deemed to have elected the treatment specified in Section 3.3(c)(iii)(1)(B) of the Plan with respect to its Allowed General Unsecured Claim; and

(2) <u>Rights Offering</u>: its Pro Rata Share of the Rights Offering Subscription Rights (subject to dilution of account of the Backstop Premium and the EIP), to purchase the Reorganized Equity to be issued pursuant to the Rights Offering to the extent such General Unsecured Claimholder elects to exercise its Rights Offering Subscription Rights.

(iv)    *Voting:* Claims in Class 3 are Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject this Plan.

(d)    *Class 4 – Convenience Claims*

(i)    *Claims in Class:*  Class 4 consists of all Convenience Claims; *provided*, Holders of Allowed General Unsecured Claims exceeding the Convenience Claim Threshold Amount may irrevocably elect to have their General Unsecured Claim reduced to the Convenience Claim Threshold Amount and treated as a Convenience Claim.

(ii)    *Treatment:*  On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Convenience Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed Convenience Claim shall receive, in full and final satisfaction, compromise, settlement, release and discharge of and in exchange for such Allowed Convenience Claim, Cash in an amount equal to 15% of the face amount of such Holder's Allowed Convenience Claim; *provided*, the aggregate distributions to Holders of Convenience Claims shall not exceed the Convenience Claim Cap; *provided*, *further*, that in the event the aggregate distributions to Holders of Convenience Claims exceeds the Convenience Claim Cap, Holders of such Claims shall receive their Pro Rata Share of the Convenience Claim Cap.

(iii)    *Voting:* Claims in Class 4 are Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of the Allowed Convenience Claim is entitled to vote to accept or reject this Plan.

(e)    *Class 5 – OCM Guaranty Claims*

(i)    *Claims in Class*: Class 5 consists of OCM Guaranty Claims.

(ii)    *Treatment*: On the Effective Date, all OCM Guaranty Claims shall be Reinstated and such Holder's claims shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(iii)    *Voting*: Claims in Class 5 are Unimpaired. Each Holder of an OCM Guaranty Claim is conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed OCM Guaranty Claims are not entitled to vote to accept or reject this Plan.

(f)    *Class 6 – Subordinated Claims*

(i)    *Claims in Class*: Class 6 consists of Subordinated Claims.

(ii)    *Treatment*: On the Effective Date, each Allowed Subordinated Claim shall be cancelled, discharged, and released, without any distribution to Holders.

(iii)    *Voting*: Claims in Class 6 are Impaired, and Holders of Allowed Subordinated Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Subordinated Claims are not entitled to vote to accept or reject this Plan.

(g)    *Class 7 – Intercompany Claims*

(i)    *Claims in Class*: Class 7 consists of Intercompany Claims.

(ii)    *Treatment*: On the Effective Date, each Allowed Intercompany Claim shall either be Reinstated or discharged, cancelled, released, and extinguished, without any distributions to Holders, as determined by the Plan Proponents or Reorganized Holdings, as applicable.

(iii)    *Voting*: Claims in Class 7 are Unimpaired or Impaired. Each Holder of an Intercompany Claim is conclusively deemed to have accepted or rejected this Plan pursuant to section 1126(f) or 1126(g) of the Bankruptcy Code, as applicable. Therefore, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject this Plan.

(h)    *Class 8 – Intercompany Interests*

(i)    *Interests in Class*: Class 8 consists of Intercompany Interests.

(ii) *Treatment*: On the Effective Date, each Allowed Intercompany Interest shall be either be Reinstated or discharged, cancelled, released, and extinguished, without any distributions to Holders, as determined by the Plan Proponents or Reorganized Holdings, as applicable.

(iii) *Voting*: Interests in Class 8 are Impaired. Each Holder of an Existing Equity Interest is conclusively deemed to have accepted or rejected this Plan pursuant to section 1126(f) or 1126(g) of the Bankruptcy Code, as applicable. Therefore, Holders of Allowed Intercompany Interests are not entitled to vote to accept or reject this Plan.

(i) *Class 9 – Existing Equity Interests*

(i) *Interests in Class*: Class 9 consists of Existing Equity Interests.

(ii) *Treatment*: On the Effective Date, each Allowed Existing Equity Interest shall be discharged, cancelled, released, and extinguished, without any distributions to Holders.

(iii) *Voting*: Interests in Class 9 are Impaired. Each Holder of an Existing Equity Interest is conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Existing Equity Interests are not entitled to vote to accept or reject this Plan.

3.4 ***Alternative Treatment***. Notwithstanding any provision herein to the contrary, any Holder of an Allowed Claim may receive, instead of the distribution or treatment to which it is entitled hereunder, any other distribution or treatment to which it and the Plan Proponents or Reorganized Holdings, as applicable, may agree in writing; *provided, however,* that under no circumstances may the Plan Proponents or Reorganized Holdings, as applicable, agree to provide any other distribution or treatment to any Holder of an Allowed Claim that would adversely impact the distribution or treatment provided to any other Holder of an Allowed Claim.

3.5 ***Special Provision Regarding Unimpaired Claims***. Except as otherwise provided in this Plan, nothing shall affect the Debtors' or Reorganized Holdings' rights and defenses, legal and equitable, with respect to any Unimpaired Claims, including but not limited to all rights with respect to legal and equitable defenses to setoffs against or recoupments of Unimpaired Claims.

3.6 ***Subordination of Claims.*** Except as expressly provided herein, the Allowance, classification, and treatment of all Allowed Claims and Interests take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Plan Proponents and Reorganized Holdings reserve the right to classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

25

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THIS PLAN

4.1     *Acceptance by Class Entitled to Vote*.  Classes 3 and 4 are the Classes of Claims of the Debtors that are entitled to vote to accept or reject this Plan. Classes 3 and 4 shall have accepted this Plan if (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in each Class have voted to accept this Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in each Class have voted to accept this Plan, not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code.  If there are no votes cast in a particular Class that is entitled to vote on this Plan, then this Plan shall be deemed accepted by such Class.

4.2     *Presumed Acceptance of this Plan*.  Classes 1, 2, 5, and depending on their respective treatment, Classes 7 and 8 are Unimpaired.  Therefore, such Classes are deemed to have accepted this Plan by operation of law and are not entitled to vote to accept or reject this Plan.

4.3     *Presumed Rejection of this Plan*.  Classes 6 and 9, and depending on their respective treatment, Classes 7 and 8 are fully Impaired and will receive no recovery under this Plan.  Therefore, such Classes are deemed to have rejected this Plan by operation of law and are not entitled to vote to accept or reject this Plan.

4.4     *Elimination of Classes*.  To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

4.5     *Cramdown*.  The Plan Proponents request Confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Plan Proponents reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

4.6     *Controversy Concerning Impairment*.  If a controversy arises as to whether any Claims or Interests or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THIS PLAN

5.1     *Substantive Consolidation*.  The Plan is being proposed by the Plan Proponents as a joint chapter 11 plan of the Debtors.  Solely for purposes of voting on, and receiving distributions under the Plan, the Estates of the Debtors are deemed to be

substantively consolidated, meaning that (a) all assets and liabilities of the Debtors are deemed to be assets and liabilities, respectively, of a single Estate; (b) all guarantees by one Debtor of the obligations of another Debtor are deemed eliminated; (c) any joint and several liability of either of the Debtors is deemed to be one Claim against a single Estate; and (d) Proofs of Claim filed against one or more Debtors are deemed to be one Claim against a single Estate. This deemed consolidation will not affect: (i) the legal and corporate structures of the Debtors or Reorganized Holdings; (ii) the rights of the Holders of Allowed Claims to receive distributions from any insurance policies or proceeds of such policies; (iii) any Liens granted or arising any time prior to the Effective Date or the priority of those Liens; or (iv) the rights of Reorganized Holdings to contest alleged setoff or recoupment rights on the grounds of lack of mutuality under section 553 of the Bankruptcy Code and other applicable law. As a result, Claims filed against the Debtors seeking recovery of the same debt shall only be entitled to receive a single distribution from the consolidated Estates in accordance with the Plan to the extent such Claim is an Allowed Claim. This deemed substantive consolidation shall have no effect on any claims or defenses of any Person or Entity or on any right of setoff, offset or recoupment rights or any Retained Causes of Action. Voting will be tabulated on a substantively consolidated basis. The entry of the Confirmation Order shall constitute approval by the Bankruptcy Court of the substantive consolidation of the Debtors and their respective Estates solely for purposes of voting on, and receiving distributions under the Plan. Notwithstanding such substantive consolidation, however, U.S. Trustee Fees shall be due and payable by each individual Debtor through the Effective Date.

5.2     *Restructuring Transactions*.

(a)     The transactions contemplated in this Plan and the consideration received in connection therewith, shall be structured in a manner that (i) minimizes any current taxes payable as a result of the consummation of such transactions and (ii) optimizes the tax efficiency (including, but not limited to, by way of the preservation or enhancement of favorable tax attributes) of such transactions to the Debtors, Reorganized Holdings, and the holders of equity or debt in Reorganized Holdings going forward, in each case as determined by the Plan Proponents.

(b)     The Debtors, with the prior written consent of the Plan Proponents, or Reorganized Holdings, as applicable, and the Plan Proponents, may, in their discretion, take such action as permitted by applicable law, including those Reorganized Holdings determine are reasonable, necessary or appropriate to effectuate the Plan, including: (i) the execution and delivery of any appropriate agreements or other documents of formation, merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion,

27

amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; (iv) such other transactions that are required to effectuate this Plan; (v) all transactions necessary to provide for the purchase of some or all of the assets of, or Interests in, any of the Debtors which purchase may be structured as a taxable transaction for United States federal income tax purposes; (vi) all actions that the applicable Entities determine to be necessary to obtain the requisite regulatory approvals to effectuate this Plan; (vii) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases; (viii) the consummation of the transactions contemplated by the Rights Offering and Backstop Agreement and the execution thereof; (ix) the issuance of the Reorganized Equity; and (x) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with this Plan, and such action and documents are deemed to require no further action or approval (other than any requisite filings required under the applicable state, provincial and federal or foreign law or such consent or consultation rights as set forth in the Plan).

(c)     Except as otherwise provided in this Plan, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all property in each Estate, including all Retained Causes of Action, and any property acquired by any of the Debtors, including interests held by the Debtors in their respective non-Debtor direct and indirect subsidiaries and Affiliates shall vest in Reorganized Holdings, free and clear of all Liens, Claims, charges, or other encumbrances, except for the Liens and Claims established under this Plan. On and after the Effective Date, except as otherwise provided in this Plan, Reorganized Holdings may operate its business and may use, acquire, or dispose of property and maintain, prosecute, abandon, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject only to those restrictions expressly imposed by this Plan or the Confirmation Order, as well as the documents and instruments executed and delivered in connection therewith, including the documents, exhibits, instruments, and other materials comprising the Plan Supplement.

5.3     *Sources of Cash for Distributions and Operations*.  All Cash necessary for Reorganized Holdings to make payments required by this Plan and for post-Confirmation operations shall be obtained from (a) existing Cash held by Reorganized Holdings on the Effective Date, (b) proceeds from the Rights Offering, and (c) the operations of Reorganized Holdings.

5.4     *Cancellation of Existing Securities and Agreements*.  Except as provided in this Plan or in the Confirmation Order, on the Effective Date, all notes, stock (where permitted by applicable law), instruments, certificates, agreements, side letters, fee letters, and other documents evidencing or giving rise to Claims against and Interests in the Debtors shall be cancelled, and the obligations of the Debtors thereunder or in any way related thereto shall be fully released, terminated, extinguished, and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or any requirement of further action, vote, or other approval or authorization by any Person.  The Holders of or parties to such notes, stock, instruments, certificates, agreements, side letters, fee letters,

28

and other documents shall retain their rights vis-à-vis each other but shall have no rights against any Debtor or Reorganized Holdings, as applicable, arising from or relating to such notes, stock, instruments, certificates, agreements, side letters, fee letters, and other documents or the cancellation thereof, except the rights provided pursuant to this Plan and the Confirmation Order. In addition, the obligations of the 2022 Notes Trustee under or in connection with the 2022 Notes Documents and the obligations of the Old Notes Trustee under the Old Notes Documents shall be discharged and deemed satisfied on the Effective Date except to the extent necessary to comply with their obligations under this Plan, including to facilitate the distributions provided for in this Plan to the applicable Holders of Claims and cancelling existing security interests pursuant to this Section 5.4. For the avoidance of doubt, nothing contained in this Plan or the Confirmation Order shall in any way limit or affect the standing of the Indenture Trustees to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court on and after the Effective Date.

