# EXHIBIT 7

**ACTION BY WRITTEN CONSENT**

**OF THE STOCKHOLDERS**

**OF ELETSON HOLDINGS INC.**

The undersigned stockholders of Eletson Holdings Inc., a Liberian corporation (the "***Corporation***"), pursuant to the Business Corporation Act of 1977 of the Republic of Liberia, hereby adopt and approve the following resolutions and the taking of the actions referred to in such resolutions:

1. <u>***Amendment and Restatement of Certificate of Incorporation***</u>

   **WHEREAS**, on October 25, 2024 and November 4, 2024, the United States Bankruptcy Court for the Southern District of New York (the "***Court***") entered an opinion and order (Docket Nos. 1212, 1223) confirming the Petitioning Creditors' Amended Joint Chapter 11 Plan of Reorganization of Eletson Holdings Inc. and its Affiliated Debtors (Docket No. 1132) (as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms thereof, the "***Plan***") in the jointly administered chapter 11 cases for the Corporation, Eletson Finance (US) LLC, and Agathonissos Finance LLC, captioned, In re Eletson Holdings Inc., Case No. 23-10322 (JPM) (Bankr. S.D.N.Y.);

   **WHEREAS**, the "Effective Date" (as defined in the Plan) of the Plan occurred on November 19, 2024;

   **WHEREAS**, on the Effective Date, (i) pursuant to Section 3.3(i) of the Plan, all existing equity interests in the Company were "discharged, cancelled, released, and extinguished," (ii) pursuant to Section 5.8 of the Plan, the Company issued new equity interests in accordance with the Plan, and (iii) pursuant to Section 5.10(c) of the Plan, the members of the board of directors of the Company prior to the Effective Date have "no continuing obligations to the Company on or after the Effective Date and each such member will be deemed to have resigned or shall otherwise cease to be a director or manager of the Company on the Effective Date";

   **WHEREAS**: according to the Plan, the form of amended and restated Articles of Incorporation attached hereto as Exhibit A (the "***Restated Articles***") replaces the existing Articles of Incorporation of the Corporation as of the Effective Date;

   **NOW, THEREFORE, BE IT RESOLVED**, that, in addition to the adoption of the Restated Articles under the Plan, the Restated Articles be, and hereby are, approved, adopted, ratified and confirmed in all respects; and

   **RESOLVED**, that, in addition to the authority provided under the Plan, the officers of the Company are hereby authorized and directed to take all such action as such officers deem necessary or desirable to file the Restated Articles with the Republic of Liberia with such changes as may be required and to cause the Restated Articles to become registered.

2. <u>**Removal of Directors**</u>

   **WHEREAS**, the terms of the Plan include the removal of all previous directors of the board of directors (the "***Board***"), including those individuals specified below, from their role as directors of the Board;

**NOW, THEREFORE, BE IT RESOLVED,** in addition to their removal from the Board under the terms of the Plan, effective as of the Effective Date, all previous directors of the Board, including the following individuals, are hereby removed as directors of the Board:

| Niki Zilakou | Provisional Director |
|---|---|
| Vasileios A. Chadzieleftheriadis | Director |
| Adrianos Psomadakis-Karastamatis | Provisional Director |
| Emmanouil S. Andreoulakis | Director |
| Konstantinos A. Chadzieleftheriadis | Director |
| Ioannis N. Zilakos | Director |
| Eleni Giannakopoulou | Provisional Director |
| Panos Paxinos | Provisional Director |

3. **Appointment of Directors**

**WHEREAS**, the terms of the Plan include the appointment of the following individuals as directors of the Board;

**NOW, THEREFORE, BE IT RESOLVED**, per the terms of the Plan and effective as of the Effective Date, the following individuals are each appointed as a director of the Board to serve until such individual's successor shall have been duly elected and qualified, or until such individual's earlier resignation or removal:

| Adam Spears | Director |
|---|---|
| Leonard J. Hoskinson | Director |
| Timothy B. Matthews | Director |

4. **Additional Filings Resolution**

**NOW, THEREFORE, BE IT RESOLVED**, without derogating from the authority of the Court and the effectiveness of the Plan as of the Effective Date, the officers of the Corporation are authorized and directed to make such filings and applications, to execute and deliver such documents and instruments, and to do such acts and things as any such officer deems necessary or appropriate in order to implement the foregoing resolutions.

5. **Omnibus Resolutions**

**NOW, THEREFORE, BE IT RESOLVED**, the officers of the Corporation are authorized and directed to take such further action and execute such additional documents as any such officer deems necessary or appropriate to carry out the purposes of the above resolutions.

**RESOLVED FURTHER**, that in the event any part of the above resolutions cannot be carried out

or implemented for any reason, such part shall be deemed severable and shall not affect the enforceability or implementation of the remaining provisions of the above resolutions.

*[Remainder of page intentionally left blank]*

This Action by Written Consent may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, Uniform Electronic Transactions Act or other applicable law) or other transmission method and will be deemed to have been duly and validly delivered and be valid and effective for all purposes. The undersigned have executed this Action by Written Consent of the Stockholders as of the date set forth opposite such stockholders' names.

Date of Execution: November 19, 2024

**STOCKHOLDER:**

**Pach Shemen LLC**

By: _____
Name: Mark Lichtenstein
Title: Manager

[Signature Page to Stockholder Consent]

This Action by Written Consent may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, Uniform Electronic Transactions Act or other applicable law) or other transmission method and will be deemed to have been duly and validly delivered and be valid and effective for all purposes. The undersigned have executed this Action by Written Consent of the Stockholders as of the date set forth opposite such stockholders' names.

Date of Execution: November 19, 2024

**STOCKHOLDER:**

**Mulberry Street Ltd.**

By: BG Management Limited

By: _____
Name: Jason Jagessar
Title: Authorized Signatory

By: _____
Name: Engelbert van Aalst
Title: Authorized Signatory

[Signature Page to Stockholder Consent]

**EXHIBIT A**

Restated Certificate

**ARTICLES OF AMENDMENT**
**AND RESTATED ARTICLES OF INCORPORATION**
**OF**
**ELETSON HOLDINGS INC.**

I, the undersigned, being the duly appointed, qualified and acting Authorized Signatory of Eletson Holdings Inc. (the "**Corporation**"), a Corporation organized under the Laws of the Republic of Liberia on the 4th day December, 1985, with registration number C-40191, hereby **CERTIFY THAT:**

1. The name of the corporation is Eletson Holdings Inc.

2. The Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 4th day December, 1985.

3. Previous Amendments to the Articles of Incorporation were filed on February 15, 1994, June 29, 2007 and June 21, 2018.

4. Article II of the Articles of Incorporation presently reads as follows:

PURPOSE

The purpose of the Corporation is to engage in any lawful activity for which corporations may now or hereafter be organised under the Liberian Business Corporation Act.

Is hereby amended to read as follows:

ARTICLE II

The address of the registered office of the Corporation is 80 Broad Street, Monrovia, Liberia. The name of its registered agent shall be the LISCR Trust Company.

5. Article III of the Articles of Incorporation presently reads as follows:

ADDRESS

The registered address of the Corporation in Liberia shall be 80 Broad Street, Monrovia, Liberia. The name of the Corporation's registered agent at such address shall be The LISCR Trust Company.

Is hereby amended to read as follows:

ARTICLE III

The nature of the business or purposes to be conducted or promoted is to engage in any lawful act or activity for which corporations may be organized under the Business Corporation Act.

