UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **KITHNOS SPECIAL MARITIME ENTERPRISE, ELETSON HOLDINGS, INC, ELETSON CORPORATION, ELETSON GAS LLC,** | § § § § § | **CIVIL ACTION NO.** **2:25-cv-00042** |
| Plaintiffs, | § § | **ADMIRALTY RULE 9(h)** |
| **M/V KITHNOS (IMO 9711523),** her engines, tackle, equipment, and appurtenances, *in rem*, | § § § § | |
| and | § § | |
| **FAMILY UNITY TRUST COMPANY, GLAFKOS TRUST COMPANY, LASSIA INVESTMENT COMPANY, ELAFONISSOS SHIPPING CORPORATION, KEROS SHIPPING CORPORATION, VASSILIS HADJIELEFTHERIADIS, LASKARINA KARASTAMATI, VASSILIS E. KERTSIKOFF, VASILEIOS CHATZIELEFTHERIADIS, KONSTANTINOS CHATZIELEFTHERIADIS, IOANNIS ZILAKOS, ELENI KARASTAMATI, PANAGIOTIS KONSTANTARAS, EMMANOUIL ANDREOULAKIS, ELENI VANDOROU,** *in personam* | § § § § § § § § § § § § § § § § | |
| Defendants. | § | |

**CUSTODIAN'S EMERGENCY EX PARTE MOTION SEEKING AUTHORITY TO REMOVE AND REPLACE THE MASTER OF THE *M/V KITHNOS***

The Court-Appointed Substitute Custodian, National Maritime Services, Inc. ("**NMS**") files this Emergency *Ex Parte* Motion Seeking Authority to Remove and Replace Konstantinos Manolarakis as Master of the *M/V KITHNOS* and respectfully shows as follows:

1. The *M/V KITHNOS* is a liquified petroleum gas tanker registered under the laws and flag of Greece and bearing IMO number 9711523 (the "**Vessel**"). The Vessel is currently under attachment and arrest at the anchorage in the Port of Corpus Christi. The Vessel was arrested on February 6, 2025 by Kithnos Special Maritime Enterprise, Eletson Holdings, Inc., Eletson Corporation, and Eletson Gas, LLC ("**Plaintiffs**"), the plaintiffs in this matter.

2. On February 5, 2025, Plaintiffs filed a Motion for Appointment of Substitute Custodian, requesting that the Court appoint NMS as the substitute custodian of the Vessel. [Dkt. 4]. The role of the substitute custodian is to maintain possession of the Vessel and to oversee its care and safekeeping, which relieves the United States Marshal of the burden of performing such services. The substitute custodian's duties include providing a full-time watchman onboard the Vessel and handling the routine services required for the safekeeping of the Vessel. The declaration of NMS's President, Alan Swimmer, is attached hereto as Exhibit 1 ("**Swimmer Decl.**").

3. On February 5, 2025, the Court entered an order appointing NMS as substitute custodian of the Vessel, [Dkt. #7, 3] (the "**Order Appointing NMS**"). The Order Appointing NMS authorizes NMS to retain the Vessel in its "custody for possession and safekeeping." [*Id.*]

4. The Vessel currently carries a cargo of Vinyl Chloride Monomer ("**VCM**"). [Swimmer Decl., ¶ 5]. To provide specialized gas tanker-related technical expertise and to oversee the Vessel's tanks and their respective cargo during the period of arrest, NMS retained Minton, Treharne & Davies ("**MTD**"), a specialist expert marine cargo and chemical consultancy company. [Swimmer Decl., ¶ 5]. The declaration of MTD's cargo consultant Mr. Denis McGrath is attached hereto as Exhibit 2 ("**McGrath Decl.**").

5. VCM is a volatile cargo and must, among other things, be maintained at or below specific temperatures and pressures. [McGrath Decl., ¶ 5]. Failure to maintain VCM in accordance with proper protocols and procedures threatens the safety of the Vessel and her crew. [*Id.*]

6. On February 11, 2025, Alan Swimmer, President of NMS, emailed Captain Konstantinos Manolarakis and Chief Engineer Vlaikos requesting certain documents and information to assist MTD in understanding the ship's current status and recent cargo history. [Swimmer Decl., ¶ 6]. NMS requested the following documents relating to the condition and care of the Vessel's cargo.

   a. A description of the cargo reliquification plant;
   b. A general arrangement plan;
   c. International Certificate for Carriage of Liquified Gas;
   d. Bills of Lading for all cargo transported during the past four months;
   e. Certificates of Quality (or Analysis) for all cargo carried in the past four months;
   f. Particulars of tank cleaning/purging/change of grade (if any) in the past four months;
   g. Compressor Log Sheets for the past four months;
   h. Cargo Care Logs indicating from which tanks vapors were drawn, to which tanks the condensate was returned and through which lines; and
   i. Going forward, Compressor Log Sheets and Cargo Care Logs to be provided on a weekly basis.

