**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **KITHNOS SPECIAL MARITIME ENTERPRISE, ELETSON HOLDINGS INC., ELETSON CORPORATION, ELETSON GAS LLC,** | § § § § § | |
| *Plaintiffs*, | § § | |
| **v.** | § § | |
| **M/V KITHNOS (IMO 9711523), her engines, tackle, equipment, and appurtenances, *in rem*,** | § § § | **C.A. No. 2:25-cv-00042** |
| **and** | § § | **In Admiralty, Rule 9(h)** |
| **FAMILY UNITY TRUST COMPANY, GLAFKOS TRUST COMPANY, LASSIA INVESTMENT COMPANY, ELAFONISSOS SHIPPING CORPORATION, KEROS SHIPPING CORPORATION, VASSILIS HADJIELEFTHERIADIS, LASKARINA KARASTAMATI, VASSILIS E. KERTSIKOFF, VASILEIOS CHATZIELEFTHERIADIS, KONSTANTINOS CHATZIELEFTHERIADIS, IOANNIS ZILAKOS, ELENI KARASTAMATI, PANAGIOTIS KONSTANTARAS, EMMANOUIL ANDREOULAKIS, ELENI VANDOROU, *in personam*** | § § § § § § § § § § § § § § § § § § | |
| *Defendants.* | § | |

**KITHNOS SPECIAL MARITIME ENTERPRISE'S
MOTION TO VACATE THE ARREST OF THE LPG/C KITHNOS**

COMES NOW Claimant Kithnos Special Maritime Enterprise ("Claimant" or "Kithnos SME"), on the authority of its lawful board of directors, and, subject to its Supplemental Rule E(8) restricted appearance, files this Motion to Vacate the Arrest of the LPG/C KITHNOS ("KITHNOS" or "Vessel"), and, in support of same, provides as follows:

# I.
## INTRODUCTION & SUMMARY OF ARGUMENT

This suit is part of a multi-year shareholder dispute between (1) the affiliates of Murchinson Ltd. ("Murchinson"), a Canadian alternative management firm that specializes in distressed, corporate action, and structure finance situations, and (2) the Greek families that have operated Eletson's fleet of vessels since its founding in 1966. The shareholder dispute boils down to who owns 100% of the preferred membership units in Eletson Gas LLC, which is the parent of Kithnos SME.

In this most recent salvo, Murchinson (appearing as Plaintiffs Eletson Holdings, Inc. ("Eletson Holdings"), Eletson Corporation ("Eletson Corp"), Eletson Gas, LLC ("Eletson Gas"), and Kithnos SME (collectively referred to as the "Murchinson Plaintiffs")) claim that they are entitled to possession of the KITHNOS, a liquid petroleum gas carrier vessel that is bareboat chartered to Kithnos SME, a wholly-owned subsidiary of Eletson Gas.[1]

More specifically, the Murchinson Plaintiffs contend that their claimed 100% possession of the ***common shares*** of Eletson Gas vests the Murchinson Plaintiffs with control over Eletson Gas and Kithnos SME. **The principal problem with the Murchinson Plaintiffs' claim is that they do not own or possess the *preferred shares* in Eletson Gas** (the "Preferred Shares"). According to the Eletson Gas LLCA,[2] the owners and holders of the Preferred Shares (the

---

[1]     The Murchinson Plaintiffs have filed similar litigation regarding at least three other vessels under the Eletson Gas enterprise, including Case No. 4:25-cv-00755, *Kithara [sic] Gas Company, et al. v. M/V Kithira (IMO 9788978) and Family Unity Trust Company, et al.*; in the United States District Court for the Southern District of Texas (Houston Division); Case No. 6:25-cv-00016, *In re: M/V Ithacki (IMO 9788966)*; in the United States District Court for the Southern District of Texas (Victoria Division); No. 1:25-cv-00004, *Kinaros Special Maritime Enterprise, et al. v. M/V Kinaros, et al.*; in the United States District Court for the Southern District of Texas (Brownsville Division). Such suits are likewise improperly brought under the names of Eletson Gas, and the other respective Murchinson Plaintiffs.

[2]     The "LLCA" or "Eletson Gas LLCA" refers to the August 16, 2019 Third Amended and Restated Limited Liability Company Agreement of Eletson Gas LLC.  The LLCA is amended in part by the April 16, 2020 Amendment No. 1 to the Third Amended and Restated Limited Liability Company Agreement of Eletson Gas LLC (the "LLCA Amendment").

"Preferred Holders") are entitled to a majority of seats on the Eletson Gas board of directors (the "Eletson Gas Board"), which is responsible for the management and operations of Eletson Gas and its wholly-owned subsidiaries, including Kithnos SME.[3] Accordingly, to the extent that this suit, which effectively amounts to a shareholder dispute that is already pending elsewhere, is within the Court's jurisdiction, the Murchinson Plaintiffs have acted without proper authority (standing) in bringing this suit, and the arrest must be vacated.

For purposes of this motion, the arrest should be vacated because, even assuming that Murchinson controls the common shares of Eletson Gas through control of Eletson Holdings, Murchinson does not control the Preferred Shares of Eletson Gas. Under the LLCA, the holders of the Preferred Shares functionally control Eletson Gas, and Murchinson cannot bring this action on its own.

While this shareholder dispute has a long and litigious history, the pertinent facts are simple and dispositive: Eletson Gas is a limited liability company whose membership is made up of common unit holders and preferred unit holders. The LLCA, as amended by the LLCA Amendment, provides that (i) the common unit holders may designate two seats on the Eletson Gas Board, (ii) the Preferred Holders may designate three seats on the Eletson Gas Board, and (iii) a sixth director shall be designated by the majority of the remaining directors.[4] The Eletson Gas Board may only act by majority vote, and there can be no majority without one or more of the Preferred Holders' designated directors. Therefore, an act of the common unit holders alone, or their board designees, is not a valid act of Eletson Gas.

