**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **KITHNOS SPECIAL MARITIME** | § | |
| **ENTERPRISE, ELETSON** | § | **CIVIL ACTION NO.** |
| **CORPORATION, ELETSON GAS LLC,** | § | |
| **ELETSON HOLDINGS INC,** | § | **2:25-cv-00042** |
| | § | |
| **Plaintiffs,** | § | **ADMIRALTY RULE 9(h)** |
| | § | |
| **M/V KITHNOS (IMO 9711523),** | § | |
| **her engines, tackle, equipment,** | § | |
| **and appurtenances,** *in rem*, | § | |
| | § | |
| **and** | § | |
| | § | |
| **FAMILY UNITY TRUST COMPANY,** | § | |
| **GLAFKOS TRUST COMPANY,** | § | |
| **LASSIA INVESTMENT COMPANY,** | § | |
| **ELAFONISSOS SHIPPING** | § | |
| **CORPORATION, KEROS SHIPPING** | § | |
| **CORPORATION, VASSILIS** | § | |
| **HADJIELEFTHERIADIS,** | § | |
| **LASKARINA KARASTAMATI,** | § | |
| **VASSILIS E. KERTSIKOFF,** | § | |
| **VASILEIOS CHATZIELEFTHERIADIS,** | § | |
| **KONSTANTINOS** | § | |
| **CHATZIELEFTHERIADIS, IOANNIS** | § | |
| **ZILAKOS, ELENI KARASTAMATI,** | § | |
| **PANAGIOTIS KONSTANTARAS,** | § | |
| **EMMANOUIL ANDREOULAKIS,** | § | |
| **ELENI VANDOROU,** *in personam* | § | |
| | § | |
| **Defendants.** | § | |

**MOTION TO RELEASE THE VESSEL**
**PURSUANT TO SUPPLEMENTAL RULE E(5)(d)**

i

## TABLE OF CONTENTS

**INTRODUCTION** ........................................................................................................ **1**

**BACKGROUND** ......................................................................................................... **2**

I.     Procedural Stance ................................................................................................ 2

II.    U.S. Bankruptcy Proceedings and the JAMS Arbitration .................................... 4

III.   Old Eletson's Evasion of Arrest of M/V KINAROS ......................................... 7

IV.    Old Eletson's Attempted Evasion of Arrest of M/V KIMOLOS ....................... 8

V.     Further Old Eletson's Dissipatory and Evasive Actions ..................................... 9

**ARGUMENT** ............................................................................................................. **10**

I.     Supplemental Rule E(5)(d) grants this Court discretion to release the Vessel .................... 10

   a.    The Master and the crew of the Vessel must be replaced before its release .................... 12

   b.    The released Vessel should have a limited trading pattern close to the jurisdiction ......... 13

   c.    The revenue derived from trading should be paid into escrow as security bond in this Claim ............................................................................................................ 14

**CONCLUSION** ........................................................................................................ **15**

## TABLE OF AUTHORITIES

**Cases**

*Danmar Lines, Ltd. v. Peticure, LLC*, 2009 WL 2135794 (N.D. Tex. July 15, 2009) .................. 12

*Elliott v. M/V LOIS B.*, 980 F.2d 1001 (5th Cir. 1993) .................................................................. 12

*JTR Enterprises, LLC v. An Unknown Quantity of Colombian Emeralds, Amethysts & Quartz Crystals*, 922 F. Supp. 2d 1326 (S.D. Fla. 2013) ...................................................................... 12

**Statutes**

Fed. R. Civ. P. Supp Rule D .......................................................................................................... 1

Fed. R. Civ. P. Supp Rule E(5)(d) ...........................................................................................1, 11, 12

Fed. R. Civ. P. Supp Rule E(8) ...................................................................................................... 4

Plaintiffs Kithnos Special Maritime Enterprise ("Kithnos SME"), Eletson Holdings, Inc. ("Eletson Holdings"), Eletson Corporation ("Eletson Corp"), and Eletson Gas LLC ("Eletson Gas") (jointly "Plaintiffs") move for an order to release the M/V KITHNOS (IMO 9711523) (the "Vessel") under certain conditions pursuant to Rule E(5)(d) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Supplemental Rules") ("Rule E(5)(d)"). Such relief is sought to allow the Vessel to return to commercial operations and avoid further economic loss. This release shall be subject to the below proposed conditions to ensure the Vessel continues to follow the Court's orders.

