UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| KITHNOS SPECIAL MARITIME ENTERPRISE, *et al.*, | § § § § § | |
| Plaintiffs, | § | |
| VS. | § § | CIVIL ACTION NO. 2:25-CV-00042 |
| M/V KITHNOS (IMO 9711523), *et al.*, | § § § | |
| Defendants. | § | |

# ORDER RELEASING M/V KITHNOS PURSUANT TO PLAINTIFFS' PROPOSED CONDITIONS OF RELEASE

Pending is Plaintiffs' Motion to Release the Vessel Pursuant to Supplemental Rule E(5)(d). (D.E. 72). Claimant has filed a response and proposed terms of release. (D.E. 85; D.E. 94). Plaintiffs have filed a reply. (D.E. 92). The parties have filed additional briefing and proposed orders. (D.E. 93, D.E. 96, D.E. 97, D.E. 100, D.E. 101, D.E. 102). For the reasons set forth below, the Motion is **GRANTED**. The conditions of release are set forth in detail in Section IV below.

## I.  JURISDICTION

This action involves admiralty and maritime claims *in rem* against a vessel and *in personam* claims against the other Defendants pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and Rule D of the Supplemental Rules for Admiralty and Maritime Claims. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333. This case

1 / 20

has been referred to the undersigned magistrate judge for case management pursuant to 28 U.S.C. § 636.

## II. BACKGROUND

### A. Factual Background

This action involves *in rem* and *in personam* maritime and admiralty claims and the seizure of the M/V Kithnos (IMO 9711523) ("the Vessel"). Competing entities claim the right to operate or charter the Vessel. As with many maritime businesses and legal disputes, the ownership structure of the entities involved is somewhat complicated. While the entire business structure and history of the entities is important, it need not be set forth in complete detail for purposes of the pending Motion to Release the vessel on conditions. Nevertheless, a general explanation of business structure and relationship of the parties is helpful to understand this dispute.

This case involves a maritime shipping empire which was founded by a number of Greek families in 1966. (D.E. 51, p. 2). The shipping empire was operated through Eletson Holdings, Inc. The shareholders of Eletson Holdings, Inc. were originally trusts and business entities which are among the named *in personam* defendants.[1] Eletson Holdings, Inc. experienced financial difficulties and entered bankruptcy proceedings in March 2023. *See In re Eletson Holdings Inc.* No. 23-10322-jpm (Bankr. S.D.N.Y. filed March 7, 2023). A Chapter 11 bankruptcy plan provided for a $53.5 million equity rights offering which

---

[1] **Family Unity Trust Company;** Glafkos Trust Company; **Lassia Investment Company; Elafonissos Shipping Corporation; and Keros Shipping Corporation.**

resulted in canceling existing stock, issuing new stock and the reorganization in Eletson Holdings, Inc. Plaintiffs represent the interests of the new or reorganized Eletson Holdings, Inc. The undersigned believes none of the foregoing is disputed.

The dispute in this case relates to subsidiary companies or entities owned or controlled by Eletson Holdings, Inc. and whether the reorganized Eletson Holdings, Inc. acquired sufficient rights in the bankruptcy proceeding to operate and control the maritime shipping empire. One of these entities is Eletson Gas LLC.[2] Eletson Gas LLC operates a fleet of liquified petroleum gas carrier vessels through subsidiary companies. The control of Eletson Gas is important because whoever controls Eletson Gas LLC arguably controls the fleet of ships. The ownership interest of Eletson Gas LLC is comprised of common shares and preferred shares. It is undisputed that the reorganized Eletson Holdings Inc. owns all common shares of Eletson Gas LLC. The ownership of the preferred shares was the subject of an arbitration proceeding that was confirmed, but the confirmation is being relitigated. (D.E. 51, p. 4). Claimant maintains the preferred shares were transferred prior to and outside of the bankruptcy proceedings and were not part of the bankruptcy estate. Plaintiffs maintain the transfer of the preferred shares was done fraudulently or under fraudulent pretenses. The ownership and control of the preferred shares is contested and is currently being litigated in proceedings in the Southern District of New York. *See Eletson Holdings, Inc. et al v. Levona Holdings Ltd.*, No. 23-cv-7331 (S.D.N.Y. opened Aug. 18,

---

[2] Claimants maintain Eletson Gas is now properly referred to as Eletson Gas LLCA based on a restated Limited Liability Company Agreement. (D.E. 51, p. 2, n. 2).

