**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | |
|---|---|
| **KITHNOS SPECIAL MARITIME ENTERPRISE,** *et al.*, § § § **CIVIL ACTION NO. 2:25-cv-00042** *Plaintiffs,* § § **ADMIRALTY RULE 9(h)** **M/V KITHNOS (IMO 9711523),** *et al.* § § *Defendants.* § | |

**DAILY JOINT STATUS REPORT FOR JULY 11, 2025**

Pursuant to the Court's Order [Document 158] the parties submit the following Daily Joint Status Report regarding the parties' progress in (1) substituting new crew onto the Vessel; (2) repatriating the current crew; and (3) turning over the necessary documents for the operation of the Vessel. It has been agreed by the parties to follow the following procedures in compiling and submitting the daily joint status reports:

- Each party will submit their portion of the daily status report to Kelly M. Haas, NMS Counsel, by 2:00 PM CST.

- Ms. Haas will compile the joint status report and will serve the daily report upon all counsel of record via the Court's Case Management/Electronic Case Files (CM/ECF) system by 4:00 PM CST.

- Each party can comment/respond on another party's submission the following day, if needed.

**I.**
**STATUS UPDATES**

**1.    PLAINTIFFS[1]**

**Status of Requested Documents:**

V.Ships have reported to Plaintiffs that the atmosphere on board has improved, and the crew now appears to be cooperating with VShip's team.

---
[1] Plaintiffs attached a list of Management Turnover Items.

Various information, drawings, plans, and other materials in both soft copies and full access to hard copies has been provided.

We provide the status of documents/information requested at **Appendix 1** to this Report.

Further, Plaintiffs are working with V.Ships to understand what cooperation they require to change managers, and on the necessary paperwork regarding registry with the Greek Ministry and access to Class records at Lloyds.

**Repatriation:**

Regarding the repatriation of the crew, as Plaintiffs noted on July 10, 2025, V.Ships reported to Plaintiffs that it discussed the possibility of several crew members remaining onboard for a short period to enable repatriation from the closest available port in Mexico after sailing out of the United States. Plaintiffs provide the following additional information.

Plaintiffs have evaluated the proposed plan to repatriate certain crew members through Mexico via a launch from in-port Houston and were concerned that the plan presented safety issues, specifically, (1) the crew members would need to climb down to the launch with their possessions; (2) the repatriation would be through Tampico, which is a smaller port that may not have the necessary capacity to handle their entry (i.e., may not be accustomed to handling individuals in their situation); and (3) the transit would require two days at sea on the launch and one day overland on a bus to finally reach Mexico City. To mitigate the safety concerns discussed above, Plaintiffs worked with V.Ships devised a plan that would enable the crewmembers to disembark at the cruise terminal in Cancun, which has the necessary immigration capacity and is near an international airport. To execute this plan, V.Ships would need 6 to 7 current crew members to sign on for the voyage to Cancun.

On Wednesday, July 9, 2025, V.Ships reported to Plaintiffs that the V.Ships Superintendent and the prior Master discussed the aforementioned and reached agreement on the plan to disembark in Cancun and for 6 to 7 crew members to sign on for the voyage to Cancun. However, on July 10, 2025, the prior Master informed V.Ship's Superintendent that the current crew did not agree with the plan. Earlier today, July 11, 2024, V.Ships reported to Plaintiffs that the crew appears to be reconsidering the repatriation plan discussed above.

**Miscellaneous:**

The U.S. Marshal ("USM") for the Corpus Christi Division confirmed it is not holding any original vessel documents. However, the USM could not confirm whether any other government agency may have seized original documents from the vessel as part of the arrest. Counsel for Plaintiffs continues to liaise with USM personnel in the Corpus Christi Division and Houston Division to identify appropriate points of contact with CBP and USCG to determine whether those agencies may have original vessel documents in their custody.

2. **CLAIMANT**

   Claimant's paramount priority during this transfer process is the safety, well being, and future ability of the crew to work.