For the further avoidance of doubt, notwithstanding the immediately foregoing paragraph, the 2022 Notes Documents and the Old Notes Documents shall continue in effect solely for the purposes of (a) allowing the applicable Holders of Claims to receive their respective distributions under this Plan as provided herein, (b) allowing the Indenture Trustees to facilitate the distributions under this Plan to the applicable Holders of Claims as provided herein and otherwise comply with any obligations they may have under this Plan, including the cancellation of existing security interests pursuant to this Section 5.4, (c) allowing the Indenture Trustees to preserve their respective rights to payment of fees, expenses, and indemnification obligations as against any money or property distributable to the relevant Holder of 2022 Notes Claims and Old Notes Claims, as applicable, under this Plan, and to deduct such fees and expenses from such distributions, including in respect of payment and the right to exercise their charging liens, if any, against such distributions, (d) permitting the Indenture Trustees to perform any functions that are necessary to effectuate the foregoing, and (e) allowing the Indenture Trustees to assert any other right, privilege, benefit, or protection granted to either of them under the relevant documentation other than against Reorganized Holdings and the Exculpated Parties; *provided*, that the foregoing shall not affect the discharge of the Debtors with respect to the 2022 Notes Claims and the Old Notes Claims as provided for herein, or result in any expenses or liability to Reorganized Holdings, except to the extent set forth in or provided for under this Plan. Notwithstanding anything to the contrary herein, the terms and provisions of this Plan shall not alter, modify, or amend any existing contract or agreement between any of the Indenture Trustees and any current or former 2022 Noteholder or Old Noteholder, as applicable, and any such contract or agreement shall remain in full force and effect according to its terms following the Effective Date.

5.5     *Cancellation of Certain Existing Security Interests.* Subject to Section 3.3(e)(ii) of the Plan or as otherwise provided herein, upon the full payment or other satisfaction of an Allowed Secured Claim or reasonably promptly thereafter, the Holder of such Allowed Secured Claim shall deliver to the Debtors and the Plan Proponents or, after the Effective Date, Reorganized Holdings, any collateral or other property of a Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its

Allowed Secured Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory liens, or lis pendens, or similar interests or documents.

5.6     *Rights Offering*.

(a)     *Terms*.  On or as soon as reasonably practicable after the Effective Date, the Debtors and Reorganized Holdings, as applicable, will consummate the Rights Offering in accordance with the Rights Offering Procedures.  The Rights Offering will be fully committed and backstopped by the Backstop Parties in accordance with and subject to the terms and conditions of the Backstop Agreement.

(b)     *Purpose*.  The proceeds of the Rights Offering shall be used: (i) to provide Reorganized Holdings with additional liquidity for working capital and general corporate purposes; (ii) to fund the GUC Cash Pool; and (iii) to make other payments on account of Allowed Claims and other amounts under and in accordance with the Plan.

(c)     *Backstop Agreement*.  In accordance with the Backstop Agreement and subject to the terms and conditions thereof, the Backstop Parties have agreed to purchase, on the Effective Date, all of the Reorganized Equity offered and not duly subscribed for and/or purchased in the Rights Offering in accordance with the Rights Offering Procedures and the Backstop Agreement.

(d)     *Backstop Premium*.  Subject to the terms and conditions set forth in the Backstop Agreement, the Backstop Parties will receive the Backstop Premium (subject to dilution on account of the EIP).  Subject to the terms and conditions set forth in the Backstop Agreement, the Backstop Premium will be immediately and automatically deemed fully earned upon entry into the Backstop Agreement and payable upon the Effective Date.

5.7     ***Intercompany Interests and Intercompany Claims***.  Holders of Intercompany Interests or Intercompany Claims may retain their respective Interests or Claims solely in the discretion of Reorganized Holdings, not on account of such Interests or Claims, as applicable, but rather for the purposes of administrative convenience or for tax purposes, for the ultimate benefit of the Holders of Reorganized Equity, and in exchange for the Debtors' and Reorganized Holdings' agreement under the Plan to make certain distributions to the Holders of Allowed Claims.

5.8     ***Issuance of Reorganized Equity.***  On the Effective Date, Reorganized Holdings is authorized to issue or cause to be issued the Reorganized Equity in accordance with the terms of this Plan.  On the Effective Date, (a) applicable General Unsecured Claimholders that elect to receive Reorganized Equity pursuant to Section 3.3(c)(iii)(1)(A) of the Plan shall receive Reorganized Equity in exchange for their respective General Unsecured Claims (subject to dilution on account of the Rights Offering, the Backstop Premium, and the EIP), as set forth in Article III of the Plan; (b) applicable General Unsecured Claimholders that elect to exercise Rights Offering Subscription Rights pursuant to the Rights Offering Procedures, shall receive

Reorganized Equity (subject to dilution on account of the Backstop Premium and the EIP), as set forth in Article III of the Plan and the Rights Offering Procedures; and (c) the Backstop Parties shall receive Reorganized Equity on account of the Backstop Premium (subject to dilution on account of the EIP), as set forth in Article V of the Plan and the Backstop Agreement.  All Reorganized Equity issuable under this Plan, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable.

Upon issuance, the Reorganized Equity shall not be registered under the Securities Act, and shall not be listed for public trading on any securities exchange.  The distribution of the Reorganized Equity pursuant to this Plan may be made by delivery of one or more certificates representing such Reorganized Equity as described herein, by means of book-entry registration on the books of the transfer agent for the Reorganized Equity, or by means of book-entry exchange through the facilities of a transfer agent satisfactory to the Plan Proponents or Reorganized Holdings, as applicable, the 2022 Notes Trustee, and the Old Notes Trustee, in accordance with the customary practices of such agents, as and to the extent practicable.

5.9    ***Exemption from Registration.***

(a)    The offering, issuance, and distribution of the Reorganized Equity on account of General Unsecured Claims and the Rights Offering shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable U.S. state or other law requiring registration prior to the offering, issuance, distribution, or sale of securities in accordance with, and pursuant to, section 1145 of the Bankruptcy Code to the extent permitted or under the Securities Act by virtue of section 4(a)(2) thereof, Regulation D, and/or Regulation S.  Such Reorganized Equity issued pursuant to section 1145 of the Bankruptcy Code will not be "restricted securities" as defined in Rule 144(a)(3) of the Securities Act and will be freely tradable and transferable by the initial recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code, and compliance with applicable securities laws, including Rule 144 of the Securities Act, and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such securities or instruments.  To the extent the issuance and distribution of any Reorganized Equity is being made in reliance on the exemption from registration set forth in section 4(a)(2) of the Securities Act, Regulation D, and/or Regulation S promulgated under the Securities Act, and similar registration exemptions applicable outside of the United States, such securities will be considered "restricted securities" subject to resale restrictions and may be resold, exchanged, assigned, or otherwise transferred only pursuant to a registration statement or available exemption from the registration requirements of the Securities Act and other applicable law.

(b)    The issuance of the Reorganized Equity to the Backstop Parties and the payment of the Backstop Premium is being made in reliance on the exemption from registration set forth in section 4(a)(2) of the Securities Act, Regulation D, and/or Regulation S promulgated under the Securities Act, and similar registration exemptions applicable outside of the United States, such securities will be considered "restricted securities" subject to resale restrictions and may be resold, exchanged, assigned, or otherwise transferred only pursuant to a registration statement or available

exemption from the registration requirements of the Securities Act and other applicable law.

(c)    Any securities issued under the EIP will be issued pursuant to a registration statement or available exemption from registration under the Securities Act and other applicable law.

(d)    To the extent securities were offered prior to the filing of this Plan, such securities were offered in reliance on the exemption provided by section 4(a)(2) of the Securities Act or the safe harbor provided by Regulation S under the Securities Act.

5.10    ***Officers and Boards of Directors.***

(a)    The New Board shall consist of three directors: (i) one director selected by the Plan Proponents, (ii) one director selected by the Plan Proponents, subject to consent of the Creditors' Committee (not to be unreasonably withheld, conditioned, or delayed), and (iii) one director designated as "independent" selected by the Creditors' Committee (the "***Independent Director***").  The identities of directors on the New Board shall be set forth in the Plan Supplement, to the extent known at the time of filing, in accordance with 11 U.S.C. § 1129(a)(5).

(b)    The New Corporate Governance Documents will (i) prohibit the issuance of non-voting equity securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code, and (ii) provide that any decisions related to claims and causes of action with Levona Holdings, Ltd. and its affiliates, including Pach Shemen (the "***Levona Claims***"), are required to be made by the Independent Director; *provided,* ~~that if the New Board disagrees with any of the decisions of the Independent Director with respect to the Levona Claims, the New Board can refer the dispute to a final offer arbitrator (also known as a baseball arbitrator) or an early neutral evaluator—in each case, governed by the International Centre for Dispute Resolution and the American Arbitration Association—to decide; *provided, further,*~~ the majority of Reorganized Holdings' shareholders other than Pach Shemen (or any Reorganized Holdings' shareholders affiliated with Pach Shemen) may settle the Levona Claims or direct the actions of the Independent Director with respect to the Levona Claims. ~~The costs of any such arbitrations or evaluations shall be borne by Reorganized Holdings.~~

(c)    The members of the governing body of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to Reorganized Holdings on or after the Effective Date and each such member will be deemed to have resigned or shall otherwise cease to be a director or manager of the applicable Debtor on the Effective Date.  Commencing on the Effective Date, each of the directors of Reorganized Holdings shall serve pursuant to the terms of the New Corporate Governance Documents and may be replaced or removed in accordance with such organizational documents.

5.11     ***Corporate Action.*** Each of the matters provided for under this Plan involving the corporate structure of any Debtor or Reorganized Holdings or any corporate action to be taken by or required of any Debtor or Reorganized Holdings shall be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by shareholders, members, creditors, directors, or managers of the Debtors or Reorganized Holdings, as applicable.  On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or Reorganized Holdings, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by this Plan (or necessary or desirable to effectuate any transaction hereunder) in the name of and on behalf of the Debtors or Reorganized Holdings, as applicable, including, the Rights Offering Procedures, the Shareholders Agreement, the Backstop Agreement, and any and all other agreements, documents, securities and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court.   The authorizations and approvals contemplated by this Section 5.11 shall be effective notwithstanding any requirements under nonbankruptcy law.

5.12     ***Effectuating Documents; Further Transactions***.  The directors, officers, managers or any other appropriate officer of the Debtors, with the prior written consent of the Plan Proponents, or, after the Effective Date, Reorganized Holdings, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

5.13     ***Release of Liens.*** Except as otherwise specifically provided in this Plan or any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions to be made pursuant to this Plan, and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to Reorganized Holdings and its successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors, Reorganized Holdings, or any Holder of a Secured Claim.

5.14     **[*Reserved.*]**

5.15     ***Preservation of Causes of Action***.

(a)     Except as otherwise provided in the Plan, the Confirmation Order, or in any document, instrument, release or other agreement entered into in connection with the Plan (including the Plan Supplement) or approved by order of the Bankruptcy Court, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors and their Estates shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Claims and Causes of Action (including, without limitation, all Retained Causes of Action), including, among others, (i) the Avoidance

33

and Other Actions and (ii) claims and Causes of Action against, related to or arising from (A) the Eletson Gas Transfer, (B) any Debtor or its Related Parties, (C) any non-Debtor Affiliate or its Related Parties, (D) any non-Debtor direct or indirect subsidiary or its Related Parties, and (E) any Eletson Insider and its Related Parties, whether arising before or after the Petition Date, and Reorganized Holdings' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. **No Person or Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Schedule of Retained Causes of Action, the Disclosure Statement, or the Confirmation Order to any Cause of Action against them as any indication that the Debtors, the Estates, or Reorganized Holdings, as applicable, will not pursue any and all available Causes of Action against them.** The Debtors and Reorganized Holdings expressly reserve all rights to prosecute any and all Causes of Action against any entity, except as otherwise expressly provided in the Plan.

(b)    Except as otherwise provided in the Plan (including the Plan Supplement) and the Confirmation Order, Reorganized Holdings expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), laches, or other preclusion doctrine, shall apply to such Causes of Action upon, after, or as a consequence of the confirmation or consummation of the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Cause of Action that a Debtor may hold against any Person or Entity shall vest in Reorganized Holdings. Reorganized Holdings may pursue such Causes of Action, or decline to do any of the foregoing, as appropriate, in accordance with the best interests of Reorganized Holdings and without further notice to or action, order or approval of the Bankruptcy Court or these Chapter 11 Cases.

5.16    ***Exemption from Certain Transfer Taxes and Recording Fees***. To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by any Debtor or any transfer from any Entity pursuant to, in contemplation of, or in connection with this Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (b) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with this Plan arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

5.17    ***Further Authorization.*** The Plan Proponents or the Debtors (with the prior written consent of the Plan Proponents), or, after the Effective Date, Reorganized Holdings shall be entitled to seek such orders, judgments, injunctions, and

34

rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

5.18     ***GUC Cash Pool Account.***  On the Effective Date or as soon as reasonably practicable thereafter, Reorganized Holdings shall fund the GUC Cash Pool Account from the proceeds of the Rights Offering.