6. Article IV of the Articles of Incorporation presently reads as follows:

Article IV CLASSES OF COMMON STOCK of the Restated Articles of Incorporation presently provides that the Corporation shall have two classes of common stock: Class A (the "Class A Shares") and Class C (the "Class C Shares"), the holders thereof being hereinafter called "Class A Holders" and "Class C Holders", respectively. The authorised number and description of the rights of such respective classes of common stock are as follows:

*Section 1: Aggregate Number of Shares.*

(a) The aggregate number of Class A Shares that the Corporation is authorised to issue is ten thousand (10,000) registered shares without par value,

(b) Upon filing of these Articles of Amendment with the Ministry of Foreign Affairs, the outstanding Class A and Class B Shares will be converted into new Class A Shares at a rate of conversion of one (1) (previous) Class A or Class B (as the case may be) Share to ten (10) (new) Class A Shares.

(c) The aggregate number of Class C Shares that the Corporation is authorised to issue is one hundred (100) registered shares without par value. Class C Shares shall be issued only to those persons deemed, in the sole discretion of the Board of Directors of the Corporation, to be senior management of the Corporation and/or any company wholly owned and controlled by such person, Any and all Class C Shares may be freely redeemed from time to time in the sole discretion of the Board of Directors upon payment by the Corporation to the holder of Class C shares of $100 per share and such other amounts, if any, as the Board of Directors has declared are payable at such time in accordance with the provisions of Section 2 (d) of this Article IV,

*Section 2: Dividend Rights*

(a) The Class A Holders shall be entitled to receive pro rata, when and as declared by the Board of Directors of the Corporation out of funds legally available for the purpose, annual cumulative dividends, as hereinafter provided (the **"Mandatory Dividend"),** payable in cash within 15 days from the date of the Annual General Meeting in each year, less the amount of any interim dividend previously paid by the Corporation in respect of the same fiscal year. The Mandatory Dividend shall be equal to the greater of (an): twenty five percent (25%) of Net Income for the year (as defined from time to time in the Corporation's accounting policies) adjusted to include only twenty percent (20%) of any Net Capital Gain (defined as the aggregate of capital gains less capital losses for any calendar year on ships, investments and other fixed assets) i.e. eighty percent (80%) of Net Capital Gain will be excluded from the calculation of adjusted Net Income, but all Net Capital Losses (if capital losses exceed capital gains) will he included; and **(bb)** Five Million United States Dollars (U.S.$5,000,000),

(b) To the extent permitted by law, the Shareholders of the Corporation, by written resolution, approved by the majority provided for in Article IV.4(a) hereof, may (aa) declare and require the Corporation from time to time to make interim dividend payments, in respect of a given fiscal year, and/or **(bb)** declare and require the Corporation to make dividend payments in amounts greater than the Mandatory Dividend.

(c) In the event that the Corporation does not pay a minimum annual aggregate dividend of at least Five Million United Stales Dollars (U.S.$5,000,000), the difference between **(a)** the aggregate amount of any dividends, if any, declared and actually paid in any calendar year and **(b)** Five Million United States Dollars (U,S,$5,000,000) shall accumulate, without interest, and be paid out, pro rata, to the Class A Holders on the earliest dole on which the Directors of the

Corporation determine that any such payment of accumulated dividends may lawfully and prudently be made; provided, however, that in the event that the full amount of such accumulated dividends is not paid within any two year period immediately after any portion of such accumulated amount first accrued, no further dividends shall thereafter accumulate on the Class A Shares until such time as all cumulative dividends which accrued during any such two year period have been paid in full.

(d) The Class C Holders shall be entitled to receive, when and ns declared by the Board of Directors of the Corporation out of funds legally available for the purpose, annual non- cumulative dividends as hereinafter provided in this paragraph (d), payable in cash on dales to be determined by the Board of Directors of the Corporation in the following amount: a percentage, to be determined by the Board of Directors of the Corporation, of the amount by which Net Income (as defined from time to time in the Corporation's accounting policies) for any calendar year (including all capital gains and losses) exceeds a specified level of return to be determined by the Board of Directors of the Corporation on the overage of the total stockholders' equity (as defined from time to time in the Corporation's accounting policies) of the Corporation at the beginning and end of such calendar year; *provided, however,* that no such dividend shall be paid in any year to the Class C Holders, if in any such year, the Class A Holders have not been paid in full all dividends payable to them in accordance with the provisions of Articles IV.2(a) and IV.2(c) of these Articles of Incorporation.

*Section 3: Liquidation Rights*

(a) Upon dissolution of the Corporation pursuant to Chapter 11 of the Liberian Business Corporation Act, the Class A Holders shall be entitled to receive a distribution of all remaining assets of the Corporation *pari passu.*

(b) Upon dissolution of the Corporation pursuant to Chapter 11 of the Liberian Business Corporation Act, the Class C Holders shall have no right to receive a distribution of any remaining assets of the Corporation.

*Section 4: Voting*

(a) Each Class A Holder shall be entitled to one vote per share on all matters with respect to which any Shareholder vote is solicited. Only the registered owners of Class A shares, or such owners' duly appointed proxies, shall have the right to participate in any meeting of Shareholders of the Corporation and to vote such *shares; provided, however,* that (aa) each Class A Holder may appoint only one proxy for all Class A Shares held by it, and (bb) such proxy must vote all shares represented by it in the same manner; and (cc) only the following shall be eligible to hold and vote any such proxy: (1) Original Shareholders (2) members of any of the Families (as such terms are defined in Article IV.4(c) hereof), and (3) any other person approved by the holders of not less than sixty five percent (65%) of Class A Shares, excluding those shares which are the subject of such proxy.

(b) Except as otherwise hereinafter provided all matters coming before any meeting of the Shareholders of the Corporation shall be decided by the vole of Shareholders entitled to cast sixty five percent (65%) of the total number of votes entitled to be cast at any such meeting; *provided, however;* that (aa) a unanimous (I 00%) vole of the Class A Holders entitled to vote shall be required to approve any and all amendments of the Articles of Incorporation and/or By-Laws of the Corporation, except as otherwise provided with respect to matters set forth in (bb) below, and **(bb)** as provided **in** ByLaws Article II (4) (bb) the investment in/or commencement of any new kind of business other than that currently contemplated by the Corporation and/or the dissolution and/or the sale of all or substantially all assets or shipping

assets (i.e. vessels or shares in shipowning corporations) of the Corporation, and/or the merger, consolidation or the like of the Corporation with another entity that is not a wholly owned subsidiary of the Corporation at the time of such merger, consolidation or the like shall be decided by the vote of Class A Holders entitled to cast eighty five percent (85%) of the total number of votes entitled to be cast at any such meeting, In the event that, upon the effectiveness of any proposed merger , consolidation or the like, the Corporation is not to be the surviving entity and the surviving entity is not to be an entity whose shares are publicly held, then upon the request of a dissenting Shareholder, the shareholders voting for approval of such merger, consolidation or the like, shall have the obligation, on or before the date of such proposed transaction, to acquire the shares of such dissenting Shareholder at a price equal to 110% of the price per share payable to approving Shareholders by the entity seeking to effect such merger, consolidation or the like with the Corporation. This obligation to acquire the shares from the dissenting Shareholders shall not be in derogation of any other rights under the Liberian Business Corporation Act of such dissenting Shareholders to seek judicial relief.