[*Id.*].

7. On February 12, 2025, NMS received a response from Captain Ioannis Karatsolias, an individual purporting to act through and on behalf of an Eletson entity, stating: "In light of your extraordinary legal assessment that the vessel is expected to remain under arrest for several months, we are instructed we have to obtain legal advice. The Master is in consultation with and being instructed by us in Piraeus, current managers." [*Id.* at ¶ 7].

8. Captain Karatsolias did not provide any of the requested information or documents, nor indicate that any were forthcoming. [*Id.* at ¶ 8].

9. On February 12, 2025 – that same day – NMS responded as follows:

> Any concern relating to our assessment of Kithnos' term of arrest should not affect the safety of vessel or crew. The residual cargo is potentially unsafe and could ultimately lead to severe vessel damage, or explosion, if not properly stored. The requested information is intended to provide assurance, after analysis, that an adverse onboard event will not occur.

[*Id.* at ¶ 9].

10. In its February 12, 2025 email, NMS further demanded that the requested documents and information be provided to NMS no later than 1200 Central Time on February 14, 2025. [*Id.* at ¶ 10]. That deadline has since lapsed, and as of the time of this filing, Captain Manolarakis has failed to provide the requested documentation. [*Id.*]

11. On February 14, 2025, Counsel for NMS conferred with Mr. Dimitri Georgantas, an attorney who claims to represent an Eletson entity, to discuss production of the aforementioned documents. In an attempt to compromise, Counsel for NMS provided Mr. Georgantas with a narrowed list of only those documents which MTD deems critical to ensure the continued safe operation of the Vessel and the safety of her crew. [McGrath Decl., ¶ 7; Swimmer Decl., ¶ 11].

12. As of the time of this filing, despite attempted negotiations between NMS's Counsel and Mr. Georgantas regarding the production of, at least, the critical documents identified by MTD, Mr. Georgantas has not complied with such requests.

13. Captain Manolarakis' failure to cooperate with NMS and provide the requested documents poses serious concerns regarding continued safe operation of the Vessel. [McGrath Decl., ¶ 9]. The information and documents requested are necessary for MTD, and therefore, NMS,

to ensure that the VCM onboard is being maintained in a safe manner and in accordance with proper procedures and protocols. [*Id.* at ¶¶ 7, 9].

14. Additionally, on February 17, 2025, NMS emailed Master Manolarakis the following message:

> Pursuant to the Court order issued on February 5, 2025, effective immediately all third-party supplies and services required by the *Kithnos* will be arranged by National Maritime Services ("NMS") during the pendency of their appointment as the substitute custodian of the vessel. All requests for the required services should be submitted in writing to Bill O'Dell, Vice President of Operations (in copy). You should no longer arrange any Vessel supplies or services independently. This policy is necessary to ensure that NMS can properly carry out its obligations to the Court regarding indemnification from any and all liability and responsibility arising out of the care and custody of the Vessel from the date of the transfer of possession of the Vessel, including liability arising out the movement of the Vessel or cargo loading/unloading operations of the Vessel. Please reply to this email, indicating your concurrence, no later than 1600 Central Time today, in order for us to avoid requesting the court's assistance with these instructions. [Swimmer Decl., ¶ 12].

15. NMS's purpose for delivering this message is to ensure that all third-party services and supplies are delivered safely, with NMS's knowledge, and after satisfactory vendor vetting. [*Id.* at ¶ 13]. This will protect the Vessel and NMS from potential direct third-party claims and claims made against the U.S. Marshals Service, whom NMS has indemnified in these proceedings. [*Id.*] The deadline provided for in NMS's message has lapsed, and as of the time of this filing, Captain Manolarakis has failed to respond. [*Id.*].

16. By failing to comply with NMS's repeated demands, Captain Manolarakis is obstructing NMS's ability to carry out its obligations as the substitute custodian appointed by this Court. [Dkt. #7: Order Appointing NMS; Swimmer Decl., ¶ 14].

17. On February 18, 2025, Mr. Georgantas sent an email to Counsel for NMS alleging to provide information regarding the narrowed list of document requested on February 14, 2025.

However, no documents were provided, only brief statements purporting to provide the critical information needed by MTD. [*Id.* at ¶ 16].

18. NMS reviewed the information provided by Mr. Georgantas with Denis McGrath at MTD; however, the limited information was not sufficient for MTD to properly assess the situation of the cargo onboard the KITHNOS. [*Id.* at ¶ 17].

19. In addition to the limited information received, MTD requested to see the Crew List, OCIMF Officer's Matrix, and redacted Bills of Lading removing commercially sensitive information. [McGrath Decl., ¶ 10].