---

[3]    Exhibit 1, LLCA § 3.3; Exhibit 2 § 1(c). The undersigned counsel has appeared on behalf of Kithnos SME in this suit pursuant to the instructions of the lawful board of directors of Kithnos SME, acting under the ultimate authority of the Cypriot Nominees (as defined in footnote 6).

[4]    Exhibit 1, LLCA § 3.3; Exhibit 2 § 1(c).

Indeed, a JAMS arbitration has already taken place on the issue of who owns the Preferred Shares. In a September 29, 2023 Final Award (the "Award"),[5] the arbitrator, the Hon. Ariel E. Belen, found that the Preferred Shares were transferred to the Cypriot Nominees[6] as of March 11, 2022.[7] The Award was confirmed by order of the District Court for the Southern District of New York (the "SDNY") in Case No. 23-cv-07331, *Eletson Holdings, Inc. and Eletson Corporation v. Levona Holdings Ltd.* (the "SDNY Case") by that court's February 9, 2024 Opinion and Order (as amended, the "SDNY Order"). *See* SDNY Case Docket Nos. 83[8], 104[9], 105[10], and 268[11]. While the Award is the subject of a pending motion to vacate in front of the SDNY, the finding that the Preferred Shares were transferred to the Cypriot Nominees on March 11, 2022 has not been stayed or vacated and it has not been modified as to the ownership of the Preferred Shares. The Award and the SDNY Order are effective and enforceable as they currently stand, including the findings that the Cypriot Nominees have owned the Preferred Shares since March 11, 2022.

This suit was filed by the Murchinson Plaintiffs, purporting to act on behalf of Eletson Gas and its subsidiary, Kithnos SME.[12] The Complaint makes many factual assertions about the

---

[5]  A true and complete copy of the Award is attached hereto as Exhibit 3.

[6]  The Cypriot Nominees are Fentalon Limited, Desimusco Trading Limited, and Apargo Limited.

[7]  The arbitrator found that "the preferred interests in the Company were transferred to the Preferred Nominees, effective as of March 11, 2022, and the Preferred Nominees are permitted transferees under the LLCA." SDNY Order, p. 87 (citing the Award). The Award refers to Eletson Gas as "the Company" and to the preferred shares or preferred units in Eletson Gas as the "Preferred Interests."

[8]   Exhibit 4, SDNY Case Docket No. 83.

[9]  Exhibit 5, SDNY Case Docket No. 104.

[10]  Exhibit 6, SDNY Case Docket No. 105.

[11]  Exhibit 7, SDNY Case Docket No. 268.

[12]  Section 3.3 of the LLCA entitles the Eletson Gas Board to appoint directors to Eletson Gas's subsidiaries, including Kithnos SME.  Exhibit 1, LLCA § 3.3(c).  Pursuant to the governing documents of Kithnos SME, directors must then be elected by Kithnos SME's shareholders. *See* Exhibit 8 hereto, Deed of Shipping Company Establishment According to the Type of Special Maritime Enterprise with Corporate Name "Kithnos Special Maritime Enterprise" (the "Kithnos SME Deed"), pp. 7-8.

ownership and governance of Eletson *Holdings*, which is the common unit owner of Eletson *Gas*, but omits the existence of the preferred share owners in order to imply that Eletson Holdings controls the board of Eletson Gas. This is both misleading and untrue.

The present legal status of the parties' dispute is that (i) by its mere ownership of common shares in Eletson Gas, Eletson Holdings is not entitled to act unilaterally on behalf of Eletson Gas, (ii) the Award established that the Preferred Shares (which designate a majority of the Eletson Gas Board) were transferred to the Cypriot Nominees in March 2022, and that finding in the Award has been confirmed by the SDNY and is not stayed, vacated or modified as to such finding, and (iii) no Eletson Gas Board member designated by the Preferred Holders ever approved the Vessel's arrest or the filing of this suit. As a result of these three facts, which are not subject to reasonable dispute, the Vessel was arrested without the requisite corporate authority. The arrest should be vacated immediately. Moreover, given the egregiousness of the Murchinson Plaintiffs' bad-faith conduct, Kithnos SME is entitled to substantial damages for the Murchinson Plaintiffs' wrongful arrest of the Vessel.

## II.
## FACTUAL BACKGROUND

### A.    Eletson Gas and Kithnos SME

Eletson Gas was established in October 2013, pursuant to a joint venture between Eletson Holdings and affiliates of Blackstone, Inc. (collectively, "Blackstone"), a US-based alternative investment management company. A true and complete copy of the LLCA and the LLCA Amendment, which make up the current operating agreement for Eletson Gas, are attached hereto as Exhibit 1 and Exhibit 2, respectively. Eletson Gas eventually grew to consist of a fleet of 14 liquefied petroleum gas carrier (LPG/C) vessels, including the KITHNOS.

Blackstone was originally Eletson Gas's Preferred Holder, which is shown on the Register of units of interest in Eletson Gas included in the LLCA, and owned 100% of the Preferred Shares. Blackstone remained the holder of all Preferred Shares until Blackstone sold the Preferred Shares to Murchinson in 2021 for an initial investment of $3 million. Murchinson created a special purpose vehicle, Levona Holdings, Ltd. ("Levona"), to hold the Preferred Shares transferred from Blackstone in 2021.

Shortly after Levona took possession of the Preferred Shares, discussions commenced for a buyout of the Preferred Shares by Eletson Gas or its nominees. Pursuant to the performance of the terms of a Binding Offer Letter dated February 22, 2022 (the "BOL"), Levona's interests in the Preferred Shares were transferred not to Eletson Gas but to the Cypriot Nominees as of March 11, 2022. In exchange, Levona received two of the 14 LPG/C vessels, the LPG/C SYMI and the LPG/C TELENDOS (worth at least $23 million at the time) as well as an assignment of claims as collateral. About four months later, and in complete disregard of this transaction, Levona entered a July 15, 2022 Letter of Intent with Unigas, Eletson Gas's main competitor in the LPG market, to sell Eletson Gas's entire fleet of vessels for $262 million.