## **INTRODUCTION**

Plaintiffs commenced this action (the "Claim") under Supplemental Rule D ("Rule D") to recover their possession of the Vessel. Pursuant to the warrant of arrest issued by this Court, the Vessel was arrested on February 6, 2025. As of the date of this filing, no Defendant has made a valid appearance to oppose Plaintiffs' claim to recover possession. Although Plaintiffs wish to obtain a prompt determination of their possessory right to the Vessel, the arrest of the Vessel will likely be prolonged due to Royston, Rayzor, Vickery & Williams, LLP's ("Royston") unauthorized filings purportedly acting for one of the Plaintiffs, Kithnos SME.  In actuality, there is only one Kithnos SME and it is represented by the undersigned counsel.

Since its arrest, the Vessel has been unable to engage in any commercial activity. These economic losses continues to accrue because of Royston's and its clients' actions. To limit these losses (no matter who ultimately will be decided to have possession of the Vessel), Plaintiffs seek the conditional release of the Vessel under Rule E(5)(d), subject to the terms the Court considers reasonable and appropriate.

1

The conditions proposed for the release of the Vessel are reasonable and necessary because, as explained below, the Defendants are in *de facto* control of the Vessel and issue orders to the Master and crew. The polluted track record of the Defendants (including any individuals who appear to be instructing Royston) is marked with evasive and misleading conduct in the operation of vessels within the Eletson fleet, over which Plaintiffs have possessory rights. They are thus untrustworthy and unsuitable for operating the Vessel during a temporary release. If they are to remain in command, there is a tangible risk that the Vessel will flee, not follow this Court's orders, and never return to this jurisdiction.

Accordingly, Plaintiffs respectfully request that the Court order: (1) the replacement of the Master and crew with personnel appointed by Plaintiffs, (2) a temporary release of the Vessel, (3) that the Vessel's operations be on limited route(s) in close proximity to this jurisdiction (i.e., between the United States (including but not limited to the US East coast and Gulf coast), Mexico, and the Caribbean islands), (4) that any revenue from such operations be placed into escrow, as arranged by Plaintiffs and subject to the Court's order, and (5) that the net proceeds (after Outgoings (as defined below) related to the Vessel's trade are paid to Plaintiffs) be transferred to the prevailing party of this dispute.

## BACKGROUND

### I.    Procedural Stance

1.    Plaintiff Eletson Holdings is the parent company of the Eletson group, which is a maritime conglomerate comprised of various subsidiaries engaged in the operation of vessels. These assets include a fleet of at least sixteen (16) vessels. Plaintiff Kithnos SME is the bareboat charterer and *pro hac vice* owner of the Vessel, pursuant to the charterparty dated February 23, 2022 with the registered owners, OCM Maritime 4 LLC.

2.      Kithnos SME is a fully owned subsidiary of Plaintiff Eletson Gas, which is in turn a subsidiary of Plaintiff Eletson Holdings. Eletson Gas' shareholders are (1) Plaintiff Eletson Holdings, which owns all common shares; (2) Plaintiff Eletson Corp, which owns one special share unit, and (3) Levona Holdings Ltd ("Levona"), an investor in Eletson Holdings who owns the preferred shares. Plaintiff Eletson Corp is the manager of the Vessel, under the ship management agreement dated January 21, 2016. Eletson Corp is fully owned by Eletson Holdings.

3.      Plaintiffs, as the lawful bareboat charterers, *pro hac vice* owners, and managers of the Vessel, are entitled to exclusive legal possession of the Vessel, and assert their rights accordingly in this matter.

4.      Defendants include five Liberian companies that were Eletson Holdings' former shareholders. The rest of the Defendants include the Greek individuals behind such Liberian companies. These individuals used to be shareholders, directors, and officers in the various entities in the Eletson group, including Plaintiffs.

5.      As explained below, due to the Defendants' actions affecting Plaintiffs' right of possession of the Vessel, on February 5, 2025, Plaintiffs filed a complaint and motion seeking the arrest of the Vessel under Rule D [Dkt. 56]. [1] On February 5, 2025, the motion was granted and a warrant for arrest was issued [Dkt. 6].