2023). The structure of Eletson Gas LLC is such that the owner of the preferred shares controls the selection of a majority of the board members and thus controls subsidiary companies. (D.E. 51, p. 3).

The subsidiary companies include Kithnos Special Maritime Enterprises (Kithnos SME) which is a fully owned subsidiary of Eletson Gas LLC. (D.E. 51, p. 2). Kithnos SME is a bareboat charterer and *pro hac vice* owner of the M/V Kithnos pursuant to charter agreement with OCM Maritime Gas 4, LLC.[3] Eletson Corp. is the manager of the M/V Kithnos under a ship management agreement between Eletson Corp. and Kithnos SME and is fully owned by Eletson Holdings, Inc. (D.E. 68, p. 3).

The first listed Plaintiff in this action is Kithnos SME. For purposes of this Order, this Plaintiff shall be referred to as the Plaintiff Kithnos SME. Plaintiff Kithnos SME, and all Plaintiffs for that matter, represent the interests and are affiliated with the re-organized Eletson Holdings Inc.

Claimant Kithnos SME self-describes itself as appearing "on the Authority of Its Lawful Directors." Claimant Kithnos SME argues the owners of the preferred shares of Eletson Gas LLC control Kithnos SME by having the right to select a majority of the board of Eletson Gas LLC. Plaintiffs maintain Claimant Kithnos SME is merely an extension of the previous owners of the shipping enterprise who have sought to obstruct and undermine the bankruptcy proceedings and reorganization of Eletson Holdings, Inc.

---

[3] OCM Maritime Gas 4 LLC is the owner of the vessel and has not taken a position on whether Plaintiffs or Claimant has the right to operate the Vessel under the terms of charter agreement or otherwise.

The above summary sets the stage for the current dispute. Pursuant to the Chapter 11 proceedings, the owners of re-organized Eletson Holdings Inc. believed they had the right to control the fleet of vessels which were previously controlled by the original owners of Eletson Holdings Inc. However, the fleet of vessels, including the M/V Kithnos, were still operated by the captains and original crews which were in place prior to the bankruptcy proceedings. The captains and crew apparently remained loyal to the previous owners and did not recognize the ownership interests of the Plaintiffs. Therefore, despite having acquired the rights to Eletson Holdings Inc., Plaintiffs have been refused the right to possess the M/V Kithnos and the other vessels in the fleet.

### B. Procedural Background

On February 5, 2025, Plaintiffs filed their original Verified Complaint raising *in rem* claims against the MV Kithnos and *in personam* claims against the other defendants stating admiralty and maritime claims under Rule 9 of the Federal Rules of Civil Procedure and Rule D of the Supplemental Rules for Admiralty and Maritime Claims. (D.E. 2). Plaintiffs also filed an emergency motion to arrest the vessel and a motion for appointment of a substitute custodiam. (D.E. 3, D.E. 4). On February 5, 2025, the Court ordered the arrest of the Vessel and the appointment of a substitute custodian. (D.E. 6, D.E. 7). The Vessel was arrested on February 6, 2025. (D.E. 30). On February 19, 2025, National Maritime Services, Inc. ("NMS"), the Court appointed custodian of the Vessel, filed an emergency motion indicating those in charge of the Vessel were not fully cooperating with the custodian and the safety of the vessel and crew were potentially in danger. (D.E. 39).

On February 19, 2025, Claimant Kithnos SME filed a limited appearance under Rule E(8) purporting to represent the interests of the "lawful directors." (D.E. 41). On February 21, 2025, a hearing was held before the undersigned and an order was entered to ensure the safety of the crew and Vessel and also to ensure the Vessel did not abscond. (D.E. 45). The undersigned also directed the order be delivered to each crew member and that NMS be the point of contact for matters related to the well-being of the crew. (D.E. 45).

On March 14, 2025, Plaintiffs filed an Amended Complaint to which Claimant and OCM filed Answers. (D.E. 56, D.E. 62, D.E. 64).