   Repatriation:

   1) Claimant received an inquiry from Ms. Haas as to whether the vessel's Protection and Indemnity insurance company (P+I Club), has coverage for the proposed transfer of the crew via launch to Mexico. Claimant is seeking clarification from its P&I Club regarding this inquiry.

   2) Claimant categorically denies that anyone from Claimant's office spoke with the crewmembers. Plaintiffs are invited to provide the names of the crewmembers that allegedly spoke with the personnel in Claimant's office and who they spoke with.

   3) Claimant has no knowledge of Plaintiffs "understanding" that some of the crew had agreed to stay onboard and work for VShips. Plaintiffs are invited to provide the names of these crewmembers.

   4) Claimant categorically denies that any of the crewmembers were informed or warned by Claimant of any adverse future employment consequences if any of the crew were to be employed by VShips.

   5) Yesterday, Claimant was notified of certain concerns by the crew regarding the transfer to Mexico and those concerns were relayed to Ms. Haas who has taken them under consideration. A copy of the Master's letter, signed by the Master and 18 crew members, is attached to Claimant's daily report.[2]

   6) Claimant is very concerned about the approach to CBP on the basis of an "overstayed" visa and how that might affect the crew's ability to obtain a visa in the future, and is in complete agreement with Ms. Haas that this scenario needs to be thoroughly explained to the crew.

   Documents:

   1) Claimant continues to provide requested documentation to VShips to facilitate the transfer. On July 11, 2025, Claimant responded to Plaintiffs request for production and also informed Plaintiff that many of the documents requested will in any event remain on the vessel.

   2) With respect to making copies of the voluminous records requested by Plaintiffs, Claimant is checking to determine the onboard copier capabilities of the vessel, and what records can be produced from the office.

---

[2] See Claimant's Exhibit Attached.

3)  Claimant received a request from Plaintiffs, (with a very short deadline), asking Claimant to inform the vessel's classification society ("Class"), that VShips is the new technical manager and for Class to release the vessel's Class records to VShips. As Plaintiffs have been informed, it continues to be Claimant's understanding that, with respect to Class records available at Lloyd's, the first step that must be taken is for the new managers to appear before the Greek authorities and designate themselves as the new manager before proceeding with Class. We are awaiting a response regarding the steps that have been taken by the new managers to initiate this process. All Class records onboard the M/V KITHNOS are available for the onboard representative of VShips to review and make copies.

**3.  OCM MARITIME GAS 4 LLC**

OCM Maritime Gas 4 LLC ("OCM") reports that it has not yet received payment of the amount due now ($2,047,486.01) to OCM to fulfill the condition for release of the Vessel pursuant to Condition No. 15 in the Order Releasing Vessel (D.E. 114).

4. **NATIONAL MARITIME SERVICES:**

On the evening of July 10, 2025, NMS received the following email from crew on the KITHNOS advising that they "categorically reject the repatriation plan via Houston" given the possible designation of overstaying their visas, if they are not paroled.

| | |
|---|---|
| From: | legkithnos |
| To: | Alan Swimmer; Kelly Haas; Bill O'Dell |
| Subject: | Objection to Repatriation Plan via Houston and Request for Lawful, Safe Return |
| Date: | Thursday, July 10, 2025 6:42:38 PM |

Dear National Maritime Services

We, the undersigned officers of the M/V KITHNOS — Sokur Dmytro, Chief Officer
Fatun Mykhaylo, Second Engineer
Vasylenko Yehor, Gas Engineer
Zlatov Ruslan , Electr. Engineer, respectfully submit the following statement:

We categorically reject the repatriation plan via Houston as outlined in the most recent status report dated July 10, 2025. This plan carries the risk of our valid C1/D visas being compromised, which would directly affect our ability to continue our maritime careers. Such a consequence is unacceptable to us, as most international shipping companies require a valid U.S. transit visa as a condition of employment.