5.19     ***Employee Incentive Plan.***  After the Effective Date, the New Board shall establish the EIP.  The EIP shall provide equity-based compensation to the employees (other than Eletson Insiders (if any)) of Reorganized Holdings and/or its direct and indirect subsidiaries in an amount not to exceed 5% of the Reorganized Equity.

5.20     ***Shareholders Agreement.***  On the Effective Date, Reorganized Holdings shall enter into the Shareholders Agreement and all current and future Holders of Reorganized Equity shall be deemed to become party to the Shareholders Agreement.

# ARTICLE VI

# DISTRIBUTIONS

6.1     ***Distributions Generally***.  The Disbursing Agent shall make all Plan distributions on behalf of the Debtors in accordance with this Article VI and other governing terms of this Plan.

6.2     ***No Postpetition or Default Interest on Claims***.  Unless required by the Bankruptcy Code or otherwise specifically provided for in this Plan, the Confirmation Order, or another order of the Bankruptcy Court, and notwithstanding any documents that govern the Debtors' prepetition funded indebtedness to the contrary, postpetition and/or default interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to (a) interest accruing on such Claim on or after the Petition Date on any such Claim or (b) interest at the contract default rate, as applicable.

6.3     ***Date of Distributions***.  Unless otherwise provided in this Plan, any distributions and deliveries to be made under this Plan shall be made on the Effective Date or as soon thereafter as is practicable; *provided*, that Reorganized Holdings may implement periodic distribution dates to the extent it determines them to be appropriate.

6.4     ***Distribution Record Date***.  As of the close of business on the Distribution Record Date, the various lists of Holders of Claims in each Class, as maintained by the Debtors or their agents, shall be deemed closed, and there shall be no further changes in the record Holders of any Claims after the Distribution Record Date. Neither the Debtors, Reorganized Holdings, nor the Disbursing Agent shall have any obligation to recognize any transfer of a Claim occurring after the close of business on the Distribution Record Date.  For the avoidance of doubt, this Section 6.4 is not applicable to distributions to the 2022 Noteholders and the Old Noteholders, which

35

shall receive and/or assist with distributions in accordance with the 2022 Notes Documents and the Old Notes Documents, as applicable, based on the record of participants in each respective issuance as maintained by the Depository Trust Company.

6.5     ***Disbursing Agent***.  Except otherwise provided herein, all distributions under this Plan shall be made by the Disbursing Agent on or after the Effective Date.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  The Debtors and Reorganized Holdings, as applicable, shall use all commercially reasonably efforts to provide the Disbursing Agent  with the amounts of Claims and the identities and addresses of Holders of Claims, in each case, as set forth in the Debtors' or Reorganized Holdings' books and records.  Reorganized Holdings shall cooperate in good faith with the Disbursing Agent (if other than Reorganized Holdings) to comply with the reporting and withholding requirements outlined in Section 6.14 of the Plan.

6.6     ***Delivery of Distributions***.  The Disbursing Agent will issue or cause to be issued the applicable consideration under this Plan and, subject to Bankruptcy Rule 9010, will make all distributions as and when required by this Plan: (a) in the case of Allowed 2022 Notes Claims to the 2022 Notes Trustee, (b) in the case of Allowed Old Notes Claims to the Old Notes Trustee, and (c) in the case of all other Allowed Claims, to the address of the Holder of such Claim on the books and records of the Debtors or their agents or the address in any written notice of address change delivered to the Debtors or the Disbursing Agent, including any addresses included on any transfers of Claim filed pursuant to Bankruptcy Rule 3001.

6.7     ***Undeliverable Distributions and Unclaimed Property***.  In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current addresses of such Holder, at which time such distribution shall be made to such Holder without interest; *provided, however,* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the date on which such distribution was attempted to be made; *provided, further,* that the Debtors or Reorganized Holdings, as applicable, shall use reasonable efforts to locate a Holder if any distribution is returned as undeliverable.  After such date, all unclaimed property or interests in property shall revert to Reorganized Holdings automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandonment, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

6.8     ***Manner of Payment Under Plan***.  Except as specifically provided herein, at the option of the Debtors or Reorganized Holdings, as applicable, any Cash payment to be made under this Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors or Reorganized Holdings, as applicable.

6.9     ***Minimum Distributions***.

(a)    No fractional shares of Reorganized Equity shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to the Plan on account of an Allowed General Unsecured Claim would otherwise result in the issuance of a number of shares of Reorganized Equity that is not a whole number, the actual distribution of shares of Reorganized Equity shall be rounded as follows: (i) fractions of one-half or greater shall be rounded to the next higher whole number, and (ii) fractions of less than one-half shall be rounded to the next lower whole number with no further payment thereof. The total number of authorized shares of Reorganized Equity to be distributed pursuant to the Plan shall be adjusted as necessary to account for the foregoing rounding.

(b)    If any final distribution under the Plan to the Holder of an Allowed Claim would be less than US$50.00, the Disbursing Agent may cancel such distribution which shall irrevocably revert to Reorganized Holdings automatically and without need for a further order by the Bankruptcy Court notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary, and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

6.10    *No Distribution in Excess of Amount of Allowed Claim*. Notwithstanding anything to the contrary in this Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan distributions in excess of the Allowed amount of such Claim (plus any postpetition interest on such Claim solely to the extent permitted by Section 6.2 of the Plan).

6.11    *Allocation of Distributions Between Principal and Interest*. Except as otherwise provided herein and subject to Section 3.3 of this Plan, to the extent that any Allowed Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount (as determined for federal income tax purposes) of the Claim and then to accrued but unpaid interest.

6.12    *Setoffs and Recoupments*. Reorganized Holdings or its designee as instructed by Reorganized Holdings may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, offset or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim any and all claims, rights, and Causes of Action that Reorganized Holdings or its successors may hold against the Holder of such Allowed Claim after the Effective Date to the extent that such setoff or recoupment is either (a) agreed in amount among Reorganized Holdings and the Holder of the Allowed Claim or (b) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by Reorganized Holdings or its successor of any claims, rights, or Causes of Action that Reorganized Holdings or its successor or assign may possess against such Holder.

6.13    *Powers of Disbursing Agent*. The Disbursing Agent may (a) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Plan, (b) make all distributions contemplated hereby,

and (c) perform such other duties as may be required of the Disbursing Agent pursuant to this Plan.

6.14     *Withholding and Reporting Requirements*.  In connection with this Plan and all instruments issued in connection therewith and distributed thereon, Reorganized Holdings shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under this Plan shall be subject to any such withholding and reporting requirements.  In the case of a non-Cash distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and sell such withheld property to generate the Cash necessary to pay over the withholding tax.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan.

Notwithstanding the above, each Holder of an Allowed Claim or Interest that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.  Reorganized Holdings has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to any issuing or disbursing party for payment of any such tax obligations.

As a condition of making any distribution under the Plan, each Person and Entity holding an Allowed Claim is required to provide any information necessary in writing, including returning W-8 or W-9 statements, as applicable, to effect the necessary information reporting and withholding of applicable taxes with respect to distributions to be made under the Plan as the Disbursing Agent may request.  The Disbursing Agent shall withhold any distributions to a Holder of an Allowed Claim who fails to provide tax identification or social security information within the timeframe requested in writing by the Disbursing Agent to such Holder of an Allowed Claim, which timeframe shall not be less than 30 days.  Any Distribution that would otherwise be made to any Holder of an Allowed Claim that fails to timely respond to the Disbursing Agent with the information required by this Section 6.14 shall be treated as an undeliverable or unclaimed distribution pursuant to Section 6.7 hereunder.

6.15     *Claims Paid or Payable by Third Parties*.

(a)     *Claims Paid by Third Parties.*  The Debtors, with prior written consent of the Plan Proponents, or Reorganized Holdings, as applicable, shall reduce a Claim, and such Claim shall be Disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor or Reorganized Holdings, including, for the avoidance of doubt, non-Debtor Affiliates and non-Debtor indirect and direct subsidiaries.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized Holdings on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to Reorganized Holdings, to the extent the Holder's total recovery on

38

account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan.

(b)    *Claims Payable by Third Parties*.  Except as otherwise provided in this Plan, (i) no distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, and (ii) to the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)    *Applicability of Insurance Proceeds*.  Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers.

## ARTICLE VII

## PROCEDURES FOR DISPUTED CLAIMS

7.1    ***Allowance of Claims***.  On and after the Effective Date, only Reorganized Holdings may object to the allowance of any Claim, including, but not limited to, any Administrative Claim.  On and after the Effective Date, Reorganized Holdings shall have and retain any and all rights and defenses the Debtors had with respect to any Claim, including, but not limited to, any Administrative Claim, immediately before the Effective Date.  Except as expressly provided in this Plan or in any order entered in these Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in these Chapter 11 Cases allowing such Claim.

7.2    ***Objections to Claims***.

(a)    *Authority*.  On and after the Effective Date, Reorganized Holdings shall have sole authority to settle, compromise, litigate to judgment, or file objections to any Claim, including, but not limited to any Administrative Claim, and to withdraw any objections to any Claim, including, but not limited to any Administrative Claim that are pending as of the Effective Date and/or that Reorganized Holdings may file.  Except as set forth above, on and after the Effective Date, Reorganized Holdings also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

(b)    *Objection Deadline*.  As soon as practicable, but no later than the Claims Objection Deadline, Reorganized Holdings may file objections with the Bankruptcy Court and serve such objections on the Holders of the Claims to which such objections are made.  Nothing contained herein, however, shall limit the right of Reorganized Holdings to object to Claims, if any, filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by Reorganized Holdings.

7.3    *Estimation of Claims*.  Reorganized Holdings may, at any time, request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or Reorganized Holdings previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Plan Proponents or Reorganized Holdings, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

7.4    *No Distributions Pending Allowance*.  If an objection to a Claim is filed as set forth in Section 7.2 of the Plan, no payment or distribution provided under this Plan shall be made on account of any disputed portion of such Claim; *provided*, *however*, that notwithstanding the foregoing, payments and distributions under this Plan to Holders of Allowed 2022 Notes Claims and Old Notes Claims shall be made in full on the Effective Date, regardless of whether such Holders hold any Disputed Claims.

7.5    *Resolution of Claims*.  Except as otherwise provided herein, or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, Reorganized Holdings shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, or other agreement entered into in connection herewith. Reorganized Holdings or its successors may pursue such retained Claims, rights, Causes of Action, suits, or proceedings, as appropriate, in accordance with the best interests of Reorganized Holdings.

7.6    *Disallowed Claims*.  All (a) Claims held by Persons or Entities against whom or which any of the Debtors or Reorganized Holdings has commenced a

40

proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, 550 and/or 724 of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject this Plan; *provided*, Claims that are deemed Disallowed pursuant to this Section 7.6(a) shall continue to be Disallowed for all purposes until such Claim has been settled or resolved by Final Order and any sums due to the Debtors or Reorganized Holdings from such Person or Entity have been turned over or paid to Reorganized Holdings; and (b) Levona Bankruptcy Claims shall be deemed Disallowed and shall continue to be Disallowed for all purposes until such Claim has been settled or resolved by Final Order.

## ARTICLE VIII

## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

8.1     *Assumption or Rejection of Executory Contracts and Unexpired Leases*.

(a)     Except as otherwise provided in this Plan, on the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (i) has previously been assumed or assumed and assigned by order of the Bankruptcy Court in effect prior to the Effective Date (which order may be the Confirmation Order); (ii) is the subject of a motion to assume filed on or before the Effective Date; (iii) is identified on the Schedule of Assumed Executory Contracts or Unexpired Leases; or (iv) has expired or terminated pursuant to its own terms.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of such Executory Contracts and Unexpired Leases as set forth in this Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, all assumptions, assumptions and assignments, and rejections of Executory Contracts and Unexpired Leases in this Plan will be effective as of the Effective Date.  Each Executory Contract and Unexpired Lease assumed or assumed and assigned pursuant to this Plan, or by Bankruptcy Court order, will vest in and be fully enforceable by Reorganized Holdings or its assignee in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court.  Notwithstanding the foregoing paragraph or anything to the contrary herein, the Plan Proponents reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases prior to the Effective Date.

(b)     With respect to the Assumed Contracts, any provision in any such agreement that:

(i)     prohibits, restricts, or conditions the assumption and/or assignment, or purports to prohibit, restrict, or condition the assumption and/or assignment (including any "change of control" provision) of such agreement or allows any party to such agreement to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assumption

41

and/or assignment of such agreement constitutes an unenforceable anti-assignment and/or discrimination provision and is void and of no force and effect.