(c) For purposes of these Articles, the following terms shall have the meanings set forth below:

(1) "Family"-ln respect of the Corporation and each of the Current Shareholders, the Original Shareholder(s), their spouses and their *"lineal descendants"* as hereinafter defined.

(2) "Original Shareholders" - (a) In respect of the Corporation J. E. Karastamatis, E. B. Kertsikoff, A. B. Hadjieleftheriadis, Niki Zilakos and Vassiliki Andreoulakis, and (b) in respect of LASSIA INVESTMENT COMPANY J, E. Karastamatis and his spouse and linear descendants, (c) FAMILY UNITY TRUST COMPANY E. B. Kertsikoff and his spouse and linear descendants, (d) GLAFKOS TRUST COMPANY A. B. Hadjieleftheriadis and his spouse and linear descendants, (e) ELAFONISSOS SHIPPING CORPORATION Niki Zilakos and her spouse and lineal· descendants and (f) KEROS SHIPPJNG CORPORATION Vassiliki Andreoulakis and her spouse and linear descendants.

(3) The term *"Lineal Descendants"* of any Original Shareholder shall mean solely and exclusively any of (i) those children of an Original Shareholder who are (A) issue surviving from a marriage of such Original Shareholder, (B) legally recognized by such Original Shareholder, or (C) legally adopted by such Original Shareholder, and (ii) any of those children of a Lineal Descendent *as* defined in clause (i) of this sentence who me (A) issue surviving from a marriage of such Lineal Descendent, (B) legally recognized by such Lineal Descendent, .r by any controlling legal authority having jurisdiction or (C) legally adopted by such Lineal Descendent.

(4) "Current Shareholders" - The Liberian corporations LASSIA INVESTMENT COMPANY, GLAFKOS TRUST COMPANY, FAMILY UNITY TRUST COMPANY, ELAFONISSOS SHIPPING CORPORATION and KEROS SHIPPING CORPORATION, so long as each is a Class A Holder.

*Section 5: Reacquired Shares*

In the event the Corporation shall acquire any shares of stock of any class, whether under this Section or for any other reason, upon reacquisition of such shares, such shares shall be deemed Treasury shares and be no longer outstanding nor be taken into account for the computation of the quorum and the vote needed to approve a matter presented to the Shareholders herein provided, Said Article of the Restated Articles of Incorporation is hereby titled Article IV CLASSES OF COMMON STOCK AND PREFERRED STOCK and amended and restated to include at its end the following language:

Section 6: Preferred Shares

(i) There *is* hereby created a class of Preferred Stock designated as the "Preferred Shares," Any shares outstanding prior to the creation of the Preferred Shares are heretofore referred to *as* common shares and the holders thereof are referred to as common shareholders. For purposes of these Articles, "Preferred Shares" means the Preferred Shares of the Corporation representing Preferred Stock of the Corporation, having such rights associated with such Preferred Shares as set forth in these Articles and any equity securities issued or issuable in exchange for or with respect to such Preferred Shares (i) by way of a dividend, split or combination of shares or (ii) in connection with a reclassification, recapitalization, merger, consolidation or other reorganization.

(ii) The Preferred Shares shall consist of a single series and shall have a liquidation preference equal to USD 1,000.00 per unit of Preferred Share (the "Liquidation Preference").

(iii) No dividends shall accrue on the Preferred Shares. The Preferred Shares shall have no voting rights. The Preferred Shares shall be entitled to distributions to be made on the common shares at the times and in the aggregate amounts determined by the Board of Directors. Notwithstanding any provision to the contrary contained in these Articles, the Corporation shall not be required to make a distribution on the common stock if such distribution would violate the Liberian Business Corporation Act or any other applicable law or *that* certain indenture, *to* be dated on or about June 29, 2018, by and among the Corporation, Eletson Finance (US) LLC and Agathonissos Finance LLC, as co-issuers (together, the "Co-Issuers") and Wilmington Savings Fund Society, FSB, as trustee (the "Trustee") and collateral agent (the "Collateral Agent") (as the same may be amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "Indenture") or any Security Document (as defined in the Indenture). For so long as no acceleration of the maturity elate of the Corporation's First Preferred Ship Mortgage Notes due 2022 issued pursuant to the Indenture (the "Notes") pursuant to Article VI of the Indenture due to the occurrence of an "Event of Default" under the Indenture (an "Acceleration") or Bankruptcy (as hereinafter defined) of the Corporation has occurred, no distributions shall be made on the Preferred Shares. Upon the occurrence of an Acceleration or a Bankruptcy of the Corporation, the holders of the Preferred Shares (the "Preferred Shareholders") shall be entitled to receive, with respect to their Preferred Shares, out of the assets of the Corporation legally available for distribution to its Shareholders before any payment shall be made to the holders of common shares, a distribution in respect of such Preferred Shares in an amount per Preferred Share equal to l00% of the Liquidation Preference. If, upon an Acceleration, the assets of the Corporation available for distribution to its Shareholders are insufficient to pay the Preferred Shareholders the full Liquidation Preference on each Preferred Share to which the Preferred Shareholders are entitled, the Preferred Shareholders shall share notably in any distribution of assets according to the respective amounts which would be payable with respect to such Preferred Shares held by them upon such distribution if all amounts payable on or with respect to such Preferred Shares were paid in **full.** Upon the payment of the full Liquidation Preference to which all Preferred Shares are entitled, 110 Preferred Shares shall be entitled to share in any further distribution of assets, all Preferred Shares shall then cease to be outstanding for any purpose hereunder and shall be cancelled automatically, without the need for any act of the Corporation or any Stockholder.

(iv) The total number of Preferred Shares which the Corporation shall have authority to issue shall be 300,000. On the date of the issuance of the Notes, the Corporation shall issue 300,000 Preferred Shares to Wilmington Savings Fund Society, in its capacity as the Preferred Shares Agent (the "Preferred Shares Agent").

(v) Each Preferred Share shall be identical to all other Preferred Shares in all respects and shall entitle the holder thereof to the rights, interests, preferences and privileges of a holder of

Preferred Shares as set forth in these Articles.

(vi) The Preferred Shares shall not be redeemable at the option of the Corporation or the Preferred Shareholders.

(vii)    At the time the principal amount of all of Notes issued pursuant to the Indenture has been satisfied and discharged in full, including, without limitation, (i) upon n payment in full of all outstanding Notes upon their maturity date, (ii) upon redemption of all outstanding Notes in accordance with the indenture, (iii) upon a payment in full of all outstanding Notes upon their acceleration or (iv) upon any other satisfaction of the Corporation's obligation to pay such principal amount, in each case other than pursuant to a Bankruptcy of the Corporation, the Corporation shall mandatorily 1 deem all of the outstanding Preferred Shares at a price per Preferred Share of $0.01. Upon the completion of such redemption, each Preferred Share so acquired in such mandatory redemption shall be cancelled and not reissued.

(viii)    So long as any Notes are outstanding, without the prior written consent of the Trustee (acting in accordance with the Indenture):

(A) The terms of the Preferred Shares may not be modified or amended;

(B) No additional Preferred Shares may be issued;

(C) No outstanding Preferred Shares may be redeemed or· cancelled, except as provided in these Articles;

(D) No amendments to these Articles that adversely affect the rights and privileges of the Preferred Shares or the Preferred Shareholders any be made;

(E) No additional shares in the Corporation that rank pari passu or senior as to liquidation preference or dividends to the Preferred Shares may be issued; and

(F) No common shares shall be issued other than to the common shareholders.