20. On February 18, 2025, Counsel for NMS requested this information from Mr. Georgantas, however, as of the time of execution of this Declaration, Mr. Georgantas has not provided any of these documents or information. [Swimmer Decl., ¶ 19].

21. As of the time of this filing, despite attempted negotiations between NMS's Counsel and Mr. Georgantas regarding the production of, at least, the critical documents identified by MTD, Mr. Georgantas has not complied with such requests, other than to provide insufficient responses to a few of the items requested. The sheer delay in obtaining documents from the Vessel and/or Mr. Georgantas also increases the risks to the Vessel's safety.

22. Mr. McGrath has "serious concerns regarding continued safe operation of the Vessel." [McGrath Decl., ¶ 11].

23. Further, based on its communications to date with Captain Manolarakis and other individuals purporting to act on behalf of an Eletson entity, NMS is concerned that Captain Manolarakis may unilaterally direct the Vessel to depart the District. [Swimmer Decl., ¶ 19].

24. NMS therefore requests authorization to immediately remove and replace Captain Manolarakis as Master of the Vessel.

25.     The Court has the power, in the context of Rule D actions, to order removal of crew members from a vessel. See, e.g., *Korthinos v. Niarchos*, 175 F.2d 730 (4th Cir. 1949), cert. denied 338 U.S. 894 (1950); *United States v. USAF Coastal Crusader*, 210 F. Supp. 430 (D. Md., 1962); *United States v. USAF Twin Falls Victory*, 1962 WL 115652 (D. Md. Nov. 19, 1962).

26.     It is the intention of NMS to repatriate Captain Manolarakis to his country of citizenship, Greece. NMS seeks an Order permitting it to pay all costs associated with the repatriation of Captain Manolarakis, and that such costs of repatriation be deemed a cost of administration.

27.     NMS will utilize its resource network to perform a global search for an experienced, duly-licensed replacement Master, in concert with the Vessel's flag state manning requirements, as applicable. It is anticipated this will take a few days.

28.     NMS has conferred with counsel for Plaintiffs regarding the filing of this Motion, and counsel for Plaintiffs do not oppose.

WHEREFORE, NMS respectfully requests the entry of an Order that NMS is authorized to take any and all necessary steps, in compliance with all applicable laws, to remove Captain Konstantinos Manolarakis from the Vessel;

WHEREFORE, NMS further respectfully requests that it direct the U.S. Marshals Service to assist NMS with the removal of Captain Konstantinos Manolarakis from the Vessel, if necessary;

WHEREFORE, NMS further respectfully requests the entry of an Order that NMS is authorized to pay all costs associated with the repatriation of Captain Konstantinos Manolarakis, and that such costs of repatriation be deemed a cost of administration;

WHEREFORE, NMS further respectfully requests that the Court enter an order authorizing NMS to take any and all necessary steps to ensure appointment of a replacement Master;

WHEREFORE, NMS respectfully requests that the Court enter an order that the U.S. Customs and Border Protection is ordered and authorized to assist with repatriation of Captain Konstantinos Manolarakis.

Respectfully submitted,

**SCHOUEST, BAMDAS, SOSHEA, BENMAIER & EASTHAM, PLLC**

*/s/ KHz/*

**KELLY M. HAAS**
State Bar No. 24059874
S.D. Tex. ID No. 870096
khaas@sbsb-eastham.com
1001 McKinney, Suite 1400
Houston, Texas 77002
Telephone: (713) 588-0446
Facsimile: (713) 574-2942
**ATTORNEY FOR INTERESTED PARTY
NATIONAL MARITIME SERVICES, INC.**

OF COUNSEL:

**SCHOUEST, BAMDAS, SOSHEA, BENMAIER & EASTHAM PLLC**

**HAYLEY STANCIL**
Texas Bar No. 24144121
S.D. Tex. ID No. 3905848
hstancil@sbsb-eastham.com
1001 McKinney, Suite 1400
Houston, Texas 77002
Telephone: (713) 588-0446
Facsimile: (713) 574-2942

## **CERTIFICATE OF CONFERENCE**

I certify that on February 18, 2025, I conferred with Dimitri P. Georgantas, who purports to represent the Defendants. He advised that he would file a Notice of Appearance on their behalf on February 19, 2025; however, he has not done so at the time of this filing. During our conference he was advised that if the requested documents were not provided today, NMS would seek the assistance of the Court.

*/s/ KHz*

**KELLY M. HAAS**

## **CERTIFICATE OF SERVICE**

I certify that on February 19, 2025, a true copy of the foregoing document was served upon all counsel of record via the Court's Case Management/Electronic Case Files (CM/ECF) system.

*/s/ KHz*

**KELLY M. HAAS**