The resulting shareholder dispute over ownership of the Preferred Shares was submitted to JAMS arbitration in accordance with the Eletson Gas LLCA. In the Award, the arbitrator found that "as of March 11, 2022, Levona had no membership interest in the Company,[13] [and] that the Preferred Interests[14] were transferred to the Nominees."[15] SDNY Order, p. 115 (citing the Award). Levona presently has a pending motion in the SDNY Case contesting confirmation of the Award. However, the SDNY's finding that the Preferred Shares were transferred to the Cypriot Nominees

---

[13]    The "Company" as used in the Award refers to Eletson Gas.

[14]    The "Preferred Interests" as used in the Award refers to the Preferred Shares.

[15]    The "Nominees" as used in the Award refers to the Cypriot Nominees.

as of March 11, 2022 remains effective because that finding in the Award and the SDNY Order have not been stayed, and such finding has not been modified or vacated.[16]

The current lawful Preferred Holders-appointed directors of Eletson Gas, who are the managers under the LLCA,[17] are: (1) Eleni Chatzieleftheriadi; (2) Konstantinos Kertsikoff; (3) Adrianos Psomadakis-Karastamatis; and (4) Maria Biniou (collectively, the "Preferred Eletson Gas Directors"). The Preferred Eletson Gas Directors were formally designated and appointed by the Preferred Holders via a February 26, 2024 written Notice of Removal and Appointment of New Directors to Eletson Gas LLC, a true and correct copy of which is attached hereto as Exhibit 9 (the "Cypriot Nominees' Directors Appointment").[18] Prior to the March 11, 2022 transfer of Levona's ownership of the Preferred Shares to the Cypriot Nominees, Levona's designees to the Eletson Gas Board were Adam Spears, Joshua Fenttiman, Mark Lichtenstein, and Eliyahu Hassett (collectively, the "Levona Former Directors"). After the March 11, 2022 transfer of the Preferred Shares to the Cypriot Nominees, Levona no longer had any rights to designate members of the Eletson Gas Board.[19] The current lawful officers of Eletson Gas are: (1) Vasileios Kertsikoff (Chairman, President and Treasurer); and (2) Laskarina Karastamati (Secretary). Pursuant to the laws of the Marshall Islands, where Eletson Gas is incorporated, the current membership, managers, directors, and officers are confirmed by the Certificate of Incumbency attached hereto as Exhibit 10.

---

[16]   While Levona continues to challenge the Award via a pending motion to vacate the Award in the SDNY Case, no ruling has been made and discovery on Levona's motion has been stayed as of December 30, 2024. The Award, as modified by the SDNY Order, still stands as of the date of this Motion. There is not a single arbitration award, court decision, or other authority proving that the Murchinson Plaintiffs are now the rightful holders of the Eletson Gas Preferred Shares or are otherwise in control of Kithnos SME and, thus, the Vessel's bareboat charterer.

[17]   Exhibit 1, LLCA § 3.1(a) and 3.3(a).

[18]   As discussed below, the replacement of the Levona Former Directors on the Eletson Gas Board as late as February 26, 2024, happened *before* Holdings purportedly designated its two directors to the Eletson Gas Board on November 29, 2024, which shows that the narrative advanced by the Murchinson Plaintiffs in the Complaint and through Exhibit 11 to the Complaint is false.

[19]   *See* Award, Exhibit 3, pp. 45-46.

As explained below, the Eletson Holdings bankruptcy case and confirmed chapter 11 plan did not change the makeup or governance of Eletson Gas, its board of directors, its managers, or its officers, nor did they strip control over the Eletson Gas Board from the Preferred Holders. None of the Preferred Eletson Gas officers, directors, and/or managers have authorized the Murchinson Plaintiffs, including but not limited to Murchinson's purported "Eletson Gas", to arrest the Vessel or bring this suit.

Kithnos SME is the bareboat charterer of the Vessel. *See* Doc. 2, Exhibit 1. The current lawful board of directors of Kithnos SME, serving pursuant to the ultimate authority of the Cypriot Nominees, are: (1) Vasileios Kertsikoff (President); (2) Vasileios Chatzieleftheriadis (Vice President and Treasurer); and (3) Laskarina Karastamati (Secretary). No lawful director or officer of Kithnos SME has authorized the Murchinson Plaintiffs to arrest the Vessel or bring this suit. The "Kithnos SME" board of directors espoused by the Murchinson Plaintiffs was purportedly "appointed" without the proper and required input[20] of the Eletson Gas Preferred Holders (the Cypriot Nominees) and it has no legal authority to act on behalf of Kithnos SME, including but not limited to arresting the Vessel or the bringing of this suit.

## B.    The Eletson Holdings Bankruptcy

Shortly before the JAMS evidentiary hearing of the shareholder dispute in respect of Eletson Gas, another Murchinson affiliate, Pach Shemen, LLC, purchased substantial debts of Eletson Holdings and, along with two other petitioning creditors (with Pach Shemen purportedly holding over $183 million of the approximately $213 million aggregate claims of the petitioners), initiated a Chapter 7 involuntary bankruptcy proceeding against Eletson Holdings, as well as two related entities, Eletson Finance (US) LLC ("Eletson Finance") and Agathonissos Finance, LLC

---

[20]    Exhibit 1, LLCA § 3.3(c); Exhibit 8, Kithnos SME Deed, pp. 7-8.