6.      On February 6, 2025, the Vessel was arrested in this District. The Vessel remains under arrest while the Claim is pending before this Court. The Claim, among other things, alleges that the Defendants are depriving Plaintiffs of any possession and use of the Vessel and interfering

---

[1] On March 13, 2025, the Complaint was amended in non-material terms [Dkt. 56].

with Plaintiffs' possessory rights over the Vessel. As of this date, the Defendants have not validly appeared in this action.

7.      On February 19, 2025, Mr. Dimitri Georgantas of Royston made a Restricted Appearance Pursuant to Supplemental Rule E(8) ("Purported Restricted Appearance") [Dkt. 41]. In the Purported Restricted Appearance, allegedly filed in the name of Plaintiff Kithnos SME, Royston stated that it is acting "on the authority of its lawful directors." *Id.* The entity or individuals for which Royston alleges to be acting will be referred to herein as "Purported Kithnos SME." However, Kithnos SME is one of the Plaintiffs and is represented by the undersigned counsel, not Royston. Subsequently, Royston filed a Verified Statement of Right or Interest for Purported Kithnos SME (the "Purported Statement of Interest") [Dkt. 42]. The Purported Statement of Interest alleged that Laskarina Karastamati is still a member of the board of directors of Kithnos SME. As explained below and in Plaintiffs' response to the motion to vacate the arrest [Dkt. 67], she is not.

8.      On March 13, 2025, Royston filed, on behalf of Purported Kithnos SME, an answer and counterclaim against the Plaintiffs, alleging wrongful arrest of the Vessel [Dkt. 55]. That answer and counterclaim was amended on March 28, 2025 [Dkt. 64].

## II.    U.S. Bankruptcy Proceedings and the JAMS Arbitration

9.      Well before the instant Claim, on March 7, 2023, a number of creditors petitioned for involuntary bankruptcy of Plaintiff Eletson Holdings (case number 23-10322-jpm pending in the U.S. Bankruptcy Court for the Southern District of New York ("Bankruptcy Court")). The proceedings were subsequently converted to voluntary Chapter 11 bankruptcy proceedings.

10.     On October 25 and November 4, 2024, the Bankruptcy Court issued its decision and order confirming the Chapter 11 plan proposed by the creditors ("Chapter 11 Decision",

4

"Chapter 11 Order", and "Plan", respectively) (jointly the "Bankruptcy Court Orders") [Dkts. 56-4, 56-5, 56-6].

11.     Pursuant to the Bankruptcy Court Orders, the old shares in Eletson Holdings were cancelled. In turn, creditors and the new management acquired the controlling stake in Eletson Holdings, and, by extension, in other Eletson subsidiaries such as Plaintiff Kithnos SME and Eletson Corp, as well as the Vessel.

12.     Ms. Karastamati and the rest of the individual Defendants are part of the former shareholders, directors, and officers of Eletson Holdings ("Old Eletson") who have been removed from their roles at Eletson Holdings, Eletson Corp, Eletson Gas, and Kithnos SME and have been ordered by the Chapter 11 Order to cooperate in good faith to implement the Plan [Dkt. 56-5, ¶12].

13.     Royston's Purported Restricted Appearance appears to be part of Old Eletson's global campaign to interfere with and obstruct the implementation of the Plan.

14.     By doing so, Old Eletson continues to violate the Bankruptcy Court Orders, including paragraph 12 of the Chapter 11 Order that enjoins Old Eletson from "taking any actions to interfere with the implementation or consummation of the Plan or interfering with any distributions and payments contemplated by the Plan" [Dkt. 56-5, ¶12].

15.     Such conduct has already been sanctioned by the Bankruptcy Court with contempt orders and the imposition of monetary sanctions. These orders from the Bankruptcy Court include orders of January 29, 2025, February 27, 2025, and March 13, 2025. True and correct copies thereof are attached as *Exhibits 1 and 2, 3*, respectively.