On April 4, 2025, Plaintiff filed the instant Motion to Release the Vessel Pursuant to Supplemental Rule E(5)(d) to which Claimant filed a response.[4] (D.E. 72, D.E. 85). On April 11, 2025, the undersigned ordered the parties to confer on issues related to the release of the Vessel and to attempt to reach a joint agreement. (D.E. 76). Another hearing was held on April 24, 2025, before the undersigned at which counsel for both Plaintiffs and Claimant reported they were unable to reach a mutually acceptable joint agreement on the release of the Vessel. The undersigned then directed counsel for Plaintiffs and Claimant to separately submit proposed orders regarding conditions of release. (D.E. 83). Plaintiffs and Claimant separately filed proposed conditions of release (D.E. 93, D.E. 94). OCM also filed a proposed order concerning the release of the Vessel. (D.E. 91). At the Court's

---

[4] OCM Maritime Gas 4 LLC (OCM) also filed a response as owner of the Vessel requesting that if the vessel is released, one of the conditions be that OCM is paid under the terms of the bareboat charter agreement. (D.E. 79). OCM has also filed a proposed order. (D.E. 91-1).

direction, and under seal, OCM filed an estimate of the value of the Vessel. (D.E. 95, D.E. 96). On May 17, 2025, Plaintiffs filed a Notice of Orders in a related proceeding in which United States District Judge Keith P. Ellison adopted Plaintiffs' position as to the terms of release. (D.E. 97) *See Kithira Gas Shipping Co. v. Family Unity Trust Co.*, No. 4:25-CV-0755 (S.D. Tex. filed Feb. 11, 2025).

On May 21, 2025, the undersigned entered an order (D.E. 98) similar to the order Judge Ellison entered in related case *Kithira Gas Shipping Co. v. Family Unity Trust Co.*, finding Plaintiffs have shown by a preponderance of the evidence that they are entitled to attachment of the Vessel while recognizing "there are open questions about the ownership of the preferred shares of Eletson Gas that may impact the lawfulness of the arrest." Case No. 4:25-cv-755 (Order May 5, 2025). The undersigned also reviewed the parties' proposed orders for the release of the Vessel and found, as did Judge Ellison in the related proceeding, that Plaintiffs' positions as to the terms of release are adopted by the Court. (D.E. 98). Therefore, the parties were further ordered to file a proposed order for the release of the Vessel consistent with this ruling on or before May 30, 2025. (D.E. 98).

On May 30, 2025, Plaintiff filed its proposed order and a supplemental brief. (D.E. 100, D.E. 101). Also on May 30, 2025, Claimant filed a brief and recommendation for security. (D.E. 102).

This case was set for an initial scheduling conference on June 5, 2025. However, before the setting, the Clerk's Office received email messages from the crew members and concerned citizens complaining about the physical and mental condition of the crew

members and the safety of the Vessel. The undersigned directed the parties to make inquiries, particularly NMS as the court ordered custodian of the Vessel. The case was continued to June 6, 2025, at which the undersigned heard from the parties regarding the condition of the crew. On this day, Claimant also filed a letter from the Vessel's Master, Captain Konstantinos G. Manolarakis, reporting that the circumstances of the Vessel being arrested is exhausting on the crew, but the crew is being well cared for and that normal work and rest schedules have been maintained. The undersigned was provided further information that some of the crew members would like to be repatriated, but their shore passes have expired and that has presented problems with immigration authorities with regard to their ability to travel. The Master also represented that the Vessel is safe and operational. Counsel for Claimant also reported he has and will continue to work with appropriate authorities to repatriate crew members who are requesting to return home. Counsel for OCM is working with an immigration attorney and will draft a proposed order for the Court that should facilitate the repatriation of certain crew members. OCM will continue to monitor condition of the crew. While the undersigned finds the current condition of the crew is not an emergency, the conditions associated with the arrest of the Vessel and the expiration of the crew members' shore passes weighs heavy in favor of the Vessel being released as soon as possible and without further delay.

### III. PLAINTIFFS' MOTION TO RELEASE THE VESSEL

Plaintiffs move to release the Vessel under Rule E(5)(d) of the Supplemental Rules for Admiralty or Maritime Claims which provides:

> (d) *Possessory, Petitory, and Partition Actions*. The foregoing provisions of this subdivision (5) do not apply to petitory, possessory, and partition actions. In such cases the property arrested shall be released only by order of the court, on such terms and conditions and on the giving of such security as the court may require.