We fully support the repatriation plan via Mexico, even if it is more complex or costly, provided it ensures the integrity of our immigration records and preserves our right to apply for future U.S. visas.

In addition to the mental and physical exhaustion that has accumulated over the extended length of our contracts — as confirmed by independent psychological assessments — we continue to experience extreme psychological pressure, as each party in this legal process is pursuing its own interests and seeking advantage from the situation at the expense of the ship's crew. As we have stated before, we no longer wish to be part of this ongoing legal and commercial conflict. Our only request is to return home safely, with our full wages paid in accordance with international maritime labor standards.

Respectfully,

Sokur Dmytro, Chief Officer
Fatun Mykhaylo, Second Engineer
Vasylenko Yehor, Gas Engineer
Zlatov Ruslan , Electr. Engineer
Aboard M/V KITHNOS

10 July 2025

Counsel for Claimant confirmed that their clients are continuing to gather the information requested by NMS regarding their P&I Club's approval for the plan to repatriate through Mexico.

On July 11, 2025, Eric Marquette, local agent at Valls Ship Agencies, was contacted by Chantelle North (Chief CBPO of Passenger Operations Customs and Border Protection

Houston Seaport) requesting a list of names of crew "who need to change out" from the KITHNOS, KITHIRA, and the ITHACKI. In addition, she requested a letter from each ship asking for a request for a "Parole to Depart." This designation would prevent the outcome advised of in yesterday's daily report. If the crew depart under a Parole to Depart designation, they will not be identified as overstaying their visas.

We are working with Melody Poole (US Immigration Attorney) to draft the requested letters and to compile the lists from each vessel of all crew members. We should have this information turned into CBP later today.

Accordingly, we request that the parties be prepared with replacement crew for all vessels by next Friday, July 18, 2025 in order to be prepared if the CBP is able to get the crew paroled as indicated.

Respectfully submitted,

**For Plaintiffs:**

*/s/ Edward W. Floyd*            *
Edward W. Floyd
Luke F. Zadkovich
Filipp A Vagin
FLOYD ZADKOVICH (US) LLP
33 East 33rd Street, Suite 905
New York, NY 10016
Phone: (917) 999-6914
Email: ed.floyd@floydzad.com
Email: luke.zadkovich@floydzad.com
Email: philip.vagin@floydzad.com

Ivan M. Rodriguez
Andrew R. Nash
Kenderick M. Jordan
PHELPS DUNBAR LLP
910 Louisiana Street, Suite 4300
Houston, TX 77002
Phone: (713) 225-7251
Fax: (713) 626-1388
Email: ivan.rodriguez@phelps.com
Email: Andy.nash@phelps.com
Email: kenderick.jordan@phelps.com

**For Claimant:**

*/s/ Dimitri P Georgantas*            *
Dimitri P Georgantas

6

Eugene Barr
ROYSTON, RAYZOR, VICKERY & WILLIAMS, LLP
1415 Louisiana
Houston, TX 77002
Phone: (713) 224-8380
Email: Dimitri.Georgantas@roystonlaw.com
Email: Eugene.Barr@roystonlaw.com

Bruce J Ruzinsky
JACKSON WALKER LLP
1401 McKinney, Ste. 1900
Houston, TX 77010
Phone: (713) 752-4204
Fax: (713) 308-4155
Email: bruzinsky@jw.com

**For OCM Maritime Gas 4 LLC:**

*/s/ Christopher R. Hart*                             *
Christopher R. Hart
Texas Bar No.: 09136310
Fed Id.: 12517
chris.hart@hfw.com
Thomas N. Lightsey III
Texas Bar No.: 12344010
Federal Id.: 84829
tom.lightsey@hfw.com
HOLMAN FENWICK WILLAN USA LLP
3040 Post Oak Blvd., Fl 18, Suite 129
Houston, Texas 77056
Telephone: (713) 917-0888
Facsimile: (713) 953-9470

**For National Maritime Services, Inc.:**

*/s/ Kelly M. Haas*                              *
Kelly M. Haas
SCHOUEST, BAMDAS, SOSHEA, BENMAIER &
EASTHAM, PLLC
Texas Bar No.: 24059874
S.D. Tex. ID No. 870096
Hayley Stancil
Texas Bar No. 24144121
S.D. Texas ID No. 395848
1001 McKinney Street, Suite 1400
Houston, TX 77002
Phone: (713) 588-0446
Email: khaas@sbsb-eastham.com

\* Signatures of the respective parties are *only* for that party's daily submission and not an indication of its agreement with the submissions of the other parties.