(ii)     provides for modification, breach, or termination, or deemed modification, breach, or termination on account of or related to any of the following: (A) the commencement or continuation of the Chapter 11 Cases, (B) the insolvency or financial condition of any of the Debtors at any time, (C) the Debtors' assumption and/or assignment of such agreement, (D) a change of control or similar occurrence, (E) the consummation of this Plan, or (F) the filing of the Involuntary Petitions, such provision is modified so as not to entitle the non-Debtor party thereto to prohibit, restrict, or condition assumption and/or assignment, to modify, terminate, or declare a breach or default under such agreement, or to exercise any other breach- or default-related rights or remedies with respect thereto, including any provision that purports to allow the non-Debtor party thereto to terminate or recapture such agreement, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith.

(c)     Upon the Debtors' assumption of an Executory Contract or Unexpired Lease, as of the Effective Date pursuant to this Plan, no default or other unperformed obligations of a Debtor arising on or prior to the Effective Date shall exist, and each non-Debtor party is forever barred, estopped, and permanently enjoined from (i) declaring a breach or default under such agreement for any act or omission occurring on or prior to the Effective Date, (ii) raising or asserting against the Debtors, the Estates or Reorganized Holdings, or the assets or property of any of them, any fee, default, termination, breach, Cause of Action, or condition arising under or related to the agreement based upon a fact or circumstance that occurred on or prior to the Effective Date, or (iii) taking any other action as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the agreement.  Each non-Debtor party to such an agreement is also forever barred, estopped, and permanently enjoined from (x) asserting against the Debtors, the Estates or Reorganized Holdings, or the assets or property of any of them, any breach, default, or Cause of Action arising out of any indemnity or other obligation or warranties for acts, omissions, or occurrences arising or existing on or prior to the Effective Date, or, against Reorganized Holdings, any counterclaim, setoff, or any other Cause of Action that was or could have been asserted or assertable against the Debtors or the Estates and (y) imposing or charging against Reorganized Holdings or their Affiliates any rent accelerations, assignment fees, increases, or any other fees or charges as a result of assumption of the agreement.

(d)     Any Person or Entity that may have had the right to consent to the assumption and/or assignment of an Executory Contract or Unexpired Lease has consented to such assumption and/or assignment for purposes of section 365 of the Bankruptcy Code if such Person or Entity failed to object timely to the assumption of such agreement, and Reorganized Holdings has demonstrated adequate assurance of future performance with respect to such agreement pursuant to section 365 of the Bankruptcy Code.

8.2     *Cure of Defaults Under Assumed Contracts*.  Any monetary defaults under each Assumed Contract shall be satisfied pursuant to section 365(b)(1) of

42

the Bankruptcy Code, by payment of the Cure Amount on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Assumed Contracts may otherwise agree.  In the event of a dispute regarding (a) the amount of any payments to cure such a default, (b) the ability of Reorganized Holdings or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.  Any objection by a contract or lease counterparty to a proposed assumption or related Cure Amount must be filed and served in accordance with the Disclosure Statement Order.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Amount shall be deemed to have assented to such assumption or Cure Amount.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction or any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition of other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged without further notice to or action, order or approval of the Bankruptcy Court.

8.3     ***Claims Based on Rejection of Executory Contracts and Unexpired Leases.***  Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases pursuant to this Plan or otherwise must be filed no later than 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the Effective Date.  Any Proofs of Claim arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases that are not timely filed shall be Disallowed automatically, forever barred from assertion, and shall not be enforceable against Reorganized Holdings without the need for any objection by Reorganized Holdings or further notice to or action, order, or approval of the Bankruptcy Court.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with the particular provisions of this Plan for such Claims.

8.4     ***Contracts and Leases Entered into After the Petition Date.***  Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, shall be performed by the Debtor or Reorganized Holdings liable thereunder in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) shall survive and remain unaffected by entry of the Confirmation Order.

8.5     ***Reservation of Rights.***  Nothing contained in this Plan shall constitute an admission by the Debtors or Reorganized Holdings that any particular

contract is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability thereunder.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN

9.1    ***Conditions Precedent to the Effective Date***.  The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with the terms of this Plan:

(a)    the Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Plan Proponents, and such Confirmation Order shall have become a Final Order;

(b)    the Definitive Documents related to this Plan, including the Plan Supplement, shall be in form and substance satisfactory to the Plan Proponents;

(c)    the Bankruptcy Court shall have entered the Backstop Order and the Rights Offering Procedures Order, in each case, in form and substance satisfactory to the Plan Proponents and the Requisite Backstop Parties, and such order(s) shall have become Final Order(s);

(d)    all of the conditions precedent for the Rights Offering shall have been satisfied or waived in accordance with the terms of the Rights Offering Procedures and the Rights Offering Procedures Order;

(e)    all of the conditions precedent set forth in the Backstop Agreement shall have been satisfied or waived in accordance with the terms thereof and the Backstop Order;

(f)    the Debtors or Plan Proponents, as applicable, shall have obtained all governmental and third-party approvals that are necessary to implement and effectuate this Plan (and all applicable waiting and appeal periods have expired) shall have been completed or received, as applicable, including without limitation, antitrust filings (to the extent required) and registration of Plan securities with CMF;

(g)    the GUC Cash Pool Account shall have been funded or shall be funded concurrently with the effectiveness of the Plan, with the GUC Cash Pool;

(h)    the Plan Proponents Fees and Expenses and the Backstop Fees and Expenses, in each case, shall have been paid in full, in Cash, to the extent not previously paid by the Debtors or any third party;

(i)    the New Corporate Governance Documents have become effective or shall be become effective concurrently with the effectiveness of this Plan;

(j)    the Debtors' assets, including, without limitation, the Debtors' books and records, shall have been transferred to Reorganized Holdings;

(k)      since the Conversion Date, no material adverse changes in the operations, assets, revenues, financial condition, profits, or prospects of the Debtors or their non-Debtor subsidiaries and/or Affiliates (other than virtue of the Chapter 11 Cases); and

(l)      all actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable government units in accordance with applicable law, and all other actions required to be taken in connection with the Effective Date shall have occurred;

*provided, that,* notwithstanding when a condition precedent to the Effective Date occurs, for purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously with the other conditions precedent to the Effective Date; *provided, further,* that to the extent a condition precedent (a "***Prerequisite Condition***") may be required to occur prior to another condition precedent (a "***Subsequent Condition***") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to the Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

9.2      ***Waiver of Conditions Precedent***.  Each of the conditions precedent in Section 9.1 of the Plan may be waived only if waived in writing by the Plan Proponents without notice, leave or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate this Plan; *provided, that,* any modification to the Plan (or the Definitive Documents' implementation of the Plan) that materially and adversely affects the treatment of Holders of General Unsecured Claims shall require the reasonable consent of the Creditors' Committee (not to be unreasonably withheld, conditioned, or delayed).

9.3      ***Notice of Effective Date.***  The Plan Proponents or the Debtors, as applicable, shall use reasonable efforts to provide prior notice of the projected Effective Date to the Creditors' Committee or its counsel, no later than fourteen (14) calendar days prior to the projected Effective Date.  Following the satisfaction or waiver of all conditions precedent to the Effective Date, Reorganized Holdings shall file a notice of (a) the occurrence of the Effective Date, (b) the Administrative Claims Bar Date, (c) the Professional Fee Claims Bar Date, and (d) such other matters as appropriate or as may be ordered by the Bankruptcy Court.

## ARTICLE X

## EFFECT OF PLAN CONFIRMATION

10.1      ***Binding Effect***.  Following the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtors, their Estates, all present and former Holders of Claims and Interests, whether or not such Holders voted in favor of this Plan, and their respective successors and assigns.

10.2      ***[Reserved.]***

10.3     *Discharge of the Debtors*.  Pursuant to and to the fullest extent permitted by the Bankruptcy Code, except as otherwise specifically provided in this Plan or the Confirmation Order, the treatment of Claims and Interests under this Plan shall be in full and final satisfaction, compromise, settlement, release, discharge and termination, as of the Effective Date, of all Claims of any nature whatsoever, whether known or unknown, against, and Interests in, the Debtors, any property of the Estates, or any property of Reorganized Holdings, including all Claims of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such Claim, liability, obligation or Interest is Allowed pursuant to section 502 of the Bankruptcy Code, or (c) the Holder of such a Claim, liability, obligation or Interest has voted to accept this Plan.  Except as otherwise provided herein, any default or "event of default" by the Debtors with respect to any Claim or Interest that existed immediately prior to or on account of the filing of these Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.

10.4     *Injunction*.  Except as otherwise specifically provided in this Plan or the Confirmation Order, and subject to section 524(a) of the Bankruptcy Code, all Persons or Entities who have held, hold or may hold (a) Claims or Interests that arose prior to the Effective Date, (b) Causes of Action that are subject to exculpation pursuant to Section 10.5 of this Plan (but only to the extent of the exculpation provided in Section 10.5 of this Plan), or (c) Claims, Interests or Causes of Action that are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of this Plan and all other parties-in-interest seeking to enforce such Claims, Interests or Causes of Action are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim (including a Subordinated Claim) against or Interest in the Debtors or Reorganized Holdings, or property of any Debtors or Reorganized Holdings, other than to enforce any right to a distribution pursuant to this Plan, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors or Reorganized Holdings or property of any Debtors or Reorganized Holdings with respect to any such Claim or Interest, other than to enforce any right to a distribution pursuant to this Plan, (iii) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Debtors or Reorganized Holdings, or against the property or interests in property of the Debtors or Reorganized Holdings with respect to any such Claim or Interest, other than to enforce any right to a distribution pursuant to this Plan, or (iv) asserting any right of setoff (except for setoffs validly exercised prepetition) or subrogation of any kind against any obligation due from the Debtors or Reorganized Holdings, or against the property or interests in property of the Debtors or Reorganized Holdings, with respect to any such Claim or Interest.  Such injunction shall extend to any successors or assignees of the Debtors or Reorganized Holdings and its respective properties and interests in properties.

10.5     *Exculpation*.  Effective as of the Effective Date, to the extent permitted under section 1125(e) of the Bankruptcy Code, no Exculpated Party shall have or incur liability for, and each Exculpated Party is exculpated from any Cause of

46

**Action related to any act or omission taking place between the Petition Date and the Effective Date, in connection with, relating to, or arising out of, the Chapter 11 Cases, the Involuntary Proceedings, the filing of the Involuntary Petitions, the formulation, preparation, dissemination, negotiation, or filing of this Plan, the Disclosure Statement, the Plan Supplement, the Rights Offering Procedures, the Backstop Agreement, or any transaction under the Plan, contract, instrument, or document or transaction approved by the Bankruptcy Court in these Chapter 11 Cases, except for (a) any Cause of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted fraud, willful misconduct, or gross negligence of such Person, and (b) any Cause of Action related to any liability of professionals to their clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1); *provided*, *however*, *that*, for the avoidance of doubt, any such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit.**

10.6    ***Post-Confirmation Date Retention of Professionals***.  Reorganized Holdings will employ and pay professionals in the ordinary course of business.  Any Professionals retained by the Debtors will not be considered employed by Reorganized Holdings absent execution of a new engagement letter for services rendered after the Effective Date.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1    ***Retention of Jurisdiction.***  Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction (unless otherwise indicated) over all matters arising in, arising out of, and/or related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    resolve any matters related to (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom, including Cure Amounts pursuant to section 365 of the Bankruptcy Code, (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed or assumed and assigned, and (iii) any dispute regarding whether a contract or lease is or was executory or unexpired;

(b)    decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

(c)    Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest,

including resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or Allowance of Claims or Interests; *provided*, for the avoidance of doubt, the Bankruptcy Court's retention of jurisdiction with respect to such matters shall not preclude Reorganized Holdings from seeking relief from any other court, tribunal, or other legal forum of competent jurisdiction with respect to such matters;

(d)     enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, the Plan Supplement, or the Confirmation Order (including the Rights Offering, Backstop Agreement, and Shareholders Agreement);

(e)     resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

(f)     modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

(g)     hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under sections 330, 331, 503(b), and 1129(a)(4) of the Bankruptcy Code; *provided, however*, that from and after the Effective Date the payment of fees and expenses by Reorganized Holdings, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(h)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

(i)     adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

(j)     resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including the Bar Date, related notice, claim objections, Allowance, Disallowance, estimation, and distribution;

(k)     adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

48

(l)      adjudicate, decide, or resolve any and all matters related to Causes of Action, that are pending as of the Effective Date or that may be commenced in the future, by, against, or on behalf of any Debtor, non-Debtor subsidiary, or Reorganized Holdings, including among others, claims arising under or related to the Eletson Gas Transfer;

(m)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or distributions pursuant to this Plan are enjoined or stayed;

(n)      determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

(o)      enforce all orders, judgments, compromises, settlements, discharges, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases;

(p)      adjudicate controversies with respect to distributions to Holders of Allowed Claims;

(q)      determine requests for the payment of Claims and Interests entitled to priority under section 507 of the Bankruptcy Code;

(r)      hear and determine matters or disputes arising from, or in connection with, the New Corporate Governance Documents, the Backstop Agreement, the Rights Offering Procedures, the Shareholders Agreement, and the GUC Cash Pool;

(s)      hear and determine all matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(t)      hear and determine all matters concerning exemptions from state and federal registration requirements in accordance with section 1145 of the Bankruptcy Code;

(u)      hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code;

(v)      hear and determine any issues related to any matter adjudicated in the Chapter 11 Cases;

(w)     enter an order concluding or closing the Chapter 11 Cases; and

(x)      hear and determine any other matter not inconsistent with the Bankruptcy Code.