For purposes of this Article IV, "Bankruptcy" means, with respect to any individual, corporation, partnership, joint venture, limited liability company, limited liability partnership, association, joint stock company, trust, unincorporated organization, or other organization, whether or not a legal entity, and any governmental authority (each a "Person"), (A) if such Person (i) makes an assignment for the benefit of creditors, (ii) files a voluntary petition in bankruptcy, (iii) is adjudged a bankruptcy or insolvent, or has entered against it an order for relief, in any bankruptcy or insolvency proceedings, (iv) files a petition or answer· seeking for itself any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, (v) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of this nature, or (vi) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of the Person or· of all or any substantial part of its properties, or (B) if 120 days after the commencement of any proceeding against the Person seeking reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, the proceeding has not been dismissed, or if within 90 days after the appointment without such Person's consent or acquiescence of a trustee, receiver or liquidator of such Person or of all or· any substantial part of *its* properties, the appointment is not vacated or stayed, or· within 90 days after the expiration of any such stay, the appointment is not vacated.

Is hereby amended to read as follows:

ARTICLE IV

The total number of shares of capital stock which the Corporation shall have the authority to issue is 13,000,000. The Corporation has one class of capital stock, referred to as Common Stock. There are 13,000,000 shares of authorized Common Stock, US$0.00001 par value per share ("Common Stock"). Except as otherwise provided herein or by applicable law, the holders of the Common Stock shall be entitled to one vote for each share of Common Stock held as of the applicable record date for each meeting of stockholders (and written actions in lieu of meetings). There shall be no cumulative voting.

7.  Article V of the Articles of Incorporation presently reads as follows:

"TRANSFER OF SHARES; MANDATORY REDEMPTION OF SHARES

Section 1: Transfer of Class A Shares.

No Class A Holder may transfer, and the Corporation shall not register the transfer of, any Class A Shares, whether by sale, assignment, pledge, gift, appointment or otherwise, except with the prior written approval of all Class A Holders and except: (a) to the Corporation, (b) to the Current Shareholders, as provided in Section 2 below, or (c) to a third party, as provided in section 3 below.

Section 2: Transfer of Class A Shares to the Current Shareholders.

(a)  Partial transfers of Class A Shares shall comprise not less than twenty percent (20%) of the Class A Holder's entire holding of Class A Shares.

(b)  The Class A Shares to be transferred by a Class A Holder shall be offered to all other Current Shareholders, on a pro rata basis to the respective holdings in Class A Shares of such other Current Shareholders, which offer shall include the offer price and any payment terms.

(c)  If any of the other Current Shareholders do not express an interest to acquire the Class A Shares offered to them within sixty (60) days of the date of such offer, then such shares shall be deemed offered under the same terms to the Current Shareholders who have expressed an interest to acquire the Class A Shares offered.

Section 3: Transfer of Class A Shares to a third party, not a Current Shareholder.

(a)  From the date hereof to and including June 30, 2011, no Class A Holder (a "Transferor") may transfer, and the Corporation shall not register the transfer of any Class A Shares, whether by sale, assignment, pledge, gift, appointment or otherwise, to a transferee not being a Current Shareholder, except as provided in Section 2 above and except with the prior written approval of all other Current Shareholders.

(b)  On or after July 1, 2011, a Transferor may transfer all (but not part) of the Class A Shares (the "Offered Shares") held by it at that time, to a transferee not

boing a Current Shareholder under the following conditions:

        (i)   All Offered Shares must be offered in writing by the Transferor to the Current Shareholders, other than the Transferor, together with a copy of the binding and unconditional commitment of a bona fide third party to buy the Offered Shares, at a stated price, in cash, on or before a date certain, and such commitment shall set forth all payment and other terms. Such offer by the Transferor (the "Offer to Current Shareholders") shall be on a pro rara basis to the respective holdings in Class A Shares of such other Current Shareholders.

        (ii) The other Current Shareholders shall have the right to buy the Offered Shares, under the same terms as the third party, but with a ten percent (10%) discount on the price offered by the prospective third party transferee, and the Offer to Current Shareholders shall so provide. The unconditional commitment of any *bona fide* third party to buy the Offered Shares shall expressly acknowledge the rights of the Current Shareholders under this Section 3 (b)(ii).

        (iii) If within sixty (60) days of the date of the Offer to Current Shareholders any of the other Current Shareholders do not express an interest to acquire the Offered Shares, such shares should be deemed offered under the same terms to the Current Shareholders who have expressed an interest to acquire the Offered Shares.

        (iv) if some or all of the Offered Shores are not transferred to Current Shareholders and paid for within seventy five (75) days from the date of the Offer to the Current Shareholders, in accordance with the provisions of sub paragraph (b)(i) and (ii) above, the Transferor shall be entitled to transfer to the third party such of the Offered Shares for which no interest of acquisition has been expressed by the Current Shareholders or which the Current Shareholders have not purchased as herein provided; any such transfer to a third party shall be accomplished, and the purchase price for such Offered Shares paid, within ninety (90) days from the date of the Offer to the Current Shareholders and on the terms and conditions therein set forth.

Section 4: Transfer of Class C Shares.

     No Class C Holder may transfer, and the Corporation shall not register the transfer of, any Class C Shares, whether by sale, assignment, pledge, gift, appointment or otherwise, except to the Corporation.

Section 5: Invalidity of Unauthorised Transfers.

     Any purported transfer of shares of common stock not permitted hereunder shall be void and of no effect, and the purported transferee shall have no rights as a stockholder of the Corporation and no other rights against or with respect to the Corporation. The Corporation may, as a condition to the transfer of the registration of transfer of shares of common stock to a purposed transferee, require the furnishing of such affidavits or other proof, as it deems necessary to establish that such transferee is eligible to own such shares. The Corporation shall note on the certificates for shares of common stock the restrictions on transfer and registration

of transfer imposed by this Article V.

Section 6: Mandatory Redemption of Class A Shares.

Each Class A Holder and officer and director of the Corporation, as the case may be, shall give prompt written notice to the Corporation upon becoming aware of the occurrence of any Specified Event (as defined below), and the Secretory of the Corporation shall give written notice to each Class A Holder promptly upon receipt of any such notice of the occurrence *of* a Specified Event.

Upon the occurrence of any Specified Event (as defined below) respecting Class A Shares or a Class A Holder, all Class A Shares held by such affected Class A Holder shall be redeemed by the Corporation as of the first day of the next succeeding month after such Specified Event has occurred and at a price per share, calculated by the Corporation to be, equal to the book value of the Corporation's Common *Stock,* determined by adding the stated value of corporate assets as shown on the books of the Corporation and deducting from such sum ah the liabilities of the Corporation, and then dividing the resulting amount by the number of shares of the Corporation's Common Stock outstanding as of the most recently preceding fiscal year end.

For purposes of this Section 6, a **"Specified Event"** shall mean any of the following:

(a) The transfer or proposed transfer by a Class A Holder to any person or entity of any Class A Shares not in compliance with the terms and conditions of the Articles of Incorporation, as such may be amended from time to time.

(b) Any Class A Shares of a Class A Holder become subject to any lien or encumbrance voluntarily or involuntarily, and such lien or encumbrance is not removed within 30 days following notice to such Class A Holder of such lien or encumbrance given by a majority of the other Class A Holders requesting the removal of such lien or encumbrance.