("Agathonissos Finance," and collectively with Eletson Holdings and Eletson Finance, the "Debtors"), on March 7, 2023. The case was eventually converted to a Chapter 11 reorganization. On October 25, 2024 and November 4, 2024, a Chapter 11 Plan was confirmed which, among other things, provided for the cancellation of the existing equity of Eletson Holdings and the distribution of new shares in the "Reorganized" Eletson Holdings to creditors, including the Murchinson affiliates.

The Murchinson Plaintiffs repeatedly emphasize the following regarding the Chapter 11 Plan:

> "Crucially, Section 5.2(c) providing that 'on the Effective Date, all property in each Estate, including all Retained Causes of Action, and any property acquired by any of the Debtors, **including interests held by the Debtors in their respective non-Debtor direct and indirect subsidiaries and Affiliates shall vest in Reorganized Holdings...**'" *See* Complaint (Doc. 2), p. 7, ¶ 32.h. (emphasis in original); *id.* pp. 10-11, ¶ 45.

While it is undisputed that the Chapter 11 Plan includes this language, the problem for the Murchinson Plaintiffs is that the Preferred Shares were not property of the estates of Eletson Holdings or any other Debtor, or elsewhere in their respective corporate structures—because the Preferred Shares were not owned by any Debtor when the bankruptcy case was filed.[21] *See* 11 U.S.C. § 541(a) (The bankruptcy "estate is comprised of all the following property, wherever located and by whomever held: . . . all legal or equitable interests of the debtor in property as of the commencement of the case"). Rather, as a consequence of the BOL transaction, and as found in the JAMS Award, the Preferred Shares (i) were never owned by Eletson Holdings and (ii) had been transferred not to Eletson Gas but to the Cypriot Nominees about a year before Murchinson (Pach Shemen) initiated the involuntary bankruptcy proceedings, and thus they were not subject

---

[21] This fact is consistent with the bankruptcy schedules of assets and liabilities filed by Eletson Holdings, wherein Eletson Holdings listed its ownership of 100% of the common shares of Eletson Gas but did not list any ownership of the preferred shares of Eletson Gas.

to transfer, cancellation, or otherwise under the Chapter 11 Plan. They still remain in the hands of the Cypriot Nominees, who continue to control Eletson Gas and, through Eletson Gas, Kithnos SME.

The Murchinson Plaintiffs appear to argue that in gaining control over all of the common stock of Eletson Gas, they acquired control of the Eletson Gas Board. Paragraph 34 of the Complaint states: "On November 29, 2024, Plaintiff Eletson Holdings as the sole common shareholder in Plaintiff Eletson Gas removed all of its former appointee directors in that Plaintiff entity and appointed new directors." While it is true that Eletson Holdings held all of the common shares of Eletson Gas at that time, that interest only entitled Eletson Holdings to replace its own two designees on the Eletson Gas Board—not to replace the entire Eletson Gas Board, which the Complaint incorrectly implies. The factual omissions of the Complaint on this issue are highlighted by the inclusion of the Common Unit Consent attached to the Complaint as Exhibit 11, which is also attached hereto as Exhibit 11 for the Court's convenience. The Common Unit Consent states that as of November 29, 2024, the Eletson Gas Board includes the Levona Former Directors. *See* Exhibit 11. However, at least nine months before this self-serving document was created, the Levona Former Directors had already been validly removed from the Eletson Gas Board,[22] which action is formalized by the Cypriot Nominees' Directors Appointment and recognized by the Marshall Islands. *See* Exhibits 9 & 10. Based on the Cypriot Nominees' Directors Appointment, the Preferred Eletson Gas Directors have been on the Eletson Gas Board since at least February 26, 2024. Thus, the purported directors listed on Exhibit 11 to the Complaint—which was created

---

[22] The Cypriot Nominees, as successors to Blackstone's original interests in Eletson Gas, are the "Designating Member" under section 303 of the LLCA. *See* Exhibit 1, LLCA § 12.6 ("This Agreement shall inure to the benefit of the Members…and shall be binding upon the parties, and, subject to Section 10.2, their respective successors, [and] permitted assigns…") and § 3.3 ("Only the Designating Member who originally designated a Director may remove such Director…").

November 29, 2024—are <u>not</u> the Eletson Gas Board. Any action taken by this invalid group of Murchinson Plaintiffs' designees is not a valid act of Eletson Gas, including the arrest of the Vessel and the filing of this suit.

The reorganization of Eletson Holdings did not give Eletson Holdings more powers than it had under the Eletson Gas LLCA and did not empower Eletson Holdings to remove the Eletson Gas directors originally designated by the Preferred Holders. Nor did these events remove the Eletson Gas LLCA provision that the Preferred Holders—not Eletson Holdings—are entitled to appoint the majority of board members of Eletson Gas's subsidiaries, including Kithnos SME.[23]

## C.    The Arbitration and the Bankruptcy Stay Relief Order

As detailed above, the Award issued by the arbitrator, the Hon. Ariel E. Belen, found that the Preferred Shares were transferred to the Cypriot Nominees on March 11, 2022 (about a year before the Eletson Holdings bankruptcy was initiated). This ruling has been confirmed by the SDNY. Completely ignoring these facts, the Murchinson Plaintiffs argue that the Cypriot Nominees are violating an April 11, 2023 stipulated stay relief order of the bankruptcy court (the "Stay Relief Order") which lifted the automatic stay of 11 U.S.C. § 362 to allow the arbitration to proceed. The "Arbitration Parties" are defined in the Stay Relief Order as: (1) Eletson Holdings; (2) Eletson Corporation; and (3) Levona Holdings Ltd; the "Arbitration Parties" do not include the Cypriot Nominees or Eletson Gas. The Murchinson Plaintiffs' unsubstantiated argument in the Complaint that the Cypriot Nominees are violating the Stay Relief Order is a red herring. The proper focus of this Court is that the Murchinson Plaintiffs have brought this suit without authority in blatant violation of the LLCA. In any event, the bankruptcy court is the proper court to interpret and enforce the Stay Relief Order, not this Court.