16.     In Purported Kithnos SME's motion to vacate, Royston stated it was appearing on the authority of "the lawful board of directors of Kithnos SME, acting under the ultimate authority of the Cypriot Nominees" [Dkt. 51 at 3, fn 3].  It argues that the so-called Cypriot nominees

(entities controlled by much the same Old Eletson individuals)[2] are the current holders of the preferred shares in Plaintiff Eletson Gas, the parent company of Plaintiff Kithnos SME. This is incorrect. Levona is the current owner of these shares.

17.     On July 29, 2022, an arbitration under the JAMS rules between Levona and Eletson Holdings and Eletson Corp. (then under the management of Old Eletson) commenced. The dispute centered on the ownership of the preferred shares in Eletson Gas. On April 17, 2023, during the arbitration, the Bankruptcy Court issued a stay relief order requiring the Bankruptcy Court's permission for any award to be enforced ("Stay Relief Order"). A true and correct copy thereof is attached at *Exhibit 4*. On September 29, 2023, in the final award, the sole arbitrator decided that the shares had been transferred to the Cypriot nominees as of March 11, 2022 and Levona was no longer a shareholder [Dkt. 51-3].

18.     However, that award is currently the subject of vacatur proceedings before the U.S. District Court for the Southern District of New York ("District Court"). Further, the enforcement of that award is stayed due to the Stay Relief Order. The Bankruptcy Court has not granted permission for the award to be enforced. Nevertheless, Old Eletson are attempting to use the Claim to enforce the award through the back door and ignore orders of the Bankruptcy Court and the District Court.

19.     Old Eletson's campaign has also extended to evasive actions concerning the navigation and payments related to the Eletson fleet. These actions have affected Plaintiffs' possessory rights over the fleet. As particularized below, this campaign has included directing a

---

[2] The so-called Cypriot nominees are Fentalon Ltd, Apargo Ltd and Desimusco Ltd. The shareholders in Apargo Ltd. are the Kertsikoff family, including Defendant Vassilis Kertsikoff. In turn, Desimusco Ltd. is owned by the Chatzieleftheriadis family, including Defendants Vassileios and Konstantinos Chatzieleftheriadis. Lastly, the owners of Fentalon Ltd. are the Karastamati family, including Defendants Eleni and Laskarina Karastamati [Dkt. 67-1].

vessel to evade an arrest order in this District, spoofing another vessel's AIS[3] system to mislead and try to evade an arrest in Panama, and redirecting hire payments that belonged to a company under Plaintiffs' corporate control.

### III.    Old Eletson's Evasion of Arrest of M/V KINAROS

20.    Old Eletson's campaign, facilitated by the respective master and crew, caused one of the vessels of the Eletson fleet, the M/V KINAROS, to evade an arrest order issued in this District, in the Brownsville Division.

21.    On January 7, 2025, at 12:46 PM CST, as part of enforcing the outcome of the Chapter 11 Plan, Plaintiffs – including a related entity called Kinaros Special Maritime Enterprise – filed an action to arrest the M/V KINAROS (case 1:25-cv-00004, currently pending before the U.S. District Court for the Southern District of Texas, Brownsville Division).

22.    At the time, M/V KINAROS was scheduled to load 300,000 barrels of oil / petroleum products at the liquid cargo dock in Brownsville, Texas [Dkt. 56-18]. Her expected arrival time was 21:00 CST. *Id.*

23.    However, at 20:37 GMT (or 13:37 CST) and less than one hour after the arrest action was filed on the Court's docket, M/V KINAROS suddenly stopped steaming towards Brownsville. It started drifting outside of the Port of Brownsville and, critically, outside of the jurisdictional boundaries of the Southern District of Texas [Dkt. 56-19].

24.    On the same day, Judge Rolando Olvera granted the Plaintiffs' Emergency *Ex Parte* Motion for Issuance of a Warrant of Arrest and issued an order authorizing the arrest of the M/V KINAROS. As a result, an arrest warrant was issued by the District Clerk [Dkt. 56-20, 56-21].

---

[3] The automatic identification system (AIS) is an automatic tracking system that uses transceivers on ships and is used by vessel traffic services (VTS) to report the vessels' location in real time.