Sections of (a), (b), and (c) of Rule E(5) address releasing a vessel on bond or by consent in certain types of cases involving maritime attachment and garnishment proceedings, and other types of actions. Rule E(5)(d) addresses possessory, petitory, and partition actions. The undersigned finds the present action, for purposes of Rule E(5), is a possessory action. Rule E(5)(d) does not provide much guidance on the procedures or types of conditions of release to be set. The language of the rule "on such terms and conditions and on the giving of such security as the court may require" indicates the terms and conditions are within the discretion of the Court. Courts have found the terms of release under Rule E(5)(d) are a matter of the Court's discretion. *See JTR Enterps., LLC v. An Unk. Quant. of Colombian Emeralds, Amethysts & Quartz Crystals*, 922 F. Supp. 2d 1326, 1337 (S.D. Fla. 2013).

Plaintiffs' proposed orders (D.E. 100, D.E. 112) present a detailed series of conditions of release that will ensure the protection of the parties' interests in this case, the maintenance of the crew, and the safe operation of the M/V Kithnos. The conditions include releasing the Vessel to an independent manager and a separate independent commercial and financial manager. Further, the proposed order requires the Vessel's revenue to be paid into a separate interest-bearing account within this district. Further, Plaintiffs have submitted a manager who will present himself to the Court for purposes of sanction proceedings in the event the terms of the release order are not followed. The order

presented by the Plaintiffs is of the type the Court had envisioned would be jointly presented by the parties and while the submitted by Plaintiff, the order presents suitable conditions that balance and consider the interests of all parties. While Claimant urges the Court to require a monetary deposit or some form of surety bond, the undersigned finds in this instance it is not necessary. The proceeds earned by the Vessel shall be deposited in an escrow account, and those proceeds shall serve a similar purpose to that of a more traditional monetary deposit or bond. Additionally, the physical operation of the Vessel by a third-party manager and a separate financial manager to handle the commercial and financial matters relating to the operation of the Vessel, satisfy the Court that the Vessel will comply with Court orders and will protect the interests of all parties.

The undersigned recognizes releasing the Vessel under terms suggested by the arresting parties is unusual in the ordinary course of maritime or admiralty litigation. The undersigned further recognizes there are costs associated with the Vessel not being released to the Claimant and the current Captain and crew. However, those costs are not as great as the costs of the Vessel remaining arrested and out of the stream of commerce. Claimant's recent briefing indicates the Vessel was earning a monthly hire of $650,000.00 or $21,380.00 per day under a long-term time charter. At the time of the briefing, the lost charter hire already totaled $2,287,660.00. Additionally, there are hardships to the crew by the Vessel remaining arrested. As set forth on the record on June 6, 2025, some crew members have been unable to be repatriated because their shore passes have expired, and they do not have immigration documents that will allow them to disembark the trip or travel

from the United States. The Court understands many of the crew are now confined to the ship. Some of their complaints are reflected in recent email messages received by the Court. (D.E. 104, D.E. 105, D.E. 106, D.E. 107). Both the Vessel Master and the Captain have reported to the Court that the crew and Vessel are safe. (D.E. 108). Nevertheless, the expenses associated with the Vessel remaining arrested in terms of both monetary costs and humanitarian concerns weigh heavily toward releasing the Vessel.

The undersigned further finds the conditions proposed by Claimant are not sufficient. Claimant's proposed order would leave the current crew in place. The current crew is connected to the interests of the Claimant. The Court has been presented with information that the Claimant, through affiliated entities, may not have clean hands in connection with the Eletson shipping empire. For example:

1. In *Kinaros Special Maritime Enterprises et al v. M/V Kinaros et al,* 1:25-cv-0004 S.D. Tex. filed Jan. 7, 2025), a case almost identical to the instant case in terms of the claims and relationship of the parties, Plaintiffs sought to arrest the vessel when it was coming into port in Brownsville, Texas to load 300,000 barrels of oil. However, within one hour of the Verified Complaint being filed in that case, the Kinaros halted its voyage and left the jurisdictional waters of the Court. (D.E. 56-19) *See also* Case No. 1:25-cv-0004 D.E. 1, D.E. 14.