## CERTIFICATE OF SERVICE

I certify that on July 11, 2025, a true copy of the foregoing document was served upon all counsel of record via the Court's Case Management/Electronic Case Files (CM/ECF) system and email.

**KELLY M. HAAS**

**M/V KITHNOS Management Turnover Items**

**As of: July 11, 2025**

| Item | Comments re Status from V.Ships |
|---|---|
| Current passwords for all electronic information and data systems and individual computers maintained onboard MV KITHNOS | Yes (However, we do not have any access to any computers onboard, so cannot verify if those are working or will note be changed) |
| Most recent crew pay slips (believed to be May 2025) and wage calculations through July 21, 2025 for entire crew and specifically Dmytro Sokur (Chief Officer) Mykhaylo Fatun (Second Engineer), and Yehor Vasylenko (Gas Engineer) | Not yet provided, but expected imminently |
| Access to all CLASS records for MV KITHNOS | Yes (All class documents handed over hard copy) No online class access granted to us for class webpage by old managers |
| The inscription of V.Ships into M/V KITHNOS Document of Compliance ("DOC") | No (under progress) 10% to 15% |
| The assignment of management before the Hellenic Ministry of Shipping and Islands Policy to V.Ships | No (under progress)  10% |
| The transfer of the Vessel's Oil Companies International Marine Forum (OCIMF) Ship Inspection Report program (SIRE) and Offshore Vessel Inspection Database (OVID) to V.Ships | No (access not granted by old managers for OCIMF and Q88 database) |
| The completion of a formal declaration confirming there are no outstanding debts to the Greek Flag and that all tonnage taxes have been paid to V.Ships | To be confirmed with Claimant |

PLAINTIFFS' ATTACHMENT

| Technical Maintenance and Performance Records Relating to Deck and Engine Maintenance and Repairs (to remain onboard) | |
|---|---|
| 1.     Service engineer reports | No |
| 2.     Planned maintenance system: (a) reports and technical data; and (b) approval by Class | No |
| 3.     Performance reports | No |
| 4.     Main and auxiliary engines reports and data | No |
| 5.     Critical spares | No |
| 6.     Last LSA and FFE periodical service and test reports by authorized service providers | No |
| Logbooks (available / left onboard; check flag-specific requirements and if removal is allowed - certified true copies of the period specified by flag) | |
| 1.     Bridge / Deck Logbook | No( access provided but not delivered) |
| 2.     Official / Flag Logbook | No( access provided but not delivered) |
| 3.     Engine Logbook | No( access provided but not delivered) |
| 4.     GMDSS Logbook, including (a) shore based maintenance contract in place; and (b) radio accounting authority verified | No |

| | |
|---|---|
| <u>Environmental Record Books and Shore Facilities Receipts (available/ left onboard; check flag-specific requirements and if removal is allowed – certified true copies for the period specified by flag or 6 months if nothing specified by flag)</u> | |
| 1.     Oil Record Book (3 years) (Note: Where the latest or any preceding ORB covering the last 3 years is not available, the Master should prepare a statement confirming that the previous ORBs are not available, append it to the new ORB and bring it to attention of the RO Surveyor at the next IOPPC verification) | Yes |
| 2.     Garbage Record Book (2 years) | Yes |
| 3.     Wastewaters (Grey/Black) (if available) | No |
| 4.     Ozone Depleting Substances (ODS) Record Book / F-Gas Record Book (if applicable) | Not available |
| 5.     Refrigerants Record Book | Not available |
| 6.     Ballast Record Book | Yes |
| 7.     Marine Sulphur Record Book | Yes |
| 8.     EGCS Record Book (for ships with EGCS) | NA |
| 9.     NOx Emissions Logbook (if appl. Tier II and III ships) | NA |
| <u>Technical Files and Manuals</u> | |
| 1.     Marpol VI NOx, EEDI/EEXI (as appl.) | Yes |
| 2.     (for ships with EGCS) SOx Emissions Compliance Plan/ Certificate and Technical Manuals (ETM-A/B, OMM etc.) | NA |