49

11.2    *Jurisdiction for Certain Other Agreements*.  This Plan shall not modify the jurisdictional provisions of the documents contained in the Plan Supplement.  Notwithstanding anything herein to the contrary, on and after the Effective Date, the Bankruptcy Court's retention of jurisdiction pursuant to this Plan shall not govern the enforcement or adjudication of any rights or remedies with respect to or as provided in the documents in the Plan Supplement and the jurisdictional provisions of such documents shall control.

11.3    *Courts of Competent Jurisdiction.*  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matters arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1    *Payment of Statutory Fees*.  All U.S. Trustee Fees payable after the Effective Date, if any, shall be paid by Reorganized Holdings on behalf of each Debtor, as applicable, until the closing of the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code.  Reorganized Holdings shall file and serve on the U.S. Trustee quarterly reports of the disbursements made, within 15 days after the conclusion of each such period, until the Chapter 11 Cases are converted, dismissed, or closed by entry of a final decree.  Any such reports shall be prepared consistent with (both in terms and format) of the applicable Bankruptcy Court and U.S. Trustee Guidelines for such matters.

12.2    *Dissolution of Creditors' Committee.* ~~After the Effective Date, the Creditor's Committee's functions shall be restricted and shall not be heard on any issue except applications filed pursuant to sections 330 and 331 of the Bankruptcy Code. Upon resolution of all matters set forth in the prior sentence, the Creditors' Committee shall dissolve, and the members (including any *ex officio* members) thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases.~~  Upon the Effective Date, the Creditors' Committee shall dissolve automatically whereupon its members, Committee Professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to: (i) obligations arising under confidentiality agreements, joint interest agreements and protective orders entered during the Chapter 11 Cases which shall remain in full force and effect according to their terms; (ii) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code for Committee Professional Fee Claims; (iii) any pending motions or proceedings to which the Creditors' Committee is a party (including any related appeals in connection therewith); and (iv) any pending motions, or any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order, including related appeals.  The Creditors' Committee members and the Committee Professionals shall not be entitled to compensation and reimbursement of expenses for services rendered after the Effective Date, except for

services rendered in connection with the items listed in the preceding sentence after the Effective Date.

12.3    *Amendment or Modification of this Plan*.  Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Plan Proponents reserve the right to alter, amend, or modify this Plan at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan; *provided*, *that*, any modification to the Plan (or the Definitive Documents' implementation of the Plan) that materially and adversely affects the treatment of Holders of General Unsecured Claims pursuant to the Plan shall require the reasonable consent (not to be unreasonably withheld, conditioned, or delayed) of the Creditors' Committee.  A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

12.4    *Substantial Consummation*.  On the Effective Date, this Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

12.5    *Severability of Plan Provisions*.  If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.6    *Successors and Assigns*.  This Plan shall be binding upon and inure to the benefit of the Debtors, and their respective successors and assigns, including Reorganized Holdings.  The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

12.7    *Revocation, Withdrawal, or Non-Consummation*.  The Plan Proponents reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization.  If the Plan is revoked or withdrawn as to any or all of the Debtors, or if Confirmation or consummation of this Plan does not occur as to any or all of the Debtors, then (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan (including,

without limitation, the Backstop Agreement) shall be deemed null and void; and (c) nothing contained in this Plan, nor any action taken or not taken by the Plan Proponents with respect to this Plan, the Disclosure Statement, the Rights Offering, the Backstop Agreement, or the Confirmation Order, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person; (ii) prejudice in any manner the rights of the Plan Proponents, the Debtors, or any Person in any further proceedings involving the Debtors or Plan Proponents, or (iii) constitute or be deemed to constitute an admission, acknowledgment, offer, or undertaking of any sort by the Plan Proponents, the Debtors, or any other Person.  The revocation or withdrawal of this Plan with respect to one or more Debtor(s) shall not require re-solicitation of this Plan with respect to the remaining Debtors.

12.8 *Governing Law*.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of law thereof.

12.9 *Immediate Binding Effect*.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and Plan Supplement shall be immediately effective and enforceable.

12.10 *Entire Agreement*.  On the Effective Date, this Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

12.11 *Dissolution of Eletson MI and Eletson Finance*.  On the Effective Date, Eletson MI and Eletson Finance shall be deemed dissolved without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, board of managers, or similar governing body of the Debtors; provided, Reorganized Holdings shall be authorized to file on behalf of Eletson MI and Eletson Finance certificates of dissolution and any and all corporate and company documents necessary to effectuate dissolution.

12.12 *Closing of Chapter 11 Cases*.  Upon the occurrence of the Effective Date, the Chapter 11 Cases of Eletson MI and Eletson Finance shall be deemed closed (notwithstanding the fact that the reconciliation of Claims is ongoing, the Cash in the GUC Cash Pool has not yet been distributed, and the Reorganized Equity has not yet been issued and distributed) and all contested matters relating to each Debtor, including objections or Claims, shall be administered and heard in the Chapter 11 Case of Eletson Holdings; provided, that, on and after the Effective Date, Reorganized Holdings is authorized to submit an order to the Bankruptcy Court under certification of counsel that is form and substance satisfactory to the U.S. Trustee and Plan Proponents that closes and issues a final decree for the Chapter 11 Cases of Eletson MI and Eletson Finance as of the Effective Date.

12.13    *Notice*.  All notices, requests, and demands to or upon the Plan Proponents or Reorganized Holdings, as applicable, to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by electronic transmission, when received and telephonically confirmed, addressed as follows:

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, NY 10119
Attention:  Kyle J. Ortiz, Esq. and Bryan M. Kotliar, Esq.
E-mail: kortiz@teamtogut.com, bkotliar@teamtogut.com

*Counsel for the Plan Proponents and Reorganized Holdings*

[*Signature Page Follows*]

Dated: September 1019, 2024
      New York, New York

                  Respectfully submitted,

                  TOGUT, SEGAL & SEGAL LLP

                  */s/ Kyle J. Ortiz*
                  Kyle J. Ortiz
                  Bryan M. Kotliar
                  Martha E. Martir
                  Amanda C. Glaubach
                  One Penn Plaza
                  New York, New York 10119
                  (212) 594-5000
                  Email:  kortiz@teamtogut.com
                            bkotliar@teamtogut.com
                            mmartir@teamtogut.com
                            aglaubach@teamtogut.com

                  *Counsel for the Petitioning Creditors*

**<u>Exhibit 3</u>**

**Further Revised Plan (Changed Pages Only Redline)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ELETSON HOLDINGS INC., *et al.* | Case No.: 23-10322 (JPM) |
| Debtors.[1] | (Jointly Administered) |

**PETITIONING CREDITORS' AMENDED**
**JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**OF ELETSON HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
New York, New York 10119
(212) 594-5000
Kyle J. Ortiz
Bryan M. Kotliar
Martha E. Martir
Amanda C. Glaubach

*Counsel for the Petitioning Creditors*[2]

Dated:   September 1019, 2024
         New York, New York

---

[1]   The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.  The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece.  The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

[2]   The "Petitioning Creditors" consist of Pach Shemen LLC, VR Global Partners, L.P., Alpine Partners (BVI), L.P., Gene B. Goldstein ("Goldstein"), Gene B. Goldstein, In His Capacity as Trustee of the Gene B. Goldstein and Francine T. Goldstein Family Trust ("Goldstein Trust", and together with Goldstein, "Mr. Goldstein"), Mark Millet, In His Capacity as Trustee of the Mark E. Millet Living Trust, Mark Millet, In His Capacity as Trustee of the Millet 2016 Irrevocable Trust, Robert Latter, Tracy Lee Gustafson, Jason Chamness, and Ron Pike.  While Togut, Segal & Segal LLP represents Mr. Goldstein as a "Petitioning Creditor," Mr. Goldstein is not a "Plan Proponent" for purposes of this Plan.

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION .....................................1

ARTICLE II ADMINISTRATIVE EXPENSES AND OTHER UNCLASSIFIED CLAIMS ........................................................................................................................16

    2.1    Administrative Claims ...............................................................................16
    2.2    DIP Claims. ...............................................................................................17
    2.3    Priority Tax Claims ...................................................................................18
    2.4    Professional Fee Claims ............................................................................18
    2.5    Post-Effective Date Fees and Expenses. ...................................................19
    2.6    Plan Proponents and Backstop Fees and Expenses. ..................................19

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..................................................................................................................19

    3.1    Classification in General ...........................................................................19
    3.2    Summary of Classification ........................................................................20
    3.3    Treatment of Classes ................................................................................20
    3.4    Alternative Treatment ...............................................................................24
    3.5    Special Provision Regarding Unimpaired Claims .....................................25
    3.6    Subordination of Claims. ..........................................................................25

ARTICLE IV ACCEPTANCE OR REJECTION OF THIS PLAN ...........................................25

    4.1    Acceptance by Class Entitled to Vote .......................................................25
    4.2    Presumed Acceptance of this Plan ............................................................25
    4.3    Presumed Rejection of this Plan ...............................................................25
    4.4    Elimination of Classes ..............................................................................25
    4.5    Cramdown .................................................................................................25
    4.6    Controversy Concerning Impairment .......................................................26

ARTICLE V MEANS FOR IMPLEMENTATION OF THIS PLAN .........................................26

    5.1    Substantive Consolidation ........................................................................26
    5.2    Restructuring Transactions ........................................................................27
    5.3    Sources of Cash for Distributions and Operations ....................................28
    5.4    Cancellation of Existing Securities and Agreements .................................28
    5.5    Cancellation of Certain Existing Security Interests ...................................29
    5.6    Rights Offering .........................................................................................29
    5.7    Intercompany Interests and Intercompany Claims ....................................30
    5.8    Issuance of Reorganized Equity ...............................................................30
    5.9    Exemption from Registration. ...................................................................30
    5.10    Officers and Boards of Directors. .............................................................31
    5.11    Corporate Action. .....................................................................................32

5.12    Effectuating Documents; Further Transactions ....................................... 32
5.13    Release of Liens ...................................................................................... 33
5.14    [Reserved.] ............................................................................................... 33
5.15    Preservation of Causes of Action ........................................................... 33
5.16    Exemption from Certain Transfer Taxes and Recording Fees ............... 34
5.17    Further Authorization. ............................................................................. 34
5.18    GUC Cash Pool Account. ....................................................................... 34
5.19    Employee Incentive Plan. ....................................................................... 34
5.20    Shareholders Agreement. ........................................................................ 34

ARTICLE VI DISTRIBUTIONS ................................................................................ 34

6.1    Distributions Generally .......................................................................... 34
6.2    No Postpetition or Default Interest on Claims ...................................... 35
6.3    Date of Distributions .............................................................................. 35
6.4    Distribution Record Date ........................................................................ 35
6.5    Disbursing Agent .................................................................................... 35
6.6    Delivery of Distributions ........................................................................ 35
6.7    Undeliverable Distributions and Unclaimed Property ........................... 36
6.8    Manner of Payment Under Plan ............................................................. 36
6.9    Minimum Distributions .......................................................................... 36
6.10    No Distribution in Excess of Amount of Allowed Claim ...................... 36
6.11    Allocation of Distributions Between Principal and Interest ................... 37
6.12    Setoffs and Recoupments ....................................................................... 37
6.13    Powers of Disbursing Agent ................................................................... 37
6.14    Withholding and Reporting Requirements ............................................. 37
6.15    Claims Paid or Payable by Third Parties ............................................... 38

ARTICLE VII PROCEDURES FOR DISPUTED CLAIMS ...................................... 39

7.1    Allowance of Claims .............................................................................. 39
7.2    Objections to Claims .............................................................................. 39
7.3    Estimation of Claims .............................................................................. 39
7.4    No Distributions Pending Allowance ..................................................... 40
7.5    Resolution of Claims .............................................................................. 40
7.6    Disallowed Claims ................................................................................. 40

ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ...................................................................................................................... 40

8.1    Assumption or Rejection of Executory Contracts and Unexpired Leases ............ 40
8.2    Cure of Defaults Under Assumed Contracts .......................................... 42
8.3    Claims Based on Rejection of Executory Contracts and Unexpired Leases ......... 43
8.4    Contracts and Leases Entered into After the Petition Date. ................... 43
8.5    Reservation of Rights. ............................................................................ 43

ii

ARTICLE IX CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN............43

    9.1    Conditions Precedent to the Effective Date.................................................43
    9.2    Waiver of Conditions Precedent....................................................................44
    9.3    Notice of Effective Date.................................................................................45