(c) A Current Shareholder dissolves or otherwise ceases to exist and the purported transferee or successor in interest of any of the Class A Shares held by such Current Shareholder (i) is not another Current Shareholder, or (ii) is not approved in writing by all of the other remaining Class A Holders.

(d) A Current Shareholder is or becomes controlled, legally or beneficially, directly or indirectly, by a person other than Family. For purposes of the preceding sentence, the terms "controlled," "control," "controlled by" or the like shall mean any of the following: the power to elect a majority of the persons who manage the entity, the power to vote a majority of the equity interests of such entity, the power by agreement or otherwise to designate a majority of the board of directors (or similar managing body) of the entity, or otherwise to direct the policy and operations of the entity."

Is hereby amended to read as follows:

Article V

The Corporation shall not issue any non-voting capital stock.

8. Article VI of the Articles of Incorporation presently reads as follows:

VI. DIRECTORS The number of directors constituting the initial Board of Directors is three (3). As long as any Notes are outstanding, the Shareholders shall cause the Corporation at all times to have at least two Independent Directors (as hereinafter defined) who will be appointed by the Shareholders other than the Preferred Shareholders. The initial Independent Directors are Jim Lachance and Scott Vogel. To the fullest extent permitted by law, and notwithstanding any duly otherwise existing at law or in equity, the Independent Directors shall consider only the interests of the Corporation, including its creditors, in acting or otherwise voting on Material Actions (as hereinafter defined). Except for duties to the Corporation as set forth in the immediately preceding sentence (including duties to the Shareholders and the Corporation's creditors solely to the extent of their respective economic interests in the Corporation but excluding (i) all other interests of the common shareholders, (ii) the interests of other Affiliates of the Corporation, and (iii) the interests of any group of Affiliates of which the Corporation is a part), the Independent Directors shall not have any fiduciary duties to the Shareholders, any Director or any other Person bound by these Articles; provided, however, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing. To the fullest extent permitted by law, an Independent Director shall not be liable to the Corporation, the Shareholders or any other Person bound by these Articles for breach of contract or breach of duties (including fiduciary duties), unless the Independent Director acted in bad faith or engaged in willful misconduct. No resignation or removal of an Independent Director, and no appointment of a successor Independent Director, shall be effective until such successor shall have accepted his or her appointment as an Independent Director by executing a counterpart to these Articles. In the event of a vacancy in the position of independent Directors, the remaining Independent Director (or if there is no remaining Independent Director, the common shareholders) shall, as soon as practicable, appoint a successor Independent Director. Notwithstanding anything to the contrary contained in these Articles, no Independent Director may be removed except for Cause, and no Independent Director shall be removed or replaced unless the Corporation provides the Trustee with no less than five (5) business days' prior written notice of(a) any proposed removal of such Independent Director, and (b) the identity of the proposed replacement Independent Director, together with a certification that such replacement satisfies the requirements for an Independent Director set forth in these Articles. All right, power and authority of the Independent Directors shall be limited to the extent necessary to exercise those rights and perform those duties specifically set forth in these Articles, No Independent Director shall at any time serve as trustee in bankruptcy for any affiliate of the Corporation.

For purposes of this Article VI, "Cause" means, with respect to an Independent Director, (i) acts or omissions by such Independent Director constituting fraud, dishonesty, gross negligence, willful misconduct or other deliberate action which causes injury to the Corporation or an act by such Independent Director involving moral turpitude or a serious crime, or (ii) that such Independent Director no longer meets the definition of "Independent Director" as set forth in these Articles.

For purposes of this Article VI, "Material Action" means to (i) file or consent to the filing of any bankruptcy, insolvency or reorganization petition under any applicable federal or state law relating to bankruptcy naming the Corporation as debtor or otherwise institute bankruptcy or insolvency proceedings by or against the Corporation or otherwise seek with respect to such entity relief under any laws relating to the relief from debts or· the protection of debtors generally; (ii) seek or consent to the appointment of a receiver, liquidator, conservator, assignee, trustee, sequestrator, custodian or any similar official for the Corporation or all or any portion of any of its properties; (iii) make or consent to any assignment for the benefit of the Corporation's creditors; (iv) admit in writing the inability of the Corporation to pay its debts generally as they become due; (v) consent to substantive consolidation with any owner of the shares of the capital stock of the Corporation or any affiliate of such owner of capital stock; (vi) sell, exchange, lease or othe1wise

transfer all or substantially all of the assets of the Corporation or consolidate or merge the Corporation with or into another Person whether by means of a single transaction or a series of related transactions; (vii) amend these Articles (except as required by law) or the bylaws of the Corporation or (viii) to the fullest extent permitted by law, dissolve, liquidate or wind up the Corporation or approve of any proposal relating thereto.

For purposes of this Article VI, "Independent Director" shall mean an individual who bas prior experience as an independent director, independent manager or independent member with at least three years of employment experience and which individual is duly appointed as an Independent Director and is not, and has never been, and will not while serving as Independent Director be, any of the following: (i) a member, partner, equityholder, manager, director, officer or employee of the Corporation, the common shareholders, or any of their respective equityholders or affiliates (other than as an Independent Director or independent manager of the Corporation or an affiliate of the Corporation); (ii) a creditor, supplier or service provider (including provider of professional services) to the Corporation, or· any of its equityholders or affiliates (other than a nationally-recognized company that routinely provides professional independent managers or independent directors and other corporate services to the Corporation or any of its equityholders or affiliates in the ordinary course of its business); (iii) a family member of any such member, partner, equityholder, manager, director, officer, employee, creditor, supplier or service provider; or (iv) a Person that controls (whether directly, indirectly or otherwise) any of the Persons listed in clauses (i), (ii) or (iii) above. A natural person who otherwise satisfies the foregoing definition and satisfies subparagraph (i) by reason of being the independent manager or independent director of a "special purpose entity" affiliated with the Corporation shall be qualified to serve as an Independent Director of the Corporation, provided that the fees that such individual earns from serving as independent manager or independent director of affiliates of the Corporation in any given year constitute in the aggregate less than five percent (5%) of such individual's annual income for that year.

Notwithstanding any other provision of these Articles and any provision of law that otherwise so empowers the Corporation, so long as any Notes are outstanding, no Person shall be authorized or empowered on behalf of the Corporation to, nor shall they permit the Corporation to, and the Corporation shall not, without the prior unanimous written consent of the Board of Directors, including all Independent Directors, take any Material Action, provided, however, that, the Board of Directors may not authorize the taking of any Material Action unless there are at least two Independent Directors then serving in such capacity on the Board of Directors.

Until the date that is one year· and one day after the date on which the Indenture has been terminated in accordance with its terms and all Obligations (as defined in the Indenture) thereunder and under the other Security Documents (as defined in the Indenture) have been fully satisfied, the common shareholders shall not institute, or join any other Person in instituting, or authorize a trustee or other Person acting on its behalf or on behalf of others to institute, any involuntary bankruptcy, reorganization, arrangement, insolvency, liquidation or receivership proceedings against the Corporation, or, to the fullest extent permitted by law, make application for or institute or maintain any action for, the dissolution of the Corporation, in each case under the Liberian Business Corporation Act or any other applicable law.