---

[23]    Exhibit 1, LLCA § 3.3(c); <u>Exhibit 8</u>, Kithnos SME Deed, pp. 7-8.

**III.**

**A**RGUMENT **& A**UTHORITIES

**A.    Admiralty Law Does Not Govern Agreements Between Parties to Jointly Engage in Business, Even If the Business is Maritime in Nature**

This suit is essentially a shareholder dispute regarding control of Eletson Gas, and, in turn, Kithnos SME. The Murchinson Plaintiffs – wrongfully claiming authority via 100% of Eletson Gas's common shares – have invalidly appointed their own purported boards of directors for Eletson Gas and Kithnos SME. The Cypriot Nominees – the holders of the Preferred Shares per the Award and the SDNY Order – had already lawfully appointed valid boards for Eletson Gas and Kithnos SME in accordance with the LLCA. In effect, the Murchinson Plaintiffs are asking this Court to determine which of the respective boards have authority to act on behalf of Eletson Gas and Kithnos SME pursuant to the LLCA and the Kithnos SME Deed. This falls outside of admiralty jurisdiction. Moreover, the LLCA requires a dispute resolution forum – arbitration – which has already been exercised, and further proceedings regarding the arbitration are ongoing. Although the Murchinson Plaintiffs may be unhappy with some of the findings of the JAMS arbitrator and the SDNY to date, admiralty jurisdiction is not available to the Murchinson Plaintiffs to attempt to usurp the already pending proceedings and bring another court into this dispute to potentially disrupt the binding conclusions of the arbitrator and SDNY, which properly has and continues to exercise jurisdiction over this shareholder dispute.

The fundamental interest giving rise to maritime jurisdiction is protection of maritime commerce. *Norfolk v. Southern Ry Co. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 125 S. Ct. 385 (2004). The remedies contained in the Supplemental Rules for Admiralty and Maritime Claims (including Supplemental Rule D) do not create jurisdiction; they are dependent on jurisdiction otherwise established. *Cary Marine, Inc. v. Motorvessel Papillion*, 872 F. 2d 751, 754 (6th Cir.

1989). Corporate disputes, such as the one before this Court, are not cognizable in admiralty and do not support the maritime remedies of attachment and arrest of a vessel. *Stathos v. The Maro*, 134 F. Supp. 330 (E.D. Va. 1955); *The Managua*, 42 F. Supp. 381 (S.D.N.Y. 1941). The fact that Eletson Gas's wholly-owned subsidiary, Kithnos SME, is the bareboat charterer of the Vessel is merely incidental to the underlying corporate dispute and does not convert this into a maritime claim. "The mere fact that a ship is involved will not bring the cause within the jurisdiction of the admiralty court." *Richard Bertram & Co., v. The Yacht Wanda*, 447 F. 2d 966, 967-68 (5th Cir. 1971).

As early as the 1850s, US courts have been clear that an agreement to operate a business is not subject to the court's admiralty jurisdiction. In *Ward v. Thompson (The Detroit)*, the United States Supreme Court held that an agreement between parties to run a maritime business was not a maritime contract. 63 U.S. 330, 334 (1859). The parties in *The Detroit* jointly agreed to operate the steamboat Detroit, with one party contributing the vessel and the other his operational knowledge of the vessel. The Court held that if the two parties to the contract joined together to run the business, and if the profits were to be split between the participants, no admiralty jurisdiction exists. *Id.* at 334. "Of such a contract, a court of admiralty has no jurisdiction." *Id.*; *see also Turner v. Beacham*, 24 F. Cas. 346, 348 (C.C.D. Md. 1858) ("[A] contract to form a partnership to purchase a vessel, or to purchase anything else, is certainly not maritime; a court of admiralty has no right to decide whether such a contract was legally or equitably binding, nor to adjust the accounts and liabilities of the different partners. These questions are altogether outside of the jurisdiction of the court;"). The holding in *The Detroit* was not an anomaly; the Court held similarly three years earlier in *Vandewater v. Mills, Claimant of Yankee Blade*, 60 U.S. 82, 92

(1856). In *Vandewater*, the Court explained that merely because a business venture is maritime in nature, does not create admiralty jurisdiction. As the Court explained:

> This is nothing more than an agreement for a special and limited partnership in the business of transporting freight and passengers between New York and San Francisco, and the mere fact that the transportation is by sea, and not by land, will not be sufficient to give the court of admiralty jurisdiction of an action for a breach of the contract. It is not one of those to which the peculiar principles or remedies given by the maritime law have any special application, and is the fit subject for the jurisdiction of the common-law courts. *Id.* at 92.

*See also The Managua,* 42 F.Supp. 382 (court lacked jurisdiction inasmuch as, although claim was denominated as petitory, possessory or licitation cause of action in admiralty, its main purpose was to settle a partnership dispute, after which vessels were to be delivered to partnership or partition sought); *Coutsodontis v. M/V ATHENA*, 2008 WL 4330236, at * 1 (E.D. La. Sept. 16, 2008) (quashing a Supplemental Rule D arrest by a purported 50% owner of a vessel, finding that there was no admiralty jurisdiction to determine the rights of the co-venturers); *Economu v. Bates*, 222 F. Supp. 988, 992 (S.D.N.Y. 1963) (an agreement to enter into a joint venture or partnership to operate a vessel was not a maritime agreement); *J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96, 99–100 (5th Cir. 1992) ("The only reason title over The Lady Lucille is at issue is that her purchaser and her builder are arguing over the terms of their contract. Interpretation of that contract will determine who rightfully holds permanent title. **The fact that the parties have contractually agreed to pluck off the petals of this dispute and sort through them in arbitration does not change the identity of this action—that is, it does not transform a contract dispute into a maritime action. Characterizing the dispute before us as a 'petitory' action for title apart from the underlying contract dispute so that it can become 'maritime' and bestow**