25.     M/V KINAROS never arrived at its original destination in the Port of Brownsville. Instead, the vessel turned 180 degrees and sailed towards Jamaica. This was despite messages sent by Plaintiffs to the master and some of the individual Defendants (including Ms. Laskarina Karastamati) ordering the Vessel to proceed to Brownsville where the Court's arrest order was issued [Dkt. 56-22].

26.     On information and belief, Old Eletson became aware of the arrest action filed by Plaintiffs against the vessel. As a result, they ordered the master to avoid entering the Port of Brownsville and/or the Southern District of Texas.

## IV.     Old Eletson's Attempted Evasion of Arrest of M/V KIMOLOS

27.     Old Eletson's tactics did not stop with the M/V KINAROS. They became more advanced. Shortly after the evaded arrest, another vessel of the Eletson fleet, the M/V KIMOLOS, started to misrepresent its location while approaching Panama.

28.     On information and belief, on or about January 31, 2025, Old Eletson deliberately spoofed the publicly available website for vessel tracking www.marinetraffic.com and/or otherwise interfered with the AIS reporting system of the M/V KIMOLOS, to misrepresent the vessel as being at the Balboa anchorage on the Pacific side of the Panama Canal. However, in reality, the vessel was still sailing through the Caribbean Sea towards Panama at a significant distance of several hundred nautical miles [Dkt. 56-23].

29.     On information and belief, Old Eletson turned off (or otherwise interfered with) the AIS reporting of the M/V KIMOLOS on its voyage to Panama (indicating that that vessel's position had not been reported for over 11 hours) [*Id.* at 4].

30.     On information and belief, in the days leading up to the arrest, Old Eletson misrepresented the estimated time of arrival of the vessel to the Panama Canal Authority and/or

other authorities in Panama, stating that that vessel would arrive at the Canal at or about 20:00 on February 2, 2025 and also indicating that the M/V KIMOLOS would transit the Canal [Dkt. 56-24].

31.    On information and belief, Old Eletson did not intend the M/V KIMOLOS to transit the Panama Canal at all.

32.    In fact, at or around 22:00 on February 2, 2025, the vessel arrived with a gas cargo at Bahia Las Minas, Panama, a port on the Altantic side of Panama that can be accessed without transiting the Canal.

33.    On information and belief, Old Eletson misrepresented the position of the M/V KIMOLOS, its destination and ETA, to attempt to avoid arrest of the M/V KIMOLOS in Panama.

34.    On February 3, 2025, despite Old Eletson's efforts, the M/V KIMOLOS was arrested at Bahia Las Minas by Plaintiffs Eletson Holdings and Eletson Corp, as well as a subsidiary of the group named Kimolos II Special Maritime Enterprise.

35.    On March 31, 2025 the First Maritime Court of Panama denied Old Eletson's motion to vacate the arrest of M/V KIMOLOS, on the basis that Plaintiffs' action there was within the admiralty jurisdiction and gave rise to a valid lien under U.S. general maritime law.

## V.    Further Old Eletson's Dissipatory and Evasive Actions

36.    In addition to actively attempting to avoid the arrest of specific vessels, Old Eletson has redirected time charter hire payments[4] involving other vessels of the fleet.

37.    The hire payments redirected by Old Eletson concerned the M/V FOURNI and M/V KASTOS. These are vessels bareboat-chartered by Fourni SME and Kastos SME, which are fully

---

[4] Hire payments are sums that a charterer pays to the owner of the vessel for making the vessel available to the charterer.

owned subsidiaries of Plaintiff Eletson Holdings, and sub-chartered to a third party. Such payments were owed to Fourni SME and Kastos SME by that third-party sub-charterer and were supposed to be paid into a bank account owned by a treasury company called EMC Investment Corporation – a company under the Plaintiffs' control as a result of the Chapter 11 Plan.

38.    However, on or about January 10, 2025, using threats of withdrawal of the two above ships from their time charterers, Old Eletson redirected the relevant sub-charter hire payments away into an account under the control of Old Eletson.

39.    The above actions of Old Eletson to undermine Plaintiffs' possessory rights over the Eletson fleet violate the injunction on interference with implementation and consummation of the Plan, under paragraph 12 of the Chapter 11 Order, as well as the injunction on "interfering with any distributions and payments contemplated by the Plan" under that same paragraph, as issued by the Bankruptcy Court [Dkt. 56-5, ¶12].