2. The concerning facts relating to Kinaros continued when it was arrested in the Republic of Trinidad and Tobago. The Trinidad and Tobago Court ordered the replacement of the Master of the M/V Kinaros in favor of re-organized Eletson Holdings Inc. However, when the new master boarded the vessel, he found the crew to be uncooperative, the IT systems were inaccessible and critical documents regarding the operation of the vessel were missing. (D.E. 101, D.E. 101-1).

3. In another similar case, Plaintiffs arrested the M/V Kimolos in Panama on February 3, 2025. Plaintiffs' investigation and evidence suggests that in an effort to avoid arrest, conceal its true location and deceive Plaintiffs, the Defendants interfered with the location tracking system of the vessel. (D.E. 56, D.E. 56-23).

4. In related bankruptcy proceedings, the Bankruptcy Court granted re-organized Eletson's motion for sanctions against several parties including Eletson's former shareholders, directors, and officers for actively working to obstruct the Chapter 11 Plan. (D.E. 72-2). *See In re Eletson Holdings Inc. et al*, No. 23-10322 (Bankr, S.D.N.Y. sanctions order February 27, 2025). The Bankruptcy Court separately found the offending parties in contempt of court and imposed monetary sanctions and other relief. (D.E. 72-2).

Plaintiffs have alleged other instances of either misconduct or conduct that are not consistent with a party or entity acting in good faith. While Claimant has argued at various times that the complained of conduct was innocent, misunderstood, or nonexistent, the undersigned has seen enough evidence of problematic conduct associated with the Claimant to find that it weighs in favor of releasing the Vessel under the terms presented by Plaintiffs in this action.

Therefore, it is **ORDERED** that Plaintiffs' Motion to Release the Vessel Pursuant to Supplemental Rule E(5)(d) is **GRANTED**. (D.E. 72). The conditions of release are set forth below.

## IV. CONDITIONS OF RELEASE OF M/V KITHNOS PURSUANT TO RULE E(5)(d)

The Court finds the following conditions of release sufficient to protect the rights of the parties and to ensure the Vessel remains under the jurisdiction and control of the Court. Plaintiffs' Motion to Release the Vessel Pursuant to Supplemental Rule E(5)(d) is **GRANTED**. (D.E. 72). It is therefore **ORDERED** upon Plaintiffs electronically filing in this Action a notice containing the statement described in Section 20 hereof, M/V

KITHNOS (IMO 9711523) (the "**Vessel**") shall be permitted to leave the territory of the Southern District of Texas, **strictly on the terms and conditions below**:

1. The Vessel is, shall remain, and shall be deemed to remain continuously under arrest until further order of this Court lifting such arrest. All existing obligations and orders relating to the Vessel and its arrest shall remain in full force and effect. The Vessel shall be deemed for all purposes whatsoever to remain under arrest, and no party may subsequently argue that the Vessel did not so remain. This Court shall retain *in rem* jurisdiction over the Vessel, as well as jurisdiction with respect to all matters arising from or related to this Order and its implementation, including, among other things, jurisdiction to:

    a. decide or resolve any motions, contested or litigated matters, and any other matters and grant or deny any applications arising out of this Order;

    b. enter such further orders as may be necessary or appropriate to implement the provisions of this Order;

    c. resolve any cases, controversies, or disputes that may arise in connection with the implementation, interpretation, or enforcement of this Order or any person's rights arising from or obligations incurred in connection with this Order;

    d. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person with implementation or enforcement of this Order; and

    e. modify this Order in such manner as may be necessary or appropriate to implement this Order.

2. Plaintiffs, in conjunction with National Maritime Services, Inc, and until the filing of the document referred to in Section 20 below, shall work to

coordinate the repatriation process for the Vessel's current crew, including negotiations, payments, and logistics, to be reasonably synchronized with inbound replacement crew members. Plaintiffs may make direct payments to any persons to assist with the implementation of the foregoing. National Maritime Services, Inc. shall continue to work on obtaining visas and other related immigration matters for the repatriation of the Vessel's current crew

      3.      V.Ships or any entity affiliated therewith ("**V.Ships**") shall be appointed the independent technical manager of the Vessel, having all rights and duties attendant to such role and entitled to take any actions reasonably necessary for the execution of its rights and duties, whether through sub-contractors, agents or in its own name (which shall include rights, duties and actions under any technical management agreement entered with V.Ships in consequence of this Order). Without limitation of the foregoing, Claimant and all of its Related Persons (defined below) shall provide all cooperation and assistance in good faith for V.Ships to be inscribed into the Vessel's Document of Compliance ("**DOC**") and for V.Ships to be able to carry out the above rights, duties and actions under the authority of such DOC until further order of the Court. Without limitation of the foregoing, Claimant and its Related Persons (defined below) shall provide copies of any documents evidencing any type of insurance related to the Vessel, and V.Ships shall be permitted, to the extent it deems appropriate, to direct insurers to update the names of assureds.