| | |
|---|---|
| 3.      Coating Technical File (dedicated ballast tanks) | No |
| Ship Specific Manuals | |
| 1.      SOLAS Safety and Fire Training Manuals, | Yes |
| 2.      Emergency Towing Booklet/Manual, | Yes |
| 3.      Zodiac/Expedition Operations Manual (if applicable), | NA |
| 4.      Ice Operations Manual (if applicable), | NA |
| 5.      Emergency Response Service Manual, other Manuals (for HSC, Cargo Securing Manual (for Ro-Ro)) (in hard or electronic copy) | Yes |
| 6.      Trading and Equipment Certificates including associated plans SOPEP (incl. Panama Canal SOPEP if applicable) | Yes |
| 7.      SEEMP (part I and incl. its approved parts II and III), | Yes |
| 8.      Approved BWMP (part of the IOPPC, IAPPC and IBWMC) available (add as an attachment) | Yes |
| IMO DCS, EU-UK MRV & CII Rating (It is important to collect the Voyage Data for EU-UK MRV and CII Correction Factors data for the period of the calendar year before entering into our management) | |
| 1.      Voyage Summary for the period from 01 Jan till Entering Management for the EU MRV, UK MRV to be obtained from the previous operators | No |
| 2.      EU MRV DOC for previous year to be received. If not then to get the List of Port Calls for the Previous Year to have a proof in Lieu of DOC | No |

| | |
|---|---|
| 3.     UK MRV DOC for previous year to be received, as applicable. | No |
| 4.     SOC, FOC for the IMO DCS Submission for previous Calendar year | No |
| 5.     SOC, FOC for the period from 01 Jan until the Date of Change of Management along with Appendix 3 as per MEPC 348(78), attached above. | No |
| 6.     Evidence for Correction Factor data, as applicable and Voyage Summary Data for the CII Submission at the end of year to be received. | No |
| <u>Vessel Documents</u> | |
| 1.     EEDI and/or EEXI Files? | Yes |
| 2.     EPL - OPL installation fitted on vessel, if yes all service reports and class files with the installation to remain on board? | Yes |
| 3.     CSR documents to remain on board | Yes |
| 4.     Gas Form C copy | Yes |
| 5.     OCIMF file remain on board | No (vsl not detached from old manager's account, same for Q88 database) |
| 6.     All Class certificates (including all IHM certificates and records of inspections) | Yes |
| 7.     PMS database in excel format 'PMS database including current running hours of all main and aux machinery and last maintenance records''. | No |

| | |
|---|---|
| 8.     Charts and publications and advise chart provider for further installing the application on the newly received PC's | Yes |
| 9.     ENOI | Yes |
| 10.    All Ships drawings in digital pdf format | Yes |
| 11.    All ships manuals | Yes |
| 12.    ORB part I and part II for the past 6 months to remain on board | Yes |
| 13.    Deck and engine log books copies or original for the past 3 year from the date of last entry or certified copies | Yes |
| 14.    Radio / GMDSS log books original to remain on board certified to be sent to the previous management | Yes |
| 15.    Official Flag Book and associated crew articles (if crew changing)- the last one in use is to be closed at the day of change of management and the certified copy is to be sent to the old managers, original to remain on board. | Yes |
| 16.    Certified copies* of the last six months period before change of management of the following enviro/Marpol Record Books are to be sent to the previous management, original remain on board | |
| a.     Oil Record Book | Yes |
| b.     Garbage Record Book | Yes |
| c.     Ozone Depletion Substances Record Book/ F-Gas Record Book (EU flagged/ going) | NA |