ARTICLE X EFFECT OF PLAN CONFIRMATION...............................................................45

    10.1    Binding Effect.................................................................................................45
    10.2    [Reserved.]......................................................................................................45
    10.3    Discharge of the Debtors...............................................................................45
    10.4    Injunction.......................................................................................................45
    10.5    Exculpation.....................................................................................................46
    10.6    Post-Confirmation Date Retention of Professionals....................................46

ARTICLE XI RETENTION OF JURISDICTION.....................................................................47

    11.1    Retention of Jurisdiction...............................................................................47
    11.2    Jurisdiction for Certain Other Agreements................................................49
    11.3    Courts of Competent Jurisdiction................................................................49

ARTICLE XII MISCELLANEOUS PROVISIONS...................................................................49

    12.1    Payment of Statutory Fees............................................................................49
    12.2    Dissolution of Creditors' Committee............................................................50
    12.3    Amendment or Modification of this Plan......................................................50
    12.4    Substantial Consummation............................................................................50
    12.5    Severability of Plan Provisions.....................................................................50
    12.6    Successors and Assigns..................................................................................50
    12.7    Revocation, Withdrawal, or Non-Consummation.........................................51
    12.8    Governing Law...............................................................................................51
    12.9    Immediate Binding Effect.............................................................................51
    12.10    Entire Agreement.........................................................................................51
    12.11    Dissolution of Eletson MI and Eletson Finance .........................................51
    12.12    Closing of Chapter 11 Cases.......................................................................52
    12.13    Notice............................................................................................................52

INTRODUCTION...........................................................................................................................1

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ...................................1

ARTICLE II ADMINISTRATIVE EXPENSES AND OTHER UNCLASSIFIED
CLAIMS.........................................................................................................................................17

    2.1    Administrative Claims...................................................................................17
    2.2    DIP Claims. ...................................................................................................18
    2.3    Priority Tax Claims .......................................................................................18
    2.4    Professional Fee Claims................................................................................19
    2.5    Post-Effective Date Fees and Expenses........................................................19

2.6      Plan Proponents and Backstop Fees and Expenses. ...................................................20

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS ..................................................................................................................................20

3.1      Classification in General ...............................................................................................20
3.2      Summary of Classification ............................................................................................20
3.3      Treatment of Classes .....................................................................................................21
3.4      Alternative Treatment ....................................................................................................25
3.5      Special Provision Regarding Unimpaired Claims .........................................................25
3.6      Subordination of Claims. ...............................................................................................25

ARTICLE IV ACCEPTANCE OR REJECTION OF THIS PLAN ...............................................26

4.1      Acceptance by Class Entitled to Vote ...........................................................................26
4.2      Presumed Acceptance of this Plan .................................................................................26
4.3      Presumed Rejection of this Plan ....................................................................................26
4.4      Elimination of Classes ...................................................................................................26
4.5      Cramdown ......................................................................................................................26
4.6      Controversy Concerning Impairment ............................................................................26

ARTICLE V MEANS FOR IMPLEMENTATION OF THIS PLAN ............................................26

5.1      Substantive Consolidation .............................................................................................26
5.2      Restructuring Transactions ............................................................................................27
5.3      Sources of Cash for Distributions and Operations ........................................................28
5.4      Cancellation of Existing Securities and Agreements ....................................................28
5.5      Cancellation of Certain Existing Security Interests.......................................................29
5.6      Rights Offering ..............................................................................................................30
5.7      Intercompany Interests and Intercompany Claims ........................................................30
5.8      Issuance of Reorganized Equity ....................................................................................30
5.9      Exemption from Registration. ........................................................................................31
5.10     Officers and Boards of Directors...................................................................................32
5.11     Corporate Action............................................................................................................33
5.12     Effectuating Documents; Further Transactions .............................................................33
5.13     Release of Liens..............................................................................................................33
5.14     [Reserved.]......................................................................................................................33
5.15     Preservation of Causes of Action ..................................................................................33
5.16     Exemption from Certain Transfer Taxes and Recording Fees .......................................34
5.17     Further Authorization. ....................................................................................................34
5.18     GUC Cash Pool Account................................................................................................35
5.19     Employee Incentive Plan. ..............................................................................................35
5.20     Shareholders Agreement................................................................................................35

ARTICLE VI DISTRIBUTIONS ..................................................................................................35

6.1      Distributions Generally..................................................................................................35
6.2      No Postpetition or Default Interest on Claims...............................................................35

iv

6.3      Date of Distributions ........................................................................35
6.4      Distribution Record Date ..................................................................35
6.5      Disbursing Agent ..............................................................................36
6.6      Delivery of Distributions ..................................................................36
6.7      Undeliverable Distributions and Unclaimed Property..........................36
6.8      Manner of Payment Under Plan ........................................................36
6.9      Minimum Distributions .....................................................................36
6.10     No Distribution in Excess of Amount of Allowed Claim .....................37
6.11     Allocation of Distributions Between Principal and Interest.................37
6.12     Setoffs and Recoupments ..................................................................37
6.13     Powers of Disbursing Agent..............................................................37
6.14     Withholding and Reporting Requirements..........................................38
6.15     Claims Paid or Payable by Third Parties............................................38

ARTICLE VII PROCEDURES FOR DISPUTED CLAIMS....................................39

7.1      Allowance of Claims .........................................................................39
7.2      Objections to Claims .........................................................................39
7.3      Estimation of Claims .........................................................................40
7.4      No Distributions Pending Allowance .................................................40
7.5      Resolution of Claims .........................................................................40
7.6      Disallowed Claims .............................................................................40

ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES.............................................................................................................41

8.1      Assumption or Rejection of Executory Contracts and Unexpired Leases............41
8.2      Cure of Defaults Under Assumed Contracts .......................................42
8.3      Claims Based on Rejection of Executory Contracts and Unexpired Leases. ........43
8.4      Contracts and Leases Entered into After the Petition Date. ................43
8.5      Reservation of Rights. ........................................................................43
ARTICLE IX CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN............44

9.1      Conditions Precedent to the Effective Date.........................................44
9.2      Waiver of Conditions Precedent .........................................................45
9.3      Notice of Effective Date.....................................................................45

ARTICLE X EFFECT OF PLAN CONFIRMATION ...................................................45

10.1     Binding Effect....................................................................................45
10.2     [Reserved.]........................................................................................45
10.3     Discharge of the Debtors ...................................................................46
10.4     Injunction..........................................................................................46
10.5     Exculpation .......................................................................................46
10.6     Post-Confirmation Date Retention of Professionals.............................47

ARTICLE XI RETENTION OF JURISDICTION .............................................................47

    11.1    Retention of Jurisdiction.................................................................................47
    11.2    Jurisdiction for Certain Other Agreements....................................................50
    11.3    Courts of Competent Jurisdiction ..................................................................50

ARTICLE XII MISCELLANEOUS PROVISIONS .........................................................50

    12.1    Payment of Statutory Fees .............................................................................50
    12.2    Dissolution of Creditors' Committee. ...........................................................50
    12.3    Amendment or Modification of this Plan .......................................................51
    12.4    Substantial Consummation ............................................................................51
    12.5    Severability of Plan Provisions......................................................................51
    12.6    Successors and Assigns .................................................................................51
    12.7    Revocation, Withdrawal, or Non-Consummation ..........................................51
    12.8    Governing Law ..............................................................................................52
    12.9    Immediate Binding Effect .............................................................................52
    12.10  Entire Agreement...........................................................................................52
    12.11  Dissolution of Eletson MI and Eletson Finance ............................................52
    12.12  Closing of Chapter 11 Cases .........................................................................52
    12.13  Notice............................................................................................................53

1.30      *Claim* means a "claim" as defined in section 101(5) of the Bankruptcy Code.

1.31      *Claims Objection Deadline* means for all Claims, the latest of: (a) 180 days after the Effective Date, subject to extension by order of the Bankruptcy Court;  (b) 90 days after the filing of a Proof of Claim or request for payment of Administrative Claims for such Claim; and (c) such other objection deadline as may be specifically fixed by this Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order.

1.32      *Class* means a category of Claims or Interests, as described in Article III.

1.33      *Committee Professionals* means (a) Dechert LLP, (b) FTI Consulting, Inc., and (c) any other Person or Entity employed by the Committee pursuant to a Final Order in accordance with sections 327 and 1103 or 363 of the Bankruptcy Code and to be compensated for services rendered or incurred through the Effective Date pursuant to sections 327, 328, 329, 330 and 331 or 363 of the Bankruptcy Code.

1.34      *Committee Professional Fees* means all fees and expenses (including, but not limited to, success fees, if any) for services rendered by all Committee Professionals in the Chapter 11 Cases through the Effective Date that the Bankruptcy Court has not denied by Final Order, regardless of whether a fee application has been filed for such fees.

1.35      *Committee Professional Fee Claims* means all Committee Professional Fees which remain unpaid as of the Effective Date.

1.33̶1.36 *Confirmation Date* means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.34̶1.37 *Confirmation Hearing* means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

1.35̶1.38 *Confirmation* means confirmation of this Plan by the Bankruptcy Court under section 1129 of the Bankruptcy Code.

1.36̶1.39 *Confirmation Order* means the order of the Bankruptcy Court, in form and substance satisfactory to the Plan Proponents, confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.37̶1.40 *Convenience Claim* means any Allowed General Unsecured Claim against the Debtors in an amount that is greater than $0 but less than or equal to the Convenience Claim Threshold Amount; *provided*, that Holders of Allowed General Unsecured Claims (including, for the avoidance of doubt, 2022 Notes Claims and Old Notes Claims) exceeding the Convenience Claim Threshold Amount may irrevocably

elect on their Ballot to have their General Unsecured Claim reduced to the Convenience Class Threshold Amount and treated as Convenience Claims.

1.38 1.41 ***Convenience Claim Cap*** means US$2,500,000.00.

1.39 1.42 ***Convenience Claim Threshold Amount*** means US$1,000,000.00.

1.40 1.43 ***Conversion Date*** means September 25, 2023, the date the Involuntary Proceedings were converted into Chapter 11 Cases.

1.41 1.44 ***Creditors' Committee*** means the official committee of unsecured creditors of the Debtors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as may be reconstituted from time to time.

1.42 1.45 ***Cure Amount*** means all costs required of the Debtors to cure any and all monetary defaults, including pecuniary losses, under an Assumed Contract pursuant to section 365 of the Bankruptcy Code, which shall be set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases or such other notice pursuant to the Disclosure Statement Order.

1.43 1.46 ***Debtors*** means, collectively, Eletson Holdings, Eletson Finance, and Eletson MI.

1.44 1.47 ***Definitive Documents*** means, collectively, the (a) Plan (including the Plan Supplement and the documents contained therein); (b) the Disclosure Statement (including all exhibits and schedules thereto); (c) New Corporate Governance Documents; (d) the Rights Offering Procedures; (e) Backstop Agreement (including all schedules and exhibits thereto); (f) the Shareholders Agreement; (g) the Confirmation Order, and (h) all other documents (including related motions, orders, agreements, instruments, schedules or exhibits) that are otherwise necessary to implement the Plan, which, in each case, shall be reasonably acceptable to the Plan Proponents and the Creditors' Committee.

1.45 1.48 ***DIP Agent*** means the administrative agent under the DIP Credit Agreement (if any) and any successor and permitted assign.

1.46 1.49 ***DIP Claim*** means any Claim (if any) in respect of the obligations of the Debtors pursuant to the DIP Documents, including all interest, fees, and other expenses owing under the DIP Documents and in accordance therewith, held by, or otherwise owing to, any or all of the DIP Agent and the DIP Lenders.

1.47 1.50 ***DIP Credit Agreement*** means the credit agreement (if any) governing the terms and conditions of the DIP Facility approved pursuant to the DIP Order by the Bankruptcy Court.

1.48 1.51 ***DIP Documents*** means the DIP Credit Agreement and related documents (if any).

1.491.52 *DIP Facility* means postpetition debtor in possession financing facility of the Debtors (if any) approved pursuant to the DIP Order by the Bankruptcy Court.

1.501.53 *DIP Lenders* means the lenders under the DIP Credit Agreement (if any) and any successors and permitted assigns.

1.511.54 *DIP Order* means, as applicable, any interim or final order(s) (if any) entered by the Bankruptcy Court approving any DIP Facility and authorizing entry into the DIP Documents.

1.521.55 *Disallowed* means all or such part of a Claim (a) that is disallowed under this Plan, by a Final Order of the Bankruptcy Court or other court of competent jurisdiction, or pursuant to a settlement or stipulation pursuant to the authority of the Debtors, with the prior written consent of the Plan Proponents, or  Reorganized Holdings; (b) is listed on the Schedules as zero or as contingent, disputed or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or otherwise deemed timely filed under applicable law or the Plan; (c) is not listed on the Schedules and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or otherwise deemed timely filed under applicable law or the Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

1.531.56 *Disbursing Agent* means (a) Reorganized Holdings or (b) such other entity designated by the Plan Proponents prior to the Effective Date or Reorganized Holdings after the Effective Date, in its capacity as a disbursing agent under Section 6.5 of the Plan.