Is hereby amended to read as follows:

<u>ARTICLE VI</u>

Subject to any additional vote required by this Articles of Incorporation or the Bylaws of the Corporation, in furtherance and not in limitation of the powers conferred by statute, the Board of Directors is expressly authorized to make, repeal,

alter, amend and rescind any or all of the Bylaws of the Corporation, subject to the provisions of that certain Shareholders Agreement, dated as of the date of this Articles of Incorporation, by and among the Corporation and the stockholders party thereto (as amended, modified, supplemented or restated from time to time, the "**Shareholders Agreement**").

9.  Article VII of the Articles of Incorporation presently reads as follows:

POWERS

The Corporation shall have every power which a corporation now or hereafter organised under the Liberian Business Corporation Act may have.

Is hereby amended to read as follows:

ARTICLE VII

In the event of any conflicts or inconsistencies between the Bylaws of the Corporation and the Shareholders Agreement, the terms of the Shareholders Agreement shall control.

10. Article VIII of the Articles of Incorporation presently reads as follows:

Article VIII BY-LAWS The Board of Directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

Notwithstanding any contrary provision of the Articles of Incorporation, the by- laws of the Corporation as from time to time adopted, or any provision of Law that otherwise so empowers the Corporation, the Board of Directors, any officer of the Corporation or any other Person, so long as any Notes are outstanding, neither the Board of Directors, nor any officer of the Corporation or any other Person shall be authorized or empowered on behalf of the Corporation to, nor shall they permit the Corporation to, and the Corporation shall not, without the prior unanimous written consent of the shareholders of the Corporation and the unanimous consent of the Independent Directors (as defined in Article VI), take, nor amend, modify or otherwise change the Articles of Incorporation or the by-laws of the Corporation. Any amendment, modification or other change to the Articles of Incorporation or the by-laws of the Corporation made in contravention of the foregoing shall, to the fullest extent permitted by law, be null and void *ab initio.*

Is hereby amended to read as follows:

ARTICLE VIII

Subject to any additional vote required by this Articles of Incorporation, the number of directors of the Corporation shall be determined in the manner set forth in the Bylaws of the Corporation and in the Shareholders Agreement. Each director shall be entitled to one vote on each matter presented to the Board of Directors.

11. Article IX of the Articles of Incorporation presently reads as follows:

INDEMNIFICATION OF DIRECTORS, OFFICERS AND OTHER AUTHORISED
REPRESENTATIVES

Section *1*: Indemnification of Directors and Officers in Third Party Proceedings.

The Corporation shall indemnify any director or officer of the Corporation who was or is on "authorised representative" of the Corporation (which shall mean for the purposes of this Article a director or officer of the Corporation, or a person serving at the request of the Corporation as a director, officer, partner or trustee of another corporation, limited liability company, partnership, joint venture, trust or other enterprise) and who was or is a "party" (which shall include for purposes of this Article the giving of testimony or similar involvement) or is threatened to be made a party to any "third party proceeding" (which shall mean for purposes of this Article any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, other than an action by or in the right of the Corporation) by reason of the fact that such person was or is an authorised representative of the Corporation, against expenses (which shall include for purposes of this Article attorneys' fees), judgements, penalties, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with such third party proceeding if such person acted in good faith and in a manner such person reasonably believed to be in, or not opposed to, the best interests of the Corporation and, with respect to any criminal third party proceeding (which shall include for purposes of this Article any investigation which could or does lead to a criminal third party proceeding) had no reasonable cause to believe such conduct was unlawful. The termination of any third party proceeding by judgement, order, settlement, indictment, conviction or upon a plan of no contest or its equivalent, shall not, of itself: create a presumption that the authorised representative did not act in good faith and in a manner which such person reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal third party proceeding, had reasonable cause to believe that such conduct was unlawful.

Section 2: Indemnification of Directors and Officers in Corporate Proceedings.

The Corporation shall indemnify any director or officer of the Corporation who was or is an authorised representative of the Corporation and who was or is a party or is threatened to be made a party to any "corporate proceeding" (which shall mean for purposes of this Article any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgement in its favour or any investigative proceeding by or on behalf of the Corporation) by reason of the fact that such person was or is an authorised representative of the Corporation, against expenses actually and reasonably incurred by such person in connection \Vith the defence or settlement of such corporate proceeding if such person acted in good faith and in a manner such person reasonably believed to be in, or not opposed to, the best interests of the Corporation, except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of such person's duty to the Corporation unless and only to the extent that the court in which such corporate proceeding was pending shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such authorised representative is fairly and reasonably entitled to indemnify for such expenses which the court shall deem proper.

Section 3: Indemnification of Authorised Representatives.

To the extent that an authorised representative of the Corporation who neither was nor is a director or officer of the Corporation has been successful on the merits or otherwise in defence of any third party or corporate proceeding or in defence of any claim, issue or matter therein, such person shall be indemnified against expenses actually and reasonably incurred by such person in connection therewith. Such an authorised representative may, at the discretion of the Corporation, be indemnified by the Corporation in any other circumstances to any extent if the Corporation would be required by Sections 1 or 2 of this Article Ix to indemnify such person in such circumstances to such extent if such person were or had been a director or officer of the Corporation.

Section 4: Determination of Entitlement to Indemnification.

Any indemnification under Sections I, 2 or 3 of this Article IX (unless ordered by a court) shall be made by the Corporation only as authorised in the specific case upon a determination that indemnification of the authorised representative is proper in the circumstances because such person has either met the applicable standard of conduct set forth in Sections 1 or 2 of this Article IX or has been successful on the merits or otherwise as set forth in Section 3 of this Article IX and that the amount requested had been actually and reasonably incurred. Such determination shall be made:

(a)     by the Board of Directors by a majority of a quorum consisting of directors who were not parties to such third party or corporate proceeding, or

(b)     if such a disinterested quorum is not obtainable, by a majority of the entire board, including as voting members those directors who are or were parties to such third party or corporate proceeding, or

(c)     if such a disinterested quorum is not obtainable, or even if obtainable; a majority vote of such a quorum so directs, by independent legal counsel in a written opinion upon reference by the board of directors, or

(d)     by the Shareholders upon reference by the board of directors.

Section 5: Advance of Expenses.

Expenses actually and reasonably incurred in defending a third party or corporate proceeding shall be paid on behalf of a director or officer of the Corporation by the Corporation in advance of the final disposition of such third party or corporate proceeding as authorised in the manner provided in Section 4 of this Article IX upon receipt of an undertaking by or on behalf of the director or officer to repay such amount unless it shall ultimately be determined that such person is entitled to be indemnified by the Corporation as authorised in this Article and may be paid by the Corporation in advance on behalf of any other authorised representative when authorised by the board of directors or receipt of a similar undertaking. The financial ability of such authorised representative to make such repayment shall not be prerequisite to the making of an advance.

Section 6: Employee Benefit Plans.

For purposes of this Article IX the Corporation shall be deemed to have requested an authorised representative to serve an employee benefit plan where the performance by such person of duties to the Corporation also imposes duties on, or otherwise involves services by, such person to the plan or participants or beneficiaries of the plan; excise taxes assessed on an authorised representative with respect to an employee benefit plan pursuant to applicable law shall be deemed "fines"; and action taken or omitted by such person with respect to an employee benefit plan in the

performance of duties for a purpose reasonably believed to be in the interest of the participants and beneficiaries of the plan shall be deemed to be for a purpose which is not opposed to the best interest of the Corporation.

Section 7: Scope of Article.