**jurisdiction upon this court to determine who holds title while arbitration is in progress is, to say the least, grasping. We cannot oblige.**") (emphasis added).[24]

The courts in *Stathos*, 134 F. Supp 330 and *The Managua*, 42 F. Supp. 381, which were similarly faced with shareholder/partnership disputes that involved a vessel, reached the same conclusion. *Stathos* involved a joint venture between the plaintiff and a corporation, Maria Trading Corporation. Maria Trading was the legal title owner of the vessel, Maro. The corporation had no assets other than the vessel. Coincidentally, 500 shares of bearer stock were authorized by the corporation. Per agreement, the corporation was to transfer to the plaintiff or his designees 250 shares of stock "representing one-half interest in the Maria Trading Corporation and the S/S Maro." *Stathos*, 134 F. Supp. at 331. The transfer did not take place and plaintiff filed a purported "possessory" action praying for the appointment of a trustee to manage the vessel and for an accounting of profits generated by her. Although a vessel was involved, the court found that the basis of the claim was a corporate stock dispute. The court held that the "primary purpose of this action is to require specific performance of the agreement to transfer stock of Maria Trading Corporation. It is the opinion of this Court that admiralty has no jurisdiction to entertain such a controversy." *Stathos*, 134 F. Supp. at 332. Similarly, in *The Managua*, 42 F. Supp. 381, the plaintiff was a partner who invoked Supplemental Rule D to assert petitory and possessory claims as a result of his partnership's alleged wrongful sale of four vessels, which were owned by the partnership, without the consent of the plaintiff. The court vacated the vessels' arrest finding there was no admiralty jurisdiction, reasoning:

---

[24] *See also Fathom Expeditions, Inc. v. M/T Gavrion*, 402 F. Supp. 390, 396 (M.D. Fla. 1975) (recognizing that contracts related to joint ventures or partnerships in maritime businesses are beyond the court's admiralty jurisdiction).

> [The dispute] clearly involves a partnership dispute cognizable in equity, and not in admiralty. The claim that the suit is one on a petitory, possessory and licitation cause of action cannot be sustained. Clearly, the main purpose is to settle a partnership dispute ....

Despite the Murchinson Plaintiffs' characterization of their claims under Supplemental Rule D, they are likewise derived from the shareholder dispute involving the LLCA. The Murchinson Plaintiffs' characterization of their claims as maritime is improper. The underlying dispute regarding the LLCA has been submitted to arbitration. The March 2022 transfer of the Preferred Shares to the Cypriot Nominees has been confirmed by both the JAMS arbitrator and the SDNY. While Murchinson has kept the door open to further challenge the transfer of the Preferred Shares in the SDNY Case, the Murchinson Plaintiffs should not be entitled to run to another forum in an attempt to overturn the previous findings of the arbitrator and the SDNY *which the Murchinson Plaintiffs are already challenging via a motion to vacate the Award in the SDNY Case*. Simply, this lawsuit entails a land-based shareholder dispute that is not cognizable in admiralty, and the Vessel's arrest must be vacated for that reason alone.[25]

## B.    The Murchinson Plaintiffs Lack Standing to Bring This Suit and Lack Authority to Act on Behalf of Eletson Gas

Standing is a constitutional requirement "that the plaintiff personally suffered some actual or threatened injury that can fairly be traced to the challenged action and is redressable by the

---

[25] The Murchinson Plaintiffs also bring a cause of action for conversion, but they contend that the arrest of the Vessel is simply pursuant to Rule D and not to enforce a claimed maritime lien or to seek security. *See* Doc. 2, ¶ 82. Thus, the Murchinson Plaintiffs' conversion cause of action should not be applicable to the arrest of the Vessel or this Motion. Moreover, even if the Murchison Plaintiffs sought to enforce a purported maritime lien or obtain security in relation to their conversion cause of action, the alleged tort arises from the alleged breach of the non-maritime LLCA and, accordingly, does not support admiralty jurisdiction. *Gulf Coast Shell & Aggregate LP v. Newlin*, 623 F.3d 235, 240 (5th Cir. 2010) ("Neither the contract nor its breach are maritime in nature, and any torts arising therefrom are similarly non-maritime. A court of admiralty thus has no jurisdiction over this lawsuit."). The Murchinson Plaintiffs also assert a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201. However, the Declaratory Judgment Act does not provide an independent basis for federal jurisdiction. *Provident Life & Accident Ins. Co. v. Transamerica–Occidental Life Ins. Co.*, 850 F.2d 1489, 1491 (11th Cir.1988). Accordingly, the lack of subject-matter jurisdiction over the Murchinson Plaintiffs' other claims requires a finding of no subject-matter jurisdiction over their declaratory-judgment claim for the same reason.

courts." *Doe v. Tangipahoa Parish Sch. Bd.*, 494 F.3d 494, 496 (5th Cir. 2007). "Standing to sue must be proven, not merely asserted, in order to provide a concrete case or controversy and to confine the courts' rulings within [their] proper judicial sphere." *Id.* at 496-97. As set forth above in detail, the Murchinson Plaintiffs lack authority to act on behalf of Eletson Gas or Kithnos SME. The Cypriot Nominees own the Preferred Shares, and they – not the Murchinson Plaintiffs – control the commercial activities and operations of Eletson Gas and its wholly-owned subsidiary, Kithnos SME. As the Murchinson Plaintiffs lack standing to bring this suit and lack authority to act on behalf of Eletson Gas or Kithnos SME, even if there is admiralty jurisdiction, the arrest must be vacated and the suit dismissed.