40.    In light of all of the above actions by Old Eletson individuals and companies that interfere with Plaintiffs' efforts to obtain possessory orders for the vessels in the Eletson fleet of ships and undermine the implementation of the Chapter 11 Plan, this Court should exercise its discretion to release the Vessel in this action into trading on terms proposed by Plaintiffs.

41.    On April 2, 2025, during the meet and confer call between Plaintiffs' counsel and Royston, Plaintiffs' counsel stated that Plaintiffs are open to alternative suggestions concerning the terms upon which the Vessel should be released. However, Royston in response insisted on keeping the current Master and crew on board and failed to provide any alternative proposals, despite Plaintiffs stating they would consider them.

## ARGUMENT

### I.    Supplemental Rule E(5)(d) grants this Court discretion to release the Vessel

42.     Under Rule E(5)(d): "[t]he property arrested shall be released by order of the court, on such terms and conditions and on the giving of such security as the court may require." Rule E(5)(d) does not provide strict guidelines on the mechanics of a vessel's release. In this regard, the Court has discretion to set the terms of the release of the arrested property. *See JTR Enterprises, LLC v. An Unknown Quantity of Colombian Emeralds, Amethysts & Quartz Crystals*, 922 F. Supp. 2d 1326, 1337 (S.D. Fla. 2013) and *Danmar Lines, Ltd. v. Peticure, LLC*, 2009 WL 2135794, at *3 (N.D. Tex. July 15, 2009). The arrested *res* is under the Court's control and the Court retains *in rem* jurisdiction to resolve the dispute even when the *res* is removed from the District. *Elliott v. M/V LOIS B.*, 980 F.2d 1001, 1005 (5th Cir. 1993). For this reason, the Court has the power to release the Vessel subject to any reasonable conditions it deems necessary.

43.     The primary economic function of the Vessel here is to engage in trade and carry cargoes in exchange for freight or hire. When the Vessel remains idle, it not only fails to generate any incoming freight or hire but also incurs significant expenses. It is therefore in the interest of all parties alleging a possessory right to the Vessel that she may return to active trading instead of remaining idle.

44.     Plaintiffs respectfully request that, under the Court's authority arising out of Rule E(5)(d), the Vessel be temporarily released to return to trade, but subject to appropriate conditions that will ensure that the Vessel continues to follow the orders of this Court. These conditions include: (a) replacing the Master and crew of the Vessel with personnel appointed by Plaintiffs, (b) limiting the Vessel's trade to specific route(s) (i.e., between the United States (including but not limited to the US East coast and Gulf coast), Mexico, and the Caribbean islands), with Plaintiffs entitled on motion to expand such route(s), and (c) placing the revenue derived from the Vessel's

trade into escrow, as arranged by Plaintiffs, and subject to the Court's further order. The net revenue will be paid to the prevailing party in this dispute.

### a. The Master and the crew of the Vessel must be replaced before its release

45.     Old Eletson's campaign to interfere with Plaintiffs' possessory rights and obstruct the implementation of the Plan has been marked by active evasive conduct. Their tactics have included causing a vessel to flee this District to evade an arrest order, as well as spoofing the AIS signal of another vessel to affect Plaintiffs' possessory rights.

46.     Most recently, the tactics have included instructing Royston to make unauthorized filings on behalf of Plaintiff Kithnos SME, purporting to oppose Plaintiff Kithnos SME's own Claim. If Royston insists it is being instructed by the so-called "lawful directors" of Purported Kithnos SME or "Cypriot Nominees", they have no standing to appear in this action. This alternative Purported Kithnos SME that Royston and its clients attempt to create simply does not exist.

47.     Keeping Old Eletson in control of the Master and the crew of the Vessel presents an imminent risk that, once released, the Vessel may not disregard this Court's orders and never return to this jurisdiction. Individuals behind Old Eletson are already under sanctions from the Bankruptcy Court, which they have ignored.  It is thus clear that Plaintiffs are the most appropriate party to temporarily assume control of the Vessel and facilitate its return to trade.