      4.      At its election, Claimant shall be entitled to appoint up to three

observers (to the extent that the Vessel has sufficient accommodations, net of crew berthing). The observer(s) may accompany the Vessel at Claimant's risk and see that the voyages are performed in accordance with this Court's orders, but may not interfere with the Vessel's operations. The observer(s) and Vassilis Kertsikoff, Laskarina Karastamati, and Vassilis Hadjieleftheriadis are required to sign a standard letter of waiver and indemnity recommended by the Vessel's Protection and Indemnity Association before the observer(s) may board the Vessel. The observer(s) are entitled to reasonable and appropriate compensation from the hire / freight earned by the Vessel and, in the event such funds are insufficient, by the Plaintiffs.

5. In the event that Claimant, acting reasonably and in good faith through the observer(s), has objections to the Vessel's condition, maintenance and safety, and such objections are not resolved by V.Ships within twenty-four (24) hours after being notified by Claimant to V.Ships in writing, Claimant shall be entitled to raise such objections with this Court by motion.

6. BW Epic Kosan or any entity affiliated therewith ("**BW Epic Kosan**") is and shall be appointed the independent commercial and financial manager of the Vessel, having all rights and duties attendant to such role and entitled to take any actions reasonably necessary for the execution of its rights and duties, whether through sub-contractors, agents or in its own name (which shall include rights, duties and actions under any commercial and financial management agreement entered with BW Epic Kosan in consequence of this Order). Without limitation of

the foregoing, BW Epic Kosan shall be entitled to seek and obtain commercial employment for the Vessel, collect hire and freight generated in the course of such employment, pay the Vessel's hire under the relevant charterparty, dated February 23, 2022, with OCM Maritime Gas 4 LLC, the Vessel's expenses, and make any other payments reasonably necessary for the Vessel's operation and employment.

7. Prior to entry into effect of any charter party for employment of the Vessel, BW Epic Kosan shall disclose to Claimant the proposed terms of any such charter party, subject to any applicable confidentiality restrictions. In the event that Claimant acting reasonably and in good faith has objections to any such terms, and such objections are not resolved by BW Epic Kosan within twenty-four (24) hours after being notified by Claimant to BW Epic Kosan in writing, Claimant shall be entitled to raise such objections with this Court by motion. Such objections shall not affect the validity of the relevant contracts.

8. BW Epic Kosan shall pay any sums generated from the Vessel's employment remaining after the payments in section 6 above into an interest-bearing bank account in this District, which it shall hold pending further order of the Court.

9. National Maritime Services, Inc. shall provide access to the Vessel to any new crew and new managers.

10. Should the Vessel fail to return to the territory of the Southern District of Texas upon the order of this Court, Adam Spears undertakes to submit to the jurisdiction of this Court for the purposes of any proceedings for sanctions or

contempt arising out of such failure.

11. Claimant, the Vessel's Master and crew, as well as any Related Parties of Claimant (as defined below herein) shall provide all cooperation and assistance in good faith to V.Ships and BW Epic Kosan in the exercise of their rights and duties as technical and commercial & financial managers of the Vessel and in order to implement this order. Without limitation to the foregoing, this includes providing access or handing over any documents, files, and information that is necessary for the exercise of such rights and duties, subject to any confidentiality terms as may be agreed with V.Ships and BW Epic Kosan. For the avoidance of doubt, this includes the assignment of management before the Hellenic Ministry of Shipping and Islands Policy within three (3) business days of issuance of this Order and transfer the Vessel's Oil Companies International Marine Forum (OCIMF) Ship Inspection Report program (SIRE) and Offshore Vessel Inspection Database (OVID) to V.Ships.

12. Plaintiffs and Claimant, as well as any of their Related Parties shall be enjoined from arresting or attaching the Vessel or seeking any other interim conservatory or detention measures against the Vessel in any jurisdiction or causing the Vessel to be so arrested, attached, detained or subjected to any such conservatory measures, pending further order of the Court.