|  |  |  |
|---|---|---|
| | d.      Ballast Record Book | Yes |
| | e.      Wastewaters (Sewage/grey) logbook | NA |
| | f.      Marine Sulphur Record Book (as applicable) | Yes |
| | g.      Record Book for Nox Tech File | Yes |
| | h.      EGCS Record Book (for ships with EGCS installed) | NA |
| | i.      Certified copies may be black and white suitably bound loose leaves, signed and stamped by the ship's Master on each page | No |
| 17. | Anchor chain and cables certificates | Yes |
| 18. | Suez Canal certificate | Yes |
| 19. | ECDIS | Yes |
| 20. | Loadigator software including class approved trim and stability booklet | Yes |
| 21. | Flag certificates | Yes (No original Registry certificate on board) |
| 22. | SMPEP plan incl. its approved parts II on MRV and III on CII) form part of the vessel's IOPP/IAPP Certificates and may remain onboard. | No |
| 23. | STS plan | Yes |
| 24. | Emergency towing booklet | Yes |
| 25. | Ships particulars | Yes |

| | | |
|---|---|---|
| 26. | Ballast water management plan to remain on board | Yes |
| 27. | Recovery of persons from the water if the plan is approved. | Yes |
| 28. | EU/ UK MRV Plan | No |
| 29. | PWOM and Operational Assessment | NA |
| 30. | SAR plan | NA |
| 31. | Certain forms and reports relating to deck and engine maintenance and repairs, including service engineer reports, to remain onboard | No |

Dear All,

We, as crew, having seen a photo of the preliminary support vessel "Melinda B Adams" from the VShips representative that is going to be used, feel unsafe. It is stated that the maximum speed is 12knts, but in realistic sea condition we expect an average of 9-10knts, making the trip approximately 2-2.5 days long. This duration at sea under potentially uncomfortable conditions is concerning.

We would like to suggest, if it is possible, for the vessel to be released under our current employer's management and be permitted for the existing crew to sail with the vessel until the designated disembarkation port, in which the change of management and the crew changes would take place.

Having in mind the mental stress of the crew, and the fact that our primary concern still remains to be repatriated, we would like for this option to be reviewed and accepted until Monday the 14th of July 2025, and if it is not acceptable by any side we would still prefer for a more convenient and safe boat to be used.

The crew

| | | | |
|---|---|---|---|
| MASTER | MANOLARAKIS KONSTANTINOS | A.B. | COSTUMBRADO JOSEPH |
| CH. OFF | SOKUR DMYTRO | A.B. | OROGA PATRICK JOSEPH ZAB |
| 2ND OFF | PAPANIKOLAOU IOANNIS | O.S | MANALO AARON JASPER |
| 2ND OFF | KALYVIOTIS GRIGORIOS | O.S | ALGIRE ALEJANDRO |
| DECK CADET | KARATSOLIAS PANAGIOTIS | OILER | URFILLA JOHN LESTER |
| CH ENG | VLAIKOS DIMITRIOS | WIPER | MARQUEZ BEN MARK |
| 2ND ENG | FATUN MYKHAYLO | COOK | ILAG KENNETH JAY MANALO |
| 3RD ENG | KAINOURGIOS DIMITRIOS | MESSMAN | AREVALO JOSHUA SUSTIGUER |
| GAS ENG | VASYLENKO YEHOR | | |
| EL/CIAN | ZLATOV RUSLAN | | |
| BOSUN | BARE JERRY MALUTO | | |
| A.B | LACUADRA JEOFFREY MERIN | | |

MANOLARAKIS KONSTANTINOS

CLAIMANT EXHBIT