1.541.57 *Disclosure Statement* means the disclosure statement (including all exhibits and schedules thereto) relating to this Plan, as amended, modified, or supplemented from time to time, and distributed contemporaneously herewith.

1.551.58 *Disclosure Statement Order* means one or more orders of the Bankruptcy Court, in form and substance satisfactory to the Plan Proponents, approving the Disclosure Statement as providing "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code and establishing certain dates, deadlines, and procedures related to Confirmation of this Plan.

1.561.59 *Disputed Claim* means (a) any Claim as to which the Debtors, Reorganized Holdings, or other party in interest have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtors, Reorganized Holdings, or other party in interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order; (b) any Claim scheduled by the Debtors as contingent, unliquidated, or disputed; (c) any Claim which amends a claim scheduled by the

Debtors as contingent, unliquidated, or disputed; or (d) any Claim prior to it having become an Allowed Claim.

1.57~~1.60~~ ***Distribution Date*** means a date or dates, as determined by the Disbursing Agent in accordance with the terms of this Plan, on which the Disbursing Agent makes a distribution to Holders of Allowed Claims.

1.58~~1.61~~ ***Distribution Record Date*** means the date for determining which Holders of Claims are eligible to receive distributions under this Plan, which date shall be the Confirmation Date or such other date as designated in a Final Order of the Bankruptcy Court.

1.59~~1.62~~ ***Effective Date*** means the date that is a Business Day, on which (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX of the Plan have become satisfied or waived in accordance with the Plan; and (c) the Plan is declared effective.  Without limiting the foregoing, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

1.60~~1.63~~ ***EIP*** means the employee incentive plan established by the New Board after the Effective Date, which shall provide for equity-based compensation in an amount not to exceed 5% of the Reorganized Equity, to eligible employees of Reorganized Holding's direct and indirect subsidiaries that are not Eletson Insiders.

1.61~~1.64~~ ***Eletson Finance*** means Eletson Finance (US) LLC.

1.62~~1.65~~ ***Eletson Gas Transfer*** means any purported transfer of preferred shares in Eletson Gas LLC.

1.63~~1.66~~ ***Eletson Holdings*** means Eletson Holdings Inc.

1.64~~1.67~~ ***Eletson Insiders*** means, collectively, all Persons and Entities that are "insiders" (as defined in section 101(31) of the Bankruptcy Code) of the Debtors or their Affiliates.

1.65~~1.68~~ ***Eletson Insider Claim*** means a Claim held by an Eletson Insider.

1.66~~1.69~~ ***Eletson MI*** means Agathonissos Finance, LLC.

1.67~~1.70~~ ***Entity*** means "entity" as defined in section 101(15) of the Bankruptcy Code.

1.68~~1.71~~ ***Estate(s)*** means, individually, the estate of any of the Debtors and, collectively, the estates of all of the Debtors created under section 541 of the Bankruptcy Code.

1.69~~1.72~~ ***Exchange Offer*** means the transaction that occurred on May 25, 2018 wherein Old Notes were exchanged for 2022 Notes.  For the avoidance of doubt, Old Notes that were not exchanged in the Exchange Offer are "Old Notes."

8

1.70 1.73 *Exculpated Parties* means, and in each case solely in its capacity as such, (a) the Plan Proponents, (b) the Creditors' Committee and all members thereto, and (c) with respect to each of the foregoing Entities and Persons in the foregoing clauses (a) through (b), each of their Related Parties, solely to the extent such Related Parties are fiduciaries of the Estates or otherwise to the fullest extent provided for pursuant to section 1125(e) of the Bankruptcy Code.

1.71 1.74 *Executory Contract* means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.72 1.75 *Exhibit* means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement, as amended, modified, or supplemented from time to time.

1.73 1.76 *Existing Equity Interests* means all existing equity Interests (other than Intercompany Interests), including without limitation, (a) any and all Parent Equity Interest, and (b) all common and preferred stock and all rights to purchase common and preferred stock in each Debtor.

1.74 1.77 *Final Order* means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request re-argument or further review or rehearing has expired and no appeal, petition for certiorari, or request for re-argument or further review or rehearing has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for re-argument, further review, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal, petition for certiorari, or request for re-argument, further review, or rehearing has been or can be taken or granted.

1.75 1.78 *General Bar Date* means December 18, 2023 at 4:00 p.m. (prevailing Eastern Time), the date by which each Holder of a Claim against any of the Debtors must file a Proof of Claim unless such Claim falls within one of the exceptions set forth in the Bar Date Order.

1.76 1.79 *General Unsecured Claim* means any Claim against any Debtor, but excluding any Administrative Claims, DIP Claims, Professional Fee Claims, U.S. Trustee Fees, Priority Tax Claims, Other Priority Claims, Convenience Claims, OCM Guaranty Claims, Subordinated Claims, or Intercompany Claims, as of the Petition Date that is neither secured by collateral nor entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court.  For the avoidance of doubt, any General Unsecured Claims (including, for the avoidance of doubt, 2022 Notes Claims and Old Notes Claims) that exceed the Convenience Claim Threshold Amount is a "General Unsecured Claim," unless, pursuant to Section 3.3(d)(i) of the Plan, such Holder irrevocably elects to have its General Unsecured Claim treated as a Convenience Claim on its Ballot.

9

1.77<u>1.80</u> *General Unsecured Claimholder* means a Holder of an Allowed General Unsecured Claim.

1.78<u>1.81</u> *Governmental Unit* has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.79<u>1.82</u> *GUC Cash Pool* means Cash in the amount of (a) US$13,500,000.00 *plus*, (b) to the extent the aggregate amount of Professional Fee Claims and DIP Claims filed in the Chapter 11 Cases with the Bankruptcy Court (i) do not exceed US$24,200,000.00, $3,000,000.00 or (b) exceed US$24,200,000.00, but are less than US$27,200,000.00, the difference between (A) US$27,2000,000.00 and (B) the aggregate amount of Professional Fee Claims and DIP Claims filed in the Chapter 11 Cases with the Bankruptcy Court.  For the avoidance of doubt, distributions to Holders of Convenience Claims shall not be made from the GUC Cash Pool or GUC Cash Pool Account.

1.80<u>1.83</u> *GUC Cash Pool Account* means an escrow account (having terms reasonably acceptable to the Creditors' Committee) identified by the Plan Proponents and established on the Effective Date that shall be funded with the GUC Cash Pool, which the Disbursing Agent will administer for the benefit of Allowed General Unsecured Claims electing Cash, in accordance with the terms of the Plan and the Confirmation Order.

1.81<u>1.84</u> *Holder* means a holder of a Claim or Interest, as applicable.

1.82<u>1.85</u> *Impaired* means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.83<u>1.86</u> *Indenture Trustees* means, collectively, the 2022 Notes Trustee and the Old Notes Trustee.

1.84<u>1.87</u> *Intercompany Claim* means any and all Claims of a Debtor against another Debtor or non-Debtor Affiliate.

1.85<u>1.88</u> *Intercompany Interest* means an Interest in a Debtor held by another Debtor; *provided*, for the avoidance of doubt, Parent Equity Interests are not Intercompany Interests.

1.86<u>1.89</u> *Interest* means any equity security, including a limited liability company membership interest, as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors, together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

1.87<u>1.90</u> *Initial Backstop Party* means Pach Shemen or such affiliate or designee identified by Pach Shemen, as backstop to the Rights Offering pursuant to the Backstop Agreement.

~~1.88~~1.91 *Involuntary Petitions* means the chapter 7 petitions filed by certain of the Petitioning Creditors against each of the Debtors.

~~1.89~~1.92 *Involuntary Proceedings* means (a) when used with reference to a particular Debtor, the case under chapter 7 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court from the Petition Date through the Conversion Date and (b) when used with reference to all of the Debtors, the procedurally consolidated and jointly administered cases under chapter 7 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court from the Petition Date through the Conversion Date.

~~1.90~~1.93 *IRS* means the Internal Revenue Service.

~~1.91~~1.94 *Levona Claims* has the meaning set forth in Section 5.10(b) of the Plan.

~~1.92~~1.95 *Levona Bankruptcy Claims* means the Claims asserted by Levona Holdings Ltd. against Eletson Holdings in its proof of claim No. 21-1 filed in the Chapter 11 Cases (as amended, amended and restated, modified, or supplemented).

~~1.93~~1.96 *Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

~~1.94~~1.97 *Mr. Goldstein* means, together, Gene B. Goldstein and Gene B. Goldstein, In His Capacity as Trustee of the Gene B. Goldstein and Francine T. Goldstein Family Trust.

~~1.95~~1.98 *New Board* means the initial board of directors of Reorganized Holdings.

~~1.96~~1.99 *New Corporate Governance Documents* means, (a) Amended By-Laws, (b) Amended Certificate of Incorporation, (c) Shareholders Agreement, and (d) any other applicable material governance and/or organizational documents of Reorganized Holdings.

~~1.97~~1.100 *OCM Guaranty Claim* means any Claim arising from or related to the guarantees executed by Eletson Holdings in favor of the obligations of each of: Fourni Special Maritime Enterprises; Kastos Special Maritime Enterprises; Kimolos II Special Maritime Enterprise; Kinaros Special Maritime Enterprise; OCM Maritime Rhine LLC; OCM Maritime Yukon LLC; OCM Maritime Autumn LLC; and OCM Maritime Thames LLC.

~~1.98~~1.101 *Old Notes* means those 9.625% First Preferred Ship Mortgage Notes Due 2022, issued by Eletson Holdings and Eletson Finance pursuant to the Old Notes Indenture, which were not exchanged into 2022 Notes pursuant to the Exchange Offer.

~~1.99~~1.102 *Old Noteholder* means a Holder of an Old Note.

11

1.1001.103     *Old Notes Claim* means a Claim arising under or in connection with the Old Notes Documents, including claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges arising or related thereto.

1.1011.104     *Old Notes Documents* means the Old Notes Indenture and all related agreements and documentation executed by any of the Debtors (as amended, amended and restated, modified, or supplemented from time to time).

1.1021.105     *Old Notes Indenture* means that certain Indenture, dated as of December 19, 2013, among Eletson Holdings and Eletson Finance, as co-issuers, the guarantor parties thereto, and the Old Notes Trustee, as trustee and collateral trustee (as amended, amended and restated, modified, or supplemented from time to time).

1.1031.106     *Old Notes Trustee* means Deutsche Bank Trust Company Americas, in its capacity as trustee and collateral trustee under the Old Notes Indenture and Old Notes Documents, including any successor and permitted assigns thereto.

1.1041.107     *Other Priority Claim* means any Claim against any Debtor accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim, DIP Claim, or Priority Tax Claim.

1.1051.108     *Pach Shemen* means Pach Shemen LLC.

1.1061.109     *Parent Equity Interest* means any Interest in Eletson Holdings.

1.1071.110     *Person* means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, committee, or other entity.

1.1081.111     *Petition Date* means March 7, 2023, the date on which the Involuntary Petitions were filed against each of the Debtors.

1.1091.112     *Petitioning Creditors* means, collectively, Pach Shemen, VR Global Partners, L.P., Alpine Partners (BVI), L.P., Gene B. Goldstein, Gene B. Goldstein, In His Capacity as Trustee of the Gene B. Goldstein and Francine T. Goldstein Family Trust, Mark Millet, In His Capacity as Trustee of the Mark E. Millet Living Trust, Mark Millet, In His Capacity as Trustee of the Millet 2016 Irrevocable Trust, Robert Latter, Tracy Lee Gustafson, Jason Chamness, and Ron Pike.

1.1101.113     *Plan* means this chapter 11 plan of reorganization, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be altered, amended, supplemented, or modified from time to time.

1.1111.114     *Plan Proponents* means the Petitioning Creditors other than Mr. Goldstein.

1.1121.115     *Plan Proponents Fees and Expenses* means all of the Plan Proponents' reasonable and documented professional fees and out-of-pocket expenses

12

incurred in connection with the Chapter 11 Cases, to the extent not previously paid by the Debtors or any third party.

1.1131.116 ***Plan Supplement*** means any supplement to this Plan, and the compilation of documents, forms of documents, and Exhibits to this Plan, as amended, modified, or supplemented from time to time, initial drafts of which shall be filed by the Plan Proponents, which shall include, (a) the Amended By-Laws, (b) the Amended Certificate of Incorporation, (c) the Schedule of Assumed Executory Contracts and Unexpired Leases, (d) the Schedule of Retained Causes of Action, and (e) the Shareholders Agreement, and, (f) to the extent known at the time of filing, identification of the New Board.