The indemnification of authorised representatives, as authorised by this Article, shall:

(a)     not be deemed exclusive of any other rights to which those seeking indemnification may be entitled under any statute, agreement, vote of shareholders or disinterested directors or otherwise, both as to function in an official capacity and as to action in any other capacity,

(b)     continue as to a person who has ceased to be an authorised representative, and

(c)     inure to the benefit of the heirs, executors and administrators of such a person.

Section 8: Reliance on Provisions.

Each person who shall act as an authorised representative of the Corporation shall be deemed to be doing so in reliance upon the rights of indemnification provided by this Article IX.

Section 9: Insurance.

The Corporation may purchase and maintain insurance, on behalf of any person specified in Section 6.13 of the Liberian Business Corporation Act, against liability asserted against and incurred by any such person, whether or not the Corporation would have the power to indemnify any such person against such liability under the provisions of the aforesaid Section 6.13.

Is hereby amended to read as follows:

## ARTICLE IX

Elections of directors need not be by written ballot unless the Bylaws of the Corporation shall so provide.

12. Article X of the Articles of Incorporation presently reads as follows:

CORPORATE EXISTENCE

Corporate existence shall begin upon filing these Articles of Incorporation with the Minister of Foreign Affairs as of the filing date stated on these Articles.

Is hereby amended to read as follows:

## ARTICLE X

Meetings of stockholders may be held within or outside of the Republic of Liberia, as the Shareholders Agreement or the Bylaws of the Corporation may provide. The books of the Corporation may be kept (subject to any provision of applicable law) outside of the Republic of Liberia at such place or places or in such

manner or manners as may be designated from time to time by the Board of Directors or in the Shareholders Agreement or the Bylaws of the Corporation.

13. There is currently no Article XI of the Articles of Incorporation.

The Articles of Incorporation are hereby amended to include the following Article XI to read as follows:

ARTICLE XI.

To the fullest extent permitted by law, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director. If the Business Corporation Act or any other law of the Republic of Liberia is amended after approval by the stockholders of this Article Eleventh to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the Business Corporation Act as so amended.

Any amendment, repeal or elimination of the foregoing provisions of this Article Eleventh by the stockholders of the Corporation shall not adversely affect any right or protection of a director of the Corporation existing at the time of, or increase the liability of any director of the Corporation with respect to any acts or omissions of such director occurring prior to, such amendment, repeal or elimination.

14. There is currently no Article XII of the Articles of Incorporation.

The Articles of Incorporation are hereby amended to include the following Article XII to read as follows:

ARTICLE XII.

To the fullest extent permitted by applicable law, the Corporation is authorized to provide indemnification of (and advancement of expenses to) directors, officers and agents of the Corporation (and any other persons to which the Business Corporation Act permits the Corporation to provide indemnification) through Bylaw provisions, agreements with such agents or other persons, vote of stockholders or disinterested directors or otherwise, in excess of the indemnification and advancement otherwise permitted by the Business Corporation Act.

Any amendment, repeal, modification or elimination of the foregoing provisions of this Article Twelfth shall not (a) adversely affect any right or protection of any director, officer or other agent of the Corporation existing at the time of such amendment, repeal, modification or elimination; or (b) increase the liability of any director, officer or agent of the Corporation with respect to any acts

or omissions of such director, officer or agent occurring prior to such amendment, repeal, modification or elimination.

15. There is currently no Article XIII of the Articles of Incorporation.

The Articles of Incorporation are hereby amended to include the following Article XII to read as follows:

<u>ARTCILE XIII</u>

The Corporation renounces, to the fullest extent permitted by law, any interest or expectancy of the Corporation in, or in being offered an opportunity to participate in, any Excluded Opportunity. An "**Excluded Opportunity**" is any matter, transaction or interest that is presented to, or acquired, created or developed by, or which otherwise comes into the possession of (i) any stockholder (including a beneficial owner) of the Corporation or (ii) any director of the Corporation who is not an employee of the Corporation or any of its subsidiaries ("**Covered Persons**"), unless such matter, transaction or interest is presented to, or acquired, created or developed by, or otherwise comes into the possession of, a Covered Person expressly and solely in such Covered Person's capacity as a stockholder or a director, respectively, of the Corporation. Any repeal or modification of this <u>Article 0</u> will only be prospective and will not affect the rights under this <u>Article 0</u> in effect at the time of the occurrence of any actions or omissions to act giving rise to liability.

16. There is currently no Article XIV of the Articles of Incorporation.

The Articles of Incorporation are hereby amended to include the following Article XIV to read as follows:

<u>ARTICLE XIV</u>

Unless the Corporation consents in writing to the selection of an alternative forum, the courts of the State of Nevada (the "**Nevada Court**") shall be the sole and exclusive forum for any stockholder (including a beneficial owner) to bring (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim against the Corporation, its directors, officers or employees arising pursuant to any provision of the Business Corporation Act or this Articles of Incorporation, the Shareholders Agreement or the Bylaws of the Corporation or (iv) any action asserting a claim against the Corporation, its directors, officers or employees governed by the internal affairs doctrine or that otherwise relates to the internal affairs of the Corporation, except for, as to each of (i) through (iv) above, any claim as to which

the Nevada Court determines that there is an indispensable party not subject to the jurisdiction of the Nevada Court (and the indispensable party does not consent to the personal jurisdiction of the Nevada Court within 10 days following such determination), which is vested in the exclusive jurisdiction of a court or forum other than the Nevada Court, or for which the Nevada Court does not have subject matter jurisdiction.

17. There is currently no Article XV of the Articles of Incorporation.

The Articles of Incorporation are hereby amended to include the following Article XV to read as follows:

ARTICLE XV

If any provision or provisions of this Articles of Incorporation shall be held to be invalid, illegal or unenforceable as applied to any person or entity or circumstance for any reason whatsoever, then, to the fullest extent permitted by law, the validity, legality and enforceability of such provisions in any other circumstance and of the remaining provisions of this Articles of Incorporation (including, without limitation, each portion of any sentence of this Articles of Incorporation containing any such provision held to be invalid, illegal or unenforceable that is not itself held to be invalid, illegal or unenforceable) and the application of such provision to other persons or entities and circumstances shall not in any way be affected or impaired thereby.

18. The Amendment to the Articles of Incorporation was authorized by vote of the holders of a majority of all outstanding shares entitled to vote thereon.

19. The Restated Articles of Incorporation as here included restate but do not change the provisions of the original Articles of Incorporation as amended and there is no discrepancy between the provisions of the Articles of Incorporation as previously amended, and the provisions of the Restated Articles of Incorporation.

The Articles of Incorporation, as previously amended are restated as follows:

# RESTATED
## ARTICLES OF INCORPORATION
### OF
## ELETSON HOLDINGS INC.

(Pursuant to the Business Corporation Act 1977, The Associations Law, Title 5, as Amended, of the Liberian Code of Laws Revised)

Eletson Holdings Inc., a corporation organized and existing under and by virtue of the provisions of the Business Corporation Act of 1977 of the Republic of Liberia (the "**Business Corporation Act**"),

**DOES HEREBY CERTIFY:**

**1.** That the name of this corporation is Eletson Holdings Inc., and that this corporation was originally incorporated pursuant to the Business Corporation Act on December 4, 1985.

**2.** Previous amendments to the Articles of Incorporation were filed with the Minister of Foreign Affairs as of February 15, 1994, June 29, 2007 and June 21, 2018.