**C.      The Murchinson Plaintiffs Fail to Allege/Support Key Element of Possessory and Petitory Actions**

**1)      The Murchinson Plaintiffs' petitory action fails because they have no claim to legal title of the Vessel.**

"A petitory suit is utilized to assert legal title to a vessel, or to remove a cloud upon one's title..." *Trueman v. Historic Steamtug N.Y.*, 120 F. Supp. 2d 228, 232-33 (N.D.N.Y. 2000) (citing *Wehr v. Pheley*, 2000 U.S. Dist. LEXIS 2375, *3 (N.D. Cal. Feb. 16, 2000)). In order to bring a petitory action, the plaintiff must assert legal title. Assertion of a merely equitable interest is insufficient. *See* Thomas J. Schoenbaum, 2 Admiralty and Maritime Law § 21-4 (2d ed. 1994). (citing *Jones v. One Fifty-Foot Gulfstar Motor Sailing* Yacht, 625 F.2d 44 (5th Cir. 1980)); *Silver v. The Sloop Silver Cloud*, 259 F. Supp. 187, 191 (S.D.N.Y. 1966).

In this case, the Murchinson Plaintiffs have no good faith basis to claim legal title to the Vessel through their ownership of only the common shares of Eletson Gas. As set forth above, the Cypriot Nominees control the Eletson Gas Board. Kithnos SME, the bareboat charterer of the Vessel and a wholly-owned subsidiary of Eletson Gas, is likewise under the control of a board of

directors appointed by the Cypriot Nominees in their lawful exercise of their rights under the Eletson Gas LLCA. Murchinson and Eletson Holdings have no legal title to the Vessel or any other right to initiate this arrest action. As a result, the petitory action must fail.

2)    **The Murchinson Plaintiffs' possessory action is defeated by the fact that the Murchinson Plaintiffs never had prior actual or constructive possession of the Vessel.**

As the term indicates, a possessory action is one in which a party seeks to be placed in possession of a vessel. Such actions often involve claims by vessel owners against charterers who refuse to redeliver vessels, and they always require that the claimant had prior possession of the vessel. *See* William A. Durham, *"We Just Want Our Ship Back" - Action for Possession in Admiralty,* 15 TUL. MAR. L.J. 47, 49 (1990). "[A possessory action] is brought to *reinstate* an owner of a vessel who alleges wrongful deprivation of property. This statement indicates that the action is one to recover possession rather than to obtain original possession." *Silver v. Sloop Silver Cloud*, 259 F. Supp. 187, 191 (N.D.N.Y. 1966). A possessory action "must be brought by the vessel owner, who must seek to *recover* possession rather than to obtain original possession, and the complainant must allege wrongful deprivation of property." *Offshore Express, Inc. v. Bergeron Boats, Inc.*, 1978 AMC 1504, 1506 (E.D. La. 1977) (emphasis added). While constructive possession – the power to exercise dominion and control of the vessel – may be sufficient to satisfy the prior possession requirement, in the present case the Murchinson Plaintiffs have never had possession of the Vessel of any kind. Neither the Vessel nor any title/rights as bareboat charterer to the Vessel were ever delivered to the Murchinson Plaintiffs, who, as set forth above, have willfully and wrongfully alleged they have authority to act on behalf of Eletson Gas and Kithnos SME.[26] Thus, the possessory action is without foundation and must be dismissed.

---

[26]    Additionally, Supplemental Rule D remedies have only been recognized as available to the owner or bareboat charterer of a vessel. *See Gulf Coast Shell,* 623 F.3d at 239 ("[A]dmiralty has jurisdiction in a possessory suit by

**D.     The Murchinson Plaintiffs' Arrest of the Vessel Is in Bad Faith, Requires Vacatur of the Arrest, and Mandates an Award of Damages, Attorneys' Fees, and Costs Under the Circumstances**

Kithnos SME respectfully requests leave to file a motion amplifying the reasons why this Court should award damages, attorneys' fees, and costs against the Murchinson Plaintiffs for their wrongful arrest of the Vessel, and to quantify the damages Kithnos SME has sustained as a result of the Murchinson Plaintiffs' actions. "It is an established principle of maritime law that one who suffers a wrongful arrest may recover damages from the party who obtained the arrest, provided he proves that such party acted in bad faith." *See Furness Withy (Chartering), Inc., Panama v. World Energy Sys. Assocs., Inc.*, 854 F.2d 410, 411 (11th Cir. 1988). To recover for wrongful arrest of a vessel, there must be (1) no bona fide claim against the vessel and (2) a showing of bad faith, malice, or gross negligence of the offending party. *Comar Marine, Corp. v. Raider Marine Logistics*, 792 F.3d 564, 574-75 (5th Cir. 2015); *Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 297 (5th Cir. 1937) ("The gravamen of the right to recover damages for wrongful seizure or detention of vessels is the bad faith, malice, or gross negligence of the offending party.").

The Murchinson Plaintiffs' conduct clearly indicates bad faith. Specifically, the Murchinson Plaintiffs orchestrated this arrest in bad faith for the purpose of imposing commercial pressure on Kithnos SME. In abusing the Supplemental Admiralty Rules, the Murchinson Plaintiffs obtained the arrest of the Vessel with full knowledge that the substantive rights they claim are not theirs to assert. The damages to Kithnos SME from this arrest are substantial and will continue as long as the Vessel remains under seizure. Kithnos SME is currently preparing a

---

the legal owner of a vessel who has been wrongfully deprived of possession.") (citation omitted); *The Nellie T*, 235 Fed. 117 (C.C.A.2 1916) (recognizing the right of a bareboat charterer to bring a possessory suit to regain possession of a vessel that had been temporarily withdrawn by the owners for repairs and not returned even though the charter party had not yet expired). As Eletson Holdings, Eletson Corp, and Eletson Gas clearly are not the owner or bareboat charterer of the Vessel, any arrest of the Vessel on their behalf is improper and cannot stand.

summary of the damages it has incurred – and continues to incur – as a result of the Murchinson Plaintiffs' blatantly wrongful conduct, and, accordingly, respectfully request the opportunity to present same for this Court's further consideration.