48.     For an effective return to trade of the Vessel, the Master and the crew should be replaced with personnel appointed by Plaintiffs. Plaintiffs are the bareboat charterers and managers of the Vessel. They have the legal right to give instructions to the crew. Yet, similar to the evasive actions of the M/V KINAROS and M/V KIMOLOS orchestrated by Old Eletson and facilitated by

their masters and crews, it is clear that the Master and crew of the Vessel are following the orders of Old Eletson.

49.     In the circumstances, if the Master and the crew are not replaced before the release of the Vessel, there is a tangible risk that the Vessel would depart the jurisdiction without intent to adhere to this Court's orders. On the other hand, even in the event that Plaintiffs' claims in these proceedings are denied, there is no indication that Plaintiffs would disobey the Court's orders.

### b. The released Vessel should have a limited trading pattern close to the jurisdiction

50.     The release of the Vessel is a temporary measure while the Claim is adjudicated by this Court. To ensure the Court's continued control over the Vessel, Plaintiffs respectfully request that the Vessel's trade be restricted to a limited route between the United States (including but not limited to the US East coast and Gulf coast), Mexico, and the Caribbean islands. The requested trading route is similar to the trading route the Vessel had before its arrest, according to Royston [Dkt. 43, 43-8]. This would place the Vessel in an adequate position to return promptly to the jurisdiction if the Court orders its return.  It also limits the risk that Old Eletson would attempt to arrest the Vessel in another jurisdiction outside of the U.S. in reliance on foreign proceedings brought in violation of the Chapter 11 Plan (e.g. in Greece and other countries).  Regrettably, these are not fanciful risks with Old Eletson.

51.     In this regard, to protect the trading of the Vessel, Defendants shall be expressly prevented from arresting the Vessel in any jurisdiction or taking any action that may adversely affect the ability of the Vessel to earn freight or hire.

52.     In the alternative, should the Court not consider these territorial trading limits necessary, Plaintiffs could expand the Vessel's trading pattern to maximize its revenue potential.

13

53.     With Plaintiffs in control of the trading pattern, and on the assumption that similar motions for the conditional and temporary release of two other vessels also arrested in the Southern District of Texas may be granted, Plaintiffs would seek to avoid a scenario where more than one vessel is at a foreign port at any one time, so that if Defendants arrested one of the vessels while in a foreign port, the other vessels could return to the United States.

**c.  The revenue derived from trading should be paid into escrow as security bond in this Claim**

54.     For the revenue from the Vessel's release to constitute appropriate security, it should be placed into an escrow to be arranged by Plaintiffs.

55.     Given Old Eletson's track record of spoofing tracking systems and redirecting payments owed to entities under Plaintiffs' control, Old Eletson is unsuitable to arrange a reliable escrow or serve as an escrow agent.

56.     Plaintiffs request that Plaintiffs be ordered to put the Vessel to trade and earn hire or freight under sub-charterparties. The relevant sub-charterer(s) will pay such hire or freight directly into the escrow account set up by Plaintiffs.

57.     Plaintiffs would have access to such account to pay for the usual running costs, expenses, dues and taxes, including bareboat charter hire payments, related to the Vessel's trading (including but not limited to its maintenance and repairs) (the "Outgoings").

58.     Upon presentation of a monthly statement of accounts, the escrow agent will transfer sufficient funds to fully pay for such Outgoings to Plaintiffs within three (3) days after the presentation of the statement to the escrow agent. The escrow agent will have the option to request that Plaintiffs provide the underlying documents of such Outgoings within seven (7) working days after the escrow agent's request is received by Plaintiffs. However, this will not affect or stop the

14

obligation of the escrow agent to pay Plaintiffs within three (3) days after presentation of the statement.

59.     The net proceeds (revenue minus the Outgoings), including accruing interest, shall remain in escrow through the determination of the Claim in this Court as security for this Claim. Once the Court has ruled on the Claim, and pursuant to the relevant order of the Court, the escrow agent shall transfer the proceeds to the prevailing party.

60.     Via a request to the escrow agent, Purported Kithnos SME shall have access to the statement of accounts after it has been presented by Plaintiffs to the escrow agent. No action or motion from Purported Kithnos SME or the Defendants will suspend or affect the obligation of the escrow agent to pay the costs and expenses arising out of the Vessel's trade to Plaintiffs.