13. "Related Parties" shall mean the relevant person's current and former equity holders (direct or indirect), owners (direct, indirect or beneficial), parents

(direct or ultimate), subsidiaries (direct or indirect), affiliates, directors, managers, officers, advisory board members, employees, agents, representatives, servants, nominees, trustees, successors, predecessors, sellers, buyers, suppliers, insurers, subrogors, subrogees, assigns, advisors and other professionals.

14. Plaintiffs and Claimant, as well as their Related Parties, shall be enjoined from engaging, causing, or facilitating any other person in taking actions which Plaintiffs or Claimant and their Related Parties are enjoined from taking.

15. As a condition for release of the Vessel and at all times after the release, all bareboat charter hire payments, including fixed hire, variable hire, and any other payment amounts due to OCM Maritime Gas 4 LLC pursuant to the Bareboat Charter Party dated February 23, 2022 between OCM Maritime Gas 4 LLC, as Owners, and Kithnos Special Maritime Enterprise, as Bareboat Charterers ("Bareboat Charter Party"), shall be timely and fully paid to OCM Maritime Gas 4 LLC in accordance with the terms of the Bareboat Charter Party. The parties shall provide full details and cooperation to OCM Maritime Gas 4 LLC as necessary to facilitate issuance of invoices to the party or entity responsible for making timely payments to OCM Maritime Gas 4 LLC pursuant to the Bareboat Charter Party. This Order does not alter or suspend any terms of the Bareboat Charter Party.

16. Within two (2) business days of the issuance of this Order, Adam Spears shall cause to be filed on the docket a notice submitting himself to the jurisdiction of this Court for purposes of section 10 above of this Order.

17. In the event that Plaintiffs advance payment(s) for Vessel hire as described in sections 6 and 15 above, Plaintiffs shall be entitled to be reimbursed from the Vessel revenue account described above in section 8 for such advance payment(s) once such account contains sufficient funds.

18. V.Ships is authorized to consider and review independent any new insurance arrangements, including protection & indemnity insurance, hull & machinery insurance, and any other commercially reasonable insurance deemed necessary.

19. BW Epic Kosan shall be entitled to payment of a standard commercial commission to be paid from the Vessel revenue account described in section 8 above, subject to the terms of the relevant management agreement.

20. The Vessel shall not be authorized to leave the territorial jurisdiction of this Court until Plaintiffs have electronically filed a notice in this action containing a statement to the effect that "Plaintiffs confirm that BW Epic Kosan has been appointed as the independent commercial and financial manager, and BW Epic Kosan has advised that it is ready to carry out that role. Plaintiffs further confirm that V.Ships has been appointed as the independent technical manager. V.Ships has also advised that it is ready to carry out its role with the officers and crew it has appointed, or retained, being aboard and with arrangements taken or made for repatriation of any former officers or crew." The filing of the aforementioned document shall result in National Maritime Services, Inc. ceasing to be the court-

appointed custodian of the Vessel as of the time of such filing.

21. ShipTech LLC as an independent ship inspection company shall be authorized to conduct a general inspection of the Vessel which shall include an inspection of the Vessel's shipboard documentation and its databases and to take back-up of such documentation and files in order to ensure safe preservation of those documents and databases and continued administrative access prior to the performance by V.Ships or an entity affiliated with it of their functions as an independent court appointed technical manager.[1] This inspection shall be carried out as soon as ShipTech LLC is available to do so upon issuance of this Order.

## V. OBJECTIONS AND MOTIONS TO STAY

Any motion to stay the release of the vessel shall be filed on or before **Friday, June 13, 2025.** Any objections to this Order shall be filed **within 14 days** of today's date. United States District Judge David Morales may decide to expedite the briefing on any objections. In the event a motion to stay the release of the Vessel is filed, the M/V Kithnos shall not be released until United States District Judge David Morales rules on the motion to stay and any objections or otherwise rules that the Vessel shall be released.

ORDERED on June 11, 2025.

Jason B. Libby
United States Magistrate Judge

---

[1] *See* Plaintiffs' Supplemental Briefing Regarding Proposed Order Directing Release of the Vessel Pursuant to Supplemental Rule E(5)(d) filed on May 30, 2025. (D.E. 101).