1.1141.117 ***Priority Tax Claim*** means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.1151.118 ***Pro Rata Share*** means the proportion that an Allowed Claim or Interest, as applicable, in a particular Class or Classes bears to the aggregate amount of Allowed Claims within such Class or Classes.

1.1161.119 ***Professional*** means any Entity employed in these Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, 363 of the Bankruptcy Code or otherwise.

1.1171.120 ***Professional Fee Claim*** means a Claim by a Professional seeking an award by the Bankruptcy Court for compensation for services rendered (including transaction fees and success fees) or reimbursement of expenses incurred after the Petition Date and prior to and including the Effective Date, under sections 328, 330, 331 or 503(b)(2) of the Bankruptcy Code, as applicable.

1.1181.121 ***Professional Fee Claims Bar Date*** means the deadline for filing all applications for Professional Fee Claims on a final basis, which shall be thirty (30) days after the Effective Date.

1.1191.122 ***Proof of Claim*** means a written proof of Claim filed against any Debtor in the Chapter 11 Cases.

1.1201.123 ***Reinstated*** means, with respect to any Claim or Interest, that such Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

1.1211.124 ***Related Parties*** means, subject to any exclusions expressly set forth in the Plan, (a) any Entity or Person; (b) such Entity's or Person's predecessors, predecessors in interest, successors and assigns, parents, owners, subsidiaries, affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, sub-advisors, or managers; (c) with respect to each of the foregoing in clauses (a) and (b), such Entity's or Person's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly, and any fund managers,

fiduciaries, or other agents with any involvement related to the Debtors), members, partners, employees, agents, sub-agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, managers, investment managers, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's or Person's respective heirs, executors, estates, servants, and nominees.

1.1221.125 ____ ***Reorganized Equity*** means common shares in Reorganized Holdings issued and outstanding on the Effective Date.

1.1231.126 ____ ***Reorganized Holdings*** means reorganized Eletson Holdings from and after the Effective Date.

1.1241.127 ____ ***Requisite Backstop Parties*** means, collectively, (a) the Initial Backstop Party and (b) as of any date of determination, Backstop Parties holding more than 50% of the aggregate commitments to backstop, on a fully committed basis, the Rights Offering.

1.1251.128 ____ ***Retained Causes of Action*** means certain Causes of Action of the Debtors or the Estates that are not released or waived pursuant to this Plan or a Final Order of the Bankruptcy Court.  For the avoidance of doubt, the Retained Causes of Action shall include Avoidance and Other Actions and all claims and Causes of Action related to or arising under the Eletson Gas Transfer.

1.1261.129 ____ ***Rights Offering*** means that certain up to US$53,500,000.00 equity rights offering pursuant to which each General Unsecured Claimholder is entitled to receive its share of Rights Offering Subscription Rights to acquire up to 75% of the Reorganized Equity (subject to dilution of account of the Backstop Premium and the EIP), at a price that represents an implied 14.0% discount to the mid-point of the plan equity value of up to US$62,058,088.00, in accordance with the Rights Offering Procedures, which shall be backstopped by the Backstop Parties.

1.1271.130 ____ ***Rights Offering Procedures*** means the procedures, in form and substance satisfactory to the Plan Proponents, for the implementation of the Rights Offering, which shall be approved by the Bankruptcy Court.

1.1281.131 ____ ***Rights Offering Procedures Order*** means one or more orders of the Bankruptcy Court, in form and substance satisfactory to the Plan Proponents, approving, among other things, the Rights Offering Procedures, which order(s) may be the Backstop Order, the Disclosure Statement Order, and/or the Confirmation Order.

1.1291.132 ____ ***Rights Offering Subscription Rights*** means the subscription rights to purchase the Reorganized Equity offered to General Unsecured Claimholders pursuant to the Rights Offering in accordance with the Rights Offering Procedures.

1.1301.133 ____ ***Schedule of Assumed Executory Contracts and Unexpired Leases*** means any schedule (including any amendments or modifications thereto) of certain Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Debtors, with the prior written consent of the Plan Proponents,

pursuant to this Plan, as set forth in the Plan Supplement, as may be amended by the Plan Proponents, from time to time prior to the Confirmation Date.

1.131 1.134    ***Schedule of Retained Causes of Action*** means the schedule identifying the Retained Causes of Action, which shall be included in the Plan Supplement.

1.132 1.135    ***Schedules*** means, collectively, the schedules of assets and liabilities and statements of financial affairs filed by the Debtors [Docket Nos. 216-221, 340] pursuant to section 521 of the Bankruptcy Code and the Bankruptcy Rules, as the same may be amended, supplemented, or modified from time to time.

1.133 1.136    ***SEC*** means the United States Securities and Exchange Commission.

1.134 1.137    ***Section 510(b) Claim*** means any Claim against any Debtor arising from rescission of a purchase or sale of a security of any Debtor or an Affiliate of any Debtor, for damages arising from the purchase or sale of such security, or for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such a Claim.

1.135 1.138    ***Secured Claim*** means a Claim against a Debtor (other than Administrative Claims, DIP Claims, Priority Tax Claims, Other Priority Claims, OCM Guaranty Claims, Subordinated Claims, or Intercompany Claims), that is secured by a Lien on property in which a Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) or 1129(b) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

1.136 1.139    ***Securities Act*** means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended.

1.137 1.140    ***Shareholders Agreement*** means, any shareholder agreement, equity holders agreement, operating agreement, or other similar agreement for Reorganized Holdings to which holders of the Reorganized Equity shall become party on the Effective Date governing, among other things, the relative rights of Holders of the Reorganized Equity, in form and substance satisfactory to the Plan Proponents, the form of which shall be included in the Plan Supplement.

1.138 1.141    ***Subordinated Claim*** means, collectively, Section 510(b) Claims and Eletson Insider Claims.

1.139 1.142    ***Subsequent Backstop Parties*** means any General Unsecured Claimholder that joins the Backstop Agreement in accordance with the Backstop Order.

1.140 1.143    ***Unexpired Lease*** means a lease to which one of more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.141 1.144    ***Unimpaired*** means a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.142 1.145    ***U.S. Trustee*** means the Office of the United States Trustee for the Southern District of New York.

1.143 1.146    ***U.S. Trustee Fees*** means all fees, interest, and charges assessed against the Estates by the U.S. Trustee pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717.

(b)    *Rules of Interpretation*.  For purposes of this Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that Person's or Entity's successors and assigns; (e) all references in this Plan to Sections and Articles are references to Sections and Articles of or to this Plan; (f) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) "including" and "include" means "including without limitation" and "include without limitation", respectively; and (k) with reference to any distribution under this Plan, "on" a date means on or as soon as reasonably practicable after that date.

(c)    *Computation of Time*.  In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006(a) shall apply.

(d)    *Exhibits*.  All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court.  Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to the Plan Proponents.  Upon their filing, the Exhibits may be inspected (a) in the office of the clerk of the Bankruptcy Court or its designee during normal business hours; or (b) on the Bankruptcy Court's website at

16

exemption from the registration requirements of the Securities Act and other applicable law.

(c)    Any securities issued under the EIP will be issued pursuant to a registration statement or available exemption from registration under the Securities Act and other applicable law.

(d)    To the extent securities were offered prior to the filing of this Plan, such securities were offered in reliance on the exemption provided by section 4(a)(2) of the Securities Act or the safe harbor provided by Regulation S under the Securities Act.

5.10    ***Officers and Boards of Directors.***

(a)    The New Board shall consist of three directors: (i) one director selected by the Plan Proponents, (ii) one director selected by the Plan Proponents, subject to consent of the Creditors' Committee (not to be unreasonably withheld, conditioned, or delayed), and (iii) one director designated as "independent" selected by the Creditors' Committee (the "***Independent Director***").  The identities of directors on the New Board shall be set forth in the Plan Supplement, to the extent known at the time of filing, in accordance with 11 U.S.C. § 1129(a)(5).

(b)    The New Corporate Governance Documents will (i) prohibit the issuance of non-voting equity securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code, and (ii) provide that any decisions related to claims and causes of action with Levona Holdings, Ltd. and its affiliates, including Pach Shemen (the "***Levona Claims***"), are required to be made by the Independent Director; *provided,* that if the New Board disagrees with any of the decisions of the Independent Director with respect to the Levona Claims, the New Board can refer the dispute to a final offer arbitrator (also known as a baseball arbitrator) or an early neutral evaluator—in each case, governed by the International Centre for Dispute Resolution and the American Arbitration Association—to decide; *provided, further,* the majority of Reorganized Holdings' shareholders other than Pach Shemen (or any Reorganized Holdings' shareholders affiliated with Pach Shemen) may settle the Levona Claims or direct the actions of the Independent Director with respect to the Levona Claims. The costs of any such arbitrations or evaluations shall be borne by Reorganized Holdings.

(c)    The members of the governing body of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to Reorganized Holdings on or after the Effective Date and each such member will be deemed to have resigned or shall otherwise cease to be a director or manager of the applicable Debtor on the Effective Date.  Commencing on the Effective Date, each of the directors of Reorganized Holdings shall serve pursuant to the terms of the New Corporate Governance Documents and may be replaced or removed in accordance with such organizational documents.

11.2    ***Jurisdiction for Certain Other Agreements***.  This Plan shall not modify the jurisdictional provisions of the documents contained in the Plan Supplement.  Notwithstanding anything herein to the contrary, on and after the Effective Date, the Bankruptcy Court's retention of jurisdiction pursuant to this Plan shall not govern the enforcement or adjudication of any rights or remedies with respect to or as provided in the documents in the Plan Supplement and the jurisdictional provisions of such documents shall control.

11.3    ***Courts of Competent Jurisdiction.***  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matters arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1    ***Payment of Statutory Fees***.  All U.S. Trustee Fees payable after the Effective Date, if any, shall be paid by Reorganized Holdings on behalf of each Debtor, as applicable, until the closing of the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code.  Reorganized Holdings shall file and serve on the U.S. Trustee quarterly reports of the disbursements made, within 15 days after the conclusion of each such period, until the Chapter 11 Cases are converted, dismissed, or closed by entry of a final decree.  Any such reports shall be prepared consistent with (both in terms and format) of the applicable Bankruptcy Court and U.S. Trustee Guidelines for such matters.

12.2    ***Dissolution of Creditors' Committee.***  ~~After the Effective Date, the Creditor's Committee's functions shall be restricted and shall not be heard on any issue except applications filed pursuant to sections 330 and 331 of the Bankruptcy Code.  Upon resolution of all matters set forth in the prior sentence, the Creditors' Committee shall dissolve, and the members (including any *ex officio* members) thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases.~~  Upon the Effective Date, the Creditors' Committee shall dissolve automatically whereupon its members, Committee Professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to: (i) obligations arising under confidentiality agreements, joint interest agreements and protective orders entered during the Chapter 11 Cases which shall remain in full force and effect according to their terms; (ii) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code for Committee Professional Fee Claims; (iii) any pending motions or proceedings to which the Creditors' Committee is a party (including any related appeals in connection therewith); and (iv) any pending motions, or any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order, including related appeals.  The Creditors' Committee members and the Committee Professionals shall not be entitled to compensation and reimbursement of expenses for services rendered after the Effective Date, except for

services rendered in connection with the items listed in the preceding sentence after the Effective Date.

12.3     ***Amendment or Modification of this Plan***.  Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Plan Proponents reserve the right to alter, amend, or modify this Plan at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan; *provided, that*, any modification to the Plan (or the Definitive Documents' implementation of the Plan) that materially and adversely affects the treatment of Holders of General Unsecured Claims pursuant to the Plan shall require the reasonable consent (not to be unreasonably withheld, conditioned, or delayed) of the Creditors' Committee.  A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

12.4     ***Substantial Consummation***.  On the Effective Date, this Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

12.5     ***Severability of Plan Provisions***.  If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.6     ***Successors and Assigns***.  This Plan shall be binding upon and inure to the benefit of the Debtors, and their respective successors and assigns, including Reorganized Holdings.  The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

12.7     ***Revocation, Withdrawal, or Non-Consummation***.  The Plan Proponents reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization.  If the Plan is revoked or withdrawn as to any or all of the Debtors, or if Confirmation or consummation of this Plan does not occur as to any or all of the Debtors, then (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan (including,

51

Dated: September 1019, 2024
New York, New York

Respectfully submitted,

TOGUT, SEGAL & SEGAL LLP

*/s/ Kyle J. Ortiz*
Kyle J. Ortiz
Bryan M. Kotliar
Martha E. Martir
Amanda C. Glaubach
One Penn Plaza
New York, New York 10119
(212) 594-5000
Email:  kortiz@teamtogut.com
        bkotliar@teamtogut.com
        mmartir@teamtogut.com
        aglaubach@teamtogut.com

*Counsel for the Petitioning Creditors*