**3.** That the Board of Directors of this corporation (the "**Board of Directors**") duly adopted resolutions proposing to amend and restate the Articles of Incorporation of this corporation, declaring said amendment and restatement to be advisable and in the best interests of this corporation and its stockholders, and authorizing the appropriate officers of this corporation to solicit the consent of the stockholders therefor, which resolution setting forth the proposed amendment and restatement is as follows:

**RESOLVED**, that the Articles of Incorporation of this corporation be amended and restated in its entirety to read as follows:

## ARTICLE I

The name of this corporation is Eletson Holdings Inc. (the "**Corporation**").

## ARTICLE II

The address of the registered office of the Corporation is 80 Broad Street, Monrovia, Liberia. The name of its registered agent shall be the LISCR Trust Company.

## ARTICLE III

The nature of the business or purposes to be conducted or promoted is to engage in any lawful act or activity for which corporations may be organized under the Business Corporation Act.

## ARTICLE IV

The total number of shares of capital stock which the Corporation shall have the authority to issue is 13,000,000. The Corporation has one class of capital stock, referred to as Common Stock. There are 13,000,000 shares of authorized Common Stock, US$0.00001 par value per share ("**Common Stock**"). Except as otherwise provided herein or by applicable law, the holders of the Common Stock shall be entitled to one vote for each share of Common Stock held as of the applicable record date for each meeting of

stockholders (and written actions in lieu of meetings). There shall be no cumulative voting.

ARTICLE V

The Corporation shall not issue any non-voting capital stock.

ARTICLE VI

Subject to any additional vote required by this Articles of Incorporation or the Bylaws of the Corporation, in furtherance and not in limitation of the powers conferred by statute, the Board of Directors is expressly authorized to make, repeal, alter, amend and rescind any or all of the Bylaws of the Corporation, subject to the provisions of that certain Shareholders Agreement, dated as of the date of this Articles of Incorporation, by and among the Corporation and the stockholders party thereto (as amended, modified, supplemented or restated from time to time, the "**Shareholders Agreement**").

ARTICLE VII

In the event of any conflicts or inconsistencies between the Bylaws of the Corporation and the Shareholders Agreement, the terms of the Shareholders Agreement shall control.

ARTICLE VIII

Subject to any additional vote required by this Articles of Incorporation, the number of directors of the Corporation shall be determined in the manner set forth in the Bylaws of the Corporation and in the Shareholders Agreement. Each director shall be entitled to one vote on each matter presented to the Board of Directors.

ARTICLE IX

Elections of directors need not be by written ballot unless the Bylaws of the Corporation shall so provide.

ARTICLE X

Meetings of stockholders may be held within or outside of the Republic of Liberia, as the Shareholders Agreement or the Bylaws of the Corporation may provide. The books of the Corporation may be kept (subject to any provision of applicable law) outside of the Republic of Liberia at such place or places or in such manner or manners as may be designated from time to time by the Board of Directors or in the Shareholders Agreement or the Bylaws of the Corporation.

ARTICLE XI

To the fullest extent permitted by law, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director. If the Business Corporation Act or any other law of the Republic of Liberia is amended after approval by the stockholders of this Article XI to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the Business Corporation Act as so amended.

Any amendment, repeal or elimination of the foregoing provisions of this Article XI by the stockholders of the Corporation shall not adversely affect any right or protection of a director of the

Corporation existing at the time of, or increase the liability of any director of the Corporation with respect to any acts or omissions of such director occurring prior to, such amendment, repeal or elimination.

## ARTICLE XII

To the fullest extent permitted by applicable law, the Corporation is authorized to provide indemnification of (and advancement of expenses to) directors, officers and agents of the Corporation (and any other persons to which the Business Corporation Act permits the Corporation to provide indemnification) through Bylaw provisions, agreements with such agents or other persons, vote of stockholders or disinterested directors or otherwise, in excess of the indemnification and advancement otherwise permitted by the Business Corporation Act.

Any amendment, repeal, modification or elimination of the foregoing provisions of this Article XII shall not (a) adversely affect any right or protection of any director, officer or other agent of the Corporation existing at the time of such amendment, repeal, modification or elimination; or (b) increase the liability of any director, officer or agent of the Corporation with respect to any acts or omissions of such director, officer or agent occurring prior to such amendment, repeal, modification or elimination.

## ARTICLE XIII

The Corporation renounces, to the fullest extent permitted by law, any interest or expectancy of the Corporation in, or in being offered an opportunity to participate in, any Excluded Opportunity. An "**Excluded Opportunity**" is any matter, transaction or interest that is presented to, or acquired, created or developed by, or which otherwise comes into the possession of (i) any stockholder (including a beneficial owner) of the Corporation or (ii) any director of the Corporation who is not an employee of the Corporation or any of its subsidiaries ("**Covered Persons**"), unless such matter, transaction or interest is presented to, or acquired, created or developed by, or otherwise comes into the possession of, a Covered Person expressly and solely in such Covered Person's capacity as a stockholder or a director, respectively, of the Corporation. Any repeal or modification of this Article XIII will only be prospective and will not affect the rights under this Article XIII in effect at the time of the occurrence of any actions or omissions to act giving rise to liability.

## ARTICLE XIV

Unless the Corporation consents in writing to the selection of an alternative forum, the courts of the State of Nevada (the "**Nevada Court**") shall be the sole and exclusive forum for any stockholder (including a beneficial owner) to bring (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim against the Corporation, its directors, officers or employees arising pursuant to any provision of the Business Corporation Act or this Articles of Incorporation, the Shareholders Agreement or the Bylaws of the Corporation or (iv) any action asserting a claim against the Corporation, its directors, officers or employees governed by the internal affairs doctrine or that otherwise relates to the internal affairs of the Corporation, except for, as to each of (i) through (iv) above, any claim as to which the Nevada Court determines that there is an indispensable party not subject to the jurisdiction of the Nevada Court (and the indispensable party does not consent to the personal jurisdiction of the Nevada Court within 10 days following such determination), which is vested in the exclusive jurisdiction of a court or forum other than the Nevada Court, or for which the Nevada Court does not have subject matter jurisdiction.

<u>ARTICLE XV</u>

If any provision or provisions of this Articles of Incorporation shall be held to be invalid, illegal or unenforceable as applied to any person or entity or circumstance for any reason whatsoever, then, to the fullest extent permitted by law, the validity, legality and enforceability of such provisions in any other circumstance and of the remaining provisions of this Articles of Incorporation (including, without limitation, each portion of any sentence of this Articles of Incorporation containing any such provision held to be invalid, illegal or unenforceable that is not itself held to be invalid, illegal or unenforceable) and the application of such provision to other persons or entities and circumstances shall not in any way be affected or impaired thereby.

\* \* \*

**4.**     That the foregoing amendment and restatement was approved by the holders of the requisite number of shares of this corporation in accordance with the Business Corporation Act.

**5.**     That this Articles of Incorporation, which restates and integrates and further amends the provisions of the Corporation's Articles of Incorporation, has been duly adopted in accordance with the Business Corporation Act.

[Signature Page Follows]

Docusign Envelope ID: F8AD2CB4-BBFF-4AC4-84C4-AD8E09E92B55

**IN WITNESS WHEREOF,** the undersigned has executed the Articles of Amendment and Restated Articles of Incorporation under penalty of perjury on this 19th day of November, 2024 and duly acknowledges that the facts stated therein are true and that the execution of the forgoing instrument is the act and deed of the corporation.

**Signature:** *Adam Spears*

**Name:**     Adam Spears
**Title:**     Authorized Signatory