**E.    Kithnos SME Is Entitled to an Expedited Hearing**

The Murchinson Plaintiffs cannot demonstrate sufficient grounds to support the extraordinary remedies available under Supplemental Rule D, and an expedited Supplemental Rule E(4)(f) hearing is required. Supplemental Rule E(4)(f) provides any person whose property has been attached under Supplemental Rule D an immediate opportunity to appear before a district court to contest the attachment: "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." FED. R. CIV. P. SUPP. R. E(4)(f). This rule – which puts the burden on the plaintiff – is necessary to give a respondent its day in court after a plaintiff has obtained *ex parte* relief, outside of the adversarial system with minimal oversight, to seize another's property. Given the extreme deficiencies in the Murchinson Plaintiffs' claims, Kithnos SME respectfully seeks to enforce this right to an expedited hearing.

**IV.**
**CONCLUSION**

This suit amounts to an improper attempt to invoke admiralty jurisdiction and its extraordinary remedies in order to disregard and usurp the already pending shareholder dispute which has been adjudicated by the arbitration Award and confirmed in relevant part by the SDNY that involve a shareholder dispute over the land-based LLCA. The Murchinson Plaintiffs' improper and wrongful efforts to use this suit to avoid the unfavorable results that have come to them from those proceedings to date should not be countenanced.

Even if the Court finds it has admiralty jurisdiction over this dispute, the Murchinson Plaintiffs have failed to demonstrate their authority or standing to bring this suit and the existence of a *prima facie* claim/right to take possession of the Vessel pursuant to Supplemental Rule D. Thus, this Court should dismiss the Verified Complaint and vacate the arrest of the Vessel. Additionally, the Murchinson Plaintiffs have failed to allege and cannot establish even prior constructive possession or that they have any colorable claim as bareboat charterer of the Vessel.

The Murchinson Plaintiffs' attempts to establish that they control the Eletson Gas Board fail. The Complaint ignores the LLCA, the Kithnos SME Deed, and the existence of the Preferred Shares altogether. Under the LLCA, Eletson Holdings did not have the right to designate more than two of six directors on the Eletson Gas Board or to take unilateral action purportedly on behalf of the Eletson Gas Board. That lack of rights did not change after the confirmation of Eletson Holdings' chapter 11 plan of reorganization in the bankruptcy court. The Award and the SDNY have already determined that the Preferred Shares were transferred to the Cypriot Nominees as of March 11, 2022, and those rulings have not been stayed, modified, or vacated. Three of the six directors on the Eletson Gas Board may therefore only be designated by the Cypriot Nominees, who are the Preferred Holders—not Eletson Holdings or the Murchinson Plaintiffs—and no director designated by the Preferred Holders authorized the arrest of the Vessel or the bringing of this suit. Thus, any unilateral act taken by Eletson Holdings does not constitute an act of the Eletson Gas Board. The Murchinson Plaintiffs' attempts to take purported action on behalf of Eletson Gas and Kithnos SME are unlawful and in knowing violation of the LLCA.[27]

---

[27] Nothing in this Motion shall waive or shall be deemed to waive any rights of Kithnos SME, the Cypriot Nominees, the Eletson Gas Board, the Preferred Eletson Gas Directors, or any of their affiliates, directors, officers, agents, successors, or assigns with respect to the multiple disputes over the ownership and governance of Eletson Gas in any forum, whether in the United States or in any foreign country, and all the foregoing entities' and individuals' rights are reserved with respect to same.

The *ex parte* arrest of the Vessel was obtained in bad faith for the sole purpose of pressuring Kithnos SME to acquiesce to the Murchinson Plaintiffs' demands in separate legal proceedings, and to damage the business and reputation of Kithnos SME. The Murchinson Plaintiffs have withheld key facts from the Court regarding the underlying shareholder dispute involving the LLCA, including the critical circumstances regarding the legal, rightful, and current holders the Preferred Shares in Eletson Gas, which effectively vest Claimant with bareboat charterer control of the Vessel through Eletson Gas's wholly-owned subsidiary, Kithnos SME. Kithnos SME respectfully urges this Court to reject the Murchinson Plaintiffs' bad-faith use of Supplemental Rule D by vacating the arrest, dismissing the Verified Complaint, and permitting Claimant to further pursue damages, attorneys' fees, and costs against the Murchinson Plaintiffs for wrongful arrest.

Respectfully submitted,

By: */s/ Dimitri P. Georgantas*
    Dimitri P. Georgantas
    State Bar No. 07805100
    Federal I.D. No. 2805
    dimitri.georgantas@roystonlaw.com
    Kevin P. Walters
    State Bar No. 20818000
    Federal I.D. No. 5649
    kevin.walters@roystonlaw.com
    Eugene W. Barr
    State Bar No. 24059425
    Federal I.D. No. 1144784
    eugene.barr@roystonlaw.com

Blake E. Bachtel
State Bar No. 24116055
Federal I.D. No. 3479533
blake.bachtel@roystonlaw.com
ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
1415 Louisiana Street, Suite 4200
Houston, Texas 77002
Telephone:    (713) 224-8380
Facsimile:    (713) 225-9945

**ATTORNEYS FOR CLAIMANT KITHNOS
SPECIAL MARITIME ENTERPRISE**

OF COUNSEL:
ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of March 2025, I served a true and correct copy of the foregoing pursuant to Rule 5 of the Federal Rules of Civil Procedure and/or via the CM/ECF Filing System and/or by depositing the same in the United States Mail, postage prepaid and properly addressed to all known counsel of record.

*/s/ Dimitri P. Georgantas*
Dimitri P. Georgantas