## CONCLUSION

61.     The Vessel's current arrested state is impairing its income-generating capacity, thereby affecting all the parties involved in these proceedings.

62.     The temporary conditional release of the Vessel should be granted to allow the Vessel to trade, under appropriate terms and conditions to ensure that the Vessel will continue to follow the Court's orders.

63.     These terms and conditions include the replacement of the Master and the crew with personnel to be designated by Plaintiffs. The Vessel's trade should be on a limited route. Additionally, all revenue generated by the Vessel during its operation should be deposited with a neutral escrow, as proposed by the Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully request that this Court order that:

(1)  the Master and the crew be replaced with personnel to be designated by Plaintiffs;

(2)  the Vessel's trade be on a limited route (i.e., between the United States (including but not limited to the US East coast and Gulf coast), Mexico, and the Caribbean islands) with liberty for Plaintiffs to apply to the Court to expand that route; in the alternative, Plaintiffs would be allowed to trade the Vessel on different routes, at their discretion, without restriction;

(3)  the Defendants shall be enjoined from arresting the Vessel in any jurisdiction or taking any action that may adversely affect the ability of the Vessel to earn revenue;

(4)  the revenue generated by the Vessel's trading be paid directly by the relevant charterers into escrow, such escrow to be arranged by Plaintiffs. Plaintiffs would have access to such account to pay for the usual running costs, expenses, dues and taxes, including bareboat charter hire payments, related to the Vessel's trade (including but not limited to its maintenance and repairs). Upon presentation of a monthly statement of accounts, the escrow agent will transfer sufficient funds to fully pay for such Outgoings to Plaintiffs within three (3) days after the presentation of the statement to the escrow agent. The escrow agent will have the option to request that Plaintiffs provide the underlying documents of such Outgoings within seven (7) working days after the escrow agent's request is received by Plaintiffs. However, this will not affect or stop the obligation of the escrow agent to pay Plaintiffs within three (3) days after presentation of the statement. The net proceeds (revenue minus the Outgoings) shall remain in escrow through the determination of the Claim in this Court as security for this Claim. Once the Court has ruled on the Claim, and pursuant to any order from the Court, the escrow agent shall transfer the proceeds, including accrued interest, to the prevailing party. Via a request to the escrow agent, Purported Kithnos SME shall have

16

access to the statement of accounts after it has been presented by Plaintiffs to the
escrow agent. No action or motion from Purported Kithnos SME or the Defendants
will suspend or affect the obligation of the escrow agent to pay the costs and expenses
arising out of the Vessel's trade to Plaintiffs; and

(5)  granting such other and further relief as the Court deems just and proper.

Dated: April 4, 2025

Respectfully submitted,

**FLOYD ZADKOVICH (US) LLP**

By: *Edward W. Floyd*
Edward W. Floyd
NY Bar No.: 4392940
*Admitted pro hac vice*
Luke F. Zadkovich
NY Bar No.: 5514096
*Admitted pro hac vice*
Filipp A. Vagin
NY Bar No.: 5901467
*Admitted pro hac vice*
luke.zadkovich@floydzad.com
ed.floyd@floydzad.com
philip.vagin@floydzad.com
(917) 868 1245
(917) 999 6914
33 East 33rd Street, Suite 905
New York, NY, 10016

**ATTORNEY FOR PLAINTIFFS**

**OF COUNSEL**
**PHELPS DUNBAR LLP**
Ivan M. Rodriguez
Texas Bar No.: 24058977
SDTX ID: 45566982
Andrew R. Nash
Texas Bar No.: 24083550

17

SDTX ID: 1690806
Kenderick M. Jordan
SDTX ID: 3905171
910 Louisiana Street, Suite 4300
Houston, Texas 77002
Telephone: 713-626-1386
Telecopier: 713-626-1388
Email: ivan.rodriguez@phelps.com
        andy.nash@phelps.com
        kenderick.jordan@phelps.com

## CERTIFICATE OF CONFERENCE

I hereby certify that on April 2, 2025, a meet and confer conference was held by e-mail and phone relating to the relief requested in this motion with Royston. Royston is opposed to the relief requested.

_/s/ Luke F. Zadkovich_

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on all known counsel of record on April 4, 2025.

_/s/ Kenderick M. Jordan_____